Henry E. Alvarez, Trustee of the Alice B. Dobson Declaration of Trust dated May 30, 1991, as amended

BY: _Henry E. Alvarez_
    Henry E. Alvarez
    Trustee

Subscribed and sworn to before me this 16th day of _November_ , 20 17.

_R Brooks_
                                              , Notary Public

_____ County, Michigan

My Commission Expires:

R. Brooks
Notary Public, Wayne County, MI
My Commission Expires: June 21, 2018
Acting in Washtenaw County

Page 2 of 2

Michigan Department of Treasury
2766 (Rev. 01-16)

L-4260

# Property Transfer Affidavit

This form is issued under authority of P.A. 415 of 1994. Filing is mandatory.

This form must be filed whenever real estate or some types of personal property are transferred (even if you are not recording a deed). **The Affidavit must be filed by the new owner with the assessor for the city or township where the property is located within 45 days of the transfer.** The information on this form is NOT CONFIDENTIAL.

| 1. Street Address of Property | 2. County | 3. Date of Transfer (or land contract signed) |
|---|---|---|
| 341 Corrie Road | Washtenaw | 12/15/17 |

| 4. Location of Real Estate (Check appropriate field and enter name in the space below.) | 5. Purchase Price of Real Estate |
|---|---|
| ☐ City  ☐ Township  ☒ Village <br><br> Barton Hills | 625,000.00 |
| | 6. Seller's (Transferor) Name <br> The Alice B. Dobson Declaration of Trust dated May 30, 19 |

| 7. Property Identification Number (PIN). If you don't have a PIN, attach legal description. | 8. Buyer's (Transferee) Name and Mailing Address |
|---|---|
| **PIN.** This number ranges from 10 to 25 digits. It usually includes hyphens and sometimes includes letters. It is on the property tax bill and on the assessment notice. <br><br> IB-09-08-380-005 | Karl W. Staffeld and Dorothea V. Staffeld <br> 341 Corrie Road, Ann Arbor, MI  48105 |
| | 9. Buyer's (Transferee) Telephone Number |

Items 10 - 15 are optional. However, by completing them you may avoid further correspondence.

| 10. Type of Transfer. **Transfers** include deeds, land contracts, transfers involving trusts or wills, certain long-term leases and interest in a business. See page 2 for list. |
|---|
| ☐ Land Contract   ☐ Lease   ☐ Deed   ☐ Other (specify) _____ |

| 11. Was property purchased from a financial institution? | 12. Is the transfer between related persons? | 13. Amount of Down Payment |
|---|---|---|
| ☐ Yes  ☐ No | ☐ Yes  ☐ No | |

| 14. If you financed the purchase, did you pay market rate of interest? | 15. Amount Financed (Borrowed) |
|---|---|
| ☐ Yes  ☐ No | |

## EXEMPTIONS

Certain types of transfers are exempt from uncapping. If you believe this transfer is exempt, indicate below the type of exemption you are claiming. If you claim an exemption, your assessor may request more information to support your claim.

- ☐ Transfer from one spouse to the other spouse
- ☐ Change in ownership solely to exclude or include a spouse
- ☐ Transfer between certain family members *(see page 2)
- ☐ Transfer of that portion of a property subject to a life lease or life estate (until the life lease or life estate expires)
- ☐ Transfer to effect the foreclosure or forfeiture of real property
- ☐ Transfer by redemption from a tax sale
- ☐ Transfer into a trust where the settlor or the settlor's spouse conveys property to the trust and is also the sole beneficiary of the trust
- ☐ Transfer resulting from a court order unless the order specifies a monetary payment
- ☐ Transfer creating or ending a joint tenancy if at least one person is an original owner of the property, (or his/her spouse)
- ☐ Transfer to establish or release a security interest (collateral)
- ☐ Transfer of real estate through normal public trading of stocks
- ☐ Transfer between entities under common control or among members of an affiliated group
- ☐ Transfer resulting from transactions that qualify as a tax-free reorganization
- ☐ Transfer of qualified agricultural property when the property remains qualified agricultural property and affidavit has been filed.
- ☐ Transfer of qualified forest property when the property remains qualified forest property and affidavit has been filed.
- ☐ Transfer of land with qualified conservation easement (land only - not improvements)
- ☐ Other, specify: _____

## CERTIFICATION

I certify that the information above is true and complete to the best of my knowledge.

| Printed Name <br> Dorothea V. Staffeld | |
|---|---|
| Signature <br> *[signature]* | Date <br> 12/15/17 |
| Name and title, if signer is other than the owner | Daytime Phone Number | E-mail Address |

I/USWe, the above signed, request that American Title Company of Washtenaw mail this original affidavit on our behalf. We understand that we are still responsible for penalties if it is not received by the assessor within the specified time period.

# American Title Company of Washtenaw

825 Victors Way, Suite 100, Ann Arbor, MI 48108
(734) 996-0036 • Fax (734) 662-9604

**ESTOPPEL CERTIFICATE**                                   FILE NO. 110148

The undersigned mortgagors acknowledge that incident to the closing of the mortgage to be insured the mortgagee caused the full sum of $424,100.00 to be paid to the undersigned or for the benefit of and by the direction of the undersigned.

The undersigned further certify that, unless otherwise indicated below, the property is owned and occupied exclusively by them on the date hereof.

THE UNDERSIGNED FURTHER CERTIFY THAT THEY ARE 18 YEARS OF AGE OR OVER.

Dated _____

_____
Dorothea V. Staffeld

## ORDER TO ISSUE POLICY

Re:            Dorothea V. Staffeld
Property:      341 Corrie Road

Please issue your Title Insurance Policy pursuant to the above numbered commitment.

Please check:

_____ After recording of the attached:
_____ Deed
_____ Mortgage discharge


Please mail the Owner's Title Policy to:
          341 Corrie Road
          Ann Arbor, MI 48105

Please mail the Mortgage Title Policy to:

          Marketplace Home Mortgage, LLC
          7380 Frances Avenue S., Suite 200
          Edina, MN 55435


_____
          Applicant

Other Instructions:_____
_____

## American Title Company of Washtenaw
## Owner's Form Title Insurance Policy
## Issued for Stewart Title Guaranty Company

### SCHEDULE A

File No.: 110148

Amount of Insurance: $625,000.00

Date of Policy: December 15, 2017, or the date of recording of the deed conveying the subject property to the insured, whichever is later.

Policy No.: O-9301-004417421

Premium: $2,275.75

1.  Name of Insured:

    Dorothea V. Staffeld

2.  The estate or interest in the land which is covered by this policy is:

    Fee Simple

3.  Title to the estate or interest in the land is at the date of this policy vested in:

    Dorothea V. Staffeld

4.  The land referred to in this policy is described as follows:

    SEE SCHEDULE C ATTACHED HERETO.

AMERICAN TITLE COMPANY OF WASHTENAW

By: _____

Authorized Signatory

Date Issued:  December 15, 2017

**SCHEDULE B**
**EXCEPTIONS FROM COVERAGE**
**Issued for Stewart Title Guaranty Company**

File No.: 110148                                    Policy No.: O-9301-004417421

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of the following exceptions:

1. Taxes and assessments that become a lien against the property after date of closing. The Company assumes no liability for tax increases occasioned by retroactive revaluation, changes in the land usage or loss of any principal residence exemption status for the insured premises.

2. A mortgage for $424,100.00 was given by Dorothea V. Staffeld, a single woman to Mortgage Electronic Registration Systems, Inc., as nominee for Marketplace Home Mortgage, LLC, dated December 15, 2017.

3. Subject to visible easements.

4. Subject property abuts a private road which is not required to be maintained by the County.

5. Rights of others in and to the private road.

6. Building and use restrictions contained in instrument(s) recorded in Liber 4 of Miscellaneous Records, Page 295, and in Liber 231, Page 204, and in Liber 240, Page 11, and in Liber 240, Page 15, and in Liber 240, Page 71, and in Liber 251, Page 284, and as modified by instruments recorded in Liber 443, Page 243, and in Liber 444, Page 84, and in Liber 481, Page 187, and as extended by instruments recorded in Liber 566, Page 78, and in Liber 1296, Page 295, and in Liber 1312, Page 473, and in Liber 2491, Page 900, and in Liber 4765, Page 672, and in Liber 4765, Page 673, Washtenaw County Records, but omitting any such covenant or restriction based on race, color, religion, sex, handicap, familial status, or national origin. The mortgage policy to be issued, if any, will insure against loss or damage as a result of any existing violations of said building and use restrictions.

7. Easements, Agreements and Conditions as shown on recorded plat.

8. Easement, Agreement and Conditions as disclosed by instrument recorded in Liber 4 of Miscellanous Records, Page 295, and in Liber 231, Page 204, and in Liber 240, Page 111, and in Liber 566, Page 78, and in Liber 1296, Page 295, and in Liber 1312, Page 473, Washtenaw County Records.

9. Jurisdiction of Barton Hills Maintenance Corporation as set forth in Liber 3 of Miscellaneous Records, Page 173, and in Liber 3 of Miscellaneous Records, Page 183, and in Liber 4 of Miscellaneous Records, Page 288, and in Liber 4 of Miscellaneous Records, Page 295, and in Liber 1296, Page 295, Washtenaw County Records.

10. Charges assessed by Barton Hills Maintenance Corporation, as fixed and determined in accordance with the By-Laws thereof, which if unpaid, shall constitute a lien against subject property as set forth in Liber 3 of Miscellaneous Records, Page 173, and in Liber 3 of Miscellaneous Records, Page 183, and in Liber 4 of Miscellaneous Records, Page 288, and in Liber 4 of Miscellaneous Records, Page 295, and in Liber 1296, Page 295, Washtenaw County Records.

11. Easement, Agreement and Conditions in favor of Michigan Consolidated Gas Company, as recorded in Liber 1057, Page 480, Washtenaw County Records.

ALTA Owner's

110148

# SCHEDULE C

## PROPERTY DESCRIPTION

The land referred to in this Policy is described as follows:

Land in the Village of Barton Hills, County of Washtenaw, Michigan, described as:

Commencing at an iron pipe in the South line of Section 8 at its intersection with the West line of Lot 4, Block 3, Supervisor's Plat of Barton Hills; thence North 20°12' East 198.16 feet to a concrete monument for a PLACE OF BEGINNING; thence North 20°12'00" East 217.77 feet to a concrete monument; thence North 20°12'00" East 133.73 feet to a concrete monument; thence North 35°01' East 94.97 feet to a point on a curve; thence Easterly along a curve concave Southerly having a radius of 45.99 feet and central angle of 48°42'30" 39.10 feet to a concrete monument in the Southerly right-of-way line of Corrie Road at its Westerly end; thence North 83°49'0" East 120.00 feet along the South line of Corrie Road to a concrete monument; thence South 6°00' West 250.00 feet to a concrete monument; thence South 28°11'10" West 227.14 feet to a concrete monument; thence North 87°02'42" West 193.40 feet to the PLACE OF BEGINNING, being a part of parcel one of Lot 4 in Block 3 of Supervisor's Plat of Barton Hills, as recorded in Liber 9 of Plats, Pages 58, 59, and 60, Washtenaw County Records.

Described for tax purposes as follows:
Land in the Village of Barton Hills, County of Washtenaw, State of Michigan;  Commencing at the Southwest corner of Lot 4, Block 3, of Supervisor's Plat of Barton Hills, thence North 20°12' East 268.84 feet for the PLACE OF BEGINNING, thence North 20°12' East 351.50 feet, thence North 35°01' East 94.97 feet, thence Northeasterly 39.10 feet in the arc of a curve to the right with a radius of 44.99 feet, through a central angle of 48°42'30", the chord of which bears North 59°22'30" East 37.92 feet, thence North 83°49' East 120 feet; thence South 6° West 250 feet; thence South 28°11'30" West 227.14 feet, thence North 87°02'40" West 193.4 feet to the PLACE OF BEGINNING.  Being a part of Lot 4, Block 3, Supervisor's Plat of Barton Hills.

ALTA Owner's

ALTA Owner's Policy (6-17-06)

## OWNER'S POLICY OF TITLE INSURANCE
### ISSUED BY

# STEWART TITLE GUARANTY COMPANY

Any notice of claim and any other notice or statement in writing required to be given the Company under this Policy must be given to the Company at the address shown in Section 18 of the Conditions.

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, STEWART TITLE GUARANTY COMPANY, a Texas corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1.  Title being vested other than as stated in Schedule A.
2.  Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from:
    (a) A defect in the Title caused by:
        (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
        (ii) failure of any person or Entity to have authorized a transfer or conveyance;
        (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
        (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
        (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
        (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
        (vii) a defective judicial or administrative proceeding.
    (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
    (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3.  Unmarketable Title.
4.  No right of access to and from the Land.
5.  The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to:
    (a) the occupancy, use, or enjoyment of the Land;
    (b) the character, dimensions, or location of any improvement erected on the Land;
    (c) the subdivision of land; or
    (d) environmental protection
    if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6.  An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

Countersigned by:

_____
Authorized Signature

American Title Company of Washtenaw

_____
Company

Ann Arbor, MI
_____
City, State

**stewart**
title guaranty company

*(seal: STEWART TITLE GUARANTY CO. INCORPORATED 1908 TEXAS)*

_____
**Matt Morris**
**President and CEO**

_____
**Denise Carraux**
**Secretary**

| Policy Serial No. | **O-9301-004417421** |
|---|---|



Copyright 2006-2009 American Land Title Association. All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN LAND TITLE ASSOCIATION

ALTA Owner's Policy (6/17/06)          Agent ID: 220067          File Number 110148

## COVERED RISKS (Continued)

7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.

8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the instrument of transfer vesting Title as shown in

Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
   (i) to be timely, or
   (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A. The Company will also pay the costs, attorneys' fees and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to:
      (i) the occupancy, use, or enjoyment of the Land;
      (ii) the character, dimensions, or location of any improvement erected on the Land;
      (iii) the subdivision of land; or
      (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records

at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## CONDITIONS

1. **DEFINITION OF TERMS.**
   The following terms when used in this policy mean:
   (a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.
   (b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.
   (c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.
   (d) "Insured": The Insured named in Schedule A.
      (i) the term "Insured" also includes:
         (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;
         (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;
         (C) successors to an Insured by its conversion to another kind of Entity;
         (D) a grantee of an Insured under a deed delivered without

payment of actual valuable consideration conveying the Title;
         (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
         (2) if the grantee wholly owns the named Insured,
         (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or
         (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.
      (ii) with regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.
   (e) "Insured Claimant": An Insured claiming loss or damage.
   (f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

Copyright 2006-2009 American Land Title Association.  All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited. Reprinted under license from the American Land Title Association.
ALTA Owner's Policy (6/17/06)



## CONDITIONS (Continued)

(g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(j) "Title": The estate or interest described in Schedule A.

(k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

### 2. CONTINUATION OF INSURANCE.
The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

### 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.
The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

### 4. PROOF OF LOSS.
In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

### 5. DEFENSE AND PROSECUTION OF ACTIONS.
(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object

for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

### 6. DUTY OF INSURED CLAIMANT TO COOPERATE.
(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

### 7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.

Copyright 2006-2009 American Land Title Association. All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited. Reprinted under license from the American Land Title Association.
ALTA Owner's Policy (6/17/06)



AMERICAN
LAND TITLE
ASSOCIATION

## CONDITIONS (Continued)

In case of a claim under this policy, the Company shall have the following additional options:

(a)   To Pay or Tender Payment of the Amount of Insurance.

To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.

Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b)   To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

(i)    to pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii)   to pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

## 8.   DETERMINATION AND EXTENT OF LIABILITY.

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a)   The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i)    the Amount of Insurance; or

(ii)   the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b)   If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

(i)    the Amount of Insurance shall be increased by 10%, and

(ii)   the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c)   In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

## 9.   LIMITATION OF LIABILITY.

(a)   If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b)   In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c)   The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

## 10.   REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

## 11.   LIABILITY NONCUMULATIVE.

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

## 12.   PAYMENT OF LOSS.

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 13.   RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT.

(a)   Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b)   The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

## 14.   ARBITRATION.

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 15.   LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.

(a)   This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured

Copyright 2006-2009 American Land Title Association. All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited. Reprinted under license from the American Land Title Association.
ALTA Owner's Policy (6/17/06)



## CONDITIONS (Concluded)

and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim, shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

**16. SEVERABILITY.**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

**17. CHOICE OF LAW; FORUM.**

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of laws principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**18. NOTICES, WHERE SENT.**

Any notice of claim and any other notice or statement in writing required to be given the Company under this Policy must be given to the Company at Claims Department at P.O. Box 2029, Houston, TX 77252-2029.

Copyright 2006-2009 American Land Title Association. All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited. Reprinted under license from the American Land Title Association.
ALTA Owner's Policy (6/17/06)



# Closing Disclosure

*This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.*

## Closing Information

| | |
|---|---|
| Date Issued | 12/15/2017 |
| Closing Date | 12/15/2017 |
| Disbursement Date | 12/15/2017 |
| Settlement Agent | American Title |
| File # | 110148 |
| Property | 341 Corrie Rd |
| | Ann Arbor, MI 48105 |
| Sale Price | $625,000 |

## Transaction Information

| | |
|---|---|
| Borrower | Dorothea V Staffeld |
| | 223 Pierce Lake Drive |
| | Chelsea, MI 48118 |
| Seller | Henry E. Alvarez |
| | 341 Corrie Rd |
| | Ann Arbor, MI 48105 |
| Lender | Marketplace Home Mortgage, L.L.C. |

## Loan Information

| | |
|---|---|
| Loan Term | 30 years |
| Purpose | Purchase |
| Product | Fixed Rate |
| Loan Type | ☒ Conventional ☐ FHA |
| | ☐ VA ☐ _____ |
| Loan ID # | 570170991033 |
| MIC # | |

## Loan Terms

| Loan Terms | | Can this amount increase after closing? |
|---|---|---|
| Loan Amount | $424,100 | NO |
| Interest Rate | 4.250 % | NO |
| Monthly Principal & Interest *See Projected Payments below for your Estimated Total Monthly Payment* | $2,086.32 | NO |
| | | **Does the loan have these features?** |
| Prepayment Penalty | | NO |
| Balloon Payment | | NO |

## Projected Payments

| Payment Calculation | | Years 1-30 |
|---|---|---|
| Principal & Interest | | $2,086.32 |
| Mortgage Insurance | + | 0 |
| Estimated Escrow *Amount can increase over time* | + | 0 |
| **Estimated Total Monthly Payment** | | **$2,086.32** |

| Estimated Taxes, Insurance & Assessments *Amount can increase over time* *See page 4 for details* | $1422.73 Monthly | This estimate includes | In escrow? |
|---|---|---|---|
| | | ☒ Property Taxes | NO |
| | | ☒ Homeowner's Insurance | NO |
| | | ☒ Other: | NO |
| | | *See Escrow Account on page 4 for details. You must pay for other property costs separately.* | |

## Costs at Closing

| | | |
|---|---|---|
| Closing Costs | $3,722.66 | Includes $3,174.73 in Loan Costs + $2,139.19 in Other Costs - $1,591.26 in Lender Credits. *See page 2 for details.* |
| Cash to Close | $204,497.17 | Includes Closing Costs. *See Calculating Cash to Close on page 3 for details.* |



## Closing Cost Details

| Loan Costs | Borrower-Paid | | Seller-Paid | | Paid by Others |
|---|---|---|---|---|---|
| | At Closing | Before Closing | At Closing | Before Closing | |
| **A. Origination Charges** | **$995.00** | | | | |
| 01 % of Loan Amount (Points) | | | | | |
| 02 Processing Fees | $495.00 | | | | |
| 03 Underwriting Fees | $500.00 | | | | |
| 04 | | | | | |
| 05 | | | | | |
| 06 | | | | | |
| 07 | | | | | |
| 08 | | | | | |
| **B. Services Borrower Did Not Shop For** | **$547.88** | | | | |
| 01 Appraisal Fee          to Guideline AMC | $475.00 | | | | |
| 02 Credit Report          to CREDIT PLUS | $72.88 | | | | |
| 03 | | | | | |
| 04 | | | | | |
| 05 | | | | | |
| 06 | | | | | |
| 07 | | | | | |
| 08 | | | | | |
| 09 | | | | | |
| 10 | | | | | |
| **C. Services Borrower Did Shop For** | **$1,631.85** | | | | |
| 01 Title - Closing Fee          to American Title | $550.00 | | | | |
| 02 Title - Lender's Title Insurance   to American Title | $1,081.85 | | | | |
| 03 | | | | | |
| 04 | | | | | |
| 05 | | | | | |
| 06 | | | | | |
| 07 | | | | | |
| 08 | | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | **$3,174.73** | | | | |
| Loan Costs Subtotals (A + B + C) | $3,174.73 | | | | |

| Other Costs | Borrower-Paid | | Seller-Paid | | Paid by Others |
|---|---|---|---|---|---|
| | At Closing | Before Closing | At Closing | Before Closing | |
| **E. Taxes and Other Government Fees** | **$65.00** | | | | |
| 01 Recording Fees          Deed: $30.00   Mortgage: $35.00 | $65.00 | | | | |
| 02 | | | | | |
| **F. Prepaids** | **$2,074.19** | | | | |
| 01 Homeowner's Insurance Premium (12 mo.) to State Farm | $1,223.00 | | | | |
| 02 Mortgage Insurance Premium ( mo.) | | | | | |
| 03 Prepaid Interest ( $50.07 per day from 12/15/17 to 1/1/18 ) | $851.19 | | | | |
| 04 Property Taxes ( mo.) | | | | | |
| 05 | | | | | |
| **G. Initial Escrow Payment at Closing** | | | | | |
| 01 Homeowner's Insurance          per month for  mo. | | | | | |
| 02 Mortgage Insurance          per month for  mo. | | | | | |
| 03 Property Taxes          per month for  mo. | | | | | |
| 04 | | | | | |
| 05 | | | | | |
| 06 | | | | | |
| 07 | | | | | |
| 08 Aggregate Adjustment | $0.00 | | | | |
| **H. Other** | | | | | |
| 01 | | | | | |
| 02 | | | | | |
| 03 | | | | | |
| 04 | | | | | |
| 05 | | | | | |
| 06 | | | | | |
| 07 | | | | | |
| 08 | | | | | |
| **I. TOTAL OTHER COSTS (Borrower-Paid)** | **$2,139.19** | | | | |
| Other Costs Subtotals (E + F + G + H) | $2,139.19 | | | | |

| | Borrower-Paid | | | | |
|---|---|---|---|---|---|
| **J. TOTAL CLOSING COSTS (Borrower-Paid)** | **$5,313.92** | | | | |
| Closing Costs Subtotals (D + I) | $5,313.92 | | | | |
| Lender Credits (Includes $0.88 credit for increase in Closing Costs above legal limit) | -$1,591.26 | | | | |

CLOSING DISCLOSURE · GTRIDCDW5_S  0617
12/12/2017 12:39 PM PST

## Calculating Cash to Close

Use this table to see what has changed from your Loan Estimate.

| | Loan Estimate | Final | Did this change? |
|---|---|---|---|
| Total Closing Costs (J) | $10,305.00 | $3,722.66 | YES · See Total Loan Costs (D) and Total Other Costs (I). · Increase exceeds legal limits by $0.88. See Lender Credits on page 2 for credit of excess amount. |
| Closing Costs Paid Before Closing | $0 | $0 | NO |
| Closing Costs Financed (Paid from your Loan Amount) | $0 | $0 | NO |
| Down Payment/Funds from Borrower | $125,000.00 | $200,900.00 | YES · You increased this payment. |
| Deposit | -$10,000.00 | -$10,000.00 | NO |
| Funds for Borrower | $0 | $0 | NO |
| Seller Credits | $0 | $0 | NO |
| Adjustments and Other Credits | -$2,288.00 | $9,874.51 | YES · See details in Section K and Section L. |
| **Cash to Close** | **$123,017.00** | **$204,497.17** | |

## Summaries of Transactions

Use this table to see a summary of your transaction.

### BORROWER'S TRANSACTION

| | |
|---|---|
| **K. Due from Borrower at Closing** | **$639,092.17** |
| 01 Sale Price of Property | $625,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 Closing Costs Paid at Closing (J) | $3,722.66 |
| 04 | |
| **Adjustments** | |
| 05 | |
| 06 | |
| 07 | |
| **Adjustments for Items Paid by Seller in Advance** | |
| 08 City/Town Taxes 12/15/17 to 07/01/18 | $6,491.52 |
| 09 County Taxes 12/15/17 to 12/01/18 | $3,774.86 |
| 10 Assessments to | |
| 11 HOA Dues | $103.13 |
| 12 | |
| 13 | |
| 14 | |
| 15 | |

| | |
|---|---|
| **L. Paid Already by or on Behalf of Borrower at Closing** | **$434,595.00** |
| 01 Deposit | $10,000.00 |
| 02 Loan Amount | $424,100.00 |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 | |
| 05 Seller Credit | |
| **Other Credits** | |
| 06 Upfront Processing Fee | $495.00 |
| 07 | |
| **Adjustments** | |
| 08 | |
| 09 | |
| 10 | |
| 11 | |
| **Adjustments for Items Unpaid by Seller** | |
| 12 City/Town Taxes to | |
| 13 County Taxes to | |
| 14 Assessments to | |
| 15 | |
| 16 | |
| 17 | |

| CALCULATION | |
|---|---|
| Total Due from Borrower at Closing (K) | $639,092.17 |
| Total Paid Already by or on Behalf of Borrower at Closing (L) | -$434,595.00 |
| **Cash to Close** ☒ From ☐ To Borrower | **$204,497.17** |

### SELLER'S TRANSACTION

| | |
|---|---|
| **M. Due to Seller at Closing** | **$625,000.00** |
| 01 Sale Price of Property | $625,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 | |
| 04 | |
| 05 | |
| 06 | |
| 07 | |
| 08 | |
| **Adjustments for Items Paid by Seller in Advance** | |
| 09 City/Town Taxes to | |
| 10 County Taxes to | |
| 11 Assessments to | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |

| | |
|---|---|
| **N. Due from Seller at Closing** | |
| 01 Excess Deposit | |
| 02 Closing Costs Paid at Closing (J) | |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 Payoff of First Mortgage Loan | |
| 05 Payoff of Second Mortgage Loan | |
| 06 | |
| 07 | |
| 08 Seller Credit | |
| 09 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| **Adjustments for Items Unpaid by Seller** | |
| 14 City/Town Taxes to | |
| 15 County Taxes to | |
| 16 Assessments to | |
| 17 | |
| 18 | |
| 19 | |

| CALCULATION | |
|---|---|
| Total Due to Seller at Closing (M) | $625,000.00 |
| Total Due from Seller at Closing (N) | $0.00 |
| **Cash** ☐ From ☒ To Seller | **$625,000.00** |

## Additional Information About This Loan

**Loan Disclosures**

### Assumption

If you sell or transfer this property to another person, your lender

☐ will allow, under certain conditions, this person to assume this loan on the original terms.

☒ will not allow assumption of this loan on the original terms.

### Demand Feature

Your loan

☐ has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.

☒ does not have a demand feature.

### Late Payment

If your payment is more than  *15*  days late, your lender will charge a late fee of *5% of the principal and interest overdue.*

### Negative Amortization (Increase in Loan Amount)

Under your loan terms, you

☐ are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

☐ may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

☒ do not have a negative amortization feature.

### Partial Payments

Your lender

☐ may accept payments that are less than the full amount due (partial payments) and apply them to your loan.

☐ may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.

☒ does not accept any partial payments.

If this loan is sold, your new lender may have a different policy.

### Security Interest

You are granting a security interest in
*341 Corrie Rd, Ann Arbor, MI 48105*

You may lose this property if you do not make your payments or satisfy other obligations for this loan.

### Escrow Account

*For now,* your loan

☐ will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | | |
|---|---|---|
| Escrowed Property Costs over Year 1 | | Estimated total amount over year 1 for your escrowed property costs: |
| Non-Escrowed Property Costs over Year 1 | | Estimated total amount over year 1 for your non-escrowed property costs: <br><br> You may have other property costs. |
| Initial Escrow Payment | | A cushion for the escrow account you pay at closing. See Section G on page 2. |
| Monthly Escrow Payment | | The amount included in your total monthly payment. |

☒ will not have an escrow account because ☐ you declined it ☐ your lender does not offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | | |
|---|---|---|
| Estimated Property Costs over Year 1 | $15,650.03 | Estimated total amount over year 1. You must pay these costs directly, possibly in one or two large payments a year. |
| Escrow Waiver Fee | | |

### In the future,

Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.

## Loan Calculations

| | |
|---|---|
| **Total of Payments.** Total you will have paid after you make all payments of principal, interest, mortgage insurance, and loan costs, as scheduled. | $755,099.05 |
| **Finance Charge.** The dollar amount the loan will cost you. | $329,434.32 |
| **Amount Financed.** The loan amount available after paying your upfront finance charge. | $421,638.81 |
| **Annual Percentage Rate (APR).** Your costs over the loan term expressed as a rate. This is not your interest rate. | 4.299 % |
| **Total Interest Percentage (TIP).** The total amount of interest that you will pay over the loan term as a percentage of your loan amount. | 77.299 % |

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

## Other Disclosures

**Appraisal**
If the property was appraised for your loan, your lender is required to give you a copy at no additional cost at least 3 days before closing. If you have not yet received it, please contact your lender at the information listed below.

**Contract Details**
See your note and security instrument for information about
- what happens if you fail to make your payments,
- what is a default on the loan,
- situations in which your lender can require early repayment of loan, and
- the rules for making payments before they are due.

**Liability after Foreclosure**
If your lender forecloses on this property and the foreclosure does not cover the amount of unpaid balance on this loan,
☐ state law may protect you from liability for the unpaid balance. If you refinance or take on any additional debt on this property, you may lose this protection and have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information.
☒ state law does not protect you from liability for the unpaid balance.

**Refinance**
Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan.

**Tax Deductions**
If you borrow more than this property is worth, the interest on the loan amount above this property's fair market value is not deductible from your federal income taxes. You should consult a tax advisor for more information.

## Contact Information

| | Lender | Mortgage Broker | Real Estate Broker (B) | Real Estate Broker (S) | Settlement Agent |
|---|---|---|---|---|---|
| **Name** | Marketplace Home Mortgage, L.L.C. | | Encore Associates | The Charles Reinhart Company | American Title |
| **Address** | 41800 W 11 Mile Rd Ste 109 Novi, MI 48375 | | 133 W Michigan Ave Ypsilanti, MI 48197 | 2452 E Stadium Blvd Ann Arbor, MI 48104 | 825 Victors Way Ann Arbor, MI 48108 |
| **NMLS ID** | 1082 | | | | |
| **MI License ID** | FL0020530 | | 6505-279953 | 6505-379117 | 0005248 |
| **Contact** | Brian K Goodman | | Linda Cohen | Pat K. Durston | Paul Hathaway |
| **Contact NMLS ID** | 181781 | | | | |
| **Contact MI License ID** | 181781 | | 6502-105279 | 6502-379647 | |
| **Email** | bgoodman@ marketplacehome. com | | encoreassociates@ ameritech.net | pdurston@ rienhartrealtors.com | americantitleorders@ atitle.biz |
| **Phone** | 248-390-5929 | | 734-483-9577 | 734-971-6070 | 734-996-0036 |

## Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

_____
Applicant Signature

_____
Date



LOAN #: 570170991033
MIN: 1002491-2000100053-3

# NOTE

December 15, 2017                     Edina,                              Minnesota
[Date]                               [City]                              [State]

341 Corrie Rd, Ann Arbor, MI 48105
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$424,100.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Marketplace Home Mortgage, L.L.C., a Limited Liability Company.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.250 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **February 1, 2018.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **January 1, 2048,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **7380 France Avenue S, Suite 200**
**Edina, MN 55435**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. **$2,086.32.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any



LOAN #: 570170991033

sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

    **(A) Late Charge for Overdue Payments**
    If the Note Holder has not received the full amount of any monthly payment by the end of   **15**   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B) Default**
    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    **(C) Notice of Default**
    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    **(D) No Waiver By Note Holder**
    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E) Payment of Note Holder's Costs and Expenses**
    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

    Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
Ellie Mae, Inc.                                                   Page 2 of 3                                  F3200NOT  0107
                                                                             F3200NOT (CLS)
                                                          12/15/2017 06:45 AM PST



LOAN #: 570170991033

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
DOROTHEA V STAFFELD

Lender: Marketplace Home Mortgage, L.L.C.
NMLS ID: 1082
Loan Originator: Brian K Goodman
NMLS ID: 181781

PAY TO THE ORDER OF:

Without Recourse

BY: _____

TITLE: _____

[Sign Original Only]

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
Ellie Mae, Inc.                                             Page 3 of 3

F3200NOT  0107
F3200NOT (CLS)
12/15/2017 06:45 AM PST



# MORTGAGE

When recorded, return to:
Marketplace Home Mortgage, L.L.C.
Attn: Final Document Department
c/o DocProbe
1125 Ocean Avenue
Lakewood, NJ 08701

This document was prepared by:
Marketplace Home Mortgage, L.L.C.
7380 France Avenue S, Suite 200
Edina, MN 55435

LOAN #: 570170991033
_____[Space Above This Line For Recording Data]_____

| MIN  1002491-2000100053-3 |
| --- |
| MERS PHONE #: 1-888-679-6377 |

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated  December 15, 2017,                together with all
Riders to this document.
(B) "Borrower" is   DOROTHEA V STAFFELD, A SINGLE WOMAN.

Borrower's address is  341 Corrie Road,
                        Ann Arbor, MI 48105.

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is   Marketplace Home Mortgage, L.L.C..

Lender is  a Limited Liability Company,                              organized and existing under the laws of

LOAN #: 570170991033

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Condominium Rider
- [ ] Second Home Rider
- [ ] Balloon Rider
- [ ] Planned Unit Development Rider
- [ ] Other(s) [specify]
- [ ] 1-4 Family Rider
- [ ] Biweekly Payment Rider
- [ ] V.A. Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the   County                                    [Type of Recording Jurisdiction] Of

Washtenaw                                    [Name of Recording Jurisdiction]:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".

which currently has the address of   341 Corrie Rd, Ann Arbor,

[Street] [City]

Michigan   48105                     ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender

LOAN #: 570170991033

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while these proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower may satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out

paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments

conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the note, another insurer, any reinsurer, any other entity, or affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provided that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any

grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days

by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums

LOAN #: 570170991033

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
DOROTHEA V STAFFELD                                                DATE

State of **MICHIGAN**
County of _____

The foregoing instrument was acknowledged before me, _____, (Notary Public), this _____ (date) by DOROTHEA V STAFFELD (name of person acknowledged).

_____

State of **MICHIGAN**, County of _____

My Commission Expires: _____

Acting in the County of: _____

Lender: Marketplace Home Mortgage, L.L.C.
NMLS ID: 1082
Loan Originator: Brian K Goodman
NMLS ID: 181781

EXHIBIT "A"

**LEGAL DESCRIPTION**

Land in the Village of Barton Hills, Washtenaw County, Michigan, described as:

Commencing at an iron pipe in the South line of Section 8 at its intersection with the West line of Lot 4, Block 3, Supervisor's Plat of Barton Hills; thence North 20°12' East 198.16 feet to a concrete monument for a PLACE OF BEGINNING; thence North 20°12'00" East 217.77 feet to a concrete monument; thence North 20°12'00" East 133.73 feet to a concrete monument; thence North 35°01' East 94.97 feet to a point on a curve; thence Easterly along a curve concave Southerly having a radius of 45.99 feet and central angle of 48°42'30" 39.10 feet to a concrete monument in the Southerly right-of-way line of Corrie Road at its Westerly end; thence North 83°49'0" East 120.00 feet along the South line of Corrie Road to a concrete monument; thence South 6°00' West 250.00 feet to a concrete monument; thence South 28°11'10" West 227.14 feet to a concrete monument; thence North 87°02'42" West 193.40 feet to the PLACE OF BEGINNING, being a part of parcel one of Lot 4 in Block 3 of Supervisor's Plat of Barton Hills, as recorded in Liber 9 of Plats, Pages 58, 59, and 60, Washtenaw County Records.

Described for tax purposes as follows:
Land in the Village of Barton Hills, County of Washtenaw, State of Michigan;  Commencing at the Southwest corner of Lot 4, Block 3, of Supervisor's Plat of Barton Hills, thence North 20°12' East 268.84 feet for the PLACE OF BEGINNING, thence North 20°12' East 351.50 feet, thence North 35°01' East 94.97 feet, thence Northeasterly 39.10 feet in the arc of a curve to the right with a radius of 44.99 feet, through a central angle of 48°42'30", the chord of which bears North 59°22'30" East 37.92 feet, thence North 83°49' East 120 feet; thence South 6° West 250 feet; thence South 28°11'30" West 227.14 feet, thence North 87°02'40" West 193.4 feet to the PLACE OF BEGINNING.  Being a part of Lot 4, Block 3, Supervisor's Plat of Barton Hills.

Address: 341 Corrie Road
Parcel ID(s): IB-09-08-380-005

110148

# FIRST PAYMENT LETTER

Marketplace Home Mortgage, L.L.C.

LOAN NO.: 570170991033
DATE: December 15, 2017
BORROWER(S):  Dorothea V Staffeld

ADDRESS: 341 Corrie Road, Ann Arbor, MI 48105

We are pleased to have you as a mortgage loan customer. The following is a breakdown of your initial monthly payment:

| | |
|---|---|
| Principal and Interest | $ 2,086.32 |
| Estimated Taxes | $ |
| Hazard Insurance | $ |
| Flood Insurance | $ |
| Mortgage Insurance | $ |
| City Property Tax | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| **TOTAL MONTHLY PAYMENT** | $ 2,086.32 |

Your first regular payment is due  **February 1, 2018.**

Partial Payments:
☐ Your lender may accept partial payments you make and apply such payments to your loan.
☐ Your lender may hold partial payments in a separate account until you pay the remainder of the payment, and then apply the full periodic payment to your loan.
☒ Your lender will not accept any partial payments.

If this loan is sold, your new lender may have a different policy.

The outstanding principal balance at the time of this letter is  **$424,100.00.**

The current interest rate is  4.250 %.

Your loan  **DOES NOT**   have a prepayment penalty.

**Housing Counselor Information:** If you would like counseling or assistance, you can contact the following:

* U.S. Department of Housing and Urban Development (HUD): For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

For additional information regarding your loan please contact:  **Marketplace Home Mortgage, L.L.C.**

at

**We hereby acknowledge receiving a copy of this letter.**

**We are aware that the total monthly payment may be subject to change each year due to increases or decreases in annual taxes and/or insurance premiums and when applicable, adjustments in accordance with the adjustable rate mortgage provisions of the Note.**

---

DOROTHEA V STAFFELD _____ DATE



LOAN #: 570170991033

| | MORTGAGE ACCOUNT NO. 570170991033 | PAYMENT DUE DATE 03/01/2018 | IF NOT RECEIVED BY 03/16/2018 |
|---|---|---|---|
| | | AMOUNT DUE $2,086.32 | a late fee of $104.32 will be charged. |

DATE _____
CHECK _____
CASH _____
AMT. _____

Dorothea V Staffeld

Marketplace Home Mortgage, L.L.C.
7380 France Avenue S, Suite 200
Edina, MN 55435

USE FOR ADDL. AMOUNTS

| PRINCIPAL | | |
|---|---|---|
| OTHER | | |
| ESCROW | | |
| TOTAL | | |

PROPERTY ADDRESS:
341 Corrie Rd, Ann Arbor, MI 48105

COUPON MUST ACCOMPANY PAYMENT

| | MORTGAGE ACCOUNT NO. 570170991033 | PAYMENT DUE DATE 02/01/2018 | IF NOT RECEIVED BY 02/16/2018 |
|---|---|---|---|
| | | AMOUNT DUE $2,086.32 | a late fee of $104.32 will be charged. |

DATE _____
CHECK _____
CASH _____
AMT. _____

Dorothea V Staffeld

Marketplace Home Mortgage, L.L.C.
7380 France Avenue S, Suite 200
Edina, MN 55435

USE FOR ADDL. AMOUNTS

| PRINCIPAL | | |
|---|---|---|
| OTHER | | |
| ESCROW | | |
| TOTAL | | |

PROPERTY ADDRESS:
341 Corrie Rd, Ann Arbor, MI 48105

COUPON MUST ACCOMPANY PAYMENT

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ___ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ___ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____    Co-Borrower _____

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☒ Conventional  ☐ Other (explain): ☐ FHA  ☐ USDA/Rural Housing Service | | Agency Case Number | Lender Case Number 570170991033 |
|---|---|---|---|---|
| Amount $ 424,100.00 | Interest Rate 4.250 % | No. of Months 360 | Amortization Type: ☒ Fixed Rate  ☐ Other (explain): ☐ GPM  ☐ ARM (type): | |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) 341 Corrie Rd, Ann Arbor, MI 48105 County: Washtenaw | No. of Units 1 |
|---|---|
| Legal Description of Subject Property (attach description if necessary) See preliminary title report | Year Built 1950 |

| Purpose of Loan ☒ Purchase  ☐ Construction  ☐ Other (explain): ☐ Refinance  ☐ Construction-Permanent | Property will be: ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |
|---|---|---|---|---|---|

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made  ☐ to be made |
|---|---|---|---|---|
| | | | | Cost: $ |

| Title will be held in what Name(s) Dorothea V Stafield | Manner in which Title will be held Single woman | Estate will be held in: ☒ Fee Simple  ☐ Leasehold (show expiration date) |
|---|---|---|
| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) Gift Funds | | |

### III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) Dorothea V Stafield | | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number 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 | Home Phone (incl. area code) 734-417-0432 | DOB (MM/DD/YYYY) 05/26/1927 | Yrs. School 12 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|
| ☐ Married  ☒ Unmarried (include single, divorced, widowed)  ☐ Separated | | Dependents (not listed by Co-Borrower) no. 0  ages | | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | | Dependents (not listed by Borrower) no.  ages | |
| Present Address (street, city, state, ZIP) ☒ Own  ☐ Rent 15Y 180M  No.Yrs. 223 Pierce Lake Drive Chelsea, MI 48118 | | | | Present Address (street, city, state, ZIP) ☐ Own  ☐ Rent _____ No.Yrs. | | | |
| Mailing Address, if different from Present Address 341 Corrie Road Ann Arbor, MI 48105 | | | | Mailing Address, if different from Present Address | | | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own  ☐ Rent _____ No.Yrs. | Former Address (street, city, state, ZIP) ☐ Own  ☐ Rent _____ No.Yrs. |
|---|---|

### IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| Name & Address of Employer ☐ Self Employed | Yrs. on this job | Name & Address of Employer ☐ Self Employed | Yrs. on this job | |
| | Yrs. employed in this line of work/profession | | Yrs. employed in this line of work/profession | |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

Uniform Residential Loan Application
Freddie Mac Form 65   7/05 (rev.6/09)
Ellie Mae, Inc.

Page 1 of 4



Fannie Mae Form 1003   7/05 (rev.6/09)
GURLA_0711
GURLA (CLS)
12/15/2017 06:45 AM PST

LOAN #: 570170991033

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income* | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | | $ 2,086.32 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | 20.38 | 101.92 |
| Dividends/Interest | | | | Real Estate Taxes | 423.70 | 1,320.81 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | 6,000.00 3,418.00 | | 6,000.00 3,418.00 | Homeowner Assn. Dues Other: | | |
| Total | $ 9,418.00 | $ | $ 9,418.00 | Total | $ 444.08 | $ 3,509.05 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| | Describe Other Income | Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | |
|---|---|---|---|
| B/C | | | Monthly Amount |
| B | Pension/Retirement Income | | $ 2029.00 |
| B | Social Security/Disability Income | | 1389.00 |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.   Completed [ ] Jointly [X] Not Jointly

| ASSETS | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Description | | | | |
| Cash Deposit toward purchase held by: | $ | | | |
| | | LIABILITIES | Monthly Pmt. & Mos. Left to Pay | Unpaid Balance |
| List checking and savings accounts below | | Name and address of Company  (B1) US BANK 4325 17TH AVE SW, FARGO, ND 58125 | $ Pmt./Mos. 30.00 / 19 | $ 542.00 |
| Name and address of Bank, S&L, or Credit Union Flagstar | | | | |
| Acct. no.  4801 | $ 912.83 | Acct. no.   471830****** | | |
| Name and address of Bank, S&L, or Credit Union Flagstar | | Name and address of Company  (B1) Taxes Insurance HOA fees | $ Pmt./Mos. (737.86) / 15 | $ (15,000.00) |
| Acct. no.  2327 | $ 5,000.00 | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union Charles Schwab | | Name and address of Company · (B1) | $ Pmt./Mos. / | $ |
| Acct. no. | $ 98,042.18 | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union ** SEE PAGE 4 OR ADDENDUM | | Name and address of Company | $ Pmt./Mos. | $ |
| Acct. no. | $ | Acct. no. | | |
| Stocks & Bonds (Company name/number & description) | $ | Name and address of Company | $ Pmt./Mos. | $ |
| | | Acct. no. | | |
| | | Name and address of Company | $ Pmt./Mos. | $ |
| Life insurance net cash value Face amount: $ | $ | Acct. no. | | |
| Subtotal Liquid Assets | $ 258,642.33 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 200,000.00 | Acct. no. | | |
| Vested interest in retirement account | $ | Name and address of Company | $ Pmt./Mos. | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ .30.00 | |
| Total Assets a. | $ 458,642.33 | Net Worth (a minus b) | $ 458,100.33 | Total Liabilities b.  $ 542.00 |

Uniform Residential Loan Application
Freddie Mac Form 65   7/05 (rev.6/09)
Ellie Mae, Inc.

Page 2 of 4



Fannie Mae Form 1003   7/05 (rev.6/09)
GURLA  0711
GURLA (CLS)
12/15/2017 06:45 AM PST

LOAN #: 570170991033

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 223 Pierce Lake Drive, Chelsea, MI 48118 | R I CONDO | $ 200,000.00 | $ 15,000.00 | $ | $ | $ 737.86 | $ (738.00) |
| | | | | | | | |
| Totals | | $ 200,000.00 | $ 15,000.00 | $ | $ | $ 737.86 | $ (738.00) |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ 625,000.00 |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | |
| e. Estimated prepaid items | 2,074.19 |
| f. Estimated closing costs | 3,239.73 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 630,313.92 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| Cash Deposit on sales contract | 60,000.00 |
| Other | 2,275.75 |
| Borrower Paid Fees | 495.00 |
| CC Paid by Broker,Lender,Oth. | 1,590.38 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 424,100.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 424,100.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 141,852.79 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes / No | Co-Borrower Yes / No |
|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ ☒ | ☐ ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ ☒ | ☐ ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ ☒ | ☐ ☐ |
| d. Are you a party to a lawsuit? | ☐ ☒ | ☐ ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ ☒ | ☐ ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ ☒ | ☐ ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ ☒ | ☐ ☐ |
| h. Is any part of the down payment borrowed? | ☐ ☒ | ☐ ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ ☒ | ☐ ☐ |
| j. Are you a U.S. citizen? | ☒ ☐ | ☐ ☐ |
| k. Are you a permanent resident alien? | ☐ ☒ | ☐ ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☒ ☐ | ☐ ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☒ ☐ | ☐ ☐ |
| (1) What type of property did you own – principal residence (PR), second home (SH), or investment property (IP)? | PR | |
| (2) How did you hold title to the home – solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et. seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns, may in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns; may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature X | Date | Co-Borrower's Signature X | Date |
|---|---|---|---|

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information. | | CO-BORROWER ☐ I do not wish to furnish this information. | |
|---|---|---|---|
| Ethnicity: ☐ Hispanic or Latino  ☒ Not Hispanic or Latino | | Ethnicity: ☐ Hispanic or Latino  ☐ Not Hispanic or Latino | |
| Race: ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☒ White | | Race: ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White | |
| Sex: ☒ Female  ☐ Male | | Sex: ☐ Female  ☐ Male | |

To be Completed by Loan Originator:

This information was provided: ☐ In a face-to-face interview   ☐ By the applicant and submitted by fax or mail
☒ In a telephone interview   ☐ By the applicant and submitted via e-mail or the Internet

| Loan Originator's Signature X | | Date |
|---|---|---|
| Loan Originator's Name (print or type) Brian K Goodman | Loan Originator Identifier 181781 / State License # - 181781 | Loan Originator's Phone Number (including area code) 248-390-5929 |
| Loan Origination Company's Name Marketplace Home Mortgage, L.L.C. | Loan Origination Company Identifier 1082 / State License # - FL0020530 | Loan Origination Company's Address 41800 W 11 Mile Rd Ste 109 Novi, MI 48375 |

Uniform Residential Loan Application
Freddie Mac Form 65   7/05 (rev.6/09)
Ellie Mae, Inc.



Page 3 of 4

Fannie Mae Form 1003   7/05 (rev.6/09)
GURLA  0711
GURLA (CLS)
12/15/2017 06:45 AM PST

LOAN #: 570170991033

## CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower | Borrower: Dorothea V Staffeld | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: 570170991033 |

ASSETS CONTINUED

Name and address of Bank, S&L ,or Credit Union
Gift Karl W Staffeld K (Son) 164,687K pd to title
2358 Loeffler Rd Chelsea, MI 48118

Acct. no

Balance
164,687.32

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001. et. seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | | X | |

Uniform Residential Loan Application
Freddie Mac Form 65    7/05 (rev.6/09)
Ellie Mae, Inc.

Page 4 of 4



Fannie Mae Form 1003   7/05 (rev.6/09)
GURLA  0711
GURLA (CLS)
12/15/2017 06:45 AM PST

# AMORTIZATION SCHEDULE

Loan No.:  570170991033
Borrower(s):  Dorothea V Staffeld

Lender:  Marketplace Home Mortgage, L.L.C.

Date:  12/15/2017
Loan Amount:  $424,100.00
Term:  360 MONTHS
Interest Rate:  4.250 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 1 | 02/01/2018 | $2,086.32 | $584.30 | $1,502.02 | $423,515.70 | $0.00 | 67.7625% |
| 2 | 03/01/2018 | $2,086.32 | $586.37 | $1,499.95 | $422,929.33 | $0.00 | 67.6687% |
| 3 | 04/01/2018 | $2,086.32 | $588.45 | $1,497.87 | $422,340.88 | $0.00 | 67.5745% |
| 4 | 05/01/2018 | $2,086.32 | $590.53 | $1,495.79 | $421,750.35 | $0.00 | 67.4801% |
| 5 | 06/01/2018 | $2,086.32 | $592.62 | $1,493.70 | $421,157.73 | $0.00 | 67.3852% |
| 6 | 07/01/2018 | $2,086.32 | $594.72 | $1,491.60 | $420,563.01 | $0.00 | 67.2901% |
| 7 | 08/01/2018 | $2,086.32 | $596.83 | $1,489.49 | $419,966.18 | $0.00 | 67.1946% |
| 8 | 09/01/2018 | $2,086.32 | $598.94 | $1,487.38 | $419,367.24 | $0.00 | 67.0988% |
| 9 | 10/01/2018 | $2,086.32 | $601.06 | $1,485.26 | $418,766.18 | $0.00 | 67.0026% |
| 10 | 11/01/2018 | $2,086.32 | $603.19 | $1,483.13 | $418,162.99 | $0.00 | 66.9061% |
| 11 | 12/01/2018 | $2,086.32 | $605.33 | $1,480.99 | $417,557.66 | $0.00 | 66.8092% |
| 12 | 01/01/2019 | $2,086.32 | $607.47 | $1,478.85 | $416,950.19 | $0.00 | 66.7120% |
| 13 | 02/01/2019 | $2,086.32 | $609.62 | $1,476.70 | $416,340.57 | $0.00 | 66.6145% |
| 14 | 03/01/2019 | $2,086.32 | $611.78 | $1,474.54 | $415,728.79 | $0.00 | 66.5166% |
| 15 | 04/01/2019 | $2,086.32 | $613.95 | $1,472.37 | $415,114.84 | $0.00 | 66.4184% |
| 16 | 05/01/2019 | $2,086.32 | $616.12 | $1,470.20 | $414,498.72 | $0.00 | 66.3198% |
| 17 | 06/01/2019 | $2,086.32 | $618.30 | $1,468.02 | $413,880.42 | $0.00 | 66.2209% |
| 18 | 07/01/2019 | $2,086.32 | $620.49 | $1,465.83 | $413,259.93 | $0.00 | 66.1216% |
| 19 | 08/01/2019 | $2,086.32 | $622.69 | $1,463.63 | $412,637.24 | $0.00 | 66.0220% |
| 20 | 09/01/2019 | $2,086.32 | $624.90 | $1,461.42 | $412,012.34 | $0.00 | 65.9220% |
| 21 | 10/01/2019 | $2,086.32 | $627.11 | $1,459.21 | $411,385.23 | $0.00 | 65.8216% |
| 22 | 11/01/2019 | $2,086.32 | $629.33 | $1,456.99 | $410,755.90 | $0.00 | 65.7209% |
| 23 | 12/01/2019 | $2,086.32 | $631.56 | $1,454.76 | $410,124.34 | $0.00 | 65.6199% |
| 24 | 01/01/2020 | $2,086.32 | $633.80 | $1,452.52 | $409,490.54 | $0.00 | 65.5185% |
| 25 | 02/01/2020 | $2,086.32 | $636.04 | $1,450.28 | $408,854.50 | $0.00 | 65.4167% |
| 26 | 03/01/2020 | $2,086.32 | $638.29 | $1,448.03 | $408,216.21 | $0.00 | 65.3146% |
| 27 | 04/01/2020 | $2,086.32 | $640.55 | $1,445.77 | $407,575.66 | $0.00 | 65.2121% |
| 28 | 05/01/2020 | $2,086.32 | $642.82 | $1,443.50 | $406,932.84 | $0.00 | 65.1093% |
| 29 | 06/01/2020 | $2,086.32 | $645.10 | $1,441.22 | $406,287.74 | $0.00 | 65.0060% |
| 30 | 07/01/2020 | $2,086.32 | $647.38 | $1,438.94 | $405,640.36 | $0.00 | 64.9025% |
| 31 | 08/01/2020 | $2,086.32 | $649.68 | $1,436.64 | $404,990.68 | $0.00 | 64.7985% |
| 32 | 09/01/2020 | $2,086.32 | $651.98 | $1,434.34 | $404,338.70 | $0.00 | 64.6942% |
| 33 | 10/01/2020 | $2,086.32 | $654.29 | $1,432.03 | $403,684.41 | $0.00 | 64.5895% |
| 34 | 11/01/2020 | $2,086.32 | $656.60 | $1,429.72 | $403,027.81 | $0.00 | 64.4844% |
| 35 | 12/01/2020 | $2,086.32 | $658.93 | $1,427.39 | $402,368.88 | $0.00 | 64.3790% |
| 36 | 01/01/2021 | $2,086.32 | $661.26 | $1,425.06 | $401,707.62 | $0.00 | 64.2732% |
| 37 | 02/01/2021 | $2,086.32 | $663.61 | $1,422.71 | $401,044.01 | $0.00 | 64.1670% |
| 38 | 03/01/2021 | $2,086.32 | $665.96 | $1,420.36 | $400,378.05 | $0.00 | 64.0605% |
| 39 | 04/01/2021 | $2,086.32 | $668.31 | $1,418.01 | $399,709.74 | $0.00 | 63.9536% |
| 40 | 05/01/2021 | $2,086.32 | $670.68 | $1,415.64 | $399,039.06 | $0.00 | 63.8462% |
| 41 | 06/01/2021 | $2,086.32 | $673.06 | $1,413.26 | $398,366.00 | $0.00 | 63.7386% |
| 42 | 07/01/2021 | $2,086.32 | $675.44 | $1,410.88 | $397,690.56 | $0.00 | 63.6305% |
| 43 | 08/01/2021 | $2,086.32 | $677.83 | $1,408.49 | $397,012.73 | $0.00 | 63.5220% |
| 44 | 09/01/2021 | $2,086.32 | $680.23 | $1,406.09 | $396,332.50 | $0.00 | 63.4132% |
| 45 | 10/01/2021 | $2,086.32 | $682.64 | $1,403.68 | $395,649.86 | $0.00 | 63.3040% |
| 46 | 11/01/2021 | $2,086.32 | $685.06 | $1,401.26 | $394,964.80 | $0.00 | 63.1944% |
| 47 | 12/01/2021 | $2,086.32 | $687.49 | $1,398.83 | $394,277.31 | $0.00 | 63.0844% |
| 48 | 01/01/2022 | $2,086.32 | $689.92 | $1,396.40 | $393,587.39 | $0.00 | 62.9740% |
| 49 | 02/01/2022 | $2,086.32 | $692.36 | $1,393.96 | $392,895.03 | $0.00 | 62.8632% |
| 50 | 03/01/2022 | $2,086.32 | $694.82 | $1,391.50 | $392,200.21 | $0.00 | 62.7520% |
| 51 | 04/01/2022 | $2,086.32 | $697.28 | $1,389.04 | $391,502.93 | $0.00 | 62.6405% |
| 52 | 05/01/2022 | $2,086.32 | $699.75 | $1,386.57 | $390,803.18 | $0.00 | 62.5285% |
| 53 | 06/01/2022 | $2,086.32 | $702.23 | $1,384.09 | $390,100.95 | $0.00 | 62.4162% |
| 54 | 07/01/2022 | $2,086.32 | $704.71 | $1,381.61 | $389,396.24 | $0.00 | 62.3034% |
| 55 | 08/01/2022 | $2,086.32 | $707.21 | $1,379.11 | $388,689.03 | $0.00 | 62.1902% |
| 56 | 09/01/2022 | $2,086.32 | $709.71 | $1,376.61 | $387,979.32 | $0.00 | 62.0767% |
| 57 | 10/01/2022 | $2,086.32 | $712.23 | $1,374.09 | $387,267.09 | $0.00 | 61.9627% |
| 58 | 11/01/2022 | $2,086.32 | $714.75 | $1,371.57 | $386,552.34 | $0.00 | 61.8484% |

# AMORTIZATION SCHEDULE

Loan No.:   570170991033
Borrower(s):  Dorothea V Staffeld

Lender:   Marketplace Home Mortgage, L.L.C.

Date:  12/15/2017
Loan Amount: $424,100.00
Term:  360 MONTHS
Interest Rate:  4.250 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 59 | 12/01/2022 | $2,086.32 | $717.28 | $1,369.04 | $385,935.06 | $0.00 | 61.7336% |
| 60 | 01/01/2023 | $2,086.32 | $719.82 | $1,366.50 | $385,115.24 | $0.00 | 61.6184% |
| 61 | 02/01/2023 | $2,086.32 | $722.37 | $1,363.95 | $384,392.87 | $0.00 | 61.5029% |
| 62 | 03/01/2023 | $2,086.32 | $724.93 | $1,361.39 | $383,667.94 | $0.00 | 61.3869% |
| 63 | 04/01/2023 | $2,086.32 | $727.50 | $1,358.82 | $382,940.44 | $0.00 | 61.2705% |
| 64 | 05/01/2023 | $2,086.32 | $730.07 | $1,356.25 | $382,210.37 | $0.00 | 61.1537% |
| 65 | 06/01/2023 | $2,086.32 | $732.66 | $1,353.66 | $381,477.71 | $0.00 | 61.0364% |
| 66 | 07/01/2023 | $2,086.32 | $735.25 | $1,351.07 | $380,742.46 | $0.00 | 60.9188% |
| 67 | 08/01/2023 | $2,086.32 | $737.86 | $1,348.46 | $380,004.60 | $0.00 | 60.8007% |
| 68 | 09/01/2023 | $2,086.32 | $740.47 | $1,345.85 | $379,264.13 | $0.00 | 60.6823% |
| 69 | 10/01/2023 | $2,086.32 | $743.09 | $1,343.23 | $378,521.04 | $0.00 | 60.5634% |
| 70 | 11/01/2023 | $2,086.32 | $745.72 | $1,340.60 | $377,775.32 | $0.00 | 60.4441% |
| 71 | 12/01/2023 | $2,086.32 | $748.37 | $1,337.95 | $377,026.95 | $0.00 | 60.3243% |
| 72 | 01/01/2024 | $2,086.32 | $751.02 | $1,335.30 | $376,275.93 | $0.00 | 60.2041% |
| 73 | 02/01/2024 | $2,086.32 | $753.68 | $1,332.64 | $375,522.25 | $0.00 | 60.0836% |
| 74 | 03/01/2024 | $2,086.32 | $756.35 | $1,329.97 | $374,765.90 | $0.00 | 59.9625% |
| 75 | 04/01/2024 | $2,086.32 | $759.02 | $1,327.30 | $374,006.88 | $0.00 | 59.8411% |
| 76 | 05/01/2024 | $2,086.32 | $761.71 | $1,324.61 | $373,245.17 | $0.00 | 59.7192% |
| 77 | 06/01/2024 | $2,086.32 | $764.41 | $1,321.91 | $372,480.76 | $0.00 | 59.5969% |
| 78 | 07/01/2024 | $2,086.32 | $767.12 | $1,319.20 | $371,713.64 | $0.00 | 59.4742% |
| 79 | 08/01/2024 | $2,086.32 | $769.83 | $1,316.49 | $370,943.81 | $0.00 | 59.3510% |
| 80 | 09/01/2024 | $2,086.32 | $772.56 | $1,313.76 | $370,171.25 | $0.00 | 59.2274% |
| 81 | 10/01/2024 | $2,086.32 | $775.30 | $1,311.02 | $369,395.95 | $0.00 | 59.1034% |
| 82 | 11/01/2024 | $2,086.32 | $778.04 | $1,308.28 | $368,617.91 | $0.00 | 58.9789% |
| 83 | 12/01/2024 | $2,086.32 | $780.80 | $1,305.52 | $367,837.11 | $0.00 | 58.8539% |
| 84 | 01/01/2025 | $2,086.32 | $783.56 | $1,302.76 | $367,053.55 | $0.00 | 58.7286% |
| 85 | 02/01/2025 | $2,086.32 | $786.34 | $1,299.98 | $366,267.21 | $0.00 | 58.6028% |
| 86 | 03/01/2025 | $2,086.32 | $789.12 | $1,297.20 | $365,478.09 | $0.00 | 58.4765% |
| 87 | 04/01/2025 | $2,086.32 | $791.92 | $1,294.40 | $364,686.17 | $0.00 | 58.3498% |
| 88 | 05/01/2025 | $2,086.32 | $794.72 | $1,291.60 | $363,891.45 | $0.00 | 58.2226% |
| 89 | 06/01/2025 | $2,086.32 | $797.54 | $1,288.78 | $363,093.91 | $0.00 | 58.0950% |
| 90 | 07/01/2025 | $2,086.32 | $800.36 | $1,285.96 | $362,293.55 | $0.00 | 57.9670% |
| 91 | 08/01/2025 | $2,086.32 | $803.20 | $1,283.12 | $361,490.35 | $0.00 | 57.8385% |
| 92 | 09/01/2025 | $2,086.32 | $806.04 | $1,280.28 | $360,684.31 | $0.00 | 57.7095% |
| 93 | 10/01/2025 | $2,086.32 | $808.90 | $1,277.42 | $359,875.41 | $0.00 | 57.5801% |
| 94 | 11/01/2025 | $2,086.32 | $811.76 | $1,274.56 | $359,063.65 | $0.00 | 57.4502% |
| 95 | 12/01/2025 | $2,086.32 | $814.64 | $1,271.68 | $358,249.01 | $0.00 | 57.3198% |
| 96 | 01/01/2026 | $2,086.32 | $817.52 | $1,268.80 | $357,431.49 | $0.00 | 57.1890% |
| 97 | 02/01/2026 | $2,086.32 | $820.42 | $1,265.90 | $356,611.07 | $0.00 | 57.0578% |
| 98 | 03/01/2026 | $2,086.32 | $823.32 | $1,263.00 | $355,787.75 | $0.00 | 56.9260% |
| 99 | 04/01/2026 | $2,086.32 | $826.24 | $1,260.08 | $354,961.51 | $0.00 | 56.7938% |
| 100 | 05/01/2026 | $2,086.32 | $829.16 | $1,257.16 | $354,132.35 | $0.00 | 56.6612% |
| 101 | 06/01/2026 | $2,086.32 | $832.10 | $1,254.22 | $353,300.25 | $0.00 | 56.5280% |
| 102 | 07/01/2026 | $2,086.32 | $835.05 | $1,251.27 | $352,465.20 | $0.00 | 56.3944% |
| 103 | 08/01/2026 | $2,086.32 | $838.01 | $1,248.31 | $351,627.19 | $0.00 | 56.2604% |
| 104 | 09/01/2026 | $2,086.32 | $840.97 | $1,245.35 | $350,786.22 | $0.00 | 56.1258% |
| 105 | 10/01/2026 | $2,086.32 | $843.95 | $1,242.37 | $349,942.27 | $0.00 | 55.9908% |
| 106 | 11/01/2026 | $2,086.32 | $846.94 | $1,239.38 | $349,095.33 | $0.00 | 55.8553% |
| 107 | 12/01/2026 | $2,086.32 | $849.94 | $1,236.38 | $348,245.39 | $0.00 | 55.7193% |
| 108 | 01/01/2027 | $2,086.32 | $852.95 | $1,233.37 | $347,392.44 | $0.00 | 55.5828% |
| 109 | 02/01/2027 | $2,086.32 | $855.97 | $1,230.35 | $346,536.47 | $0.00 | 55.4458% |
| 110 | 03/01/2027 | $2,086.32 | $859.00 | $1,227.32 | $345,677.47 | $0.00 | 55.3084% |
| 111 | 04/01/2027 | $2,086.32 | $862.05 | $1,224.27 | $344,815.42 | $0.00 | 55.1705% |
| 112 | 05/01/2027 | $2,086.32 | $865.10 | $1,221.22 | $343,950.32 | $0.00 | 55.0321% |
| 113 | 06/01/2027 | $2,086.32 | $868.16 | $1,218.16 | $343,082.16 | $0.00 | 54.8931% |
| 114 | 07/01/2027 | $2,086.32 | $871.24 | $1,215.08 | $342,210.92 | $0.00 | 54.7537% |
| 115 | 08/01/2027 | $2,086.32 | $874.32 | $1,212.00 | $341,336.60 | $0.00 | 54.6139% |
| 116 | 09/01/2027 | $2,086.32 | $877.42 | $1,208.90 | $340,459.18 | $0.00 | 54.4735% |

## AMORTIZATION SCHEDULE

Loan No.:       570170991033  
Borrower(s):  Dorothea V Staffeld

Lender:       Marketplace Home Mortgage, L.L.C.

Date:  12/15/2017  
Loan Amount: $424,100.00  
Term:  360 MONTHS  
Interest Rate:  4.250 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 117 | 10/01/2027 | $2,086.32 | $880.53 | $1,205.79 | $339,578.65 | $0.00 | 54.3326% |
| 118 | 11/01/2027 | $2,086.32 | $883.65 | $1,202.67 | $338,695.00 | $0.00 | 54.1912% |
| 119 | 12/01/2027 | $2,086.32 | $886.78 | $1,199.54 | $337,808.22 | $0.00 | 54.0493% |
| 120 | 01/01/2028 | $2,086.32 | $889.92 | $1,196.40 | $336,918.30 | $0.00 | 53.9069% |
| 121 | 02/01/2028 | $2,086.32 | $893.07 | $1,193.25 | $336,025.23 | $0.00 | 53.7640% |
| 122 | 03/01/2028 | $2,086.32 | $896.23 | $1,190.09 | $335,129.00 | $0.00 | 53.6206% |
| 123 | 04/01/2028 | $2,086.32 | $899.40 | $1,186.92 | $334,229.60 | $0.00 | 53.4767% |
| 124 | 05/01/2028 | $2,086.32 | $902.59 | $1,183.73 | $333,327.01 | $0.00 | 53.3323% |
| 125 | 06/01/2028 | $2,086.32 | $905.79 | $1,180.53 | $332,421.22 | $0.00 | 53.1874% |
| 126 | 07/01/2028 | $2,086.32 | $908.99 | $1,177.33 | $331,512.23 | $0.00 | 53.0420% |
| 127 | 08/01/2028 | $2,086.32 | $912.21 | $1,174.11 | $330,600.02 | $0.00 | 52.8960% |
| 128 | 09/01/2028 | $2,086.32 | $915.44 | $1,170.88 | $329,684.58 | $0.00 | 52.7495% |
| 129 | 10/01/2028 | $2,086.32 | $918.69 | $1,167.63 | $328,765.89 | $0.00 | 52.6025% |
| 130 | 11/01/2028 | $2,086.32 | $921.94 | $1,164.38 | $327,843.95 | $0.00 | 52.4550% |
| 131 | 12/01/2028 | $2,086.32 | $925.21 | $1,161.11 | $326,918.74 | $0.00 | 52.3070% |
| 132 | 01/01/2029 | $2,086.32 | $928.48 | $1,157.84 | $325,990.26 | $0.00 | 52.1584% |
| 133 | 02/01/2029 | $2,086.32 | $931.77 | $1,154.55 | $325,058.49 | $0.00 | 52.0094% |
| 134 | 03/01/2029 | $2,086.32 | $935.07 | $1,151.25 | $324,123.42 | $0.00 | 51.8597% |
| 135 | 04/01/2029 | $2,086.32 | $938.38 | $1,147.94 | $323,185.04 | $0.00 | 51.7096% |
| 136 | 05/01/2029 | $2,086.32 | $941.71 | $1,144.61 | $322,243.33 | $0.00 | 51.5589% |
| 137 | 06/01/2029 | $2,086.32 | $945.04 | $1,141.28 | $321,298.29 | $0.00 | 51.4077% |
| 138 | 07/01/2029 | $2,086.32 | $948.39 | $1,137.93 | $320,349.90 | $0.00 | 51.2560% |
| 139 | 08/01/2029 | $2,086.32 | $951.75 | $1,134.57 | $319,398.15 | $0.00 | 51.1037% |
| 140 | 09/01/2029 | $2,086.32 | $955.12 | $1,131.20 | $318,443.03 | $0.00 | 50.9509% |
| 141 | 10/01/2029 | $2,086.32 | $958.50 | $1,127.82 | $317,484.53 | $0.00 | 50.7975% |
| 142 | 11/01/2029 | $2,086.32 | $961.90 | $1,124.42 | $316,522.63 | $0.00 | 50.6436% |
| 143 | 12/01/2029 | $2,086.32 | $965.30 | $1,121.02 | $315,557.33 | $0.00 | 50.4892% |
| 144 | 01/01/2030 | $2,086.32 | $968.72 | $1,117.60 | $314,588.61 | $0.00 | 50.3342% |
| 145 | 02/01/2030 | $2,086.32 | $972.15 | $1,114.17 | $313,616.46 | $0.00 | 50.1786% |
| 146 | 03/01/2030 | $2,086.32 | $975.60 | $1,110.72 | $312,640.86 | $0.00 | 50.0225% |
| 147 | 04/01/2030 | $2,086.32 | $979.05 | $1,107.27 | $311,661.81 | $0.00 | 49.8659% |
| 148 | 05/01/2030 | $2,086.32 | $982.52 | $1,103.80 | $310,679.29 | $0.00 | 49.7087% |
| 149 | 06/01/2030 | $2,086.32 | $986.00 | $1,100.32 | $309,693.29 | $0.00 | 49.5509% |
| 150 | 07/01/2030 | $2,086.32 | $989.49 | $1,096.83 | $308,703.80 | $0.00 | 49.3926% |
| 151 | 08/01/2030 | $2,086.32 | $992.99 | $1,093.33 | $307,710.81 | $0.00 | 49.2337% |
| 152 | 09/01/2030 | $2,086.32 | $996.51 | $1,089.81 | $306,714.30 | $0.00 | 49.0743% |
| 153 | 10/01/2030 | $2,086.32 | $1,000.04 | $1,086.28 | $305,714.26 | $0.00 | 48.9143% |
| 154 | 11/01/2030 | $2,086.32 | $1,003.58 | $1,082.74 | $304,710.68 | $0.00 | 48.7537% |
| 155 | 12/01/2030 | $2,086.32 | $1,007.14 | $1,079.18 | $303,703.54 | $0.00 | 48.5926% |
| 156 | 01/01/2031 | $2,086.32 | $1,010.70 | $1,075.62 | $302,692.84 | $0.00 | 48.4309% |
| 157 | 02/01/2031 | $2,086.32 | $1,014.28 | $1,072.04 | $301,678.56 | $0.00 | 48.2686% |
| 158 | 03/01/2031 | $2,086.32 | $1,017.88 | $1,068.44 | $300,660.68 | $0.00 | 48.1057% |
| 159 | 04/01/2031 | $2,086.32 | $1,021.48 | $1,064.84 | $299,639.20 | $0.00 | 47.9423% |
| 160 | 05/01/2031 | $2,086.32 | $1,025.10 | $1,061.22 | $298,614.10 | $0.00 | 47.7783% |
| 161 | 06/01/2031 | $2,086.32 | $1,028.73 | $1,057.59 | $297,585.37 | $0.00 | 47.6137% |
| 162 | 07/01/2031 | $2,086.32 | $1,032.37 | $1,053.95 | $296,553.00 | $0.00 | 47.4485% |
| 163 | 08/01/2031 | $2,086.32 | $1,036.03 | $1,050.29 | $295,516.97 | $0.00 | 47.2827% |
| 164 | 09/01/2031 | $2,086.32 | $1,039.70 | $1,046.62 | $294,477.27 | $0.00 | 47.1164% |
| 165 | 10/01/2031 | $2,086.32 | $1,043.38 | $1,042.94 | $293,433.89 | $0.00 | 46.9494% |
| 166 | 11/01/2031 | $2,086.32 | $1,047.07 | $1,039.25 | $292,386.82 | $0.00 | 46.7819% |
| 167 | 12/01/2031 | $2,086.32 | $1,050.78 | $1,035.54 | $291,336.04 | $0.00 | 46.6138% |
| 168 | 01/01/2032 | $2,086.32 | $1,054.50 | $1,031.82 | $290,281.54 | $0.00 | 46.4450% |
| 169 | 02/01/2032 | $2,086.32 | $1,058.24 | $1,028.08 | $289,223.30 | $0.00 | 46.2757% |
| 170 | 03/01/2032 | $2,086.32 | $1,061.99 | $1,024.33 | $288,161.31 | $0.00 | 46.1058% |
| 171 | 04/01/2032 | $2,086.32 | $1,065.75 | $1,020.57 | $287,095.56 | $0.00 | 45.9353% |
| 172 | 05/01/2032 | $2,086.32 | $1,069.52 | $1,016.80 | $286,026.04 | $0.00 | 45.7642% |
| 173 | 06/01/2032 | $2,086.32 | $1,073.31 | $1,013.01 | $284,952.73 | $0.00 | 45.5924% |
| 174 | 07/01/2032 | $2,086.32 | $1,077.11 | $1,009.21 | $283,875.62 | $0.00 | 45.4201% |



## AMORTIZATION SCHEDULE

Loan No.: 570170991033
Borrower(s): Dorothea V Staffeld

Lender: Marketplace Home Mortgage, L.L.C.

Date: 12/15/2017
Loan Amount: $424,100.00
Term: 360 MONTHS
Interest Rate: 4.250 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 175 | 08/01/2032 | $2,086.32 | $1,085.93 | $1,005.39 | $282,794.69 | $0.00 | 45.2472% |
| 176 | 09/01/2032 | $2,086.32 | $1,084.76 | $1,001.56 | $281,709.93 | $0.00 | 45.0736% |
| 177 | 10/01/2032 | $2,086.32 | $1,088.60 | $997.72 | $280,621.33 | $0.00 | 44.8994% |
| 178 | 11/01/2032 | $2,086.32 | $1,092.45 | $993.87 | $279,528.88 | $0.00 | 44.7246% |
| 179 | 12/01/2032 | $2,086.32 | $1,096.32 | $990.00 | $278,432.56 | $0.00 | 44.5492% |
| 180 | 01/01/2033 | $2,086.32 | $1,100.20 | $986.12 | $277,332.36 | $0.00 | 44.3732% |
| 181 | 02/01/2033 | $2,086.32 | $1,104.10 | $982.22 | $276,228.26 | $0.00 | 44.1965% |
| 182 | 03/01/2033 | $2,086.32 | $1,108.01 | $978.31 | $275,120.25 | $0.00 | 44.0192% |
| 183 | 04/01/2033 | $2,086.32 | $1,111.94 | $974.38 | $274,008.31 | $0.00 | 43.8413% |
| 184 | 05/01/2033 | $2,086.32 | $1,115.87 | $970.45 | $272,892.44 | $0.00 | 43.6628% |
| 185 | 06/01/2033 | $2,086.32 | $1,119.83 | $966.49 | $271,772.61 | $0.00 | 43.4836% |
| 186 | 07/01/2033 | $2,086.32 | $1,123.79 | $962.53 | $270,648.82 | $0.00 | 43.3038% |
| 187 | 08/01/2033 | $2,086.32 | $1,127.77 | $958.55 | $269,521.05 | $0.00 | 43.1234% |
| 188 | 09/01/2033 | $2,086.32 | $1,131.77 | $954.55 | $268,389.28 | $0.00 | 42.9423% |
| 189 | 10/01/2033 | $2,086.32 | $1,135.77 | $950.55 | $267,253.51 | $0.00 | 42.7606% |
| 190 | 11/01/2033 | $2,086.32 | $1,139.80 | $946.52 | $266,113.71 | $0.00 | 42.5782% |
| 191 | 12/01/2033 | $2,086.32 | $1,143.83 | $942.49 | $264,969.88 | $0.00 | 42.3952% |
| 192 | 01/01/2034 | $2,086.32 | $1,147.89 | $938.43 | $263,821.99 | $0.00 | 42.2115% |
| 193 | 02/01/2034 | $2,086.32 | $1,151.95 | $934.37 | $262,670.04 | $0.00 | 42.0272% |
| 194 | 03/01/2034 | $2,086.32 | $1,156.03 | $930.29 | $261,514.01 | $0.00 | 41.8422% |
| 195 | 04/01/2034 | $2,086.32 | $1,160.12 | $926.20 | $260,353.89 | $0.00 | 41.6566% |
| 196 | 05/01/2034 | $2,086.32 | $1,164.23 | $922.09 | $259,189.66 | $0.00 | 41.4703% |
| 197 | 06/01/2034 | $2,086.32 | $1,168.36 | $917.96 | $258,021.30 | $0.00 | 41.2834% |
| 198 | 07/01/2034 | $2,086.32 | $1,172.49 | $913.83 | $256,848.81 | $0.00 | 41.0958% |
| 199 | 08/01/2034 | $2,086.32 | $1,176.65 | $909.67 | $255,672.16 | $0.00 | 40.9075% |
| 200 | 09/01/2034 | $2,086.32 | $1,180.81 | $905.51 | $254,491.35 | $0.00 | 40.7186% |
| 201 | 10/01/2034 | $2,086.32 | $1,185.00 | $901.32 | $253,306.35 | $0.00 | 40.5290% |
| 202 | 11/01/2034 | $2,086.32 | $1,189.19 | $897.13 | $252,117.16 | $0.00 | 40.3387% |
| 203 | 12/01/2034 | $2,086.32 | $1,193.41 | $892.91 | $250,923.75 | $0.00 | 40.1478% |
| 204 | 01/01/2035 | $2,086.32 | $1,197.63 | $888.69 | $249,726.12 | $0.00 | 39.9562% |
| 205 | 02/01/2035 | $2,086.32 | $1,201.87 | $884.45 | $248,524.25 | $0.00 | 39.7639% |
| 206 | 03/01/2035 | $2,086.32 | $1,206.13 | $880.19 | $247,318.12 | $0.00 | 39.5709% |
| 207 | 04/01/2035 | $2,086.32 | $1,210.40 | $875.92 | $246,107.72 | $0.00 | 39.3772% |
| 208 | 05/01/2035 | $2,086.32 | $1,214.69 | $871.63 | $244,893.03 | $0.00 | 39.1829% |
| 209 | 06/01/2035 | $2,086.32 | $1,218.99 | $867.33 | $243,674.04 | $0.00 | 38.9878% |
| 210 | 07/01/2035 | $2,086.32 | $1,223.31 | $863.01 | $242,450.73 | $0.00 | 38.7921% |
| 211 | 08/01/2035 | $2,086.32 | $1,227.64 | $858.68 | $241,223.09 | $0.00 | 38.5957% |
| 212 | 09/01/2035 | $2,086.32 | $1,231.99 | $854.33 | $239,991.10 | $0.00 | 38.3986% |
| 213 | 10/01/2035 | $2,086.32 | $1,236.35 | $849.97 | $238,754.75 | $0.00 | 38.2008% |
| 214 | 11/01/2035 | $2,086.32 | $1,240.73 | $845.59 | $237,514.02 | $0.00 | 38.0022% |
| 215 | 12/01/2035 | $2,086.32 | $1,245.12 | $841.20 | $236,268.90 | $0.00 | 37.8030% |
| 216 | 01/01/2036 | $2,086.32 | $1,249.53 | $836.79 | $235,019.37 | $0.00 | 37.6031% |
| 217 | 02/01/2036 | $2,086.32 | $1,253.96 | $832.36 | $233,765.41 | $0.00 | 37.4025% |
| 218 | 03/01/2036 | $2,086.32 | $1,258.40 | $827.92 | $232,507.01 | $0.00 | 37.2011% |
| 219 | 04/01/2036 | $2,086.32 | $1,262.86 | $823.46 | $231,244.15 | $0.00 | 36.9991% |
| 220 | 05/01/2036 | $2,086.32 | $1,267.33 | $818.99 | $229,976.82 | $0.00 | 36.7963% |
| 221 | 06/01/2036 | $2,086.32 | $1,271.82 | $814.50 | $228,705.00 | $0.00 | 36.5928% |
| 222 | 07/01/2036 | $2,086.32 | $1,276.32 | $810.00 | $227,428.68 | $0.00 | 36.3886% |
| 223 | 08/01/2036 | $2,086.32 | $1,280.84 | $805.48 | $226,147.84 | $0.00 | 36.1837% |
| 224 | 09/01/2036 | $2,086.32 | $1,285.38 | $800.94 | $224,862.46 | $0.00 | 35.9780% |
| 225 | 10/01/2036 | $2,086.32 | $1,289.93 | $796.39 | $223,572.53 | $0.00 | 35.7716% |
| 226 | 11/01/2036 | $2,086.32 | $1,294.50 | $791.82 | $222,278.03 | $0.00 | 35.5645% |
| 227 | 12/01/2036 | $2,086.32 | $1,299.09 | $787.23 | $220,978.94 | $0.00 | 35.3566% |
| 228 | 01/01/2037 | $2,086.32 | $1,303.69 | $782.63 | $219,675.25 | $0.00 | 35.1480% |
| 229 | 02/01/2037 | $2,086.32 | $1,308.30 | $778.02 | $218,366.95 | $0.00 | 34.9387% |
| 230 | 03/01/2037 | $2,086.32 | $1,312.94 | $773.38 | $217,054.01 | $0.00 | 34.7286% |
| 231 | 04/01/2037 | $2,086.32 | $1,317.59 | $768.73 | $215,736.42 | $0.00 | 34.5178% |
| 232 | 05/01/2037 | $2,086.32 | $1,322.25 | $764.07 | $214,414.17 | $0.00 | 34.3063% |

# AMORTIZATION SCHEDULE

Loan No.:   570170991033
Borrower(s):  Dorothea V Staffeld

Lender:   Marketplace Home Mortgage, L.L.C.

Date:  12/15/2017
Loan Amount:  $424,100.00
Term:  360 MONTHS
Interest Rate:  4.250 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 233 | 06/01/2037 | $2,086.32 | $1,326.94 | $759.38 | $213,087.23 | $0.00 | 34.0940% |
| 234 | 07/01/2037 | $2,086.32 | $1,331.64 | $754.68 | $211,755.59 | $0.00 | 33.8809% |
| 235 | 08/01/2037 | $2,086.32 | $1,336.35 | $749.97 | $210,419.24 | $0.00 | 33.6671% |
| 236 | 09/01/2037 | $2,086.32 | $1,341.09 | $745.23 | $209,078.15 | $0.00 | 33.4525% |
| 237 | 10/01/2037 | $2,086.32 | $1,345.83 | $740.49 | $207,732.32 | $0.00 | 33.2372% |
| 238 | 11/01/2037 | $2,086.32 | $1,350.60 | $735.72 | $206,381.72 | $0.00 | 33.0211% |
| 239 | 12/01/2037 | $2,086.32 | $1,355.38 | $730.94 | $205,026.34 | $0.00 | 32.8042% |
| 240 | 01/01/2038 | $2,086.32 | $1,360.19 | $726.13 | $203,666.15 | $0.00 | 32.5866% |
| 241 | 02/01/2038 | $2,086.32 | $1,365.00 | $721.32 | $202,301.15 | $0.00 | 32.3682% |
| 242 | 03/01/2038 | $2,086.32 | $1,369.84 | $716.48 | $200,931.31 | $0.00 | 32.1490% |
| 243 | 04/01/2038 | $2,086.32 | $1,374.69 | $711.63 | $199,556.62 | $0.00 | 31.9291% |
| 244 | 05/01/2038 | $2,086.32 | $1,379.56 | $706.76 | $198,177.06 | $0.00 | 31.7083% |
| 245 | 06/01/2038 | $2,086.32 | $1,384.44 | $701.88 | $196,792.62 | $0.00 | 31.4868% |
| 246 | 07/01/2038 | $2,086.32 | $1,389.35 | $696.97 | $195,403.27 | $0.00 | 31.2645% |
| 247 | 08/01/2038 | $2,086.32 | $1,394.27 | $692.05 | $194,009.00 | $0.00 | 31.0414% |
| 248 | 09/01/2038 | $2,086.32 | $1,399.20 | $687.12 | $192,609.80 | $0.00 | 30.8176% |
| 249 | 10/01/2038 | $2,086.32 | $1,404.16 | $682.16 | $191,205.64 | $0.00 | 30.5929% |
| 250 | 11/01/2038 | $2,086.32 | $1,409.13 | $677.19 | $189,796.51 | $0.00 | 30.3674% |
| 251 | 12/01/2038 | $2,086.32 | $1,414.12 | $672.20 | $188,382.39 | $0.00 | 30.1412% |
| 252 | 01/01/2039 | $2,086.32 | $1,419.13 | $667.19 | $186,963.26 | $0.00 | 29.9141% |
| 253 | 02/01/2039 | $2,086.32 | $1,424.16 | $662.16 | $185,539.10 | $0.00 | 29.6863% |
| 254 | 03/01/2039 | $2,086.32 | $1,429.20 | $657.12 | $184,109.90 | $0.00 | 29.4576% |
| 255 | 04/01/2039 | $2,086.32 | $1,434.26 | $652.06 | $182,675.64 | $0.00 | 29.2281% |
| 256 | 05/01/2039 | $2,086.32 | $1,439.34 | $646.98 | $181,236.30 | $0.00 | 28.9978% |
| 257 | 06/01/2039 | $2,086.32 | $1,444.44 | $641.88 | $179,791.86 | $0.00 | 28.7667% |
| 258 | 07/01/2039 | $2,086.32 | $1,449.56 | $636.76 | $178,342.30 | $0.00 | 28.5348% |
| 259 | 08/01/2039 | $2,086.32 | $1,454.69 | $631.63 | $176,887.61 | $0.00 | 28.3020% |
| 260 | 09/01/2039 | $2,086.32 | $1,459.84 | $626.48 | $175,427.77 | $0.00 | 28.0684% |
| 261 | 10/01/2039 | $2,086.32 | $1,465.01 | $621.31 | $173,962.76 | $0.00 | 27.8340% |
| 262 | 11/01/2039 | $2,086.32 | $1,470.20 | $616.12 | $172,492.56 | $0.00 | 27.5988% |
| 263 | 12/01/2039 | $2,086.32 | $1,475.41 | $610.91 | $171,017.15 | $0.00 | 27.3627% |
| 264 | 01/01/2040 | $2,086.32 | $1,480.63 | $605.69 | $169,536.52 | $0.00 | 27.1258% |
| 265 | 02/01/2040 | $2,086.32 | $1,485.88 | $600.44 | $168,050.64 | $0.00 | 26.8881% |
| 266 | 03/01/2040 | $2,086.32 | $1,491.14 | $595.18 | $166,559.50 | $0.00 | 26.6495% |
| 267 | 04/01/2040 | $2,086.32 | $1,496.42 | $589.90 | $165,063.08 | $0.00 | 26.4101% |
| 268 | 05/01/2040 | $2,086.32 | $1,501.72 | $584.60 | $163,561.36 | $0.00 | 26.1698% |
| 269 | 06/01/2040 | $2,086.32 | $1,507.04 | $579.28 | $162,054.32 | $0.00 | 25.9287% |
| 270 | 07/01/2040 | $2,086.32 | $1,512.38 | $573.94 | $160,541.94 | $0.00 | 25.6867% |
| 271 | 08/01/2040 | $2,086.32 | $1,517.73 | $568.59 | $159,024.21 | $0.00 | 25.4439% |
| 272 | 09/01/2040 | $2,086.32 | $1,523.11 | $563.21 | $157,501.10 | $0.00 | 25.2002% |
| 273 | 10/01/2040 | $2,086.32 | $1,528.50 | $557.82 | $155,972.60 | $0.00 | 24.9556% |
| 274 | 11/01/2040 | $2,086.32 | $1,533.92 | $552.40 | $154,438.68 | $0.00 | 24.7102% |
| 275 | 12/01/2040 | $2,086.32 | $1,539.35 | $546.97 | $152,899.33 | $0.00 | 24.4639% |
| 276 | 01/01/2041 | $2,086.32 | $1,544.80 | $541.52 | $151,354.53 | $0.00 | 24.2167% |
| 277 | 02/01/2041 | $2,086.32 | $1,550.27 | $536.05 | $149,804.26 | $0.00 | 23.9687% |
| 278 | 03/01/2041 | $2,086.32 | $1,555.76 | $530.56 | $148,248.50 | $0.00 | 23.7198% |
| 279 | 04/01/2041 | $2,086.32 | $1,561.27 | $525.05 | $146,687.23 | $0.00 | 23.4700% |
| 280 | 05/01/2041 | $2,086.32 | $1,566.80 | $519.52 | $145,120.43 | $0.00 | 23.2193% |
| 281 | 06/01/2041 | $2,086.32 | $1,572.35 | $513.97 | $143,548.08 | $0.00 | 22.9677% |
| 282 | 07/01/2041 | $2,086.32 | $1,577.92 | $508.40 | $141,970.16 | $0.00 | 22.7152% |
| 283 | 08/01/2041 | $2,086.32 | $1,583.51 | $502.81 | $140,386.65 | $0.00 | 22.4619% |
| 284 | 09/01/2041 | $2,086.32 | $1,589.12 | $497.20 | $138,797.53 | $0.00 | 22.2076% |
| 285 | 10/01/2041 | $2,086.32 | $1,594.75 | $491.57 | $137,202.78 | $0.00 | 21.9524% |
| 286 | 11/01/2041 | $2,086.32 | $1,600.39 | $485.93 | $135,602.39 | $0.00 | 21.6964% |
| 287 | 12/01/2041 | $2,086.32 | $1,606.06 | $480.26 | $133,996.33 | $0.00 | 21.4394% |
| 288 | 01/01/2042 | $2,086.32 | $1,611.75 | $474.57 | $132,384.58 | $0.00 | 21.1815% |
| 289 | 02/01/2042 | $2,086.32 | $1,617.46 | $468.86 | $130,767.12 | $0.00 | 20.9227% |
| 290 | 03/01/2042 | $2,086.32 | $1,623.19 | $463.13 | $129,143.93 | $0.00 | 20.6630% |

## AMORTIZATION SCHEDULE

Loan No.: 570170991033
Borrower(s): Dorothea V Staffeld

Lender: Marketplace Home Mortgage, L.L.C.

Date: 12/15/2017
Loan Amount: $424,100.00
Term: 360 MONTHS
Interest Rate: 4.250 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 291 | 04/01/2042 | $2,086.32 | $1,628.94 | $457.38 | $127,514.99 | $0.00 | 20.4024% |
| 292 | 05/01/2042 | $2,086.32 | $1,634.70 | $451.62 | $125,880.29 | $0.00 | 20.1408% |
| 293 | 06/01/2042 | $2,086.32 | $1,640.49 | $445.83 | $124,239.80 | $0.00 | 19.8784% |
| 294 | 07/01/2042 | $2,086.32 | $1,646.30 | $440.02 | $122,593.50 | $0.00 | 19.6150% |
| 295 | 08/01/2042 | $2,086.32 | $1,652.13 | $434.19 | $120,941.37 | $0.00 | 19.3506% |
| 296 | 09/01/2042 | $2,086.32 | $1,657.99 | $428.33 | $119,283.38 | $0.00 | 19.0853% |
| 297 | 10/01/2042 | $2,086.32 | $1,663.86 | $422.46 | $117,619.52 | $0.00 | 18.8191% |
| 298 | 11/01/2042 | $2,086.32 | $1,669.75 | $416.57 | $115,949.77 | $0.00 | 18.5520% |
| 299 | 12/01/2042 | $2,086.32 | $1,675.66 | $410.66 | $114,274.11 | $0.00 | 18.2839% |
| 300 | 01/01/2043 | $2,086.32 | $1,681.60 | $404.72 | $112,592.51 | $0.00 | 18.0148% |
| 301 | 02/01/2043 | $2,086.32 | $1,687.55 | $398.77 | $110,904.96 | $0.00 | 17.7448% |
| 302 | 03/01/2043 | $2,086.32 | $1,693.53 | $392.79 | $109,211.43 | $0.00 | 17.4738% |
| 303 | 04/01/2043 | $2,086.32 | $1,699.53 | $386.79 | $107,511.90 | $0.00 | 17.2019% |
| 304 | 05/01/2043 | $2,086.32 | $1,705.55 | $380.77 | $105,806.35 | $0.00 | 16.9290% |
| 305 | 06/01/2043 | $2,086.32 | $1,711.59 | $374.73 | $104,094.76 | $0.00 | 16.6552% |
| 306 | 07/01/2043 | $2,086.32 | $1,717.65 | $368.67 | $102,377.11 | $0.00 | 16.3803% |
| 307 | 08/01/2043 | $2,086.32 | $1,723.73 | $362.59 | $100,653.38 | $0.00 | 16.1045% |
| 308 | 09/01/2043 | $2,086.32 | $1,729.84 | $356.48 | $98,923.54 | $0.00 | 15.8278% |
| 309 | 10/01/2043 | $2,086.32 | $1,735.97 | $350.35 | $97,187.57 | $0.00 | 15.5500% |
| 310 | 11/01/2043 | $2,086.32 | $1,742.11 | $344.21 | $95,445.46 | $0.00 | 15.2713% |
| 311 | 12/01/2043 | $2,086.32 | $1,748.28 | $338.04 | $93,697.18 | $0.00 | 14.9915% |
| 312 | 01/01/2044 | $2,086.32 | $1,754.48 | $331.84 | $91,942.70 | $0.00 | 14.7108% |
| 313 | 02/01/2044 | $2,086.32 | $1,760.69 | $325.63 | $90,182.01 | $0.00 | 14.4291% |
| 314 | 03/01/2044 | $2,086.32 | $1,766.93 | $319.39 | $88,415.08 | $0.00 | 14.1464% |
| 315 | 04/01/2044 | $2,086.32 | $1,773.18 | $313.14 | $86,641.90 | $0.00 | 13.8627% |
| 316 | 05/01/2044 | $2,086.32 | $1,779.46 | $306.86 | $84,862.44 | $0.00 | 13.5780% |
| 317 | 06/01/2044 | $2,086.32 | $1,785.77 | $300.55 | $83,076.67 | $0.00 | 13.2923% |
| 318 | 07/01/2044 | $2,086.32 | $1,792.09 | $294.23 | $81,284.58 | $0.00 | 13.0055% |
| 319 | 08/01/2044 | $2,086.32 | $1,798.44 | $287.88 | $79,486.14 | $0.00 | 12.7178% |
| 320 | 09/01/2044 | $2,086.32 | $1,804.81 | $281.51 | $77,681.33 | $0.00 | 12.4290% |
| 321 | 10/01/2044 | $2,086.32 | $1,811.20 | $275.12 | $75,870.13 | $0.00 | 12.1392% |
| 322 | 11/01/2044 | $2,086.32 | $1,817.61 | $268.71 | $74,052.52 | $0.00 | 11.8484% |
| 323 | 12/01/2044 | $2,086.32 | $1,824.05 | $262.27 | $72,228.47 | $0.00 | 11.5566% |
| 324 | 01/01/2045 | $2,086.32 | $1,830.51 | $255.81 | $70,397.96 | $0.00 | 11.2637% |
| 325 | 02/01/2045 | $2,086.32 | $1,836.99 | $249.33 | $68,560.97 | $0.00 | 10.9698% |
| 326 | 03/01/2045 | $2,086.32 | $1,843.50 | $242.82 | $66,717.47 | $0.00 | 10.6748% |
| 327 | 04/01/2045 | $2,086.32 | $1,850.03 | $236.29 | $64,867.44 | $0.00 | 10.3788% |
| 328 | 05/01/2045 | $2,086.32 | $1,856.58 | $229.74 | $63,010.86 | $0.00 | 10.0817% |
| 329 | 06/01/2045 | $2,086.32 | $1,863.16 | $223.16 | $61,147.70 | $0.00 | 9.7836% |
| 330 | 07/01/2045 | $2,086.32 | $1,869.76 | $216.56 | $59,277.94 | $0.00 | 9.4845% |
| 331 | 08/01/2045 | $2,086.32 | $1,876.38 | $209.94 | $57,401.56 | $0.00 | 9.1842% |
| 332 | 09/01/2045 | $2,086.32 | $1,883.02 | $203.30 | $55,518.54 | $0.00 | 8.8830% |
| 333 | 10/01/2045 | $2,086.32 | $1,889.69 | $196.63 | $53,628.85 | $0.00 | 8.5806% |
| 334 | 11/01/2045 | $2,086.32 | $1,896.38 | $189.94 | $51,732.47 | $0.00 | 8.2772% |
| 335 | 12/01/2045 | $2,086.32 | $1,903.10 | $183.22 | $49,829.37 | $0.00 | 7.9727% |
| 336 | 01/01/2046 | $2,086.32 | $1,909.84 | $176.48 | $47,919.53 | $0.00 | 7.6671% |
| 337 | 02/01/2046 | $2,086.32 | $1,916.60 | $169.72 | $46,002.93 | $0.00 | 7.3605% |
| 338 | 03/01/2046 | $2,086.32 | $1,923.39 | $162.93 | $44,079.54 | $0.00 | 7.0527% |
| 339 | 04/01/2046 | $2,086.32 | $1,930.20 | $156.12 | $42,149.34 | $0.00 | 6.7439% |
| 340 | 05/01/2046 | $2,086.32 | $1,937.04 | $149.28 | $40,212.30 | $0.00 | 6.4340% |
| 341 | 06/01/2046 | $2,086.32 | $1,943.90 | $142.42 | $38,268.40 | $0.00 | 6.1229% |
| 342 | 07/01/2046 | $2,086.32 | $1,950.79 | $135.53 | $36,317.61 | $0.00 | 5.8108% |
| 343 | 08/01/2046 | $2,086.32 | $1,957.70 | $128.62 | $34,359.91 | $0.00 | 5.4976% |
| 344 | 09/01/2046 | $2,086.32 | $1,964.63 | $121.69 | $32,395.28 | $0.00 | 5.1832% |
| 345 | 10/01/2046 | $2,086.32 | $1,971.59 | $114.73 | $30,423.69 | $0.00 | 4.8678% |
| 346 | 11/01/2046 | $2,086.32 | $1,978.57 | $107.75 | $28,445.12 | $0.00 | 4.5512% |
| 347 | 12/01/2046 | $2,086.32 | $1,985.58 | $100.74 | $26,459.54 | $0.00 | 4.2335% |
| 348 | 01/01/2047 | $2,086.32 | $1,992.61 | $93.71 | $24,466.93 | $0.00 | 3.9147% |



# AMORTIZATION SCHEDULE

Loan No.:   570170991033
Borrower(s):  Dorothea V Staffeld

Lender:   Marketplace Home Mortgage, L.L.C.

– Date:  12/15/2017
Loan Amount: $424,100.00
Term: 360 MONTHS
Interest Rate: 4.250 %

| Pmt. # | Pmt. Date | Payment Amount | Principal Portion | Interest Portion | Ending Balance | PMI Pmt. | Resulting LTV % |
|---|---|---|---|---|---|---|---|
| 349 | 02/01/2047 | $2,086.32 | $1,999.67 | $86.65 | $22,467.26 | $0.00 | 3.5948% |
| 350 | 03/01/2047 | $2,086.32 | $2,006.75 | $79.57 | $20,460.51 | $0.00 | 3.2737% |
| 351 | 04/01/2047 | $2,086.32 | $2,013.86 | $72.46 | $18,446.65 | $0.00 | 2.9515% |
| 352 | 05/01/2047 | $2,086.32 | $2,020.99 | $65.33 | $16,425.66 | $0.00 | 2.6281% |
| 353 | 06/01/2047 | $2,086.32 | $2,028.15 | $58.17 | $14,397.51 | $0.00 | 2.3036% |
| 354 | 07/01/2047 | $2,086.32 | $2,035.33 | $50.99 | $12,362.18 | $0.00 | 1.9779% |
| 355 | 08/01/2047 | $2,086.32 | $2,042.54 | $43.78 | $10,319.64 | $0.00 | 1.6511% |
| 356 | 09/01/2047 | $2,086.32 | $2,049.77 | $36.55 | $8,269.87 | $0.00 | 1.3232% |
| 357 | 10/01/2047 | $2,086.32 | $2,057.03 | $29.29 | $6,212.84 | $0.00 | 0.9941% |
| 358 | 11/01/2047 | $2,086.32 | $2,064.32 | $22.00 | $4,148.52 | $0.00 | 0.6638% |
| 359 | 12/01/2047 | $2,086.32 | $2,071.63 | $14.69 | $2,076.89 | $0.00 | 0.3323% |
| 360 | 01/01/2048 | $2,084.25 | $2,076.89 | $7.36 | $0.00 | $0.00 | 0.0000% |

_____
DOROTHEA V STAFFELD                     DATE

THIS AMORTIZATION SCHEDULE IS BASED ON THE TERMS SET FORTH ABOVE AND ASSUMES THAT PAYMENTS ARE MADE AS SCHEDULED AND THAT NO PREPAYMENTS OCCUR PRIOR TO THE MATURITY DATE OF THE LOAN. IT IS PROVIDED AS AN EXAMPLE ONLY. IF IT IS FOR AN ADJUSTABLE RATE MORTGAGE LOAN, IT ASSUMES HYPOTHETICAL INTEREST RATE AND PAYMENT CHANGES THAT MAY DIFFER FROM ACTUAL CHANGES. PMI PAYMENT MAY BE DISCONTINUED PRIOR TO REACHING THE PMI CANCELLATION DATE IF PREMIUMS WERE PAID AT THE TIME OF LOAN CLOSING.



LOAN #: 570170991033

| Form **W-9**<br>(Rev. November 2017)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification**<br>► Go to www.irs.gov/FormW9 for instructions and the latest information. | Give Form to the<br>requester. Do not<br>send to the IRS. |

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Dorothea V Staffeld

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the following seven boxes.

☒ Individual/sole proprietor or single-member LLC   ☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C = C corporation, S = S corporation, P = Partnership) ►

Note: Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is not disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ►

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

(Applies to accounts maintained outside the U.S.)

**5** Address (number, street, and apt. or suite no.) See instructions.

341 Corrie Road

**6** City, state, and ZIP code

Ann Arbor, MI 48105

Requester's name and address (optional)

Marketplace Home Mortgage, L.L.C.
7380 France Avenue S, Suite 200
Edina, MN 55435

**7** List account number(s) here (optional)

---

**Part I**   **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN, later.

Note: If the account is in more than one name, see the instructions for line 1. Also see What Name and Number To Give the Requester for guidelines on whose number to enter.

Social security number

4 9 1 – 3 0 – 3 3 7 0

or

Employer identification number

---

**Part II**   **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

| Sign<br>Here ► | Signature of<br>U.S. person ► | Date ► |

---

**General Instructions**

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to www.irs.gov/FormW9.

**Purpose of Form**

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)
• Form 1099-DIV (dividends, including those from stocks or mutual funds)
• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
• Form 1099-S (proceeds from real estate transactions)
• Form 1099-K (merchant card and third party network transactions)
• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
• Form 1099-C (canceled debt)
• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding, later.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See What is FATCA reporting, later, for further information.

Note: If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien;

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;

• An estate (other than a foreign estate); or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

Ellie Mae, Inc.                                                   Cat. No. 10231X                           Form **W-9** (Rev. 11-2017)
GW9C (CLS)
12/15/2017 06:45 AM PST

LOAN #: 570170991033

Form W-9 (Rev. 11-2017) — Page 2

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States.

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items.

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

*Example.* Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the instructions for Part II for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code*, later, and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships*, earlier.

## What is FATCA Reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code*, later, and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation

that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account; for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Line 1

You must enter one of the following on this line; do not leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account (other than an account maintained by a foreign financial institution (FFI)), list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9. If you are providing Form W-9 to an FFI to document a joint account, each holder of the account that is a U.S. person must provide a Form W-9.

a. **Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note:** ITIN applicant: Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

b. **Sole proprietor or single-member LLC.** Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

c. **Partnership, LLC that is not a single-member LLC, or Corporation.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

d. **Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

e. **Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701-2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

### Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

### Line 3

Check the appropriate box on line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box on line 3.

| IF the entity/person on line 1 is a(n)... | THEN check the box for... |
| --- | --- |
| • Corporation | Corporation |
| • Individual<br>• Sole proprietorship, or<br>• Single-member limited liability company (LLC) owned by an individual and disregarded for U.S. federal tax purposes. | Individual/sole proprietor or single-member LLC |
| • LLC treated as a partnership for U.S. federal tax purposes,<br>• LLC that has filed Form 8832 or 2553 to be taxed as a corporation, or<br>• LLC that is disregarded as an entity separate from its owner but the owner is another LLC that is not disregarded for U.S. federal tax purposes. | Limited liability company and enter the appropriate tax classification. (P= Partnership; C= C corporation; or S= S corporation) |
| • Partnership | Partnership |
| • Trust/estate | Trust/estate |



Form W-9 (Rev. 11-2017)

LOAN #: 570170991033

Page 3

## Line 4, Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space in line 4 any code(s) that may apply to you.

Exempt payee code.

• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1 — An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2 — The United States or any of its agencies or instrumentalities

3 — A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

4 — A foreign government or any of its political subdivisions, agencies, or instrumentalities

5 — A corporation

6 — A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession

7 — A futures commission merchant registered with the Commodity Futures Trading Commission

8 — A real estate investment trust

9 — An entity registered at all times during the tax year under the Investment Company Act of 1940

10 — A common trust fund operated by a bank under section 584(a)

11 — A financial institution

12 — A middleman known in the investment community as a nominee or custodian

13 — A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for... | THEN the payment is exempt for... |
|---|---|
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000¹ | Generally, exempt payees 1 through 5² |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

¹ See Form 1099-MISC, Miscellaneous Income, and its instructions.

² However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

Exemption from FATCA reporting code. The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A — An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B — The United States or any of its agencies or instrumentalities

C — A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

D — A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)

E — A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)

F — A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G — A real estate investment trust

H — A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I — A common trust fund as defined in section 584(a)

J — A bank as defined in section 581

K — A broker

L — A trust exempt from tax under section 664 or described in section 4947(a)(1)

M — A tax exempt trust under a section 403(b) plan or section 457(g) plan

Note: You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

## Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns. If this address differs from the one the requester already has on file, write NEW at the top. If a new address is provided, there is still a chance the old address will be used until the requester changes your address in their records.

## Line 6

Enter your city, state, and ZIP code.

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see How to get a TIN below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN.

If you are a single-member LLC that is disregarded as an entity separate from its owner, enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

Note. See What Name and Number To Give the Requester, later, for further clarification of name and TIN combinations.

How to get a TIN. If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at www.SSA.gov. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at www.irs.gov/Businesses and clicking on Employer Identification Number (EIN) under Starting a Business. Go to www.irs.gov/Forms to view, download, or print Form W-7 and/or Form SS-4. Or, you can go to www.irs.gov/OrderForms to place an order and have Form W-7 and/or SS-4 mailed to you within 10 business days.

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

Note: Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

Caution: A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, 4, or 5 below indicates otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see Exempt payee code, earlier.

Signature requirements. Complete the certification as indicated in items 1 through 5 below.

1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983. You must give your correct TIN, but you do not have to sign the certification.

2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983. You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. Real estate transactions. You must sign the certification. You may cross out item 2 of the certification.

4. Other payments. You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have

