## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KARL STAFFELD AND
AZAR SADEGHI-STAFFELD,

    Plaintiffs,

-v-

WELLS FARGO BANK, N.A., a subsidiary
of WELLS FARGO & COMPANY, and R
& J Holdings, LLC, a Michigan limited
liability Company,

    Defendants.

Case No: 4:24-cv-12811
Hon. Shalina D. Kumar

---

Karl Staffeld and Azar Staffeld
Plaintiffs, *Pro Se*
341 Corrie Road Ann Arbor, MI 48105
(734) 929-6969
karlstaffeld@gmail.com

Mark D. Kundmueller, Esq. (P66306)
TROUTMAN PEPPER LOCKE LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virgina 23462
(757) 687-7564
mark.kundmueller@troutman.com

David Sobel (P49662)
George Blackmore (P76942)
SOBLE PLC
31800 Northwestern Hwy #350
Farmington Hills, MI 48224
(888) 789-1715
dsoble@provenresource.com

---

## MEMORANDUM OF LAW IN OPPOSITION TO R & J GROUP HOLDINGS' MOTION FOR SUMMARY JUDGMENT AND DISMISSAL

INDEX OF AUTHORITIES

<u>**Cases**</u>

*Able Demolition, Inc v City of Pontiac*, 275 Mich App 577, 739 NW2d 696 (2007)     3

*Brackett v Focus Hope, Inc*, 482 Mich 269, 753 NW2d 207 (2008)     2

*Burkhardt v City Nat'l Bank of Detroit*, 57 Mich App 649, 226 NW2d 678 (1975)     4

*City of Grosse Pointe Park v Mich Munil Liability & Prop Pool*,
473 Mich 188, 702 NW2d 106 (2005)     6

*English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 688 NW2d 523 (2004)     6

*Fletcher v Fletcher*, 447 Mich 871, 526 NW2d 889 (1994)     2

*Hall v. El-Bathy and Mostafa*, Docket No. 362063, Mich. Ct. App. (May 18, 2023)     4

*Hammond v United of Oakland, Inc*, 193 Mich App 146, 483 NW2d 652 (1992)     5

*In re Smith Trust*, 480 Mich 19, 745 NW2d 754 (2008)     5

*Kircher v. Boyne USA,* Docket No. 166459, Mich Supreme Court (March 27, 2025)     5

*McCarty v Mercury Metalcraft Co,* 372 Mich 567, 127 NW2d 340 (1964)     3

*Miller-Davis Co. v. Ahrens Const., Inc.,* 296 Mich. App. 56, 817 NW2d 609 (2012)     3

*People v Sierb*, 456 Mich 519, 581 NW2d 219 (1998)     2

*Walker & Co v Harrison*, 347 Mich 630, 81 NW2d 352 (1957)     4

*United States v. Ford*, 64 F. App'x 976, 983 (6th Cir. 2003)     12

INDEX OF EXHIBITS

Exhibit "A" –  Signed Lease Agreement dated October 27, 2023

Exhibit "B" –  Transcripts from District Court Bench Trial dated April 8, 2025

Exhibit "C" –  Signed Purchase Agreement dated November 17, 2024

Exhibit "D" –  Title Insurance Company report dated January 10, 2025

Exhibit "E" –  Affidavit and Notice of Lien dated April 22, 2024

Exhibit "F" –  NEXA Mortgage letters dated December 15, 2024 and January 17, 2024

Exhibit "G" –  341 Payeur Mortgage dated October 27, 2023

Exhibit "H" –  Letters to R&J Group Holdings Attorney dated December 30, 2024

and January 22, 2025

Exhibit "I" –  Motion to Appeal dated April 17, 2025

Exhibit "J" –  Motion for Reconsideration dated May 23, 2025

Exhibit "K" –  Complaint against BHV to remove lien dated April 7, 2025

Exhibit "L" –  R&J Group Holdings Expenses Sheet dated October 10, 2024

Exhibit "M" –  Timeline for 341 Corrie

Exhibit "N" –  341 Corrie Appraisal dated October 10, 2023

Exhibit "O" –  Corrie Closing documents dated December 15, 2017

Exhibit "P" –  Signed and sealed engineering plans dated August 27, 2020

I.     **Introduction**

Complainants Karl Staffeld and Azar Sadeghi-Staffeld (Plaintiffs "Staffelds") respectfully respond to R & J Group Holdings' (Defendant "R&J") Motion to Dismiss and Summary Judgment and urges this Honorable Court to deny it. Complainants will demonstrate through this Response that there are multiple disputed issues of material fact and relevant questions concerning credibility that warrant a hearing in this case.

**Plaintiffs' Statement of the Claim(s)**

A.  Whether this Honorable Court has jurisdiction over this case?

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "no."
    c.  The Court should answer "yes."

B.  Whether the Defendant's allegation that this Court does not have jurisdiction over this action is factual, correct, and substantiated?

    a.  The Plaintiffs would answer "no."
    b.  The Defendant would answer "yes."
    c.  The Court should answer "no."

C.  Whether there is a lease agreement between R&J and Staffelds?

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "no."
    c.  The Court should answer "yes."

D.  Whether section 2.1 of the exclusive lease agreement with option to purchase says upon expiration of the lease agreement the parties "SHALL" extend the lease agreement for another 13 months? (Exhibit A - Lease Agreement)

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "yes."
    c.  The Court should answer "yes."

E.  Whether there is a Purchase Agreement between R&J and Staffelds?

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "yes."
    c.  The Court should answer "yes."

F.  Whether according to the Purchase Agreement the seller, R&J, is required to provide a clear title to buyers, the Staffelds?

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "yes."
    c.  The Court should answer "yes."

G.  Whether R&J was able to provide clear title without encumbrance of Barton Hills Village ("BHV") nuisance lien?

    a.  The Plaintiffs would answer "no."
    b.  The Defendant would answer "no."
    c.  The Court should answer "no."

H.  Whether R&J stopped the Staffelds by not being able to provide a clear title from repurchasing the property?

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "yes."
    c.  The Court should answer "yes."

I.  Whether R&J deliberately tied two real properties (341 Corrie Road, "First Property" and 341 Payeur Road, "Second Property") to accommodate sale of First Property?

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "yes."
    c.  The Court should answer "yes."

J.  Whether R&J took most of the proceeds of mortgaging Second Property to pay for taxes and insurance of the First Property in anticipation of the sale?

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "yes."
    c.  The Court should answer "yes."

K.  Whether in violation of RESPA,  R&J acted in bad faith by NOT negotiating a new Lease Agreement or Purchase Agreement in a real estate transaction? (a Federal question) (Exhibit B - transcripts of District Court)

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "no."
    c.  The Court should answer "yes."

L.  Whether R&J acted as criminal and civil predatory lender to obtain more than a 64% of return of its investment within a year? (a Federal question)

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "no."
    c.  The Court should answer "yes."

M.  Whether R&J, in violation of TILA intentionally waited out for expiration of both; Lease Agreement and Purchase Agreement expiration? (a Federal question)
(Exhibit C -Purchase Agreement)

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "no."
    c.  The Court should answer "yes."

N.  Whether R&J, in violation of HOEPA, obtained a mortgage almost simultaneously, where they were obligated to sell the First Property and release the lien of the Second Property? (a Federal question) (Exhibit D - Title report for Corrie)

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "no."
    c.  The Court should answer "yes."

O.  Whether R&J deliberately intentionally, and maliciously has made no effort to remove the lien by BHV (Exhibit E - Lien); and by doing so blocks Staffelds from asserting their rights to repurchase the property by obtaining a mortgage? (Exhibit F - NEXA Letters)

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "no."
    c.  The Court should answer "yes."

P.  Whether R&J, in violation Dodd-Frank Wallstreet Reform and Consumer Protection Act, committed criminal and civil usuary by demanding to receive, and receiving, 64% return within one year of their investment? (a Federal question)

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "no."
    c.  The Court should answer "yes."

Q.  Whether Staffelds 'claim of entitlement due to wrongful foreclosure by Wells Fargo is within jurisdiction of this Court? (diversity issue)

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "no."
    c.  The Court should answer "yes."

R.  Whether Staffelds' claim of quiet title should be directed to the breaching parties Wells Fargo and R&J when adjudicating the claim of quite title, breach of contract  regarding the title, with Federal Court; because it relates to the same properties, same parties, and similar issues? (a Federal question)

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "no."
    c.  The Court should answer "yes."

S.  Whether the Staffelds are asking this Honorable Court to order the Federal Prosecutor to start a criminal investigation based on these contracts and highly probable similar contracts in violation of the aforementioned acts, and for loan sharking?

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "no."
    c.  The Court should answer "yes."

T.  Should this Honorable Court order that Wells Fargo Bank wrongfully foreclosed on the First Property, whether the chain of preceding title ownership will be broken and the Staffelds would become title owners?

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "no."
    c.  The Court should answer "yes."

U.  Whether the dispute over ownership of the First Property makes the Federal Court having jurisdiction over the chain of titles when one of several parties has diversity?

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "no."
    c.  The Court should answer "yes."

V.  Whether R&J is preventing Staffelds, despite two contracts and a mortgage document for Second Property (Exhibit G - Payeur mortgage), from repurchasing the property that was wrongfully foreclosed and was their primary residence?

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "no."
    c.  The Court should answer "yes."

W. Whether 28 USC § 1332 applies where R&J considers this case "a simple" landlord/tenant case instead of a quiet title action?

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "no."
    c.  The Court should answer "yes."

X.  Whether, when Staffelds insist this this Honorable Court has jurisdiction even if only one of the Federal questions is asserted, this is a Federal question subject matter jurisdiction? (Constitutional violation of impediment in right to purchase, RESPA, HOEPA, TILA, Dodd-Frank Act, Usury, and US Code §§ 891-896 in loan sharking)

    a.  The Plaintiffs would answer "yes."
    b.  The Defendant would answer "no."
    c.  The Court should answer "yes."

Y.  Whether the breach of Contract claim in Federal Court is appropriate, when diversity exists with one defendant and the outcome of the case would affect the other defendant to further prevent additional litigation?

      a.  The Plaintiffs would answer "yes."
      b.  The Defendant would answer "no."
      c.  The Court should answer "yes."

Z.  Whether R&J's intent to defraud the Staffelds from their primary residence, and purchasing their property during the redemption period of wrongful foreclosure by Wells Fargo, signing two contracts to sell the First Property back to them, and breaching both contracts, mortgaging their Second Property to support the expectation to sell the First Property, is an example of criminal and civil predatory lending, fraudulent misrepresentation with intent to defraud in real estate transactions, civil and criminal usuary and racketeering of corrupt lending institutes, RICO, (R&J), therefore, violation of Federal statute 18 U.S.C. §§ 1961-1968 with regard to real estate transactions?

      a.  The Plaintiff would answer "yes."
      b.  The Defendant would answer "no."
      c.  The Court should answer "yes."

AA.     Whether R&J is a financial institution (lending company) and are defrauding Staffelds from their ownership and possession of their First Property and eventually their Second Property, in violation of mortgage fraud, real estate fraud, and wire fraud?

      a.  The Plaintiff would answer "yes."
      b.  The Defendant would answer "no."
      c.  The Court should answer "yes."

BB.     Whether by manipulating the Staffelds during redemption period and tying two properties to the sales of one, and now refusing to sell to Staffelds establishes R&J's intent to defraud the Staffelds from the beginning?

      a.  The Plaintiffs would answer "yes."
      b.  The Defendant would answer "no."
      c.  The Court should answer "yes."

CC.     Whether R&J's illegal actions is forfeiture by defrauding Staffelds, and there nineteen-member household, primary residence; there most important investment of a lifetime and defrauding them out of two properties is a Federal question?

      a.  The Plaintiff would answer "yes."
      b.  The Defendant would answer "no."
      c.  The Court should answer "yes."

**Responsive Statement of Undisputed Material Facts**

By way of brief background, these consolidated matters relate to two real properties located within the City of Ann Arbor. The first property is located at 341 Corrie Road, Ann Arbor, Michigan 48105 ("First Property"). The second property is located at 341 Payeur Road, Ann Arbor, Michigan 48108 (Second Property").

The Wells Fargo Bank wrongfully foreclosed on the First Property during the pandemic protection period; on a deceased person, Dorothea Vermillion Staffeld. Thereafter, R&J Group Holdings ("R&J") purchased the property during Azar Sadeghi-Staffeld, Karl Staffeld, and Ghazal Staffeld ("Staffelds")  redemption period and simultaneously signed; 1. An exclusive lease with option to buy (Exhibit A) 2. Put a mortgage lien on the second property and took most of the proceeds to support the sale of the first property simultaneously (case in hand). 3. Staffelds paid R&J for one year according to the first contract at $5,000 per month, applied for mortgage, ordered the title work, and discovered there is a lien on the property by Barton Hills Village ("BHV") (Exhibit E) that is impeding Staffelds' abilities to obtain the mortgage to repurchase the first property because it has a lien on it (Exhibit H). Staffelds petitioned before Federal Court against BHV and R&J forced Staffelds to withdraw their complaint in June, 2024, and promised Staffelds to clear the title off the lien by October 31, 2024; the expiration date of the first contract (Exhibit E). On November 17, 2024 R&J signed the second contract with the Staffelds; Purchase Agreement that expired on January 31, 2025 (Exhibit C). Seven days after expiration of the second contract, R&J filed for possession and the District Court granted their request after waiting out the expiration of both contracts. On April 8, 2025, the District Court ordered possession (Exhibit 7) and on April 17, 2025, Staffelds submitted their Appeal (Exhibit I). The District Court disregarded Staffelds' pleas for; 1. Stay of proceeding pending Federal Court's decision on wrongful foreclosure (Federal Case 4:24-cv-12811). 2. Counter-claim of breach of contract (case in hand).

3. Cross-complaint against Wells Fargo, and. 4. Demand for Jury. District Court granted R&J , the breaching party, a $5,000 a month escrow bond as rent. Staffelds want to refinance the Second Property and use the downpayment to repurchase the First Property. But R&J's lien for $250,000 on the Second Property blocks the refinance unless the circuit Court grants the motion by Staffelds for the proceeds of the refinance, up to the amount of $250,000, to be deposited with the Court by title company as escrow bond for breaching both contracts. R&J filed a Motion to Dismiss based on a technicality to prevent meritorious adjudication by the Circuit Court. Circuit Court granted their motion. By the merits of the case is not being heard it will jeopardize Staffelds livelihood and the roof over Staffelds' heads unethically, illegally, and unjustifiably. Staffelds maintain their position acting in good faith and having clean hands. Finally, based on analysis and conclusion of the Court, Staffelds are hereby presenting the Court with proof that the Appeal was filed timely, and Brief was filed timely, and fee waiver was filed timely, but Circuit Court of Washtenaw County never decided R&J is fighting against Staffelds so they would lose their primary residence in Michigan District Court, Circuit Court, and now, federal Court.

## Legal Standards

### Summary Judgment Standard

Summary judgment is appropriate IF the pleadings, answers to interrogatories, admissions, affidavits, and other evidence establish no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* 29 C.F.R. § 1614.109(g); *see also Murphy v. Dep't of the Army*, EEOC Appeal No. 01A04099 (July 11, 2003) (noting that the regulation governing decisions without a hearing is modeled after the Federal Rules of Civil Procedure, Rule 56). Only disputes over facts that might affect the outcome of the suit under governing law, and not irrelevant or unnecessary factual disputes, will preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Material factual disputes include

2

credibility disputes where two or more people have different versions of the relevant event, and the determination of that credibility dispute will affect the outcome of the case. There is no genuine issue of material fact if the relevant evidence in the record, taken as a whole, indicates that a reasonable fact-finder could not return a verdict for the party opposing summary judgment. *Id.*

When opposing a properly supported motion for summary judgment, a party must respond with *specific facts* showing that there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *See Anderson*, 477 U.S. at 250. An opposing party may not rest upon mere allegations or denials in the pleadings or upon conclusory statements in affidavits; rather, they must go beyond the pleadings and support their contentions with proper documentary evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To defeat summary judgment, a party must show that there is sufficient material evidence supporting the claimed factual dispute to require a fact finder to resolve the parties' differing versions of the truth at trial. *Anderson*, 477 U.S. at 248-49.

**Plaintiffs' Claims Against Defendant R&J are Properly Pled**

It is well-settled that a complaint is a "pleading" within the meaning of Rule 8 of the Federal Rules of Civil Procedure. Rule 8, titled *General Rules of Civil Procedure*, provides that a pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief. *Fed. R. Civ. P. 8(a)(1) – (a)(3).*

Rule 8(d) provides that pleadings must be concise and direct, permits a party to set out 2 or more statements of a claim alternatively or hypothetically, and states that if a party makes alternative statements, the pleading is satisfactory if any one of them is sufficient. *Fed. R. Civ. P. 8(d)(1) –*

3

*(d)(3).* Further, Rule 8(e) specifically states: "Pleadings must be construed so as to do justice." *Fed. R. Civ. P. 8(e).* Additionally, alternative pleading is a fundamental aspect of the U.S. court system, allowing a party to allege multiple claims that may seem contradictory, but could potentially be proven true. In the Federal Sixth Circuit, pleading alternative theories of liability is **permissible**, allowing plaintiffs to present and prosecute potentially inconsistent claims particularly when the evidence supporting a specific theory is uncertain during the pleading stage. *Ohio Public Employees Retirement System v. Federal Home Loan Mortgage Corp*, 830 F. 3rd 376 (6th Cir. 2016). See also *Fed. R. Civ. P. 8.* In fact, Michigan case law makes it clear that a party may state as many separate claims as the party has, regardless of consistency and regardless of whether the claim or defense is based on legal grounds, equitable grounds, or both. *Abel v. Eli Lilly & Co*, 418 Mich 311, 343 N.W.2d 164, *cert denied,* 469 U.S. 833 (1984). Assertion of inconsistent claims is permitted even when proof of one claim must defeat the existence of another. *Id*.

Where a plaintiff pleads alternative theories of liability, it is an abuse of discretion for a trial court to strike the alternative theories as not being properly drawn without conducting a hearing, particularly in light of Michigan's liberal rule of amended pleadings. *Maurer v. McManus*, 161 Mich App 38, 409 N.W.2d 747 (1987). In this case, a review of Plaintiffs' Complaint makes clear that the allegations in support of Staffelds' claims for breach of contract, unjust enrichment, fraudulent misrepresentation, and violations of the FDCPA  and other federal acts, meet the pleading requirements outlined above. The allegations in support of those claims are concise, broken down into short statements as to how Plaintiffs are entitled to relief, the content of each paragraph is limited to a single set of circumstances (to the extent practicable), and each claim for relief is stated in separately.

**COUNT 1 – QUIET TITLE**

4

Staffelds seek equitable relief pursuant to 28 U.S. Code § 2409a, by inserting and reasserting their claim on First and Second real property quiet title action. According to the statute, this is an example of Defendant holding a title that was obtained during the redemption period of a wrongful foreclosure. Additionally, the second wrongdoer, R&J, purchased the First Property, mortgaged the Second Property, did not remove the lien, and breached two outstanding contracts with the Staffelds; this is a clear and convincing proof, and obtained the title by false pretenses, fraudulent misrepresentation, and intention to defraud Staffelds off their rightful title and evict them from their home as they filed for possession. In compliance with 28 U.S. Code § 2409d, the Staffelds has set forth with peculiarity the nature of the right, title, or interest, which they claims in the real property, the circumstances under which it was acquired, and their right to the title or interest claimed by any means (governmental or non-governmental). There is no dispute over the facts that Wells Fargo foreclosed the First Property and R&J purchased it during the redemption period. There is no dispute to the facts that R&J signed two contracts to sell the property to Staffelds. There is no dispute in the facts that R&J has not and is not able to remove BHV's lien. It is an undisputed fact that Staffelds cannot secure a mortgage unless the lien is removed (Exhibit F - NEXA). This is an undisputed fact pattern that R&J, a loan shark, made an approximately $850,000 investment and is collecting $1,550,000 on their investment within a year (64%). This is undisputed fact that they mortgaged Staffelds Second Property and used the proceeds to pay the First properties taxes, homeowners' insurance, and upkeep and this is an undisputed fact that Staffelds have been subjected to their illegal treatment and actions and demand a quite title from both defendants; Wells Fargo and R&J. Therefore, Staffelds request that this Honorable Court enter a judgment in their favor and dismiss R&J's summary judgment and motion to dismiss. Staffelds are asking for:

A.    For a declaration of the rights and duties of the parties, specifically that the foreclosure of real property located at 341 Corrie Road, Ann Arbor, MI 48105 is

wrongful;

B.     For issuance of an Order canceling the foreclosure action, declaring that Plaintiffs have superiority of title over Defendants to the Subject Property.

C.     To quiet title to the Subject Property in favor of Plaintiffs and against Defendants; By a court order clarifying and confirming Staffelds' right to property ownership; and

D.  To grant such additional relief as the Court deems just and proper.
   Staffelds have petitioned before this Honorable Court and requesting

an order of quiet title and finding them the rightful owner of both properties. This is an action for quiet title and not simple as R&J cites and definitely not a Landlord/Tenant case. Staffelds maintain their position as rightful owner because Wells Fargo foreclosed on a person that passed away four years and eight months prior to the foreclosure. Request for discovery have been submitted to both Wells Fargo and R&J to first, find out how a deceased could have been served and second, a predatory lender, R&J, signed two contracts, mortgaged the Second property in anticipation of sales of first property but now refuses to sell the property to Staffelds and wants to evict them.

## COUNT 2 – INJUNCTIVE RELIEF

Staffelds ascertain as a result of Wells Fargo's actions in wrongfully foreclosing their property and R&J's fraudulent misrepresentation of their intentions to sell the property, but not removing the lien, not extending the Lease Agreement nor the Purchase Agreement, and absent injunctive relief; Staffelds will suffer irreparable harm, loss of their home, which is unique and irreplaceable and will be evicted if this Honorable Court does not order an injunctive relief. Staffelds further be irreparably harmed if a temporary restraining order is not issued to stop R&J from continuing their eviction and possession suits in a Landlord/Tenant Court.Therefore, Staffelds pray that this Honorable Court:

A.     Enter a Temporary Restraining Order pursuant to MCR 3.310(B), restraining Defendants and their authorized representatives from completing the foreclosure process, applying for possession, and obtaining a writ of eviction against Staffelds;

B.     Issue an Order to Show Cause and set a hearing date to compel Defendants to

6

show why this Temporary Restraining Order should not be made a Preliminary Injunction; and

C.      Issue a Preliminary Injunction enjoining Defendants and their authorized representatives from completing the foreclosure on second property and possession process according to the current possession suit;

D.      Enter an award of interest, costs, and reasonable legal fees so wrongfully incurred by Plaintiffs and directing Wells Fargo Bank to pay or settle the amount of $1,150,000 to Staffelds; and

E.      Grant such additional relief as the Court deems just and proper.

But for this Honorable Court's temporary restraining order against R&J, R&J is aggressively pursuing their demand and writ of possession in State District Court.

## <u>COUNT 3 – BREACH OF CONTRACT</u>

While R&J cannot deny the undisputed and undeniable facts that R&J has signed two Purchase Agreement, has two contracts (exclusive Lease Agreement with option to purchase, and Purchase Agreement), (Exhibit C) (Exhibit A) in both contracts R&J promises to sell to Staffelds  even with 64% markup. It is ironic how the council for R&J has not read both contracts and calls a Purchase Agreement a Lease Agreement. It is also the intentions of Staffelds to show this Honorable Court the reasons R&J, despite both contracts, had no intentions of selling this property to Staffelds; 1. If this the first contract is a Landlord/Tenant contract, why has R&J charged Staffelds for property taxes, homeowners insurance and all other expenses associated with the ownership of a property? 2. If R&J is acting in good faith, why their council has blatantly expressed to District Court that they have no intentions of negotiating with Staffelds, (Exhibit B – court transcripts). 3. When BHV imposed a nuisance lien on the property R&J director, Jerry Watha, told the Staffelds that if they withdraw their Federal complaint against BHV, he will release the lien by November 1, 2024. Yet another broken promise by R&J to Staffelds; they withdrew their complaint, and Mr. Watha did not clear the lien. (Exhibit K). 4. The exclusive lease with option to purchase agreement (Exhibit A) on Section 2.1 says that the parties "SHALL" renew this contract for another 13 months. It is

7

clear and undisputable breach of this contract where R&J maliciously filed a possession suit with the State District Court. 5. It is an explicit breach of first contract where on Section 3.1 it says upon making the one-year payments for $5,000 a month (Staffelds paid and were never late) , R&J will give a $50,000 credit towards the purchase price of $1,050,000. On October 5, 2024, in Sinbad's Restaurant, in front of a witness, the owner of R&J, Mr. Watha, explicitly stated that he has no intentions of giving Staffelds this $50,000 credit. Yet another factual indication of R&J's intentions and actions of breach of the first contract. 6. R&J increased the purchase price by almost $100,000 violating Section 3.1 of the contract they so willfully signed (Exhibit L).7. this is undisputed fact that R&J partner Rana Matar signed a purchase agreement with Staffelds (Exhibit C) that even reflected the extra $100,000 extra increase to the purchase price. 7. Staffelds acting in good faith applied for mortgage but after the mortgage company ordered the title work realized that Mr. Watha and R&J were not able or were not willing to remove the lien from the title. Consequently, no mortgage company will extend a mortgage to Staffelds to purchase a property that has a lien on it. (Exhibit D) 8. Staffelds' paid off property became mortgaged simultaneously to signing the first contract by R&J to support payments of taxes, fees, homeowners' insurance, which were all subtracted from the proceeds of the second mortgage in anticipation of sales of the first property, Therefore, by breaching both contracts R&J cannot justify taking and forfeiture of the second property and proceeds of its mortgage because it was done in anticipation of the first and second contracts' performance. R&J is intentionally breaching both contracts and waited out for both contracts to expire in order to make the breaching of both contracts easier for them. 9. If R&J did not have intensions to breach both contracts, why would they obtain a mortgage on a property that they are under obligatory contract to sell to Staffelds at the same time Staffelds were trying to buy it? 10. The Government of the United States and the Government of the State of Michigan both regulate lending practices, mortgage industries, and contractual agreements. By breaching both contracts R&J is violating both state and Federal laws.

WHEREFORE, Staffelds respectfully request this Honorable Court to grant them relief by Defendant R&J's motion to dismiss and summary judgment an since they have unclean hands, and they are first breaching party, to order R&J to transfer the title of first property as a quit claim deed with zero consideration (maximum possible relief under 15 U.S.C. § 1692k(a)) and compel the R&J to withdraw their mortgage lien from Staffelds' Second Property in a form of recorded release of the lien with zero consideration. Staffelds have come to this Honorable Court and pray for justice before this Court.

## COUNT 4 – FRAUDULENT MISREPRESENTATION

A fraudulent misrepresentation is when deceptive statements are made intentionally to induce someone to enter a contract; In this case real estate transaction. R&J knew from the beginning that they will not honor their contracts, they signed and promised twice to sell the first property to Staffelds. Staffelds with preponderance of evidence and clear and convincing admissions of R&J's officers and councils Even though they signed both contracts willfully; their acts were intentionally done to defraud Staffelds from their primary residence. There has been several false statements made to encourage and make believe of Staffelds entering into both contracts with R&J and mortgaging their second property in reliance of both contracts and rendering the proceeds of the mortgage. R&J made believe that they will have marketable title and will sell to Staffelds. R&J and its officers, Jerry Watha, and Rana Matar, had full knowledge of falsehood of their statements and they intended to induce the action by these false statements to Staffelds to sign both contracts and mortgage their second property in support of these two contracts. Staffelds' specific actions to pay monthly payments to R&J, was done so on reliance of false statement of R&J officers in forming their decision to sign two sales contracts. Staffelds who are the deceived party and entered in both contracts in reliance of R&J's promise to sell, are suffering such high level of harm and damages by losing the roof over their heads as a result of relying on Jerry Watha and Rana Matar's

9

Case 4:24-cv-12811-SDK-DRG   ECF No. 35, PageID.589   Filed 06/09/25   Page 18 of 35

false statements made knowingly, from the beginning, that they had no intentions of selling the first property to Staffelds (Exhibit M). In fact, R&J imposed several conditions and multiple forms of payments and compensation in both real estate transactions while they have had significant undisclosed agenda; they wanted to breach both contracts from the beginning. When a real estate investor like R&J, misleads by false statements and signs two contracts in bad faith and mortgage two properties and intends to breach both contracts and negotiates to secure a contract based on misrepresentation; it caused and leads to significant amount of financial loss even after pandemic to Staffelds. (Pandemic and loss of self-employment income was the original reason for Staffelds falling behind their payments with Wells Fargo.). Another layer of criminal activities by R&J is internet fraud by conducting business and real estate transactions through deceptive online schemes. Therefore, Staffelds who are deceived and aggrieved party are requesting this Honorable Court to rescind R&J's title order in both properties, prosecution for criminal charges for fraudulent misrepresentation and order damages Staffelds suffered as a result of intentional, deliberate, and malicious fraudulent misrepresentation, by R&J and its officers; Jerry Watha and Rana Matar, by fraudulent acquisition of both properties; in violation of 18 U.S. Code § 1001(False Statements). This Federal statute makes it a crime to falsify or conceal material facts and make false statements in any matter within the jurisdiction of Federal government in real estate transactions. Staffelds pray to this Court to order R&J's officers to be criminally investigated and charged. R&J misrepresented material facts and had knowledge of their intentions to forfeit Staffelds' properties. They intended to induce reliance by Staffelds in signing both contracts. Staffelds relied on those false statements and suffered damages a s a result of relying on the misrepresentations of facts and their intent, and their fraudulent real estate transactions.

### **COUNT 5 – UNJUST ENRICHMENT**

10

By Federal law, it is well-settled that unjust enrichment is a type of equitable remedy, and a court determines the reasonable value of the services or goods provided. Simply stated – where a defendant has received the benefit of the value of plaintiff's payments and has acted in bad faith, this results in an inequity to the plaintiff and constitutes an unjust enrichment of defendant at plaintiff's expense. *United States v. Ford*, 64 F. App'x 976, 983 (6th Cir. 2003); see also *Restatement (Third) of Restitution & Unjust Enrichment*. In this case, but for Wells Fargo's illegal and wrongful foreclosure on a deceased person, R&J would not have been able to purchase the first property at a very discounted rate a fraction of what the property is worth (65% discount) because they only paid $650,000 on a property that was appraised to be worth $1,050,000 (Exhibit N). which is the sale amount in the first contract. Staffelds not only put their life savings as down payment when they bought the property in 2017, they remodeled their home within their eight years of occupancy to accommodate disabled occupants. The pandemic caused Staffelds to lose their self-employment income. The sheriff's sale happened on June 1, 2023, by Wells Fargo the day after the government announced the conclusion of the pandemic, May 31, 2023, causation by Wells Fargo to incept such disastrous chain of events; especially and only for Staffelds. Wells Fargo was under contractual obligation to insure the mortgagee passed away within one year (Exhibit O). Had R&J signed both contracts in good faith, they would been entitled to receive compensation from Wells Fargo; when this Honorable Court found against Wells Fargo, or Wells Fargo would have needed to settle the matter with R&J. But since R&J is a criminal enterprise and their acts of racketeering and financial crimes whereby fraudulent misrepresentation of facts, are defrauding Staffelds from their primary residence; makes R&J no longer entitled to compensation. The $650,000 investment made R&J to gain title in the redemption period, was Staffelds right to assert and redeem their home. Wells Fargo another wrongdoer in this case not only foreclosed on a deceased person without regard to Staffelds' ownership rights and their recorded title with Washtenaw County; they cannot claim that they have not served a deceased person. Nor can they

11

claim that they foreclosed on the estate of the deceased. They cannot claim that they foreclosed on Karl and Azar Staffeld because there is no foreclosure in their credit reports or public record against them. Even though Karl Staffeld's name was on mortgage documents (Exhibit O). Where did Wells Fargo send the notices? Therefore, in combination of Wells Fargo's wrongful foreclosure and R&J's fraudulent misrepresentation to take advantage of Staffelds' redemption rights; Staffelds are entitled to quiet and clear title of both properties. R&J made a $650,000 investment and signed a contract to sell the same property within a year for $1,050,000 almost double of the amount they purchased the property for in redemption period that was Staffelds right to redeem. Additionally, mortgaged Staffelds' second property for $200,000 payment to Staffelds and expecting to receive $250,000 to release the mortgage and the lien; another $50,000 expected profit. R&J took over $135,000 of proceeds of mortgaging the second property for property taxes, homeowner's insurance policies, and other fees associated with the first property. Additionally, they charged the Staffelds $10,000 of security deposit, $5,000 a month payment. Totaling $60,000. And now, in addition to everything they received $205,000. R&J wants to forfeit, repossess, and demand possession. If this is not unjust enrichment as a result of fraudulent misrepresentation breach of Contract, and predatory lending practices, what is it? In a similar case, United States v. Unified Industries, Inc., the Court ordered for recovery when one party has been unjustly enriched at the expense of another even in the absence of a formal contract, under 28 U.S.C. § 1367(a) can also allow the Federal Courts to hear State law claims, including unjust enrichment that are related to a Federal claim; even as supplemental jurisdiction. When a party performs under a contract but the other party, Wells Fargo and R&J, fails to perform as agreed, a claim of unjust enrichment may arise. Here, R&J has unjustly retained a benefit obtained at the expense of Staffelds without proper compensation and legal justification. Even if there were not two contracts to support Staffelds' claim, or the contract were invalid, the equity dictates that the party who unjustly benefited should return the value of the benefit to the victims. Here, R&J signed a contract (exclusive lease) and in

Section 1.5 of it inspected the condition of the premises when purchased the property in redemption period; as-is and signed the contract freely. Prior to assessment of the lien by BHV, R&J claims that Staffelds altered the property. No alteration was made to the exterior of the property upon several inspections of Jerry Watha and BHV representatives. Contrary to R&J's claim, prior to purchasing the property by R&J, BHV approved a signed and sealed engineering design to update and improve the exterior of the property. (Exhibit P). The lien was assessed not because Staffelds altered the property, but because R&J as new owners, did not follow through according to the approved plan and did not make proper modifications to the property. Consequently, the lien was NOT assessed during the ownership of Staffelds, as they were implementing the plan accordingly but it assessed SIX MONTHS AFTER R&J PURCHASED THE PROPERTY. R&J still is refusing to spend any funds according to the approved plans, R&J's refusal to continue modifying the exterior is the only reason BHV assessed and continued to assess the lien. R&J reaped all the benefits of the purchase of the property by doubling their investment within a year with all expenses paid by Staffelds; but refusing to put a new roof when the ceiling collapsed in one of the bathrooms, almost injuring a nine-year old (Staffelds granddaughter), refusing to continue making exterior modifications so BHV would remove the lien, refusing to update interior and exterior of the property as new owners; but only taking the money and running to Michigan District Court to evict Staffelds. If R&J is asserting their ownership rights, with rights comes responsibilities; R&J was responsible as new owners to upkeep the interior and exterior of the property while receiving $10,000 deposit and $5,000 a month plus $130,000 proceeds of the second properties mortgage and follow BHV's instruction to continue modifications of the exterior of the property. Therefore, R&J is responsible for the lien six months after their ownership occurred. R&J was contemplating by their fraudulent intent from the beginning to defraud Staffelds from their primary residence and secondary property. R&J intentionally, deliberately, and maliciously did not, and is not, taking any actions to remove the lien so Staffelds could obtain a mortgage and purchase the property. This is

13

a clear example of when one party unfairly retains the benefit; R&J, at the expense of another; Staffelds. Defendant received the benefits, retained the benefits, but unjustly and unfairly refused to perform duties associated with receiving those benefits by retention of ownership, R&J refused unfairly refused to upkeep the property and provide Staffelds with clear title; an unjust enrichment.

## COUNT 6 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Staffelds pray to this Honorable Court to penalize R&J for intentionally inflicting emotional distress and physical and psychological harm to Staffelds and their household members that exhibited itself and manifested the symptoms of: Sleeplessness, Increased anxiety, Headaches, Nausea, Nightmares, Cold sweats, Loss of appetite, Loss of consortium, Shaking hands, Two heart attacks, Several anxiety attacks, Child endangerment, and such other injuries and physical manifestations as may appear during discovery.

## ANALYSIS AND ANSWER TO R&J's OBJECTION TO FEDERAL QUESTION

According to Section 1331, Title 28 of United States Code a jurisdictional statue Federal district Court have jurisdiction with ORIGINAL subject matter jurisdiction over ALL civil actions arising under the CONSTITUTION, LAWS, or TREATIES, of the United States. There is no dispute of fact that Staffelds ORIGINAL COMPLAINT, is within the jurisdiction of this Honorable Federal Court, therefore, according to statute the plaintiff's INITIAL complaint must contain references to the Federal question and the Federal issues evoked. A Federal question is a cause of action related to a party's right to take legal action due to a violation of their legal rights. Therefore, in Federal litigation a party has a cause of action when a recognized STATUTORY OR CONSTITUTIONAL right has been violated. The initial complaint by Staffelds against Wells Fargo undisputedly, is within Federal jurisdiction. Staffelds' Complaint against R&J arises and exists due to R&J's violation to Staffelds' constitutional right to the ownership of both properties involved in this case. Therefore, the Complaint raises a relevant Federal question. R&J, fraudulently impeded upon

14

Staffelds' rights to the ownership of both properties. R&J's counsel considers this Federal question a Landlord/Tenant case, within the jurisdiction of District Court. While in fact the Plaintiffs assert a breach of contract that the Federal statute forbids under several Federal statutory subtitles (all the sections apply). R&J's breach of contract and refusal to provide a clear and merchantable title to the property raises a Federal question of chain of title and issues pertaining to quiet title as a result of the original Complaint. According to Holmes Test a case "arises under" Federal law if the cause of action is created, protected, and relates to Federal law. Therefore, the Federal question jurisdiction exists by implication of several Federal questions in the case in hand. If this Hon Court revokes Wells Fargo's wrongful actions in foreclosing the property on a deceased person without service of process; R&J's illegitimate title will also automatically be revoked. Therefore, this is a Federal quiet title lawsuit that directly impacts R&J and its illegitimate acquisition of title to both properties under false pretenses and with fraudulent intent. The SUPPLEMENTAL JURISDICTION of this Honorable Court also exists even when Staffelds' claims does not have an independent basis for Federal jurisdiction (diversity of citizenship with R&J) When both cases against Wells Fargo and R&J share a "common nucleus of operative facts", even on a claim that does not have Federal jurisdiction because the original claim is a Federal question. R&J basis of raising the objection to Federal question is an exclusive lease with option to purchase where even the price was agreed upon and R&J officers signed the contract (Section 3.1 of Lease Agreement). The subsequent Purchase Agreement (Exhibit C - Purchase Agreement) was signed on a Federally approved real estate transaction document. R&J clearly and admittedly has informed this hon Court and state District Court; that they have no intention of honoring either contract. When the chain of title is in question, there are common facts, and when the Federal Court has power over defendants in this case; the Federal Court has supplemental jurisdiction over the state law claim if it shares a common nucleus of operative facts with the Federal claim; the claim against Wells Fargo. Under the Holmes creation test, in order to determine whether an action arises under Federal

15

law we have to look at the law that creates the cause of action. The quiet title action is a suit against Wells Fargo with the same common nucleus of fact pattern that applies to R&J's entitlement to their fraudulent rounds of actions that has created this cause of action. When a suit arises under the Federal law and creates a Federal cause of action (Staffelds v. Wells Fargo) the same case is sub judice, when the injured party; Staffelds, has suffered wrongful foreclosure despite existence of contract with Wells Fargo that explicitly spells out that Wells Fargo is responsible to provide mortgage insurance in case of death or disability of Mortgagee within a year. Therefore, the quiet title and breach of contract in violation of several Federal statues by Wells Fargo and R&J is "a relevant cause of action  created by a violation of several Federal statutes" (Name of statutes) that applies to this case; a federal question. The federal question applies when Federal law creates the cause of actions. Therefore, the case "arises under" the Federal law. *Shoshone Mining Co v. Rutter*, 177 U.S. 505 (1900). The judicial efficiency of federal courts mandates to include R&J in this suit because if this Honorable Court grants Staffelds the quiet title, then the next lawsuit would be R&J against Wells Fargo because the common nucleus of facts directly and inclusively relates to this case. Consequently, the location involving the claim, factual matters of the case, effects of the adjudication on all parties in this case arises under constitutional law and Federal statutes. This is not an "overinclusion" but it is identifying the same claims relating to the same property "arising under" Federal law. R&J Defendant had and has: 1) a legal duty (under both contracts and the Mortgage Agreement, 2) breached both contracts and refuses to sell, caused a violation of the Truth in Lending Act, and as a result, 4) Plaintiffs have suffered damages (writ of possession that is filed by R&J will be irreparable). Therefore, Staffelds pray to this Honorable Court to issue an injunction and stopping R&J from pursuing their case as a Landlord/Tenant case, and all other actions against Staffelds to evict them because IN FACT, R&J is the breaching party and the wrongdoer.

## <u>ANALYSIS OF THE FAIR DEBT COLLECTION PRACTICES ACT IMPLICATION</u>

It is ironic that R&J's counsel considers this case a Landlord/Tenant case, while the Federal Fair Debt Collection Practices Act (FDCPA) protects consumers from abusive, deceptive conduct, and unfair collection practices by third party debt collectors. The act sets limitations as to how debt collectors (the debtor or third parties) can contact and interact with consumers. Here, the third-party debt collectors are in fact attorneys who are representing R&J. The third-party attorneys, in addition to bar association guidelines, are forbidden to take certain actions when representing the original debtor; R&J. The prohibited practices according to the act that applies to the agents of the debtor prohibit them from abusive, deceptive, or unfair tactics. R&J has hired several attorneys to fight Staffelds in several Courts. A good example of harassment and abuse. The third parties are not to misrepresent the fact or deceive the Courts and consumers. R&J's representatives assert several statements in their pleadings that are misrepresentation of facts and deceitful claims. By referencing to the first contract and not mentioning the second contract (Purchase Agreement), by blaming Staffelds wrongfully for imposition of the lien while the lien was the result of inaction of R&J, by allowing R&J to unjustly enrich as a result of breach of contracts, by constantly making threats and taking legal actions against Staffelds, these representatives are acting in violation of FDCPA, a Federal law, that should protect Staffelds against deceptive and unfair debt collection activities by the third party even if they are attorneys. R&J is in violation of FDCPA law by using deceptive and misleading forms of communication to create the impression that the responsible party is Staffelds by infringing on their constitutional rights to own the property. Therefore, these repeated false claims by attorneys who are representing the wrongdoer are considered abusive and harassment. There is no question of inconveniencing Staffelds to repeatedly defend themselves against R&J's actions and their attorneys' constant litigations in many courts. The FDCPA aims to protect consumers such as Staffelds, from aggressive and unfair collection practices and sets a limit on how they can interact with consumers; abusive collection practices. R&J denies being a

debt collector, denies using instrumentality of Federally governed wire fraud, while taking Staffelds to District Court for possession and admitted receiving the $5,000 a month rent and petitioned for $5,000 a month bond, notwithstanding the Section 3.1 of the same contract they breached but also are trying to enforce before the Michigan District Court; a debt collection activity in violation of 15 U.S.C. 1692(F) that dictates the debtor, R&J, has fiduciary and bona fide obligation concerning such debt to not to be at fault in a commercial transaction. Therefore, FDCPA applies when R&J's agents when they take Staffelds to the Court knowingly that R&J is the breaching party and by admitting that their client will not negotiate in good faith and against their fiduciary obligation; they are governed by the Act. R&J admits being a real estate investment business, and a Landlord when submitted a claim of possession making them a debt collector and their attorneys a third party. Petitioned in State Court for a $5,000 bond makes R&J an admitted debt collector. It is ironic that R&J's council deliberately directs this Honorable Courts attention to only two issues; 1. Federal question. 2. FDCPA violation, and totally ignores answering the quiet claim, fraudulent representation, unjust enrichment, and breach of contract. Even if the Federal question did not exist, the FACT that R&J obtained a mortgage from Federally governed institution simultaneously signing a Purchase Agreement with the Plaintiff is a clear violation in Truth in Lending Act, which is a Federal question.

## ANALYSIS OF R&J's VIOLATIONS TO REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)

RESPA is a federal law designed to protect consumers in real estate transactions and to improve transparency in loans and mortgages. Transparency in RESPA mandates that the lenders provide borrowers with timely and complete disclosures about the costs of loans and mortgages. This RESPA is to prevent and protect consumers from unjustifiable charges and to insure that lenders do not overcharge or misguide the consumers in real estate transactions. RESPA applies to mortgages especially residential mortgages including purchase loans, refinances, and home equity

lines of credit. R&J's real estate transaction in both contracts with Staffelds and abuse, fraud, and lack of transparency is an example of unfair practices and excessive costs that should have been achieved through mandatory disclosures and is prohibited under RESPA. R&J by requiring excessively large security to sell the property to Staffelds, inflating the price unjustifiably and not disclosing their true intentions in breaching both contracts, has violated the RESPA. RESPA demands companies like R&J who are in real estate investment business to pay themselves for property taxes, homeowners' insurance, and other expenses associated with their ownership prior to transfer of the title. R&J made the loan to Staffelds for their residential property and promised them that they could purchase the property within a year. Section 8 of RESPA applies when a Federally related mortgage is in question (here) done by a business, R&J in exchange of a value and in agreement with understanding that it is secured by mutually agreed and signed contract. When R&J signed a purchase Agreement with Staffelds on a form that has been approved by the National Association of Realtors, it had to comply with the RESPA requirements. The agreement to sell to Staffelds; real estate settlement, mandates R&J to insure fair and transparent real estate settlement practices. Additionally, by communication via digital platforms, RESPA protected Staffelds by demanding full disclosure, specific performance, and not violating RESPA by compromising the integrity of the transaction. RESPA governs most residential real estate transactions. Both contracts between R&J and Staffelds are contracts, for residential real estate transactions. According to RESPA transparency for both home buyers and sellers throughout the real estate settlement process must be followed. R&J violated RESPA because they acted in bad faith and they did not disclose all the settlement costs in transferring the residential real estate, subject of this case. According to RESPA, a Federal Law, Staffelds must be protected from predatory lending practices in residential real estate transactions. RESPA and TILA, Truth in Lending Act, protect consumers from predatory lending practices; particularly high-cost mortgages. Therefore, the law required R&J to disclose loan terms and costs without being

predatory lending by imposing harsh conditions to Staffelds. Doubling the mortgage amount and taking advantage of Staffelds' dire situation, is in direct violation of RESPA by R&J. R&J aggressively and deceptively abused Staffelds by engaging in fraudulent misrepresentation and collection tactics. R&J expected by doubling the price of the property within a year, assessing a mortgage on the Staffelds second property owned by Staffelds in support of their contract to sale to extract maximum value for itself without regard for Staffelds' to repay the loan. If R&J and similar wrongdoers who do not honor their contracts and use legal tactics to get away with violating the laws of the land are not punished nor stopped, it would cause the collapse of the real estate market. Predatory lending is where the lender, R&J, acts in bad faith and has reason to believe that Staffelds could not afford to get a loan and purchase the property by doubling the price within a year. Federal law prohibits abusive lending practices by real estate investors such as R&J to impose high-pressure sales, misrepresentation of fact and fees and costs, and exploiting Staffelds vulnerabilities that is often targeting marginalized groups like elderly, disabled, and minorities, exactly like Staffelds. R&J used aggressive and deceptive sales contracts and deceived Staffelds into accepting to sign two contracts and a mortgage on a second property in contemplation of repurchasing their primary residence. Staffelds were unaware of R&J's ill intentions. R&J targeted Staffelds and used their financial vulnerabilities right after the pandemic and exploited them by predatory lending practices by pressuring them to sign a contract using several tactics. R&J intended to violate and breach both contracts from the beginning because R&J obtained a mortgage on the first property while they had a contract to sell it. Clearly R&J is contemplating to move forward with their possession actions without giving the Staffelds the chance to repurchase the property. They falsified all documents by signing two contracts in bad faith with extremely high return, excessive fees, extremely short terms, and misrepresented the terms. Predatory lenders often pressure borrowers to take out additional loans,(Second Property mortgage) to strip Staffelds from equities in both properties and by bait-and-switch schemes. To prove predatory lending

20

practices by R&J they must have reason to believe that Staffelds could not afford, nor could obtain a mortgage for this real estate transaction. R&J, not only committed unethical lending practices but committing predatory lending, they organized both contracts and a mortgage on a second property by committing unfair, abusive, misleading, and fraudulent real estate transaction with extremely high rate of return and fees in a very short period of time.

Therefore, Staffelds pray before this honorable Court; 1. And immediate injunction to be issued against R&J. 2. To preserve the spirit of justice, order the prosecution of R&J for financial crimes. A discovery request was sent to R&J council on May 27, 2025 requesting information about victimization of similar families, cases, and situations to be produced. Staffelds have no doubt that this is not the first time that R&J is engaging in Predatory lending. And Unless this Honorable Court will put a stop to it, it will not be that last time.

## ANALYSIS OF R&J'S VIOLATION OF TRUTH IN LENDING ACT, TILA

TILA is Federal law that requires real estate investors, such as R&J, to provide clear, true, and standardized information to consumers, such as Staffelds and protect consumers from unfair and deceptive lending practices. TILA mandates real estate investors to provide consumers with specific written disclosures including annual percentage rate (APR) and to be forthcoming and honest in their real estate transactions. TILA protects consumers from predatory and deceptive lending in real estate transaction. Had R&J been truthful in there intensions to breach both contracts with Staffelds; Staffelds would have never signed any of the contracts with them. TILA is applicable to these transactions between R&J; 1. The total sales cost is unfair and inequitable. 2. The demand of possession is directed to breach by R&J and not the Staffelds. 3. The security interest is not reasonable and equitable. 4. For insurance to be paid by the owner and not the Staffelds. 5. The deposit is outrageous where R&J acted in bad faith. 6. Referenced to breach of contracts by R&J. According to 15 U.S.C. Section 1601 et seq., TILA applies to mortgages that

requires the lenders to act in good faith; truthfully and accurately disclose the key terms in the mortgage. R&J violated by disclosing clearly, accurately, and conspicuously the everchanging prices, costs, and fees dealing with the Staffelds. R&J practices predatory lending by charging Staffelds excessive fees, hidden fees, increasing the amount of purchase several times, and risky high-cost contracts. R&J misrepresented the information and caused Staffelds to sign contracts they had no intension to honor. This lawsuit should not be dismissed because R&J violated TILA with regard to disclosures, finance charges, and APR calculations. Under U.S.C. 15 Section 1662(b) Staffelds should be protected from predatory lenders such as R&J and by undetected reimbursable fee tolerance violation in both contracts. Truth In Lending Act disclosure requirement was not followed by R&J and its prohibitions has to be applied to unfair, deceptive, abusive, and misleading practices by R&J. R&J also violated the Act by electronic communications prohibiting using such means to defraud consumers; a wire fraud.

HOEPA is an amendment to TILA that has been designed by Federal law to protect consumers like Staffelds from predatory mortgage lending ; particularly high-cost mortgages. It mandates specific disclosures and restrictions on certain loan features. HOEPA mandates real estate investment companies such as R&J, to provide truthful, and accurate disclosures to consumers such as Staffelds by potential risks, repayment options, and potential default consequences. HOEPA provides for enhanced remedies if lenders violate the Act and take advantage of consumers. A property is subject to HOEPA if it is the primary and principle dwelling of a consumer; this case. HOEPA provides relief, protection and restitution for consumers who end up using  a high-cost mortgage. Mortgages and purchase agreements that the rate of return is more than 8% are subject to HOEPA. In fact, HOEPA sets a maximum amount of threshold fees that can be charged in a real estate transaction. R&J's return on their investment, their fees, and their high-cost mortgage on both properties well exceeds the limits by HOEPA and federal law.

22

According to HOEPA, real estate investors are not allowed to extend a high-cost mortgage, to prevent high interest rates and high fees in real estate transactions. R&J's assessment of 64% return within a year on their investments is in violation of HOEPA and Federal law.

## ANALYSIS OF R&J's VIOLATIONS TO FEDERAL STATUTES ON LOAN SHARKING 18 U.S. CODE §§ 891-896

Title 18 U.S. Code Section 891-896 defines loan sharking as practice of extortionate lending especially in real estate transactions; a criminal offence. The loan sharking is an activity done by criminal organizations such as R&J. Section 892 prohibits making or conspiring to make extortionate extensions of credit and loans. Loan sharking is punishable by fines up to $250,000 and imprisonment up to twenty years. Loan sharks like R&J are typically charging significantly higher interest rates than legitimate lenders. They also engaged in extortionate threats, violence, and or intimidation to collect the debt. Federal law realizes that loan sharking is usually linked to organized crime and illegal activities of financial and commercial criminals. Loan sharks such as R&J, usually victimize vulnerable individuals such as seniors and disabled individuals; Staffelds. R&J is a criminal organization according to definition of Sections 891-896. Section 893 prohibits the willful advancement of money or property to any person "with reasonable grounds to believe that it is the intention of that person to use the money or property so advanced directly or indirectly for the purpose of making extortionate extensions of credit." Section 894 prohibits "use of an extortionate means … to collect or attempt to collect any extension of credit, or to punish any person for the nonrepayment thereof." Section 896 makes it clear that state prosecutions for extortionate credit transactions are not preempted by the Federal statute. While Federal law does not generally regulate usury state laws; it does influence how state usury laws apply. Federal regulations can preempt state usury laws for specific types of loans such as Federally related loans and mortgages. Therefore, usurious financial activities could fall under the constitution's commerce clause. Federal usury laws prevent lenders from providing

23

extraordinarily expensive – or usurious – loans to consumers. Essentially, usury laws are interest rate laws. There is no Federal law that sets maximum interest rates on consumer loans; rather, rates are restricted at the state level (25% in the State of Michigan). R&J is a criminal enterprise and a loan shark. Repayment to R&J, even if they did not breach both contracts, would have afforded doubling there money within a year. Loan sharking has several components; 1. Loan sharks are in business of lending and real estate investments; R&J. 2. Enforcement is done by severely punishing the borrower; Staffelds. 3. Collection in the form of harassment and intimidation; R&J's petition for possession. 4. Threat of severe consequences for non-payment; R&J's actions. Loan sharking is considered a felony under both federal and state laws. R&J made extortionate extension of one year credit at the usurious interest rate of 64% and are penalizing and threating Staffelds even more so than they already suffered in the hands of Wells Fargo, by using attorneys to develop illegal tactics to defraud Staffelds even further than they already have, and robbing them from their primary residence a place they are raising their grandchildren. R&J and its directors, Jerry Watha, and Rana Matar, are loan sharks, members of Chaldean mafia who use illicit profits from their other crimes to finance and manage their loan sharking operations. This is a high-level crime and should be investigated by law enforcement. Section 893 encompasses R&J's willful and malicious advancement in acquiring Staffelds' primary residence, under false pretenses by pretending that they intend to sell the property back to Staffelds, which is the opposite of what they are doing by petitioning for possession. R&J, its officers, and their attorneys made it clear that R&J have no intentions to sell the property back to Staffelds with reasonable grounds to believe that this was their intention  from the beginning and they only signed two contracts to deceive Staffelds into believing that they have purchased and mortgaged two properties with intentions of selling it to Staffelds. R&J's criminal usuary and loan sharking practices makes them felonious criminals by the form of racketeering and financial organized crimes. Staffelds pray to this Honorable Court to order prosecution to charge R&J,

Jerry Watha and Rana Matar, with the felonious loan sharking, racketeering, and violation of the

RICO Act (Racketeer Influenced and Corrupt Organizations Act) for running a criminal

enterprise and racketeering influenced by corrupt organization. R&J and its officers target

vulnerable victims through their organized criminal activities, therefore, according to RICO Act,

Staffelds are requesting this Honorable court to issue injunction against R&J and its officers for

running organized criminal enterprise and to prevent their further activities and misuses of the

justice system to infiltrate their illegitimate businesses and business activities. R&J is engaging

in criminal acts; fraud , embezzlement, theft, financial crimes, usury, and racketeering in

violation of several Federal Acts and statutes. R&J is spending the funds they acquired illegally

to hire best lawyers' money to buy to continue committing predicate offenses. Please order law

enforcement to investigate.

## CONCLUSION AND PRAYER TO THE COURT

For the reasons set forth above, Staffelds respectfully pray to this Honorable Court that

Defendant R&J's motion for summary judgement be denied. Staffelds respectfully requests that

this Honorable Court schedule this case for a pre-hearing conference and liability hearing as soon

as is practicable. Staffelds pray to this Honorable Court to issue a restraining order stopping R&J

from evicting Staffelds. Staffelds further pray that this Court refers this matter to the Federal

Prosecutor in addition to reporting this to financial crimes unit within the Federal government to

investigate R&J's criminal activities outlined herein as soon as possible; against R&J Group

Holdings, LLC, Jerry Watha, and Rana Matar, and all other companies registered in both of their

names, collectively and individually.

Respectfully submitted
By /s/: _____
Karl Staffeld, Plaintiff, *Pro Se*

By /s/: _____
Azar Sadeghi-Staffeld, Plaintiff, *Pro Se*

Dated: June 9, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2025, I served the foregoing *Memorandum of Law in*

*Opposition of R & J Group Holdings' Motion for Summary Judgment and Dismissal,* via USPS

first-class mail to the attorneys of record for the parties to this matter and upon:


David Sobel (P49662)
George Blackmore (P76942)
SOBLE PLC
31800 Northwestern Hwy #350
Farmington Hills, MI 48224
(888) 789-1715
dsoble@provenresource.com


Respectfully submitted,

By /s/: _____
Karl Staffeld
Plaintiff, *Pro Se*


Dated: June 9, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2025, I served the foregoing *Memorandum of Law in Opposition of R & J Group Holdings' Motion for Summary Judgment and Dismissal,* via USPS first-class mail to the attorneys of record for the parties to this matter and upon:

Mark D. Kundmueller, Esq. (P66306)
TROUTMAN PEPPER LOCKE LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virgina 23462
 (757) 687-7564
mark.kundmueller@troutman.com


Respectfully submitted,

By /s/:  *Karl Staffeld*
Karl Staffeld
Plaintiff, *Pro Se*


Dated: June 9, 2025