EXHIBIT B



Troutman Pepper Locke LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462

troutman.com

**Mark D. Kundmueller**
D 757.687.7586
mark.kundmueller@troutman.com

April 28, 2025

**VIA FEDEX**

Karl Staffeld and Azar Staffeld
341 Corrie Road
Ann Arbor, MI 48105

**Re:    Karl Staffeld and Azar Staffeld v. Wells Fargo Bank**
**United States District Court for the Eastern District of Michigan**
**Case No 4:24-cv-12811-SDK-DRG**

Dear Mr. and Mrs. Staffeld:

On March 17, 2025, Wells Fargo served upon you the following documents:

1. Wells Fargo's First Set of Request for Production and Interrogatories to Plaintiff Karl Staffeld;
2. Wells Fargo's First Set of Requests for Admissions to Azar Staffeld with Exhibits A through E;
3. Wells Fargo's First Set of Request for Production and Interrogatories to Plaintiff Azar Staffeld;
4. Wells Fargo's First Set of Requests for Admissions to Azar Staffeld with Exhibits A through E.

The responses to Wells Fargo's discovery requests were due on April 16, 2025. We noticed that several documents were filed on the court's docket; however, they do not constitute sufficient responses to the discovery requests.

In accordance with the Federal Rules of Civil Procedure, please provide a response to each Interrogatory, Request for Production, and Request for Admission. Each Interrogatory must be answered separately and fully in writing, with any objections stated specifically. For Requests for Production of Documents, please produce documents and label them to correspond to the categories in the request. If you are unable to respond or object to a specific request or interrogatory, please explain why.

**April 28, 2025**
Page 2



---

As you did not respond to Wells Fargo's Requests for Admission within the allotted thirty days allotted by Federal Rule of Civil Procedure 36(a)(3), Wells Fargo considers these Requests admitted.

Please provide full and complete responses to Wells Fargo's discovery requests, attached to this correspondence, by May 12, 2025. If you are unable to provide Wells Fargo with complete responses to its discovery requests, we may file a motion to compel to ensure compliance.

If you have any questions or require further clarification, please reach us at mark.kundmueller@troutman.com or julian.miller@troutman.com.

Sincerely,

_____

Mark D. Kundmueller
Counsel for Wells Fargo Bank

Enclosures



FedEx® Tracking


SHOPRUNNER by FedEx.

**Ready to shop again?**
Get exclusive deals at your favorite stores.

SHOP NOW

**DELIVERED**

# Tuesday

4/29/25 at 11:37 AM

Signed for by: Signature not required

 **Obtain proof of delivery**

**How was your delivery?**

☆ ☆ ☆ ☆ ☆

**DELIVERY STATUS**

Delivered 



📍 **GPS delivery location**

**ADD YOUR EMAIL TO STAY UPDATED ON THIS SHIPMENT**

GET UPDATES

**MORE OPTIONS**

**TRACKING ID**

880859209006  ✏ ☆ 📋

**FROM**
Troutman Pepper Locke
Mark D. Kundmueller
222 Central Park Avenue Suite 2000
VIRGINIA BEACH, VA US 23462





**WE HAVE YOUR PACKAGE**
WASHINGTON, DC
4/28/25 5:33 PM

**ON THE WAY**
ANN ARBOR, MI
4/29/25 8:28 AM

**OUT FOR DELIVERY**
ANN ARBOR, MI
4/29/25 8:47 AM

**DELIVERED**
Karl Staffeld & Azar Staffeld
341 Corrie Road
ANN ARBOR, MI US 48105
2022741908

*Delivered*
4/29/25 at 11:37 AM

 **View travel history**

---

## Shipment facts 

 Shipment overview

**TRACKING NUMBER**   880859209006

**DELIVERED TO**   Residence

**SHIPPER REFERENCE**   219524.000899

**SHIP DATE** ⓘ   4/28/25

**STANDARD TRANSIT** ⓘ   4/29/25 before 12:00 PM

**DELIVERED**   4/29/25 at 11:37 AM

## Services

**SERVICE**   FedEx Priority Overnight

**TERMS**   Shipper

**SPECIAL HANDLING SECTION**   Deliver Weekday, Residential Delivery



After printing this label:
**CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH**
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

ORIGIN ID:NTUA        (202) 274-1908
MARK O. KUNDMUELLER
TROUTMAN PEPPER LOCKE
222 CENTRAL PARK AVENUE
SUITE 2000
VIRGINIA BEACH, VA 23462
UNITED STATES US

TO  **KARL STAFFELD & AZAR STAFFELD**

**341 CORRIE ROAD**

**ANN ARBOR MI 48105**
(202) 274-1908
INV:
PO:                    DEPT:

SHIP DATE: 28APR25
ACTWGT: 1.00 LB
CAD: 8541404/NET4555

BILL SENDER

REF: 219524.000899

58CJ2/4ACC/C6C4

FedEx Express

TRK#  **8808 5920 9006**

**XS ARBA**

TUE – 29 APR 12:00P
PRIORITY OVERNIGHT
RES
**48105**
MI-US        DTW

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**KARL STAFFELD and AZAR STAFFELD,**

     **Plaintiffs,**

**v.**

**WELLS FARGO BANK, N.A.,**

     **Defendant.**

**Case No. 4:24-cv-12811-SDK-DRG**

 **Hon. Shalina D. Kumar**
 **Hon. David R. GA**
 **rand**

## DEFENDANT WELLS FARGO BANK, N.A.'S FIRST SET OF REQUESTS FOR ADMISSIONS TO PLAINTIFF KARL STAFFELD

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), by counsel and pursuant to Rule 36 of the Federal Rules of Civil Procedure, propounds the following Request for Admissions to Plaintiff Karl Staffeld ("Plaintiff"). Plaintiff is requested to answer under oath the Requests set forth below within thirty (30) days of the date of service and thereafter supplement such answers as and when required by all applicable rules. The requests are continuing until trial.

## DEFINITIONS AND INSTRUCTIONS

1. The term "document" or "documents" shall be given the fullest interpretation allowable under the Federal Rules of Civil Procedure. Without limiting the foregoing, "document(s)" means any form of data compilation, including written, electronic, printed, typed, drawn, taped, filmed, recorded, or graphic matter, that you possess, control, or have custody of, or have the right to

obtain upon request or demand.  This definition includes all copies, reproductions, or facsimiles of documents by whatever means made.  If copies of a document are not identical for any reason, including handwritten notations, initials or identification marks, each non-identical copy is a separate document within the meaning of this definition.

2.      "Communicate" or "Communication" means every manner or means of disclosure, transfer, or exchange, including, without limitation, the dissemination of Documents, and every disclosure, transfer, or exchange of information whether orally or by Document or whether face-to-face, by telephone, mail, personal delivery or otherwise.  The references to, or requests for, communications in these discovery requests refers to all communications of which you are aware and/or communications that you possess, control, or of which you have custody.

3.      "Wells Fargo" shall refer to Defendant Wells Fargo Bank, N.A. and its representatives and agents.

4.      "Plaintiff," "you," and "your" shall refer to Azar Staffeld and his representatives and agents.

5.      If you object to any of these discovery requests, please state the reasons for your objections and specify the part of the request to which you object.  Similarly, if you do not object to a particular discovery request but are unable to respond fully to

that discovery request, then you shall respond to the fullest extent possible and provide an explanation for your lack of a full response.

6.      When identifying natural or non-natural persons in your answers or responses, state their full name (and any aliases and trade or fictitious names) and their current or last known business address and telephone number, or, alternatively, in the case of natural persons, their residential address and telephone number if their business address and telephone number are unknown.

7.      The word "person" shall mean any natural person, corporation, partnership, firm, association, joint venture, sole proprietorship, trust, department, agency, or any other legal, business, or governmental entity.

8.      The phrasing of these discovery requests shall be construed as to make your response inclusive rather than exclusive.  Thus, the word "include" or "including" is intended to be comprehensive and means "including, but not limited to."  Similarly, the singular form of all words includes the plural form and the plural form of all words includes the singular form; the words "and" and "or" shall be interpreted as both conjunctive and disjunctive; the word "any" shall mean "any and all;" and the word "each" shall mean "each and every."

9.      "Identify" or "identity" with respect to oral, written, telephonic or electronic communications shall mean:

        a.  The communications medium, *e.g.*, written, oral, telephonic or electronic;

3

b.  The date (or close approximation) of each such communication;

c.  The identity of all persons who were present at each communication;

d.  The substance and nature of each such communication.

10.     Electronically Stored Information (ESI) shall be collected in a manner that preserves metadata to the extent reasonably possible.  ESI shall be produced in searchable PDF.  The original native files shall be preserved.

11.     With respect to the production of documents, as to each responsive document withheld from production on any ground, expressly state the basis for the withholding and describe the nature of the document, communication, or tangible thing withheld in a manner that will enable Defendant to assess the basis for the withholding.

12.     The "Complaint" shall refer to the First Amended Complaint filed by Plaintiff in this matter on or about February 28, 2025, in the United States District Court for the Eastern District of Michigan and any amendment thereto.

13.     The "Answer" shall refer to the Answer to the Complaint filed by Wells Fargo on or about March 14, 2025, and any Amendments thereto.

14.     The "Property" shall refer to the real property located at 341 Corrie Road, Ann Arbor, MI 48105.

15.     The "Mortgage" shall refer to the certified copy of the mortgage document prepared by Marketplace Home Mortgage, L.L.C., and recorded by American Title Co. of Washtenaw for 341 Corrie Road Ann Arbor, MI 48105.

16.     The "Note" shall refer to the promissory note dated December 15, 2017, for Loan Number 570170991033, in which the Borrower Dorothea Vermillion Staffeld, promises to pay Marketplace Home Mortgage, L.L.C. the principal amount of $424,100.00 plus interest at a yearly rate of 4.250%.

17.     "Residence" shall refer to where You live at or have a home where you typically reside and consider a primary place of living.

18.     The relevant time period shall begin on November 1, 2018.

Furthermore, if your response to any of the following requests for admission is anything other than an unqualified admission or a specific denial, you must set forth in detail the reasons why you cannot truthfully admit or deny the matter. A denial must fairly meet the substance of the requested admission, and when good faith requires that you qualify an answer or deny only a part of the matter of which an admission is requested, you must specify so much of it as is true or qualify or deny the remainder. You may not give lack of information or knowledge as a reason for failure to admit or deny unless you state that you have made a reasonable inquiry and that the information known or readily obtainable by you is insufficient to enable you to admit or deny.

## **REQUESTS FOR ADMISSION**

1.      Admit that the document attached here to as Exhibit A is a genuine, accurate, and authentic copy of a Note dated  December 15, 2017, pertaining to the Property (the "Note").

**Response:**

2.      Admit that the Note evidences a loan in the amount of $424,100.00 between Marketplace Home Mortgage, L.L.C. and Dorothea Vermillion Staffeld.

**Response:**

3.      Admit that Dorothea Vermillion Staffeld's signature appears on the Note.

**Response:**

4.      Admit that Your name does not appear as a co-borrower on the Note.

**Response:**

5.      Admit that Your signature does not appear on the Note.

**Response:**

6.      Admit that the document attached as Exhibit B is a genuine, accurate, and authentic copy of a Mortgage dated December 15, 2017, pertaining to the Property (the "Mortgage").

**Response:**

7.     Admit that Dorothea Vermillion Staffeld's signature appears on the Mortgage.

**Response:**

8.     Admit that Your name does not appear as a co-borrower on the Mortgage.

**Response:**

9.     Admit that Your signature does not appear on the Mortgage.

**Response:**

10.     Admit that the document attached as Exhibit C is a genuine, accurate, and authentic copy of Dorothea Vermillion Staffeld's Death Certificate dated November 2, 2018 (the "Death Certificate").

**Response:**

11.     Admit that the Death Certificate lists Dorothea Vermillion's date of death as November 1, 2018.

**Response:**

12.     Admit that Dorothea Vermillion Staffeld passed away on or about November 1, 2018.

**Response:**

13.    Admit that the document attached as Exhibit D is a genuine, accurate, and authentic copy of correspondence from Wells Fargo dated March 31, 2020 (the "Short Term Payment Relief Notice").

**Response:**

14.    Admit that the Short Term Payment Relief Notice is addressed to "Dorothea V Staffeld."

**Response:**

15.    Admit that the Short Term Payment Relief Notice was sent to the Property.

**Response:**

16.    Admit that the Short Term Payment Relief Notice states that Dorothea V. Staffeld informed Wells Fargo about financial hardship she was facing.

**Response:**

17.    Admit that You communicated with Wells Fargo while representing Yourself as Dorothea Vermillion Staffeld.

**Response:**

18.    Admit that You knew Wells Fargo believed it was communicating with Dorothea Vermillion Staffeld in similar correspondence between You and Wells Fargo between November 2018 and October 2022.

**Response:**

19.     Admit that You did not inform Wells Fargo of Dorothea Vermillion Staffeld's death in 2018.

**Response:**

20.     Admit that You did not inform Wells Fargo of Dorothea Vermillion Staffeld's death in 2019.

**Response:**

21.     Admit that You did not inform Wells Fargo of Dorothea Vermillion Staffeld's death in 2020.

**Response:**

22.     Admit that You did not inform Wells Fargo of Dorothea Vermillion Staffeld's death in 2021.

**Response:**

23.     Admit that You informed Wells Fargo of Dorothea Vermillion Staffeld's death on or about October 27, 2022.

**Response:**

24.     Admit that no life insurance product from Wells Fargo was ever added to the Mortgage by Dorothea Vermillion Staffeld.

**Response:**

25.     Admit that no life insurance product from Wells Fargo was ever added to the Note by Dorothea Vermillion Staffeld.

**Response**:

26.    Admit that You did not personally take out any life insurance product on the Note.

**Response**:

27.    Admit that You did not personally take out any life insurance product on the Mortgage.

**Response**:

28.    Admit that the document attached as Exhibit E is a genuine, accurate, and authentic copy of correspondence from Wells Fargo to the Property's address dated January 12, 2018 (the "Collection Notice").

**Response**:

29.    Admit that in the Collection Notice was sent from Wells Fargo to the Property.

**Response**:

30.    Admit that the Collection Notice expressly states that "if you currently have credit life insurance or other optional products, these products will not transfer to Wells Fargo."

**Response**:

31.    Admit that, as alleged in the Amended Complaint, You "were unable to make all the mortgage loan payments" on the Property.

**Response:**

32.     Admit that a foreclosure sale, initiated by Wells Fargo on the Property,

occurred on June 1, 2023.

**Response:**

33.     Admit the foreclosure sale was final.

**Response:**

34.     Admit that the Amended Complaint You filed on February 28, 2025,

was after the foreclosure sale.

**Response:**

35.     Admit that You are not currently residing at the Property.

**Response:**

36.     Admit that You are not currently in possession of the Property.

**Response:**

Dated:      March 17, 2025                    Respectfully submitted,

By:    /s/ *Mark D. Kundmueller*
Mark D. Kundmueller, Esq. (P66306)
TROUTMAN PEPPER LOCKE LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Phone: (757) 687-7564
Facsimile: (757) 687-1524
mark.kundmueller@troutman.com

*Counsel for Defendant Wells Fargo*
*Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day of March 17, 2025, I served the foregoing

*First Set of Request for Admissions to Plaintiff Karl Staffeld*, via Federal Express to

the following:

> Karl Staffeld
> Azar Staffeld
> Plaintiffs, *Pro Se*
> 341 Corrie Road
> Ann Arbor, MI 48105
> > */s/ Mark D. Kundmueller*
> > Mark D. Kundmueller, Esq.

# EXHIBIT A

LOAN #: 570170991033
MIN: 1002491-2000100053-3

# NOTE

December 15, 2017               Edina,                       Minnesota
[Date]                         [City]                         [State]

341 Corrie Rd, Ann Arbor, MI 48105
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$424,100.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Marketplace Home Mortgage, L.L.C., a Limited Liability Company.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.250 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **February 1, 2018.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **January 1, 2048,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **7380 France Avenue S, Suite 200 Edina, MN 55435**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. **$2,086.32.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
Ellie Mae, Inc.                     Page 1 of 3                    F3200NOT  0107
F3200NOT (CLS)
12/15/2017 06:45 AM PST



LOAN #: 570170991033

sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of  **15**         calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which

F3200NOT  0107
F3200NOT (CLS)
12/15/2017 06:45 AM PST



**LOAN #: 570170991033**

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
DOROTHEA V STAFFELD

Lender: Marketplace Home Mortgage, L.L.C.
NMLS ID: 1082
Loan Originator: Brian K Goodman
NMLS ID: 181781

Without Recourse
Pay to the Order of                    **Wells Fargo Bank, N.A.**

_____
Karen Casais
Quality Control Analyst
Customers Bank
*as Power of attorney for*
*Marketplace Home Mortgage, LLC*

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY _____
DAVID C. PETERSON, SENIOR VICE PRESIDENT
027

PAY TO THE ORDER OF:

Without Recourse

BY: _____

TITLE: _____

[Sign Original Only]

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200 1/01
Ellie Mae, Inc.                                    Page 3 of 3                    F3200NOT  0107
                                                                                 F3200NOT (CLS)
                                                                                 12/15/2017 06:45 AM PST



# EXHIBIT B

**Certified Copy**
American Title Co. of Washtenaw

# MORTGAGE

When recorded, return to:
Marketplace Home Mortgage, L.L.C.
Attn: Final Document Department
c/o DocProbe
1125 Ocean Avenue
Lakewood, NJ 08701

This document was prepared by:
Marketplace Home Mortgage, L.L.C.
7380 France Avenue S, Suite 200
Edina, MN 55435

LOAN #: 570170991033

─────────────────[Space Above This Line For Recording Data]─────────────────

| MIN   1002491-2000100053-3 |
|---|
| **MERS PHONE #: 1-888-679-6377** |

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated **December 15, 2017,**           together with all Riders to this document.
(B) "Borrower" is **DOROTHEA V STAFFELD, A SINGLE WOMAN.**

Borrower's address is **341 Corrie Road**
**Ann Arbor, MI 48105.**

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is    **Marketplace Home Mortgage, L.L.C..**

Lender is **a Limited Liability Company,**                  organized and existing under the laws of **Minnesota.**                    Lender's address is **7380 France Avenue S, Suite 200, Edina, MN 55435.**

(E) "Note" means the promissory note signed by Borrower and dated **December 15, 2017.**           The Note states that Borrower owes Lender **FOUR HUNDRED TWENTY FOUR THOUSAND ONE HUNDRED AND NO/100** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. **$424,100.00**         ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **January 1, 2048.**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

MICHIGAN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3023 1/01
Ellie Mae, Inc.                                  Page 1 of 9                          MIEDEED  0315
MIEDEED (CLS)
12/15/2017 06:45 AM PST



LOAN #: 570170991033

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☐ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider  ☐ Biweekly Payment Rider
☐ V.A. Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the **County** [Type of Recording Jurisdiction] Of **Washtenaw** [Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**

which currently has the address of **341 Corrie Rd, Ann Arbor,**

[Street] [City]

**Michigan** **48105** ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

MICHIGAN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3023 1/01

Ellie Mae, Inc.

MIEDEED 0315
MIEDEED (CLS)
12/15/2017 06:45 AM PST



LOAN #: 570170991033

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.



LOAN #: 570170991033

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums



LOAN #: 570170991033

paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and



LOAN #: 570170991033

conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the note, another insurer, any reinsurer, any other entity, or affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provided that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage,

MICHIGAN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3023 1/01

Ellie Mae, Inc. 

Page 6 of 9

MIEDEED   0315
MIEDEED (CLS)
12/15/2017 06:45 AM PST



LOAN #: 570170991033

grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected



by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default **must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.** The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on **or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums** secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

MICHIGAN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3023 1/01
Ellie Mae, Inc.
Page 8 of 9
MIEDEED 0315
MIEDEED (CLS)
12/15/2017 06:45 AM PST



LOAN #: 570170991033

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
DOROTHEA V STAFFELD                    12-15-17
                                        DATE

State of MICHIGAN
County of _michigan_

The foregoing instrument was acknowledged before me, _M.G. Ottaviani_____, (Notary Public),
this _12 / 15 / 17_____ (date) by DOROTHEA V STAFFELD (name of person acknowledged).

_____

State of MICHIGAN, County of _____

My Commission Expires: _____

Acting in the County of: _____

M G Ottaviani
Notary Public, Washtenaw County, MI
My Commission Expires: Jan. 31, 2021
Acting in Washtenaw County

Lender: Marketplace Home Mortgage, L.L.C.
NMLS ID: 1082
Loan Originator: Brian K Goodman
NMLS ID: 181781

# EXHIBIT C



# STATE OF MICHIGAN
## CERTIFICATION OF VITAL RECORD

## COUNTY OF WASHTENAW
### STATE OF MICHIGAN

D2018-03217
Pages: 1 of 1    DCT



STATE OF MICHIGAN
DEPARTMENT OF COMMUNITY HEALTH
CERTIFICATE OF DEATH

STATE FILE NUMBER
275584

| 1. DECEDENT'S NAME (First, Middle, Last) Dorothea June Staffeld | 2. DATE OF BIRTH June 26, 1927 | 3. SEX Female | 4. DATE OF DEATH November 01, 2018 |
|---|---|---|---|

| 5. NAME AT BIRTH OR OTHER NAME USED FOR PERSONAL BUSINESS Dorothea June Vermillion | 6a. UNDER 1 YEAR (Years) 91 | 6b. UNDER 1 YEAR MONTHS / DAYS | 6c. UNDER 1 DAY HOURS / MINUTES |
|---|---|---|---|

| 7a. LOCATION OF DEATH Arbor Hospice | 7b. CITY, VILLAGE OR TOWNSHIP OF DEATH Saline | 7c. COUNTY OF DEATH Washtenaw |
|---|---|---|

| 8a. CURRENT RESIDENCE - STATE Michigan | 8b. COUNTY Washtenaw | 8c. LOCALITY Chelsea | 8d. STREET AND NUMBER 223 Pierce Lake Drive |
|---|---|---|---|

| 8e. ZIP CODE 48118 | 9. BIRTH PLACE Monett, Missouri | 10. SOCIAL SECURITY NUMBER 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 | 11. DECEDENT'S EDUCATION Associate degree |
|---|---|---|---|

| 12. RACE White | 13. ANCESTRY Irish | 14a. HISPANIC ORIGIN No | 14b. EVER IN THE U.S. ARMED FORCES? No |
|---|---|---|---|

| 15. USUAL OCCUPATION Intelligence | 16. KIND OF BUSINESS OR INDUSTRY Government | 17. MARITAL STATUS Widowed | 18. NAME OF SURVIVING SPOUSE |
|---|---|---|---|

| 19. FATHER'S NAME (First, Middle, Last) Ovid Uriah Vermillion | 20. MOTHER'S NAME BEFORE FIRST MARRIED (First, Middle, Last) Rose Mae Owens |
|---|---|

| 21a. INFORMANT'S NAME Karl W. Staffeld | 21b. RELATIONSHIP TO DECEDENT Son | 21c. MAILING ADDRESS 341 Conie Road, Ann Arbor, Michigan 48105 |
|---|---|---|

| 22. METHOD OF DISPOSITION Cremation | 23a. PLACE OF DISPOSITION Tri-County Cremation Services | 23b. LOCATION - City or Village Name Ypsilanti, Michigan |
|---|---|---|

| 24. SIGNATURE OF MORTUARY SCIENCE LICENSEE Allen C. Cole | 25. LICENSE NUMBER 4501006399 | 26. NAME AND ADDRESS OF FUNERAL FACILITY Cole Funeral Chapel, Inc, 214 E. Middle St., Chelsea, Michigan 48118 |
|---|---|---|

27a. CERTIFIER
☒ Certifying Physician - To the best of my knowledge, death occurred due to the cause(s) and manner stated.
☐ Medical Examiner - On the basis of examination and/or investigation, in my opinion, death occurred at the time, date, and place, and due to the cause(s) and manner stated.

| 28a. ACTUAL OR PRESUMED TIME OF DEATH 10:52 AM | 28b. PRONOUNCED DEAD November 01, 2018 | 28c. TIME PRONOUNCED DEAD 10:52  AM |
|---|---|---|

Signed and Title    Thomas A. O'Neil, MD

| 29. MEDICAL EXAMINER CONTACTED No | 30. PLACE OF DEATH Hospice Facility | 31. IF HOSPITAL |
|---|---|---|

| 27b. DATE SIGNED November 02, 2018 | 27c. LICENSE NUMBER 4301092471 | 32. MEDICAL EXAMINER'S CASE NUMBER | 33. NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER |
|---|---|---|---|

| 34. NAME AND ADDRESS OF CERTIFYING PHYSICIAN Thomas A. O'Neil, MD, Arbor Hospice, 440 West Russell Street Suite 100, Saline, Michigan 48176 |
|---|

| 35a. REGISTRAR'S SIGNATURE | 35b. DATE FILED November 02, 2018 |
|---|---|

| 36. PART I. Enter the chain of events— diseases, injuries or complications— that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest or ventricular fibrillation without showing the etiology. Enter only one cause on each line. | | Approximate Interval Between Onset and Death |
|---|---|---|
| a. Cardiovascular Disease | DUE TO (OR AS A CONSEQUENCE OF) | Years |
| b. Chronic Obstructive Pulmonary Disease | DUE TO (OR AS A CONSEQUENCE OF) | Years |
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | DUE TO (OR AS A CONSEQUENCE OF) | |
| Sequentially list conditions, if any, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST. | DUE TO (OR AS A CONSEQUENCE OF) | |

| PART II. OTHER SIGNIFICANT CONDITIONS contributing to death but not resulting in the underlying cause given in Part I. | 37. DID TOBACCO USE CONTRIBUTE TO DEATH? ☐ Yes ☒ Probably ☐ No ☐ Unknown | 38. IF FEMALE ☒ Not pregnant within past year ☐ Pregnant at time of death ... |
|---|---|---|

| 39. MANNER OF DEATH Natural | 40a. WAS AN AUTOPSY PERFORMED? No | 40b. WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? Not Applicable |
|---|---|---|

| 41a. DATE OF INJURY | 41b. TIME OF INJURY | 41c. DESCRIBE HOW INJURY OCCURRED |
|---|---|---|

| 41d. INJURY AT | 41e. PLACE OF INJURY | 41f. IF TRANSPORTATION | 41g. LOCATION |
|---|---|---|---|

A922093



L: 5293 P: 193   6459958  MIS
03/04/2019 11:11 AM Total Pages: 1
Lawrence Kestenbaum, Washtenaw Co

Time Submitted for Recording
Date 3 - 4 - 20 19  Time 10:5/ A M
Lawrence Kestenbaum
Washtenaw County Clerk/Register

I, LAWRENCE KESTENBAUM, CLERK/REGISTER OF SAID COUNTY OF WASHTENAW DO HEREBY CERTIFY that the foregoing is a true and exact copy of the original document of file in my office.

DATED:   11/02/2018

LAWRENCE KESTENBAUM
WASHTENAW COUNTY CLERK/REGISTER

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE






# EXHIBIT D

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368

**WELLS FARGO | HOME MORTGAGE**

March 31, 2020

| Account Information | |
|---|---|
| Online: | wellsfargo.com |
| Fax: | 1-866-590-8910 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon.- Thu., 7 a.m. - 9 p.m., |
| | Fri., 7 a.m. - 8 p.m., |
| | Sat., 8 a.m. - 4 p.m., CT |
| | |
| Loan number: | 0558719837 |
| Property address: | 341 Corrie Rd |
| | Ann Arbor MI 48105 |

085

DOROTHEA V STAFFELD
341 CORRIE RD
ANN ARBOR, MI 48105-1032

Subject: We're confirming short-term payment relief for this account

Dear Dorothea V Staffeld:

Thank you for letting us know about a financial hardship you're facing. This may be a difficult time, so please count on us to work with you every step of the way.

You may not know how you'll be affected by the spread of coronavirus (COVID-19), so we want to help by providing you with time to assess your situation. For this reason, we're confirming the following short-term payment relief for your account. If you find you do not need the payment relief, you can continue to make the payments as normal and no further action is needed.

### Your short-term payment relief
We understand that you may not be able to make your regular payments during this difficult time so we are granting a three month payment suspension. To help:
ό   We won't report a past-due status for this account to the consumer reporting agencies.
ό   We won't charge late fees.
ό   If the account is past-due, we won't refer it to foreclosure during this time.

### Consider the assistance that's best for you
This short-term payment relief provides you with assistance right away. If you don't think this short-term payment relief is right for you, please contact us.

### What you need to know
ό   We have suspended your obligation to make your monthly mortgage payment for three months. Unless you receive further relief, you'll need to resume your regular mortgage payment schedule beginning on July 1, 2020.

ό   When short-term relief ends:
   ◦   We understand you may not be able to make the missed payments in a lump sum. If you need additional assistance at the end of the three months, we will need to work with you on how to handle the suspended payments. Possible options may include:
      ό   A continuation of the payment suspension.
      ό   Moving the missed payments to end of the loan.

HP646 936 0024

| Account Information | |
|---|---|
| Loan number: | 0558719837 |
| Property address: | 341 Corrie Rd |
| | Ann Arbor MI 48105 |

  ó A modification.
- If you find that you need more time to recover or are unable to catch up, please contact us to talk about your specific financial needs. We can help explore your options.
- Some longer-term options that may be available might affect the terms of your loan, including the interest rate, maturity date, and monthly payment amount.
- Reporting the past-due status to the consumer reporting agencies, late fees, and possible foreclosure activities may resume.

ó Accepting this short-term payment relief could affect the features of your loan and other payment assistance programs already in place.
- Any unpaid payments could affect your ability to remove the mortgage insurance premium.
- If the mortgage was modified under the Home Affordable Modification Program (HAMP) or Second Lien Modification Program (2MP) and you don't make a payment during this time, you could lose the pay-for-performance incentives. This is because you must remain in good standing with HAMP and 2MP.
- Statements will show past-due during this relief period. You'll also receive required notices about overdue payments.

ó This payment relief option is based on an incomplete application for assistance. Other payment assistance options may be available. If you would like a review for all available assistance options, you may submit a complete application, which would include information about your income and expenses. This review is available whether or not you accept this short-term payment relief. Please contact us for more information.

## What you need to do
ó If you're not able to make payments during this time and the payments are automatically withdrawn, you'll need to cancel or suspend the payments. To adjust automatic recurring payments please go to wellsfargo.com to make the adjustments. If you use a bill pay or a third-party payment service, contact the service provider directly to make any changes.
ó If the length of the hardship changes or you're still unable to make your payments at the end of the plan, please contact us. We want to help.

## We're here to help
If you have questions about the information in this letter, please call us at the phone number in the account information box at the top of this letter.

Home Preservation Department
Wells Fargo Home Mortgage

## Contact us
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of this account, please contact us at P.O. Box 10335, Des Moines, IA 50306. Please include the account number with all correspondence.

Get free counseling to help manage expenses and avoid foreclosure.

HP646 936 0024

| Account Information | |
|---|---|
| Loan number: | 0558719837 |
| Property address: | 341 Corrie Rd<br>Ann Arbor MI 48105 |

Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287 (TDD 1-800-877-8339).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

## Contact other servicers

As a reminder, it's important to consider contacting the servicers of any other mortgage loans that are secured by this property to discuss mortgage assistance options.

## An appraisal may be required as part of this process.

When you apply for assistance on a home that is secured by a first lien, we may need to appraise the home. If we do, you'll receive a copy of any written appraisals related to this application.

Our acceptance and posting of your payments during the short-term payment assistance plan will not be deemed a waiver of the right to accelerate or foreclosure actions, and related activities, and shall not constitute a cure of any default under your loan unless such payments are sufficient to completely cure the entire default under your loan.

All terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms. Nothing in this assistance shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

Where appropriate, Wells Fargo Home Mortgage is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2020 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

HP646 936 0024

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368

**WELLS FARGO** | **HOME MORTGAGE**

May 13, 2020

| Account Information | |
|---|---|
| Online: | wellsfargo.com |
| Fax: | 1-866-359-7363 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon - Thurs, 7 a.m. - 9 p.m., |
| | Fri, 7 a.m. - 8 p.m., |
| | Sat, 8 a.m. - 4 p.m., CT |
| Loan number: | 0558719837 |
| Property address: | 341 Corrie Rd |
| | Ann Arbor MI 48105 |

085

DOROTHEA V STAFFELD
341 CORRIE RD
ANN ARBOR, MI 48105

Subject: Please contact us about the recently missed mortgage payment(s)

Dear Dorothea V Staffeld:

Nos estamos poniendo en contacto con usted acerca de la cuenta de préstamo hipotecario porque queremos ayudarle. Llámenos al 1-800-416-1472 (marque 9 para recibir atención en español). Si tiene una discapacidad auditiva o del habla, atendemos llamadas de los servicios de retransmisión. Podemos hablar acerca de opciones para ayudarle a permanecer en su casa. Si usted no entiende esta carta, podemos brindarle servicios en su idioma. O si lo prefiere, puede hacer que se traduzca esta carta.

We know that this is a challenging time as you work to protect what matters most: your health and the health and safety of the people you care for.

We want you to know why you're receiving this letter. We're required to let you know that there are outstanding payments on this account, which may be because you're experiencing financial hardship due to COVID-19. Some of the information in this letter may seem as though we're not aware of the challenges you may be facing. Please know that we are aware, and we want to help.

What you need to know about short-term payment suspension
ó   Go to wellsfargo.com/mortgageassist for up-to-date information you may need to manage your account during these challenging times.
ó   You will continue to receive other required notices about payments being past due.
ó   If you've talked with us about bringing your account current, the information in this letter won't apply to you.
ó   You may not be sure when you'll be able to make payments, depending on your needs and financial situation. We hope that the information below will help you understand some of the options that may be available to you during this difficult time.

Preservation of the property
As stated in terms of your agreement, we may have the right to inspect the interior and exterior of the property. If we find that the property is abandoned, we may enter it to inspect, secure, and preserve it. To secure the property, we may replace a lock or cover any exposed openings or pools. To maintain and preserve it, we may cut the grass and prepare the property for winter. We may also make any repairs

DR110 936 0034

| Account Information | |
|---|---|
| Loan number: | 0558719837 |
| Property address: | 341 Corrie Rd<br>Ann Arbor MI 48105 |

necessary to prevent further decline. Some of these tasks are required by local law or homeowners association rules.

We would like to help you - Please contact us at

1-800-416-1472
Wells Fargo Home Mortgage

## Mortgage assistance may be available
- We can answer questions about the mortgage and explore options based on your individual hardship.
- We can determine if you qualify for assistance, including options to stay in the home or leave the home while avoiding foreclosure. (See Information on avoiding foreclosure below for an overview.)
- You must contact us or complete and return the attached Mortgage Assistance Application, including any required documents described in the application, by 06/17/20.

## How to get help - You can reach us by
- Phone: 1-800-416-1472 or Fax: 1-866-359-7363
- Mail: PO Box 10335 Des Moines, IA 50306
- Online at wellsfargo.com

## Additional resources

For a list of HUD-approved housing counseling agencies that can provide free foreclosure preventation and debt management information, as well as translation or other language assistance, contact one of the following federal government agencies.
- The U.S. Department of Housing and Urban Development (HUD) at 1-800-569-4287 or www.hud.gov/counseling

- The Consumer Financial Protection Bureau (CFPB) at 1-855-411-2372 or www.consumerfinance.gov/mortgagehelp

For additional information on how to avoid foreclosure, including help for military servicemembers, you may also visit Fannie Mae's web site at www.KnowYourOptions.com.

We would also like to notify you of the availability of homeownership counseling, and any rights you or your dependents may have under the Servicemembers Civil Relief Act. Please see the enclosed details. If you are an active member of one of the military agencies listed, you may wish to discuss the account with a homeownership counselor.

## We're here to help
Thank you for your prompt attention to this matter. We are here to help you with your delinquent mortgage.

DR110 936 0034

| Account Information | |
|---|---|
| Loan number: | 0558719837 |
| Property address: | 341 Corrie Rd<br>Ann Arbor MI 48105 |

If you have any questions or need additional assistance, please contact us at the number listed in the account information section of this letter. Right over the phone we'll determine what option is best to help overcome the mortgage payment challenges. We'll need some additional information from you, so please have the following handy when you call:

- The mortgage loan number
- Monthly gross income (before taxes) for each borrower
- Information about any financial hardship
- Monthly expenses

Wells Fargo Bank, N.A.

Enclosure

## Contact us
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of this account, please contact us at P.O. Box 10335, Des Moines, IA 50306. Please include the account number with all correspondence.

## Beware of Foreclosure Rescue Scams.
To report a scam, call 1-888-995-HOPE (4673) and tell the counselor about your situation and that you believe you were scammed or know of a scam. Or go to https://www.consumerfinance.gov/complaint/ to submit a complaint and get information on how to fight back.

## Get free counseling to help manage expenses and avoid foreclosure.
Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287 (TDD 1-800-877-8339).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

Where appropriate, Wells Fargo Home Mortgage is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose.

We may report information about your account to consumer reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2019 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

## Information on avoiding foreclosure

These options may be available to you depending on your hardship. There are options to help you stay in your home and bring your mortgage current, and options that allow you to leave your home while avoiding foreclosure. We can answer any questions you may have about these options, including the general eligibility requirements.

| Options to stay in your home | Overview | Benefit |
|---|---|---|
| Reinstatement | ó Pay all past due amounts in a single lump-sum payment. ó Available if you have the funds to pay now. | Allows you to bring your mortgage current immediately. |
| Repayment plan | ó Pay all past due amounts together with your regular monthly payments over an extended period of time. ó Available if you have sufficient income to cover more than your regular monthly payment. | Allows you time to bring your mortgage current without having to make a single-sum payment. |
| Forbearance plan | Make reduced payments or no payments for a specific period of time (for example, six months). During this time your mortgage will become increasingly delinquent. | Allows you time to improve your financial situation and possibly qualify for another option, such as a modification, upon completion of the forbearance plan. |
| Modification | ó Make modified payments based on new terms. ó Requires your successful completion of a three-month trial period plan | ó Allows you to bring your mortgage current by permanently modifying your mortgage. ó Intended to make your payments or terms more manageable; typically results in a lower monthly payment. |
| **Options to leave your home** | **Overview** | **Benefit** |
| Short sale | ó Sell your property. ó Proceeds from the sale are used to pay off a portion of your mortgage balance when you owe more on your mortgage than the home is worth. | ó Allows you to transition out of your home to avoid foreclosure. ó Relocation funds may be available. ó The remainder of your mortgage debt after the transfer of ownership may be forgiven, but there may be tax consequences. Consult a tax advisor. |
| Mortgage Release (deed in lieu of foreclosure) | Transfer ownership of your property to us in exchange for relief from some or all of the mortgage debt. | ó Allows you to transition out of your home if you are unable to sell your home to avoid foreclosure. ó Relocation funds may be available. ó The remainder of your mortgage debt after the transfer of ownership may be forgiven, but there may be tax consequences. Consult a tax advisor. |

| Servicemembers Civil Relief<br>Act Notice Disclosure | U.S. Department of Housing<br>and Urban Development<br>Office of Housing | OMB Approval 2502 - 0584<br>Exp 3/31/2021 |
| --- | --- | --- |

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. Sections 3901-4043) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps and Coast Guard).
- Reserve and National Guard personnel who have been activated and are on Federal active duty.
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds.
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that, a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6% during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.
- The SCRA states that, in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.
- The SCRA contains many other protections besides those applicable to home loans.

## How Does a Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders.

  Wells Fargo Bank
  Attn: Special Loans/SCRA
  MAC T7416-01C
  PO Box 659810
  San Antonio, TX 78265-9110
  Telephone: 1-866-936-7272
  Fax: 1-877-658-4585

- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed

Forces is available at http://legalassistance.law.af.mil/content/locator.php.

- "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800- 342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

form **HUD-92070**
(6/2017)

Loan number: _____

# Mortgage Assistance Application

If you are having mortgage payment challenges, please complete and submit this application, along with the required documentation, to Wells Fargo Home Mortgage via mail: PO Box 10335, Des Moines, IA 50306, fax: 1-866-359-7363, or online: wellsfargo.com. We will contact you within five business days to acknowledge receipt and let you know if you need to send additional information or documents.

We will use the information you provide to help us identify the assistance you may be eligible to receive. If you need help completing this application, please contact Wells Fargo Home Mortgage at 1-800-416-1472.

For a list of HUD-approved housing counseling agencies that can provide foreclosure prevention information, contact one of the following federal government agencies:

- The U.S. Department of Housing and Urban Development (HUD) at (800) 569-4287 or www.hud.gov/counseling
- The Consumer Financial Protection Bureau (CFPB) at (855) 411-2372 or www.consumerfinance.gov/mortgagehelp

If you need assistance with translation or other language assistance, HUD-approved housing counseling agencies may be able to assist you. These services are provided without charge.

## Borrower Information

**Borrower's name:** _____

Social Security Number (last 4 digits): _____

E-mail address: _____

Primary phone number: _____  ☐ Cell ☐ Home ☐ Work ☐ Other

Alternate phone number: _____  ☐ Cell ☐ Home ☐ Work ☐ Other

**Co-borrower's name:** _____

Social Security Number (last 4 digits): _____

E-mail address: _____

Primary phone number: _____  ☐ Cell ☐ Home ☐ Work ☐ Other

Alternate phone number: _____  ☐ Cell ☐ Home ☐ Work ☐ Other

Preferred contact method (choose all that apply): ☐ Cell phone ☐ Home phone ☐ Work phone ☐ Email ☐ Text—checking this box indicates your consent for text messaging

Is either borrower on active duty with the military (including the National Guard and Reserves), the dependent of a borrower on active duty, or the surviving spouse of a member of the military who was on active duty at the time of death? ☐ Yes ☐ No

## Property Information

Property Address: _____

Mailing address (if different from property address): _____

- The property is currently:   ☐ A primary residence     ☐ A second home ☐ An investment property

- The property is (select all that apply): ☐ Owner occupied ☐ Renter occupied ☐ Vacant

- I want to: ☐ Keep the property ☐ Sell the property ☐ Transfer ownership of the property to my servicer ☐ Undecided

Is the property listed for sale? ☐ Yes   ☐ No – If yes, provide the listing agent's name and phone number—or indicate "for sale by owner" if applicable: _____

Is the property subject to condominium or homeowners' association (HOA) fees? ☐ Yes ☐ No – If yes, indicate monthly dues: $_____

## Hardship Information

The hardship causing mortgage payment challenges began on approximately (date)_____and is believed to be:

- ☐ Short-term (up to 6 months)
- ☐ Long-term or permanent (greater than 6 months)
- ☐ Resolved as of (date) _____

| TYPE OF HARDSHIP (CHECK ALL THAT APPLY) | REQUIRED HARDSHIP DOCUMENTATION |
|---|---|
| ☐ Unemployment | - Not required |
| ☐ Reduction in income: a hardship that has caused a decrease in your income due to circumstances outside your control (e.g., elimination of overtime, reduction in regular working hours, a reduction in base pay) | - Not required |
| ☐ Increase in housing-related expenses: a hardship that has caused an increase in your housing expenses due to circumstances outside your control (e.g., uninsured losses, increased property taxes, HOA special assessment) | - Not required |
| ☐ Disaster (natural or man-made) impacting the property or borrower's place of employment | - Not required |
| ☐ Long-term or permanent disability, or serious illness of a borrower/co-borrower or dependent family member | - Written statement from the borrower, or other documentation verifying disability or illness<br>**Note:** Detailed medical information is not required, and information from a medical provider is not required |
| ☐ Divorce or legal separation | - Final divorce decree or final separation agreement **OR**<br>- Recorded quitclaim deed |
| ☐ Separation of borrowers unrelated by marriage, civil union, or similar domestic partnership under applicable law | - Recorded quitclaim deed **OR**<br>- Legally binding agreement evidencing that the non-occupying borrower or co-borrower has relinquished all rights to the property |
| ☐ Death of borrower or death of either the primary or secondary wage earner | - Death certificate **OR**<br>- Obituary or newspaper article reporting the death |
| ☐ Distant employment transfer/relocation | - **For active duty service members**: Permanent Change of Station (PCS) orders or letter showing transfer.<br>- **For employment transfers/new employment**: Copy of signed offer letter or notice from employer showing transfer to a new location or written explanation if employer documentation not applicable, **AND**<br>- Documentation that reflects the amount of any relocation assistance provided (not required for those with PCS orders) |
| ☐ Other – hardship that is not covered above:<br>_____<br>_____<br>_____<br>_____<br>_____ | - Written explanation describing the details of the hardship and any relevant documentation |

## Borrower Income

Please enter all borrower income amounts in middle column.

| MONTHLY TOTAL BORROWER INCOME TYPE & AMOUNT | | REQUIRED INCOME DOCUMENTATION |
|---|---|---|
| Gross (pre-tax) wages, salaries and overtime pay, commissions, tips, and bonuses | $ | <ul><li>Most recent pay stub and documentation of year-to-date earnings if not on pay stub **OR**</li><li>Two most recent bank statements showing income deposit amounts</li></ul> |
| Self-employment income | $ | <ul><li>Two most recent bank statements showing self-employed income deposit amounts **OR**</li><li>Most recent signed and dated quarterly or year-to-date profit/loss statement **OR**</li><li>Most recent complete and signed business tax return **OR**</li><li>Most recent complete and signed individual federal income tax return</li></ul> |
| Unemployment benefit income | $ | <ul><li>No documentation required</li></ul> |
| Taxable Social Security, pension, disability, death benefits, adoption assistance, housing allowance, and other public assistance | $ | <ul><li>Two most recent bank statements showing deposit amounts **OR**</li><li>Award letters or other documentation showing the amount and frequency of the benefits</li></ul> |
| Non-taxable Social Security or disability income | $ | <ul><li>Two most recent bank statements showing deposit amounts **OR**</li><li>Award letters or other documentation showing the amount and frequency of the benefits</li></ul> |
| Rental income (rents received, less expenses other than mortgage expense) | $ | <ul><li>Two most recent bank statements demonstrating receipt of rent **OR**</li><li>Two most recent deposited rent checks</li></ul> |
| Investment or insurance income | $ | <ul><li>Two most recent investment statements **OR**</li><li>Two most recent bank statements supporting receipt of the income</li></ul> |
| Other sources of income not listed above (Note: Only include alimony, child support, or separate maintenance income if you choose to have it considered for repaying this loan) | $ | <ul><li>Two most recent bank statements showing receipt of income **OR**</li><li>Other documentation showing the amount and frequency of the income</li></ul> |

## Current Borrower Assets

Exclude retirement funds such as a 401(k) or Individual Retirement Account (IRA), and college savings accounts such as a 529 plan.

| | |
|---|---|
| Checking account(s) and cash on hand | $ |
| Savings, money market funds, and Certificates of Deposit (CDs) | $ |
| Stocks and bonds (non-retirement accounts) | $ |
| Other: | $ |

## Borrower Certification and Agreement

1. I certify and acknowledge that all of the information in this Mortgage Assistance Application is truthful, and the hardship I identified contributed to my need for mortgage relief. Knowingly submitting false information may violate Federal and other applicable law.

2. I agree to provide my servicer with all required documents, including any additional supporting documentation as requested, and will respond in a timely manner to all servicer or authorized third party* communications.

3. I acknowledge and agree that my servicer is not obligated to offer me assistance based solely on the representations in this document or other documentation submitted in connection with my request.

4. I consent to the servicer or authorized third party* obtaining a current credit report for the borrower and co-borrower.

5. I consent to the disclosure by my servicer, authorized third party,* or any investor/guarantor of my mortgage loan(s), of any personal information collected during the mortgage assistance process and of any information about any relief I receive, to any third party that deals with my first lien or subordinate lien (if applicable) mortgage loan(s), including Fannie Mae, Freddie Mac, or any investor, insurer, guarantor, or servicer of my mortgage loan(s) or any companies that provide support services to them, for purposes permitted by applicable law. Personal information may include, but is not limited to: (a) my name, address, telephone number, (b) my Social Security number, (c) my credit score, (d) my income, and (e) my payment history and information about my account balances and activity.

6. I agree that the terms of this borrower certification and agreement will apply to any modification trial period plan, repayment plan, or forbearance plan that I may be offered based on this application. If I receive an offer for a modification trial period plan or repayment plan, I agree that my first timely payment under the plan will serve as acceptance of the plan.

7. I consent to being contacted concerning this application for mortgage assistance at any telephone number, including mobile telephone number, or email address I have provided to the lender, servicer, or authorized third party.*

* An authorized third party may include, but is not limited to, a housing counseling agency, Housing Finance Agency (HFA) or other similar entity that is assisting me in obtaining a foreclosure prevention alternative.


Borrower signature:_____Date: _____


Co-Borrower signature:_____Date: _____


**Please submit your completed application, together with the required documentation, to Wells Fargo Home Mortgage via mail: PO Box 10335, Des Moines, IA 50306, fax: 1-866-359-7363, or online: wellsfargo.com. We will contact you within five business days to acknowledge receipt and let you know if you need to send additional information or documents.**

**We will use the information you provided to help us identify the assistance you may be eligible to receive.**

# EXHIBIT E

Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368

**WELLS FARGO** | **HOME MORTGAGE**

January 12, 2018

096

DOROTHEA V STAFFELD
341 CORRIE RD
ANN ARBOR, MI 48105

Subject: Wells Fargo Home Mortgage account number 0558719837

Dear DOROTHEA V STAFFELD:

Welcome to Wells Fargo Home Mortgage. As of February 1, 2018, MARKETPLACE HOME MORTGAGE, L.L.C. will transfer the servicing of your mortgage to Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A. MARKETPLACE HOME MORTGAGE, L.L.C. is now collecting your payments, but will cease to accept payments after February 1, 2018; however, on February 1, 2018 Wells Fargo Home Mortgage will begin collecting your payments.

Rest assured, this transfer does not affect any terms or conditions of your mortgage other than those directly related to the servicing of your loan, such as where you send your payments.

First things first

1.  Prior to your first payment due to Wells Fargo, you'll receive a billing statement with a payment coupon. (See payment options below.)

2.  Please note that if you currently have credit life insurance or other optional products, these products will not transfer to Wells Fargo. If you wish to continue coverage, please contact your current provider and make arrangements to pay your premiums directly. You may notice a change to your monthly mortgage payment amount showing these premiums are no longer being collected.

3.  Enroll in Wells Fargo Online® for convenient management of your mortgage and other Wells Fargo accounts and to access paperless statements. Learn more and sign up at: wellsfargo.com/mortgage/welcome.

Your payment options
Review the enclosed FAQ for details on these payment options and more:

*   <u>If you make your payments by check</u>, simply use the payment coupon provided with your billing statement.

*   <u>If your previous mortgage payments were automatically withdrawn from an account</u>, this service will not automatically continue. You'll need to take steps to set up automatic withdrawals with Wells Fargo.

*   <u>If you use a bill payment service or an Internet banking site to make your mortgage payments</u>, you'll need to contact your bill payment service directly to arrange to update the payee name, address and loan number.

*   <u>If your payment is inadvertently sent to the prior servicer after the transfer date</u>, there are measures in place to help you. For the first 60 days following the loan servicing transfer date:
    o   Payments received by the previous servicer may be forwarded to Wells Fargo or returned to you requesting that you send it to us.
    o   As your new servicer, Wells Fargo will not assess late fees, provided your payment was received on or before its due date by either Wells Fargo or the previous servicer.

---

**Important Information About Your Mortgage**

Servicing transfer date:
February 1, 2018

Wells Fargo Home Mortgage loan number: 0558719837

For inquiries on or after February 1, 2018:
Call Wells Fargo Customer Service
1-866-234-8271
1-800-934-9998 (TTY)

Monday - Friday
6:00 a.m. to 10:00 p.m.,
Saturday, 8:00 a.m. to 2:00 p.m.
Central Time

After February 1, 2018, you may mail your payments to:
Wells Fargo Home Mortgage
P.O. Box 14538
Des Moines, IA 50306-3538

For inquiries prior to February 1, 2018, contact:
MARKETPLACE HOME MORTGAGE, L.L.C.
7380 FRANCE AVENUE SOUTH, SUITE 200
EDINA, MN
55435
8009004135
If this is not a local number, please call collect.

Review the enclosed FAQ:

ó   For more details about your payment options

ó   And other important information about the transfer of your loan to Wells Fargo Home Mortgage

ó   <u>If you're having trouble making your payment</u>, please contact us.

**We're glad to have you as our customer**
Your home matters and we look forward to continually providing the information and resources you need. To make the most of your Wells Fargo customer relationship go to: wellsfargo.com/mortgage/welcome.

Sincerely,

J.R. Russell
Senior Vice President
Wells Fargo Home Mortgage

The Servicemembers Civil Relief Act (SCRA) may offer protection or relief to members of the military, their spouses, partners, and dependents. If you have been called to active duty, or are the spouse, partner in civil union, domestic partner, or financial dependent of a person who has been called to active duty, and you haven't yet made us aware of your status, please contact us as indicated below:

ó   Wells Fargo Home Mortgage military customer: Call 1-866-936-SCRA (1-866-936-7272) or fax your Active Duty Orders to 1-877-658-4585, attention SCRA.

In addition, please be aware that prior to seeking a refinance of your existing mortgage loan, you should consult with your legal advisor regarding the potential loss of any benefits you are entitled to under the Servicemembers Civil Relief Act or applicable state law.

Fee schedule
Fees for assumptions, partial releases, and other services will be quoted upon request. Allowable fees for checks and drafts that are not honored by your bank vary by state and will be assessed automatically. States with fixed fees are as follows: KS-$30; PA-$50; ID-$20; CO, NC & OK-$25; HI, IA, & MN-$30; SD-$40. Fees are subject to change without notice.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2017 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

# Notice of Transfer of Your Mortgage

Wells Fargo Home Mortgage account number: 0558719837
Property address:         341 CORRIE RD
                          ANN ARBOR MI

We're writing to provide you with important information about the transfers of ownership of your mortgage. Please be aware there is no action required of you.

## Understanding your mortgage transfer

In case you weren't aware, it's a very common practice for mortgage lenders to sell mortgages after they've originated. (Your mortgage lender is the one named in your promissory note.) As a result, your mortgage may transfer to a new owner several times, shortly after your loan closing and during the life of your mortgage.

According to federal law, each new owner of your mortgage is required to send you a notice, even if they will only own your mortgage for a very short time. This means you may receive several notices like this one. Please understand that these transfers are normal business practice, and they do not affect any of the terms of your mortgage.

## Important Information about your payment

- If your mortgage is current the lender may accept and apply partial payment, but will apply them to a suspense or unapplied account on the loan until a full contractual payment is received. Once the full contractual payment is received, the funds in the suspense account will be applied to your loan.
- If your mortgage is in foreclosure the lender will not accept partial payments or full payments when the payments are not enough to reinstate the loan.
- In the instance that your loan is sold to a new servicer, the lender may have a different policy.

## Important information about your new mortgage owner

On January 3, 2018, Wells Fargo Bank, N.A. purchased your loan from MARKETPLACE HOME MORTGAGE, L.L.C.. As your new mortgage owner, we're happy to have you as our customer and can be reached as follows:

Mail:           Wells Fargo Bank N.A.
                P.O. Box 10335
                Des Moines, IA 50306-0335

Phone:          1-866-243-8271

Please note when the ownership of your loan was transferred to Wells Fargo Bank N.A., the previous owner may record that transaction. If it has been recorded, the recording location is the office of public land records or the recorder of deeds office for the county or local jurisdiction where the property is located.

## About your mortgage servicing

This notice does not change the servicing of your mortgage. If your servicing is changing, you will receive or have already received a notice from your mortgage servicer.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2017 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

# Property Insurance Information

Customers often ask us for our property insurance requirements. This insert was designed to provide you with a convenient reference on insurance information. Please retain this insert with your important mortgage papers.

**Acceptable Insurance Companies**
Wells Fargo Home Mortgage shall have the right to approve the insurer you select to underwrite the insurance we require as a condition of your mortgage.

The insurer must be rated by the A.M. Best Company, as having a B or better general policyholder's rating and a financial class size of at least III or a Demotech, Inc., minimum rating of A.

The insurer must be authorized to do business in the state where the property is located.

Policies from a State Fair Plan, Wind Pool, or from a non-admitted insurer are acceptable only when coverage cannot be obtained from insurance companies authorized to do business in the state.

**Insured Name and Property Address**
The policy must show name(s) of insured(s) identical to those shown on the loan documents, and a property address corresponding to that shown on Wells Fargo Home Mortgage's records. A legal description must be shown for rural properties, condominiums, or other situations if property address does not adequately define the location of the property. (Example: Star Route 1, Box 5, is inadequate.)

**Policy Forms and Perils**
A hazard insurance policy is required. The policy must provide coverage equal to or broader than those coverages provided under a standard Insurance Services Office (ISO) homeowner's form HO-3. The hazard policy (or a separate wind policy) must include coverage for windstorm, including hurricanes and named tropical storms.

**Minimum Coverage**
The minimum hazard insurance coverage required is 100% of the insurable value of the improvements on the property as determined by the hazard insurance provider. The insurance policy must indicate claims settlement for damage to the dwelling will be on a replacement cost basis.

Flood insurance will be required if the property is designated to be within a Special Flood Hazard Area either prior to or after the time of loan closing. The amount of flood insurance required must be at least equal to the lesser of a) the combined outstanding balance of all loans and maximum line of credit limit, b) 100% of the estimated replacement cost value of the building(s) determined by the hazard insurance provided, or c) the maximum limit of coverage available under the National Flood Insurance Program. Wells Fargo Home Mortgage requires that you review your policy periodically with your insurance provider to ensure that your policy is sufficient to protect the property and that it is adjusted to keep up with increasing replacement costs.

**Deductibles**
Hazard and Windstorm deductibles for most programs are acceptable up to 5% of the dwelling or building coverage limit.

Flood deductibles are acceptable up to $10,000 for 1-4 unit residential or $25,000 for condominium buildings.

Qualification for some special programs we offer might require you to carry a lower deductible.

**Policy and Premium Term**
The policy must be written for at least a one year term or be continuous until cancelled.

**Policy Submission and Inception Date**
The loan number must appear on the face of the submitted document for all renewals.
Policies replacing existing insurance must have an inception date concurrent with the policy it replaces so there is no gap in coverage.

**Certificates of Insurance**
Wells Fargo Home Mortgage will accept an original lender's Certificate of Insurance issued by an authorized company in lieu of the original policy, provided the certificate includes: insured name; mortgagee of record; property address; type, amount and effective dates of coverage; replacement cost value; number of units for condominiums; deductible and coverage amounts; insurer's agreement to provide at least 10 days' notice to Wells Fargo Home Mortgage before any reduction on coverage or cancellation of policy; and signature of authorized representative of the issuers (if required by law).

**State Fair Plans and Wind Pools**
Some State Fair Plans and Wind Pools take up to 90 days to issue an original policy. Because this would create an undue hardship in a sale or refinance, we will accept a copy of the application for insurance, and a copy of a cashier's check, money order, or agent's check showing proof of payment. Copies of personal checks are not acceptable unless they have cleared the bank. Renewals under these programs are handled as any other insurance policy.

**Failure to Provide Coverage**
Any renewal policy must be received at least 30 days prior to expiration of existing coverage. Binders are not acceptable for renewal.

**Lender Placed Insurance**
In the event a renewal of insurance is not received before the expiration date, or a notice of cancellation is received from your insurance provider, or if the insurance you provide does not meet the requirements of Wells Fargo Home Mortgage, your loan servicer may secure limited lender placed insurance coverage at your expense.

Insurance coverage obtained by your loan servicer will not provide the same coverage as your preferred policy. The insurance may cover flood and/or fire hazard and not provide liability or contents coverage. You will probably pay a higher premium for less coverage than you would for insurance which you can buy from the company or agent of your choice.

The cost for lender placed insurance will be charged to you. In order to minimize the cost of insurance to you and to maximize the type and amount of coverage for your property, it is recommended that you secure your own insurance coverage from the company or agent of your choice. Unearned premiums on lender placed insurance will be refunded to you when you provide evidence of acceptable insurance.

**Mortgagee Clause**

OF027 936

The policy must contain a standard mortgagee clause in favor of Wells Fargo Home Mortgage. The Lender's name, address must appear on the policy exactly as the clause shown below:

Wells Fargo Bank, N.A. #936
Loan #0558719837
Its Successors and/or Assigns
P.O. Box 100515
Florence, SC 29502-0515

**Premium Payment**
All premiums for new loans, assumptions or renewals of insurance are to be paid by the borrower, except where escrow accounts (impounds) are maintained for insurance.

For customers with properties in a Special Flood Hazard Area (SFHA): Loans originated, assumed or modified on or after January 1, 2016 are required to maintain an escrow account for flood insurance for the term of the loan or until the property is no longer located in an SFHA.

**Other Property Insurance**
Wells Fargo Home Mortgage may require mudslide, sinkhole, mine subsidence, volcanic eruption, lava flow, avalanche and/or earthquake insurance depending on the location of the property.



# You have options with flood insurance coverage
**Explore your options with your insurance provider, so you can make an informed choice**

**Minimum flood insurance requirements**
If your property is located in a federally designated Special Flood Hazard Area, the minimum flood insurance coverage amount you are required to have for home financing must be at least equal to the *lowest* of the following:
- Replacement cost value for your property
- Combined amount of all loans and maximum line of credit limits
- $250,000.00 (residential buildings)

**Discuss your flood insurance needs with your insurance provider**
- Determine the level of coverage you need
    - The minimum required flood insurance coverage may cost less; however, it may not provide the level of protection you need.
    - The maximum flood insurance coverage is replacement cost value for your property; however, it may cost more and limits apply. This type of coverage can help safeguard you from the need to come up with extra funds to pay for building repairs when small or large damages happen.
- Know what your flood insurance covers, and doesn't
    - You will be responsible for any flood losses not covered under your flood insurance policy.
    - If you choose coverage that is less than 80% of the replacement cost value, there may be a deduction for depreciation and the insurance proceeds you receive may not cover expenses.

> **Questions to ask your insurance provider about flood insurance**
>
> - What will and won't be covered against flood damage?
> - How does my level of coverage impact how a claim will be calculated?
> - What is the difference between replacement cost value and actual cash value?
> - How much coverage should I get for my building and for my contents?
>
> Your insurance provider can answer your questions and discuss your particular coverage needs.

**The choice is yours**
We don't receive any fees or compensation from your insurance provider for your coverage choice. We simply want you to know your options to help you make an informed decision.

You can find information about flooding, flood risk, and a list of flood insurance providers in your area at floodsmart.gov, the official website of the National Flood Insurance Program.

**Visit floodsmart.gov for more questions to ask your insurance provider.**

## Answers to frequently asked questions as your mortgage servicing transfers to Wells Fargo Home Mortgage

We'd like to help you understand some details about the transfer of the servicing of your mortgage to Wells Fargo Home Mortgage, including:

- Payment information
- Year-end IRS reporting/income tax information
- Escrow information - property-related taxes and insurance
- General information

For additional information about the transfer of the servicing of your mortgage, please visit wellsfargo.com/mortgage/welcome.

<u>Payment information</u>

Your payment options include:

- Automatic payments can be timed to your pay cycle using our Preferred Payment Plan[SM] service. Payments can be made monthly (total payment withdrawn between the 1st and 5th day each month), twice a month (1st and 15th - 1/2 total monthly payment), every two weeks (days of choice - 1/2 total monthly payment) or weekly (day of choice - 1/4 total monthly payment).  Go to wellsfargo.com/mortgage/welcome for sign up instructions.

   Payments made weekly, every two weeks and twice a month are treated as partial payments and may  not be applied to your mortgage until full payment is received. A partial payment is anything less than    the amount due on your billing statement. However, if you schedule withdrawals weekly or every two       weeks we will reduce your principal loan balance two to four times per year by applying your partial     payment. Twice a month withdrawals will not reduce your principal loan balance.

- Online payments can be scheduled for free at wellsfargo.com.

- Phone payments can be made 24 hours a day, 7 days a week through our automated phone system, or with help from Customer Service. A fee for an automated telephone payment of $6 and for an agent-assisted telephone payment of $12 may be applicable based on the status of your account.

- Mailed payments can be made using the payment coupon included with your monthly mortgage statement or bring it into any Wells Fargo branch at no charge.

- In-person payments can be made at any Wells Fargo Bank beginning 15 days after your mortgage transfer. (See the Important Information box on page 1 for your transfer date)

- If you are unable to make your payment contact customer service immediately at 1-866-234-8271.

How will I be billed for my mortgage?
If you're not enrolled in an automatic payment plan, you'll receive a monthly billing statement with a payment coupon and a return envelope to use. We do not provide coupon books.

How does Wells Fargo Home Mortgage handle automatic withdrawals?
If your previous mortgage payments were automatically withdrawn from an account, this service <u>will not</u> continue. If you want to set up automatic withdrawals with Wells Fargo, please visit wellsfargo.com/mortgage/welcome.

What do I need to do if I use a bill payment service or an Internet banking site to make my mortgage payments?
In this instance, you'll need to contact your bill payment service directly to arrange to have the payee information changed. Provide them with the following information, which is found on page 1 in the Important Information box:
- Your new mortgage servicer: "Wells Fargo Home Mortgage"
- The effective date that payments need to be sent to Wells Fargo. (This is listed on the enclosed letter as the "transfer date").
- Your Wells Fargo Home Mortgage loan number, which is listed on the enclosed letter.
- The Wells Fargo Home Mortgage mail-in payment address, which is listed on the coupon section of your mortgage statement, as well as on the enclosed letter.

Can I use my credit card to make a payment?
No, but you can set up automatic mortgage payments so your monthly payment can be withdrawn automatically from your checking account each month.

How does Wells Fargo Home Mortgage handle payments by check?
When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

Can I send additional funds with my payment?

Yes, and please be sure to write on your payment coupon how you'd like your additional funds applied. Without this direction from you, your funds may not be applied to your account as you intended. Include your Wells Fargo Home Mortgage loan number on all payments and inquiries to help ensure a prompt response.

How can I pay off my loan more quickly?
As long as your account is current, you can pay additional funds at any time and have them applied to your mortgage principal. Or you can choose an automatic payment plan designed to help you pay off your mortgage sooner. To sign up for our Preferred Payment Plan$^{SM}$ service, go to: wellsfargo.com/mortgage/welcome.

If the check I mailed for my mortgage payment is returned for non-sufficient funds, will you send it through again?
If your mortgage check does not clear upon initial presentment, your bank may charge a fee and we may attempt to withdraw funds from your account electronically up to a maximum of three times. If we are not able to successfully collect these funds, the check amount will be reversed from your loan. A fee may be assessed.

What is the late charge fee if my payment is late?
ó   The amount of the late fee is usually a percentage of the principal and interest payment or a set amount. Your mortgage note states how your late fee is to be calculated.

Year-end IRS reporting/income tax information

How will I receive my year-end information for tax purposes and for my records?
You will receive a year-end IRS 1098 statements from us. It will show the amount of reportable mortgage interest and mortgage insurance paid (if applicable) to Wells Fargo. It will also show any property taxes we paid on your behalf.  This statement will be mailed to you from Wells Fargo Home Mortgage no later than January 31.

Escrow information - property-related taxes and insurance

I had my taxes and insurance payments made by my previous mortgage company. Will this continue?
Yes, your escrow balance will be transferred to Wells Fargo Home Mortgage and we will continue to partner with you on this. You will contribute funds to your escrow account as part of your monthly payment. Wells Fargo will use these funds to pay your property-related taxes and insurance premiums on your behalf when they are due. Note: Each year, Wells Fargo Home Mortgage reviews your escrow account to ensure your escrow contribution will cover the projected bills for your escrowed items. This review is conducted at least once a year, based on the state in which your property is located. An interim analysis may be required to ensure we are in compliance with the Real Estate Settlement Procedures Act (RESPA). After each escrow review, you will receive an Escrow Review that will show any changes to your escrow account and your new total monthly payment account.

To learn more about escrow, visit wellsfargo.com/escrow.

Do I need to contact my insurance company?
Your prior mortgage company will contact your homeowners/flood insurance company requesting an endorsement to your policy reflecting the change in servicer to Wells Fargo Home Mortgage, and to send all future notifications to Wells Fargo Home Mortgage. To ensure your insurance company notifies Wells Fargo of future renewals and/or premiums, which need to be paid from your escrow account, we encourage you to contact them and notify your agent of the change. Please provide your agent with your new loan number and the mortgagee clause below:

>   Wells Fargo Bank, N.A. #936
>   Its Successors and/or Assigns
>   P.O. Box 100515
>   Florence, SC 29502-0515

What else should I know about escrow accounts?
We conduct an escrow review at least once each year to evaluate if your account has an overage or a shortage and to ensure we are collecting the right amount to cover your escrow-related bills. If these payments increase or decrease, we'll recalculate your escrow payment and any changes will appear on the Escrow Review Statement we provide to you.

ó   A minimum escrow balance is required in order to help cover unexpected changes in your escrow-related bills.
   ◦   If a minimum balance is required, it will equal no more than two months of escrow payments.
   ◦   Whether a minimum balance is required and the amount of the minimum balance depends on your mortgage terms and applicable state law.

ó   A shortage occurs when the total payouts for your escrow-related bills were *higher* than what was previously estimated and, as a result, your escrow account has dropped below the minimum required balance.
   ◦   Depending on the amount of your shortage, you may have the option to pay the shortage up front or spread the shortage amount across your next 12 monthly escrow payments.
   ◦   If your statement includes an upfront payment option, there will be a shortage payment coupon at the bottom of page 1.

ó   An overage occurs when the total payouts for your escrow-related bills were lower than what was previously estimated and, as a result, your escrow account contains more than the minimum required balance. If your account is current, we will send you a refund.

Currently, I don't have my taxes and insurance payments made by my mortgage company. Can I set up an escrow account for these expenses?

OF027 936

Yes, please call Customer Service to set up your account. The Wells Fargo escrow account is an intelligent way to ensure your largest investment - your home - is well-managed and protected. You fund the account, and Wells Fargo pays your property-related taxes and insurance premiums on your behalf enabling you to direct your focus and time to other matters. A review of your escrow account will be conducted at least once a year, based on the state in which your property is located. An interim review may be conducted to maintain RESPA (Real Estate Settlement Procedures Act) compliance. You will receive an Escrow Account Disclosure Statement each time a review is conducted.

My property is in Texas. Can I use a third party lender to pay my property taxes?
No, because using a third party lender to pay your property taxes creates a priority lien over your account with us, which is not permitted under your Wells Fargo Home Mortgage Agreement. You also can't set up a payment plan or a deferral for your taxes because these create priority lien situations. If you need help to manage your payments and you don't have an escrow account with us, please call Customer Service for assistance.

<u>General information</u>

Does this transfer change any of the terms disclosed in my loan documents?
This transfer does not affect any terms or conditions of your mortgage other than those directly related to the servicing of your loan, such as where you send your payments.

Can I view my mortgage online?
Yes, you can view your mortgage information online 15 days after your transfer date. Simply go to yourwellsfargomortgage.com and enroll.

I have mortgage life insurance with my current mortgage company. Am I still covered?
No. If you have mortgage life, disability, or other optional insurance with your current mortgage company, these products will not transfer to Wells Fargo. If you wish to continue coverage, please contact your current insurer and make arrangements to pay your premiums directly. You may notice a change to your monthly mortgage payment amount showing these premiums are no longer being collected.
If I have questions about my mortgage, who should I contact?
If you have questions about your mortgage before the transfer date, contact your prior mortgage company.  On and after your loan transfer date, call Wells Fargo Home Mortgage at the number in your letter. Note: See the Important Information box on page 1 of your transfer letter for the date your mortgage information will be available on the Wells Fargo system. When you call, please have your mortgage account number handy.

We appreciate your business and look forward to serving you.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2017 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**KARL STAFFELD and AZAR STAFFELD,**

**Plaintiffs,**

**v.**

**WELLS FARGO BANK, N.A.,**

**Defendant.**

**Case No. 4:24-cv-12811-SDK-DRG**

**Hon. Shalina D. Kumar**
**Hon. David R. Grand**

## DEFENDANT WELLS FARGO BANK, N.A.'S FIRST SET OF REQUESTS FOR ADMISSIONS TO PLAINTIFF AZAR STAFFELD

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), by counsel and pursuant to Rule 36 of the Federal Rules of Civil Procedure, propounds the following Request for Admissions to Plaintiff Azar Staffeld ("Plaintiff"). Plaintiff is requested to answer under oath the Requests set forth below within thirty (30) days of the date of service and thereafter supplement such answers as and when required by all applicable rules. The requests are continuing until trial.

## DEFINITIONS AND INSTRUCTIONS

1.     The term "document" or "documents" shall be given the fullest interpretation allowable under the Federal Rules of Civil Procedure.  Without limiting the foregoing, "document(s)" means any form of data compilation, including written, electronic, printed, typed, drawn, taped, filmed, recorded, or graphic matter, that you possess, control, or have custody of, or have the right to

obtain upon request or demand.  This definition includes all copies, reproductions, or facsimiles of documents by whatever means made.  If copies of a document are not identical for any reason, including handwritten notations, initials or identification marks, each non-identical copy is a separate document within the meaning of this definition.

2.      "Communicate" or "Communication" means every manner or means of disclosure, transfer, or exchange, including, without limitation, the dissemination of Documents, and every disclosure, transfer, or exchange of information whether orally or by Document or whether face-to-face, by telephone, mail, personal delivery or otherwise.  The references to, or requests for, communications in these discovery requests refers to all communications of which you are aware and/or communications that you possess, control, or of which you have custody.

3.      "Wells Fargo" shall refer to Defendant Wells Fargo Bank, N.A. and its representatives and agents.

4.      "Plaintiff," "you," and "your" shall refer to Azar Staffeld and his representatives and agents.

5.      If you object to any of these discovery requests, please state the reasons for your objections and specify the part of the request to which you object.  Similarly, if you do not object to a particular discovery request but are unable to respond fully to

that discovery request, then you shall respond to the fullest extent possible and provide an explanation for your lack of a full response.

6.     When identifying natural or non-natural persons in your answers or responses, state their full name (and any aliases and trade or fictitious names) and their current or last known business address and telephone number, or, alternatively, in the case of natural persons, their residential address and telephone number if their business address and telephone number are unknown.

7.     The word "person" shall mean any natural person, corporation, partnership, firm, association, joint venture, sole proprietorship, trust, department, agency, or any other legal, business, or governmental entity.

8.     The phrasing of these discovery requests shall be construed as to make your response inclusive rather than exclusive.  Thus, the word "include" or "including" is intended to be comprehensive and means "including, but not limited to."  Similarly, the singular form of all words includes the plural form and the plural form of all words includes the singular form; the words "and" and "or" shall be interpreted as both conjunctive and disjunctive; the word "any" shall mean "any and all;" and the word "each" shall mean "each and every."

9.     "Identify" or "identity" with respect to oral, written, telephonic or electronic communications shall mean:

        a.  The communications medium, *e.g.*, written, oral, telephonic or electronic;

    b.  The date (or close approximation) of each such communication;

    c.  The identity of all persons who were present at each communication;

    d.  The substance and nature of each such communication.

10.    Electronically Stored Information (ESI) shall be collected in a manner that preserves metadata to the extent reasonably possible. ESI shall be produced in searchable PDF. The original native files shall be preserved.

11.    With respect to the production of documents, as to each responsive document withheld from production on any ground, expressly state the basis for the withholding and describe the nature of the document, communication, or tangible thing withheld in a manner that will enable Defendant to assess the basis for the withholding.

12.    The "Complaint" shall refer to the First Amended Complaint filed by Plaintiff in this matter on or about February 28, 2025, in the United States District Court for the Eastern District of Michigan and any amendment thereto.

13.    The "Answer" shall refer to the Answer to the Complaint filed by Wells Fargo on or about March 14, 2025, and any Amendments thereto.

14.    The "Property" shall refer to the real property located at 341 Corrie Road, Ann Arbor, MI 48105.

15.     The "Mortgage" shall refer to the certified copy of the mortgage document prepared by Marketplace Home Mortgage, L.L.C., and recorded by American Title Co. of Washtenaw for 341 Corrie Road Ann Arbor, MI 48105.

16.     The "Note" shall refer to the promissory note dated December 15, 2017, for Loan Number 570170991033, in which the Borrower Dorothea Vermillion Staffeld, promises to pay Marketplace Home Mortgage, L.L.C. the principal amount of $424,100.00 plus interest at a yearly rate of 4.250%.

17.     "Residence" shall refer to where You live at or have a home where you typically reside and consider a primary place of living.

18.     The relevant time period shall begin on November 1, 2018.

Furthermore, if your response to any of the following requests for admission is anything other than an unqualified admission or a specific denial, you must set forth in detail the reasons why you cannot truthfully admit or deny the matter. A denial must fairly meet the substance of the requested admission, and when good faith requires that you qualify an answer or deny only a part of the matter of which an admission is requested, you must specify so much of it as is true or qualify or deny the remainder. You may not give lack of information or knowledge as a reason for failure to admit or deny unless you state that you have made a reasonable inquiry and that the information known or readily obtainable by you is insufficient to enable you to admit or deny.

## <u>REQUESTS FOR ADMISSION</u>

1.    Admit that the document attached here to as Exhibit A is a genuine, accurate, and authentic copy of a Note dated  December 15, 2017, pertaining to the Property (the "Note").

**<u>Response</u>:**

2.    Admit that the Note evidences a loan in the amount of $424,100.00 between Marketplace Home Mortgage, L.L.C. and Dorothea Vermillion Staffeld.

**<u>Response</u>:**

3.    Admit that Dorothea Vermillion Staffeld's signature appears on the Note.

**<u>Response</u>:**

4.    Admit that Your name does not appear as a co-borrower on the Note.

**<u>Response</u>:**

5.    Admit that Your signature does not appear on the Note.

**<u>Response</u>:**

6.    Admit that the document attached as Exhibit B is a genuine, accurate, and authentic copy of a Mortgage dated December 15, 2017, pertaining to the Property (the "Mortgage").

**<u>Response</u>:**

7.      Admit that Dorothea Vermillion Staffeld's signature appears on the Mortgage.

**Response:**

8.      Admit that Your name does not appear as a co-borrower on the Mortgage.

**Response:**

9.      Admit that Your signature does not appear on the Mortgage.

**Response:**

10.      Admit that the document attached as Exhibit C is a genuine, accurate, and authentic copy of Dorothea Vermillion Staffeld's Death Certificate dated November 2, 2018 (the "Death Certificate").

**Response:**

11.      Admit that the Death Certificate lists Dorothea Vermillion's date of death as November 1, 2018.

**Response:**

12.      Admit that Dorothea Vermillion Staffeld passed away on or about November 1, 2018.

**Response:**

13.     Admit that the document attached as Exhibit D is a genuine, accurate, and authentic copy of correspondence from Wells Fargo dated March 31, 2020 (the "Short Term Payment Relief Notice").

**Response:**

14.     Admit that the Short Term Payment Relief Notice is addressed to "Dorothea V Staffeld."

**Response:**

15.     Admit that the Short Term Payment Relief Notice was sent to the Property.

**Response:**

16.     Admit that the Short Term Payment Relief Notice states that Dorothea V. Staffeld informed Wells Fargo about financial hardship she was facing.

**Response:**

17.     Admit that You communicated with Wells Fargo while representing Yourself as Dorothea Vermillion Staffeld.

**Response:**

18.     Admit that You knew Wells Fargo believed it was communicating with Dorothea Vermillion Staffeld in similar correspondence between You and Wells Fargo between November 2018 and October 2022.

**Response:**

19.     Admit that You did not inform Wells Fargo of Dorothea Vermillion Staffeld's death in 2018.

**Response:**

20.     Admit that You did not inform Wells Fargo of Dorothea Vermillion Staffeld's death in 2019.

**Response:**

21.     Admit that You did not inform Wells Fargo of Dorothea Vermillion Staffeld's death in 2020.

**Response:**

22.     Admit that You did not inform Wells Fargo of Dorothea Vermillion Staffeld's death in 2021.

**Response:**

23.     Admit that You informed Wells Fargo of Dorothea Vermillion Staffeld's death on or about October 27, 2022.

**Response:**

24.     Admit that no life insurance product from Wells Fargo was ever added to the Mortgage by Dorothea Vermillion Staffeld.

**Response:**

25.     Admit that no life insurance product from Wells Fargo was ever added to the Note by Dorothea Vermillion Staffeld.

**Response**:

26.     Admit that You did not personally take out any life insurance product on the Note.

**Response**:

27.     Admit that You did not personally take out any life insurance product on the Mortgage.

**Response**:

28.     Admit that the document attached as Exhibit E is a genuine, accurate, and authentic copy of correspondence from Wells Fargo to the Property's address dated January 12, 2018 (the "Collection Notice").

**Response**:

29.     Admit that in the Collection Notice was sent from Wells Fargo to the Property.

**Response**:

30.     Admit that the Collection Notice expressly states that "if you currently have credit life insurance or other optional products, these products will not transfer to Wells Fargo."

**Response**:

31.     Admit that, as alleged in the Amended Complaint, You "were unable to make all the mortgage loan payments" on the Property.

**Response**:

32.     Admit that a foreclosure sale, initiated by Wells Fargo on the Property, occurred on June 1, 2023.

**Response**:

33.     Admit the foreclosure sale was final.

**Response**:

34.     Admit that the Amended Complaint You filed on February 28, 2025, was after the foreclosure sale.

**Response**:

35.     Admit that You are not currently residing at the Property.

**Response**:

36.     Admit that You are not currently in possession of the property.

**Response**:

Dated:      March 17, 2025            Respectfully submitted,

By:    /s/ *Mark D. Kundmueller*
Mark D. Kundmueller, Esq. (P66306)
TROUTMAN PEPPER LOCKE LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Phone: (757) 687-7564
Facsimile: (757) 687-1524
mark.kundmueller@troutman.com

*Counsel for Defendant Wells Fargo*
*Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day of March 17, 2025, I served the foregoing

*First Set of Request for Admissions to Plaintiff Azar Staffeld*, via Federal Express to

the following:

> Karl Staffeld
> Azar Staffeld
> Plaintiffs, *Pro Se*
> 341 Corrie Road
> Ann Arbor, MI 48105
> > */s/ Mark D. Kundmueller*
> > Mark D. Kundmueller, Esq.

# EXHIBIT A

LOAN #: 570170991033
MIN: 1002491-2000100053-3

# NOTE

December 15, 2017        Edina,        Minnesota
[Date]        [City]        [State]

341 Corrie Rd, Ann Arbor, MI 48105
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$424,100.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Marketplace Home Mortgage, L.L.C., a Limited Liability Company.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.250 %**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **February 1, 2018.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **January 1, 2048,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **7380 France Avenue S, Suite 200**
**Edina, MN 55435**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. **$2,086.32.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
Ellie Mae, Inc.             Page 1 of 3             F3200NOT 0107
                                            F3200NOT (CLS)
                                      12/15/2017 06:45 AM PST



LOAN #: 570170991033

sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of   **15**   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which



**LOAN #: 570170991033**

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
**DOROTHEA V STAFFELD**

**Lender: Marketplace Home Mortgage, L.L.C.**
**NMLS ID: 1082**
**Loan Originator: Brian K Goodman**
**NMLS ID: 181781**

Without Recourse
Pay to the Order of                    **Wells Fargo Bank, N.A.**

Karen Casais
Quality Control Analyst
Customers Bank
*As Power of attorney for*
*Marketplace Home Mortgage, LLC*

PAY TO THE ORDER OF:

Without Recourse

BY: _____

TITLE: _____

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY _____
DAVID C. PETERSON, SENIOR VICE PRESIDENT
027

**[Sign Original Only]**

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200 1/01
Ellie Mae, Inc.                                    Page 3 of 3                                    F3200NOT  0107
                                                                                                  F3200NOT (CLS)
                                                                                          12/15/2017 06:45 AM PST



# EXHIBIT B

**Certified Copy**
American Title Co. of Washtenaw

# MORTGAGE

When recorded, return to:
Marketplace Home Mortgage, L.L.C.
Attn: Final Document Department
c/o DocProbe
1125 Ocean Avenue
Lakewood, NJ 08701

This document was prepared by:
Marketplace Home Mortgage, L.L.C.
7380 France Avenue S, Suite 200
Edina, MN 55435

**LOAN #: 570170991033**

——————————————[Space Above This Line For Recording Data]——————————————

| MIN  1002491-2000100053-3 |
| --- |
| **MERS PHONE #: 1-888-679-6377** |

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A)  "Security Instrument" means this document, which is dated **December 15, 2017,**                together with all Riders to this document.
(B)  "Borrower" is  **DOROTHEA V STAFFELD, A SINGLE WOMAN.**

Borrower's address is  **341 Corrie Road
Ann Arbor, MI 48105.**

Borrower is the mortgagor under this Security Instrument.
(C)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D)  "Lender" is   **Marketplace Home Mortgage, L.L.C..**

Lender is **a Limited Liability Company,**                                organized and existing under the laws of **Minnesota.**                                          Lender's address is  **7380 France Avenue S, Suite 200, Edina, MN 55435.**

(E)  "Note" means the promissory note signed by Borrower and dated **December 15, 2017.**        The Note states that Borrower owes Lender **FOUR HUNDRED TWENTY FOUR THOUSAND ONE HUNDRED AND NO/100** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S.  **$424,100.00**         ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **January 1, 2048.**
(F)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

LOAN #: 570170991033

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider           ☐ Biweekly Payment Rider
☐ V.A. Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the **County** [Type of Recording Jurisdiction] of **Washtenaw** [Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**

which currently has the address of **341 Corrie Rd, Ann Arbor,**

[Street] [City]

**Michigan** **48105**          ("Property Address"):
        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.



LOAN #: 570170991033

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.



LOAN #: 570170991033

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums



LOAN #: 570170991033

paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.   **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and



LOAN #: 570170991033

conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the note, another insurer, any reinsurer, any other entity, or affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provided that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage,



LOAN #: 570170991033

grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected



LOAN #: 570170991033

by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

MICHIGAN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3023 1/01
Ellie Mae, Inc.

Page 8 of 9

MIEDEED   0315
MIEDEED (CLS)
12/15/2017 06:45 AM PST



LOAN #: 570170991033

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____   12-15-17   (Seal)
DOROTHEA V STAFFELD                  DATE


State of MICHIGAN
County of _michigan_

The foregoing instrument was acknowledged before me, ~~M. G. Ottaviani~~ , (Notary Public),
this _12 / 15 / 17_ _____ (date) by DOROTHEA V STAFFELD (name of person acknowledged).

_____

State of MICHIGAN, County of _____

My Commission Expires: _____

Acting in the County of: _____

                                         M G Ottaviani
                              Notary Public, Washtenaw County, MI
                              My Commission Expires: Jan. 31, 2021
                                  Acting in Washtenaw County


Lender: Marketplace Home Mortgage, L.L.C.
NMLS ID: 1082
Loan Originator: Brian K Goodman
NMLS ID: 181781

# EXHIBIT C


# STATE OF MICHIGAN
## CERTIFICATION OF VITAL RECORD

# COUNTY OF WASHTENAW
## STATE OF MICHIGAN

D2018-03217
Pages: 1 of 1    DCT



STATE OF MICHIGAN
DEPARTMENT OF COMMUNITY HEALTH
CERTIFICATE OF DEATH

**STATE FILE NUMBER** 275584

| 1. DECEDENT'S NAME (First, Middle, Last) | 2. DATE OF BIRTH | 3. SEX | 4. DATE OF DEATH |
|---|---|---|---|
| Dorothea June Staffeld | June 26, 1927 | Female | November 01, 2018 |

| 5. NAME AT BIRTH OR OTHER NAME USED FOR PERSONAL BUSINESS | 6a. UNDER 1 YEAR (Years) 91 | 6b. UNDER 1 YEAR MONTHS DAYS | 6c. UNDER 1 DAY HOURS MINUTES |
|---|---|---|---|
| Dorothea June Vermillion | | | |

| 7a. LOCATION OF DEATH | 7b. CITY, VILLAGE OR TOWNSHIP OF DEATH | 7c. COUNTY OF DEATH |
|---|---|---|
| Arbor Hospice | Saline | Washtenaw |

| 8a. CURRENT RESIDENCE - STATE | 8b. COUNTY | 8c. LOCALITY | 8d. STREET AND NUMBER |
|---|---|---|---|
| Michigan | Washtenaw | Chelsea | 223 Pierce Lake Drive |

| 8e. ZIP CODE | 9. BIRTH PLACE | 10. SOCIAL SECURITY NUMBER | 11. DECEDENT'S EDUCATION |
|---|---|---|---|
| 48118 | Monett, Missouri | 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 | Associate degree |

| 12. RACE | 13. ANCESTRY | 13a. HISPANIC ORIGIN | 14. EVER IN THE U.S ARMED FORCES? |
|---|---|---|---|
| White | Irish | No | No |

| 15. USUAL OCCUPATION | 16. KIND OF BUSINESS OR INDUSTRY | 17. MARITAL STATUS | 18. NAME OF SURVIVING SPOUSE |
|---|---|---|---|
| Intelligence | Government | Widowed | |

| 19. FATHER'S NAME (First, Middle, Last) | 20. MOTHER'S NAME BEFORE FIRST MARRIED (First, Middle, Last) |
|---|---|
| Ovid Uriah Vermillion | Rose Mae Owens |

| 21a. INFORMANT'S NAME | 21b. RELATIONSHIP TO DECEDENT | 21c. MAILING ADDRESS |
|---|---|---|
| Karl W. Staffeld | Son | 341 Corrie Road, Ann Arbor, Michigan 48105 |

| 22. METHOD OF DISPOSITION | 23a. PLACE OF DISPOSITION | 23b. LOCATION (City or Village, State) |
|---|---|---|
| Cremation | Tri-County Cremation Services | Ypsilanti, Michigan |

| 24. SIGNATURE OF MORTUARY SCIENCE LICENSEE | 25. LICENSE NUMBER | 26. NAME AND ADDRESS OF FUNERAL FACILITY |
|---|---|---|
| Allen C. Cole | 4501006399 | Cole Funeral Chapel, Inc, 214 E. Middle St., Chelsea, Michigan 48118 |

| 27a. CERTIFIER | 27b. ACTUAL OR PRESUMED TIME OF DEATH | 28a. PRONOUNCED DEAD | 28c. TIME PRONOUNCED DEAD |
|---|---|---|---|
| ☒ Certifying Physician - To the best of my knowledge, death occurred due to the cause(s) and manner stated. | 10:52 AM | November 01, 2018 | 10:52  AM |
| ☐ Medical Examiner - On the basis of examination and/or investigation, in my opinion, death occurred due to the cause(s) and manner stated. | 29. MEDICAL EXAMINER CONTACTED No | 30. PLACE OF DEATH Hospice Facility | 31. IF HOSPITAL |
| Thomas A. O'Neil, MD | | | |

| 27b. DATE SIGNED | 27c. LICENSE NUMBER | 32. MEDICAL EXAMINER'S CASE NUMBER | 33. NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER |
|---|---|---|---|
| November 02, 2018 | 4301092471 | | |

| 34. NAME AND ADDRESS OF CERTIFYING PHYSICIAN |
|---|
| Thomas A. O'Neil, MD, Arbor Hospice, 440 West Russell Street Suite 100, Saline, Michigan 48176 |

| 35a. REGISTRAR'S SIGNATURE | 35b. DATE FILED November 02, 2018 |
|---|---|
| Lawrence Kestenbaum | |

| 36. PART I. ENTER the chain of events...that directly caused the death. DO NOT enter terminal events such as cardiac arrest... | Approximate interval Between Onset and Death |
|---|---|
| a. Cardiovascular Disease | Years |
| b. Chronic Obstructive Pulmonary Disease | Years |
| c. | |
| d. | |

| PART II. OTHER SIGNIFICANT CONDITIONS contributing to death but not resulting in the underlying cause given in Part I | 37. DID TOBACCO USE CONTRIBUTE TO DEATH? ☐ Yes ☒ Probably ☐ No ☐ Unknown | 38. IF FEMALE |
|---|---|---|

| 39. MANNER OF DEATH | 40a. WAS AN AUTOPSY PERFORMED? | 40b. WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? |
|---|---|---|
| Natural | No | Not Applicable |

| 41a. DATE OF INJURY | 41b. TIME OF INJURY | 41c. DESCRIBE HOW INJURY OCCURRED |
|---|---|---|

| 41d. INJURY AT | 41e. PLACE OF INJURY | 41f. IF TRANSPORTATION | 41g. LOCATION |
|---|---|---|---|



A922093



I, LAWRENCE KESTENBAUM, CLERK/REGISTER OF SAID COUNTY OF WASHTENAW DO HEREBY CERTIFY that the foregoing is a true and exact copy of the original document of file in my office.

DATED:   11/02/2018

LAWRENCE KESTENBAUM
WASHTENAW COUNTY CLERK/REGISTER


ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



Time Submitted for Recording
Date 3-4-20 19 Time 10:5/ A M
Lawrence Kestenbaum
Washtenaw County Clerk/Register

# EXHIBIT D

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368

**WELLS FARGO** | **HOME MORTGAGE**

085

March 31, 2020

| Account Information | |
| --- | --- |
| Online: | wellsfargo.com |
| Fax: | 1-866-590-8910 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon.- Thu., 7 a.m. - 9 p.m., |
| | Fri., 7 a.m. - 8 p.m., |
| | Sat., 8 a.m. - 4 p.m., CT |
| Loan number: | 0558719837 |
| Property address: | 341 Corrie Rd |
| | Ann Arbor MI 48105 |

DOROTHEA V STAFFELD
341 CORRIE RD
ANN ARBOR, MI 48105-1032

Subject: We're confirming short-term payment relief for this account

Dear Dorothea V Staffeld:

Thank you for letting us know about a financial hardship you're facing. This may be a difficult time, so please count on us to work with you every step of the way.

You may not know how you'll be affected by the spread of coronavirus (COVID-19), so we want to help by providing you with time to assess your situation. For this reason, we're confirming the following short-term payment relief for your account. If you find you do not need the payment relief, you can continue to make the payments as normal and no further action is needed.

Your short-term payment relief
We understand that you may not be able to make your regular payments during this difficult time so we are granting a three month payment suspension. To help:
ó   We won't report a past-due status for this account to the consumer reporting agencies.
ó   We won't charge late fees.
ó   If the account is past-due, we won't refer it to foreclosure during this time.

Consider the assistance that's best for you
This short-term payment relief provides you with assistance right away. If you don't think this short-term payment relief is right for you, please contact us.

What you need to know
ó   We have suspended your obligation to make your monthly mortgage payment for three months. Unless you receive further relief, you'll need to resume your regular mortgage payment schedule beginning on July 1, 2020.

ó   When short-term relief ends:
    ◦   We understand you may not be able to make the missed payments in a lump sum. If you need additional assistance at the end of the three months, we will need to work with you on how to handle the suspended payments. Possible options may include:
        ó   A continuation of the payment suspension.
        ó   Moving the missed payments to end of the loan.

HP646 936 0024

| Account Information | |
| --- | --- |
| Loan number: | 0558719837 |
| Property address: | 341 Corrie Rd<br>Ann Arbor MI 48105 |

  ó A modification.
- If you find that you need more time to recover or are unable to catch up, please contact us to talk about your specific financial needs. We can help explore your options.
- Some longer-term options that may be available might affect the terms of your loan, including the interest rate, maturity date, and monthly payment amount.
- Reporting the past-due status to the consumer reporting agencies, late fees, and possible foreclosure activities may resume.

ó Accepting this short-term payment relief could affect the features of your loan and other payment assistance programs already in place.
- Any unpaid payments could affect your ability to remove the mortgage insurance premium.
- If the mortgage was modified under the Home Affordable Modification Program (HAMP) or Second Lien Modification Program (2MP) and you don't make a payment during this time, you could lose the pay-for-performance incentives. This is because you must remain in good standing with HAMP and 2MP.
- Statements will show past-due during this relief period. You'll also receive required notices about overdue payments.

ó This payment relief option is based on an incomplete application for assistance. Other payment assistance options may be available. If you would like a review for all available assistance options, you may submit a complete application, which would include information about your income and expenses. This review is available whether or not you accept this short-term payment relief. Please contact us for more information.

## What you need to do
ó If you're not able to make payments during this time and the payments are automatically withdrawn, you'll need to cancel or suspend the payments. To adjust automatic recurring payments please go to wellsfargo.com to make the adjustments. If you use a bill pay or a third-party payment service, contact the service provider directly to make any changes.
ó If the length of the hardship changes or you're still unable to make your payments at the end of the plan, please contact us. We want to help.

## We're here to help
If you have questions about the information in this letter, please call us at the phone number in the account information box at the top of this letter.

Home Preservation Department
Wells Fargo Home Mortgage

## Contact us
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of this account, please contact us at P.O. Box 10335, Des Moines, IA 50306. Please include the account number with all correspondence.

Get free counseling to help manage expenses and avoid foreclosure.

HP646 936 0024

| Account Information | |
| --- | --- |
| Loan number: | 0558719837 |
| Property address: | 341 Corrie Rd |
| | Ann Arbor MI 48105 |

Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287 (TDD 1-800-877-8339).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

## Contact other servicers
As a reminder, it's important to consider contacting the servicers of any other mortgage loans that are secured by this property to discuss mortgage assistance options.

## An appraisal may be required as part of this process.
When you apply for assistance on a home that is secured by a first lien, we may need to appraise the home. If we do, you'll receive a copy of any written appraisals related to this application.

Our acceptance and posting of your payments during the short-term payment assistance plan will not be deemed a waiver of the right to accelerate or foreclosure actions, and related activities, and shall not constitute a cure of any default under your loan unless such payments are sufficient to completely cure the entire default under your loan.

All terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms. Nothing in this assistance shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

Where appropriate, Wells Fargo Home Mortgage is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2020 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368

**WELLS FARGO** | **HOME MORTGAGE**

May 13, 2020

| Account Information | |
|---|---|
| Online: | wellsfargo.com |
| Fax: | 1-866-359-7363 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon - Thurs, 7 a.m. - 9 p.m., |
| | Fri, 7 a.m. - 8 p.m., |
| | Sat, 8 a.m. - 4 p.m., CT |
| Loan number: | 0558719837 |
| Property address: | 341 Corrie Rd |
| | Ann Arbor MI 48105 |

085

DOROTHEA V STAFFELD
341 CORRIE RD
ANN ARBOR, MI 48105

Subject: Please contact us about the recently missed mortgage payment(s)

Dear Dorothea V Staffeld:

Nos estamos poniendo en contacto con usted acerca de la cuenta de préstamo hipotecario porque queremos ayudarle. Llámenos al 1-800-416-1472 (marque 9 para recibir atención en español). Si tiene una discapacidad auditiva o del habla, atendemos llamadas de los servicios de retransmisión. Podemos hablar acerca de opciones para ayudarle a permanecer en su casa. Si usted no entiende esta carta, podemos brindarle servicios en su idioma. O si lo prefiere, puede hacer que se traduzca esta carta.

We know that this is a challenging time as you work to protect what matters most: your health and the health and safety of the people you care for.

We want you to know why you're receiving this letter. We're required to let you know that there are outstanding payments on this account, which may be because you're experiencing financial hardship due to COVID-19. Some of the information in this letter may seem as though we're not aware of the challenges you may be facing. Please know that we are aware, and we want to help.

What you need to know about short-term payment suspension
ó   Go to wellsfargo.com/mortgageassist for up-to-date information you may need to manage your account during these challenging times.
ó   You will continue to receive other required notices about payments being past due.
ó   If you've talked with us about bringing your account current, the information in this letter won't apply to you.
ó   You may not be sure when you'll be able to make payments, depending on your needs and financial situation. We hope that the information below will help you understand some of the options that may be available to you during this difficult time.

Preservation of the property
As stated in terms of your agreement, we may have the right to inspect the interior and exterior of the property. If we find that the property is abandoned, we may enter it to inspect, secure, and preserve it. To secure the property, we may replace a lock or cover any exposed openings or pools. To maintain and preserve it, we may cut the grass and prepare the property for winter. We may also make any repairs

DR110 936 0034

| Account Information | |
|---|---|
| Loan number: | 0558719837 |
| Property address: | 341 Corrie Rd<br>Ann Arbor MI 48105 |

necessary to prevent further decline. Some of these tasks are required by local law or homeowners association rules.

We would like to help you - Please contact us at

1-800-416-1472
Wells Fargo Home Mortgage

## Mortgage assistance may be available
- We can answer questions about the mortgage and explore options based on your individual hardship.
- We can determine if you qualify for assistance, including options to stay in the home or leave the home while avoiding foreclosure. (See Information on avoiding foreclosure below for an overview.)
- You must contact us or complete and return the attached Mortgage Assistance Application, including any required documents described in the application, by 06/17/20.

## How to get help - You can reach us by
- Phone: 1-800-416-1472 or Fax: 1-866-359-7363
- Mail: PO Box 10335 Des Moines, IA 50306
- Online at wellsfargo.com

## Additional resources

For a list of HUD-approved housing counseling agencies that can provide free foreclosure preventation and debt management information, as well as translation or other language assistance, contact one of the following federal government agencies.
- The U.S. Department of Housing and Urban Development (HUD) at 1-800-569-4287 or www.hud.gov/counseling

- The Consumer Financial Protection Bureau (CFPB) at 1-855-411-2372 or www.consumerfinance.gov/mortgagehelp

For additional information on how to avoid foreclosure, including help for military servicemembers, you may also visit Fannie Mae's web site at www.KnowYourOptions.com.

We would also like to notify you of the availability of homeownership counseling, and any rights you or your dependents may have under the Servicemembers Civil Relief Act. Please see the enclosed details. If you are an active member of one of the military agencies listed, you may wish to discuss the account with a homeownership counselor.

## We're here to help
Thank you for your prompt attention to this matter. We are here to help you with your delinquent mortgage.

DR110 936 0034

| Account Information | |
|---|---|
| Loan number: | 0558719837 |
| Property address: | 341 Corrie Rd<br>Ann Arbor MI 48105 |

If you have any questions or need additional assistance, please contact us at the number listed in the account information section of this letter. Right over the phone we'll determine what option is best to help overcome the mortgage payment challenges. We'll need some additional information from you, so please have the following handy when you call:

- The mortgage loan number
- Monthly gross income (before taxes) for each borrower
- Information about any financial hardship
- Monthly expenses

Wells Fargo Bank, N.A.

Enclosure

## Contact us
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of this account, please contact us at P.O. Box 10335, Des Moines, IA 50306. Please include the account number with all correspondence.

## Beware of Foreclosure Rescue Scams.
To report a scam, call 1-888-995-HOPE (4673) and tell the counselor about your situation and that you believe you were scammed or know of a scam. Or go to https://www.consumerfinance.gov/complaint/ to submit a complaint and get information on how to fight back.

## Get free counseling to help manage expenses and avoid foreclosure.
Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287 (TDD 1-800-877-8339).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

Where appropriate, Wells Fargo Home Mortgage is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose.

We may report information about your account to consumer reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2019 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

## Information on avoiding foreclosure

These options may be available to you depending on your hardship. There are options to help you stay in your home and bring your mortgage current, and options that allow you to leave your home while avoiding foreclosure. We can answer any questions you may have about these options, including the general eligibility requirements.

| Options to stay in your home | Overview | Benefit |
|---|---|---|
| Reinstatement | • Pay all past due amounts in a single lump-sum payment.<br>• Available if you have the funds to pay now. | Allows you to bring your mortgage current immediately. |
| Repayment plan | • Pay all past due amounts together with your regular monthly payments over an extended period of time.<br>• Available if you have sufficient income to cover more than your regular monthly payment. | Allows you time to bring your mortgage current without having to make a single-sum payment. |
| Forbearance plan | Make reduced payments or no payments for a specific period of time (for example, six months). During this time your mortgage will become increasingly delinquent. | Allows you time to improve your financial situation and possibly qualify for another option, such as a modification, upon completion of the forbearance plan. |
| Modification | • Make modified payments based on new terms.<br>• Requires your successful completion of a three-month trial period plan | • Allows you to bring your mortgage current by permanently modifying your mortgage.<br>• Intended to make your payments or terms more manageable; typically results in a lower monthly payment. |
| Options to leave your home | Overview | Benefit |
| Short sale | • Sell your property.<br>• Proceeds from the sale are used to pay off a portion of your mortgage balance when you owe more on your mortgage than the home is worth. | • Allows you to transition out of your home to avoid foreclosure.<br>• Relocation funds may be available.<br>• The remainder of your mortgage debt after the transfer of ownership may be forgiven, but there may be tax consequences. Consult a tax advisor. |
| Mortgage Release (deed in lieu of foreclosure) | Transfer ownership of your property to us in exchange for relief from some or all of the mortgage debt. | • Allows you to transition out of your home if you are unable to sell your home to avoid foreclosure.<br>• Relocation funds may be available.<br>• The remainder of your mortgage debt after the transfer of ownership may be forgiven, but there may be tax consequences. Consult a tax advisor. |

| **Servicemembers Civil Relief Act Notice Disclosure** | **U.S. Department of Housing and Urban Development Office of Housing** | **OMB Approval 2502 - 0584 Exp 3/31/2021** |

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. Sections 3901-4043) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps and Coast Guard).
- Reserve and National Guard personnel who have been activated and are on Federal active duty.
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds.
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that, a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6% during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.
- The SCRA states that, in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.
- The SCRA contains many other protections besides those applicable to home loans.

## How Does a Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders.

    Wells Fargo Bank
    Attn: Special Loans/SCRA
    MAC T7416-01C
    PO Box 659810
    San Antonio, TX 78265-9110
    Telephone: 1-866-936-7272
    Fax: 1-877-658-4585

- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed

Forces is available at http://legalassistance.law.af.mil/content/locator.php.

- "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800- 342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

form **HUD-92070**
(6/2017)

Loan number: _____

# Mortgage Assistance Application

If you are having mortgage payment challenges, please complete and submit this application, along with the required documentation, to Wells Fargo Home Mortgage via mail: PO Box 10335, Des Moines, IA 50306, fax: 1-866-359-7363, or online: wellsfargo.com. We will contact you within five business days to acknowledge receipt and let you know if you need to send additional information or documents.

We will use the information you provide to help us identify the assistance you may be eligible to receive. If you need help completing this application, please contact Wells Fargo Home Mortgage at 1-800-416-1472.

For a list of HUD-approved housing counseling agencies that can provide foreclosure prevention information, contact one of the following federal government agencies:

- The U.S. Department of Housing and Urban Development (HUD) at (800) 569-4287 or www.hud.gov/counseling
- The Consumer Financial Protection Bureau (CFPB) at (855) 411-2372 or www.consumerfinance.gov/mortgagehelp

If you need assistance with translation or other language assistance, HUD-approved housing counseling agencies may be able to assist you. These services are provided without charge.

## Borrower Information

**Borrower's name:** _____

Social Security Number (last 4 digits): _____

E-mail address: _____

Primary phone number:_____   ☐ Cell  ☐ Home  ☐ Work  ☐ Other

Alternate phone number:_____   ☐ Cell  ☐ Home  ☐ Work  ☐ Other

**Co-borrower's name:** _____

Social Security Number (last 4 digits): _____

E-mail address: _____

Primary phone number:_____   ☐ Cell  ☐ Home  ☐ Work  ☐ Other

Alternate phone number:_____   ☐ Cell  ☐ Home  ☐ Work  ☐ Other

Preferred contact method (choose all that apply): ☐ Cell phone ☐ Home phone ☐ Work phone ☐ Email ☐ Text—checking this box indicates your consent for text messaging

Is either borrower on active duty with the military (including the National Guard and Reserves), the dependent of a borrower on active duty, or the surviving spouse of a member of the military who was on active duty at the time of death? ☐ Yes ☐ No

## Property Information

Property Address: _____

Mailing address (if different from property address):_____

- The property is currently:   ☐ A primary residence     ☐ A second home ☐ An investment property

- The property is (select all that apply): ☐ Owner occupied ☐ Renter occupied ☐ Vacant

- I want to: ☐ Keep the property ☐ Sell the property ☐ Transfer ownership of the property to my servicer ☐ Undecided

Is the property listed for sale? ☐ Yes  ☐ No – If yes, provide the listing agent's name and phone number—or indicate "for sale by owner" if applicable: _____

Is the property subject to condominium or homeowners' association (HOA) fees? ☐ Yes ☐ No – If yes, indicate monthly dues: $_____

DR110 936 0034

## Hardship Information

The hardship causing mortgage payment challenges began on approximately (date)_____ and is believed to be:

- ☐ Short-term (up to 6 months)
- ☐ Long-term or permanent (greater than 6 months)
- ☐ Resolved as of (date) _____

| TYPE OF HARDSHIP (CHECK ALL THAT APPLY) | REQUIRED HARDSHIP DOCUMENTATION |
|---|---|
| ☐ Unemployment | ▪ Not required |
| ☐ Reduction in income: a hardship that has caused a decrease in your income due to circumstances outside your control (e.g., elimination of overtime, reduction in regular working hours, a reduction in base pay) | ▪ Not required |
| ☐ Increase in housing-related expenses: a hardship that has caused an increase in your housing expenses due to circumstances outside your control (e.g., uninsured losses, increased property taxes, HOA special assessment) | ▪ Not required |
| ☐ Disaster (natural or man-made) impacting the property or borrower's place of employment | ▪ Not required |
| ☐ Long-term or permanent disability, or serious illness of a borrower/co-borrower or dependent family member | ▪ Written statement from the borrower, or other documentation verifying disability or illness<br>**Note:** Detailed medical information is not required, and information from a medical provider is not required |
| ☐ Divorce or legal separation | ▪ Final divorce decree or final separation agreement **OR**<br>▪ Recorded quitclaim deed |
| ☐ Separation of borrowers unrelated by marriage, civil union, or similar domestic partnership under applicable law | ▪ Recorded quitclaim deed **OR**<br>▪ Legally binding agreement evidencing that the non-occupying borrower or co-borrower has relinquished all rights to the property |
| ☐ Death of borrower or death of either the primary or secondary wage earner | ▪ Death certificate **OR**<br>▪ Obituary or newspaper article reporting the death |
| ☐ Distant employment transfer/relocation | ▪ **For active duty service members**: Permanent Change of Station (PCS) orders or letter showing transfer.<br>▪ **For employment transfers/new employment**: Copy of signed offer letter or notice from employer showing transfer to a new location or written explanation if employer documentation not applicable, **AND**<br>▪ Documentation that reflects the amount of any relocation assistance provided (not required for those with PCS orders) |
| ☐ Other – hardship that is not covered above:<br>_____<br>_____<br>_____<br>_____<br>_____ | ▪ Written explanation describing the details of the hardship and any relevant documentation |

## Borrower Income

Please enter all borrower income amounts in middle column.

| MONTHLY TOTAL BORROWER INCOME TYPE & AMOUNT | | REQUIRED INCOME DOCUMENTATION |
|---|---|---|
| Gross (pre-tax) wages, salaries and overtime pay, commissions, tips, and bonuses | $ | <ul><li>Most recent pay stub and documentation of year-to-date earnings if not on pay stub **OR**</li><li>Two most recent bank statements showing income deposit amounts</li></ul> |
| Self-employment income | $ | <ul><li>Two most recent bank statements showing self-employed income deposit amounts **OR**</li><li>Most recent signed and dated quarterly or year-to-date profit/loss statement **OR**</li><li>Most recent complete and signed business tax return **OR**</li><li>Most recent complete and signed individual federal income tax return</li></ul> |
| Unemployment benefit income | $ | <ul><li>No documentation required</li></ul> |
| Taxable Social Security, pension, disability, death benefits, adoption assistance, housing allowance, and other public assistance | $ | <ul><li>Two most recent bank statements showing deposit amounts **OR**</li><li>Award letters or other documentation showing the amount and frequency of the benefits</li></ul> |
| Non-taxable Social Security or disability income | $ | <ul><li>Two most recent bank statements showing deposit amounts **OR**</li><li>Award letters or other documentation showing the amount and frequency of the benefits</li></ul> |
| Rental income (rents received, less expenses other than mortgage expense) | $ | <ul><li>Two most recent bank statements demonstrating receipt of rent **OR**</li><li>Two most recent deposited rent checks</li></ul> |
| Investment or insurance income | $ | <ul><li>Two most recent investment statements **OR**</li><li>Two most recent bank statements supporting receipt of the income</li></ul> |
| Other sources of income not listed above (Note: Only include alimony, child support, or separate maintenance income if you choose to have it considered for repaying this loan) | $ | <ul><li>Two most recent bank statements showing receipt of income **OR**</li><li>Other documentation showing the amount and frequency of the income</li></ul> |

## Current Borrower Assets

Exclude retirement funds such as a 401(k) or Individual Retirement Account (IRA), and college savings accounts such as a 529 plan.

| | |
|---|---|
| Checking account(s) and cash on hand | $ |
| Savings, money market funds, and Certificates of Deposit (CDs) | $ |
| Stocks and bonds (non-retirement accounts) | $ |
| Other: | $ |

DR110 936 0034

## Borrower Certification and Agreement

1. I certify and acknowledge that all of the information in this Mortgage Assistance Application is truthful, and the hardship I identified contributed to my need for mortgage relief. Knowingly submitting false information may violate Federal and other applicable law.

2. I agree to provide my servicer with all required documents, including any additional supporting documentation as requested, and will respond in a timely manner to all servicer or authorized third party* communications.

3. I acknowledge and agree that my servicer is not obligated to offer me assistance based solely on the representations in this document or other documentation submitted in connection with my request.

4. I consent to the servicer or authorized third party* obtaining a current credit report for the borrower and co-borrower.

5. I consent to the disclosure by my servicer, authorized third party,* or any investor/guarantor of my mortgage loan(s), of any personal information collected during the mortgage assistance process and of any information about any relief I receive, to any third party that deals with my first lien or subordinate lien (if applicable) mortgage loan(s), including Fannie Mae, Freddie Mac, or any investor, insurer, guarantor, or servicer of my mortgage loan(s) or any companies that provide support services to them, for purposes permitted by applicable law. Personal information may include, but is not limited to: (a) my name, address, telephone number, (b) my Social Security number, (c) my credit score, (d) my income, and (e) my payment history and information about my account balances and activity.

6. I agree that the terms of this borrower certification and agreement will apply to any modification trial period plan, repayment plan, or forbearance plan that I may be offered based on this application. If I receive an offer for a modification trial period plan or repayment plan, I agree that my first timely payment under the plan will serve as acceptance of the plan.

7. I consent to being contacted concerning this application for mortgage assistance at any telephone number, including mobile telephone number, or email address I have provided to the lender, servicer, or authorized third party.*

* An authorized third party may include, but is not limited to, a housing counseling agency, Housing Finance Agency (HFA) or other similar entity that is assisting me in obtaining a foreclosure prevention alternative.

Borrower signature:_____Date: _____

Co-Borrower signature:_____Date: _____

**Please submit your completed application, together with the required documentation, to Wells Fargo Home Mortgage via mail: PO Box 10335, Des Moines, IA 50306, fax: 1-866-359-7363, or online: wellsfargo.com. We will contact you within five business days to acknowledge receipt and let you know if you need to send additional information or documents.**

**We will use the information you provided to help us identify the assistance you may be eligible to receive.**

# EXHIBIT E

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368

WELLS FARGO | HOME MORTGAGE

January 12, 2018

DOROTHEA V STAFFELD
341 CORRIE RD
ANN ARBOR, MI 48105

Subject: Wells Fargo Home Mortgage account number 0558719837

Dear DOROTHEA V STAFFELD:

Welcome to Wells Fargo Home Mortgage. As of February 1, 2018, MARKETPLACE HOME MORTGAGE, L.L.C. will transfer the servicing of your mortgage to Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A. MARKETPLACE HOME MORTGAGE, L.L.C. is now collecting your payments, but will cease to accept payments after February 1, 2018; however, on February 1, 2018 Wells Fargo Home Mortgage will begin collecting your payments.

Rest assured, this transfer does not affect any terms or conditions of your mortgage other than those directly related to the servicing of your loan, such as where you send your payments.

First things first

1.  Prior to your first payment due to Wells Fargo, you'll receive a billing statement with a payment coupon. (See payment options below.)

2.  Please note that if you currently have credit life insurance or other optional products, these products will not transfer to Wells Fargo. If you wish to continue coverage, please contact your current provider and make arrangements to pay your premiums directly. You may notice a change to your monthly mortgage payment amount showing these premiums are no longer being collected.

3.  Enroll in Wells Fargo Online® for convenient management of your mortgage and other Wells Fargo accounts and to access paperless statements. Learn more and sign up at: wellsfargo.com/mortgage/welcome.

Your payment options
Review the enclosed FAQ for details on these payment options and more:

*   If you make your payments by check, simply use the payment coupon provided with your billing statement.

*   If your previous mortgage payments were automatically withdrawn from an account, this service will not automatically continue. You'll need to take steps to set up automatic withdrawals with Wells Fargo.

*   If you use a bill payment service or an Internet banking site to make your mortgage payments, you'll need to contact your bill payment service directly to arrange to update the payee name, address and loan number.

*   If your payment is inadvertently sent to the prior servicer after the transfer date, there are measures in place to help you. For the first 60 days following the loan servicing transfer date:
    o   Payments received by the previous servicer may be forwarded to Wells Fargo or returned to you requesting that you send it to us.
    o   As your new servicer, Wells Fargo will not assess late fees, provided your payment was received on or before its due date by either Wells Fargo or the previous servicer.

**Important Information About Your Mortgage**

Servicing transfer date:
February 1, 2018

Wells Fargo Home Mortgage loan number: 0558719837

For inquiries on or after February 1, 2018:
Call Wells Fargo Customer Service
1-866-234-8271
1-800-934-9998 (TTY)

Monday - Friday
6:00 a.m. to 10:00 p.m.,
Saturday, 8:00 a.m. to 2:00 p.m.
Central Time

After February 1, 2018, you may mail your payments to:
Wells Fargo Home Mortgage
P.O. Box 14538
Des Moines, IA 50306-3538

For inquiries prior to February 1, 2018, contact:
MARKETPLACE HOME MORTGAGE, L.L.C.
7380 FRANCE AVENUE SOUTH, SUITE 200
EDINA, MN
55435
8009004135
If this is not a local number, please call collect.

Review the enclosed FAQ:
ó   For more details about your payment options
ó   And other important information about the transfer of your loan to Wells Fargo Home Mortgage

ó   <u>If you're having trouble making your payment</u>, please contact us.

**We're glad to have you as our customer**
Your home matters and we look forward to continually providing the information and resources you need. To make the most of your Wells Fargo customer relationship go to: wellsfargo.com/mortgage/welcome.

Sincerely,

*[signature]*

J.R. Russell
Senior Vice President
Wells Fargo Home Mortgage

The Servicemembers Civil Relief Act (SCRA) may offer protection or relief to members of the military, their spouses, partners, and dependents. If you have been called to active duty, or are the spouse, partner in civil union, domestic partner, or financial dependent of a person who has been called to active duty, and you haven't yet made us aware of your status, please contact us as indicated below:

ó   Wells Fargo Home Mortgage military customer: Call 1-866-936-SCRA (1-866-936-7272) or fax your Active Duty Orders to 1-877-658-4585, attention SCRA.

In addition, please be aware that prior to seeking a refinance of your existing mortgage loan, you should consult with your legal advisor regarding the potential loss of any benefits you are entitled to under the Servicemembers Civil Relief Act or applicable state law.

Fee schedule
Fees for assumptions, partial releases, and other services will be quoted upon request. Allowable fees for checks and drafts that are not honored by your bank vary by state and will be assessed automatically. States with fixed fees are as follows: KS-$30; PA-$50; ID-$20; CO, NC & OK-$25; HI, IA, & MN-$30; SD-$40. Fees are subject to change without notice.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2017 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

# Notice of Transfer of Your Mortgage

Wells Fargo Home Mortgage account number: 0558719837
Property address:       341 CORRIE RD
                        ANN ARBOR MI

We're writing to provide you with important information about the transfers of ownership of your mortgage.
Please be aware there is no action required of you.

## Understanding your mortgage transfer
In case you weren't aware, it's a very common practice for mortgage lenders to sell mortgages after they've
originated. (Your mortgage lender is the one named in your promissory note.) As a result, your mortgage may
transfer to a new owner several times, shortly after your loan closing and during the life of your mortgage.

According to federal law, each new owner of your mortgage is required to send you a notice, even if they will only
own your mortgage for a very short time. This means you may receive several notices like this one. Please
understand that these transfers are normal business practice, and they do not affect any of the terms of your
mortgage.

## Important Information about your payment
- If your mortgage is current the lender may accept and apply partial payment, but will apply them to a suspense
  or unapplied account on the loan until a full contractual payment is received. Once the full contractual
  payment is received, the funds in the suspense account will be applied to your loan.
- If your mortgage is in foreclosure the lender will not accept partial payments or full payments when the
  payments are not enough to reinstate the loan.
- In the instance that your loan is sold to a new servicer, the lender may have a different policy.

## Important information about your new mortgage owner
On January 3, 2018, Wells Fargo Bank, N.A. purchased your loan from MARKETPLACE HOME MORTGAGE,
L.L.C.. As your new mortgage owner, we're happy to have you as our customer and can be reached as follows:

Mail:          Wells Fargo Bank N.A.
               P.O. Box 10335
               Des Moines, IA 50306-0335

Phone:         1-866-243-8271

Please note when the ownership of your loan was transferred to Wells Fargo Bank N.A., the previous owner may
record that transaction. If it has been recorded, the recording location is the office of public land records or the
recorder of deeds office for the county or local jurisdiction where the property is located.

## About your mortgage servicing
This notice does not change the servicing of your mortgage. If your servicing is changing, you will receive or have
already received a notice from your mortgage servicer.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2017 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

OF027 936

# Property Insurance Information

Customers often ask us for our property insurance requirements. This insert was designed to provide you with a convenient reference on insurance information. Please retain this insert with your important mortgage papers.

## Acceptable Insurance Companies

Wells Fargo Home Mortgage shall have the right to approve the insurer you select to underwrite the insurance we require as a condition of your mortgage.

The insurer must be rated by the A.M. Best Company, as having a B or better general policyholder's rating and a financial class size of at least III or a Demotech, Inc., minimum rating of A.

The insurer must be authorized to do business in the state where the property is located.

Policies from a State Fair Plan, Wind Pool, or from a non-admitted insurer are acceptable only when coverage cannot be obtained from insurance companies authorized to do business in the state.

## Insured Name and Property Address

The policy must show name(s) of insured(s) identical to those shown on the loan documents, and a property address corresponding to that shown on Wells Fargo Home Mortgage's records. A legal description must be shown for rural properties, condominiums, or other situations if property address does not adequately define the location of the property. (Example: Star Route 1, Box 5, is inadequate.)

## Policy Forms and Perils

A hazard insurance policy is required. The policy must provide coverage equal to or broader than those coverages provided under a standard Insurance Services Office (ISO) homeowner's form HO-3. The hazard policy (or a separate wind policy) must include coverage for windstorm, including hurricanes and named tropical storms.

## Minimum Coverage

The minimum hazard insurance coverage required is 100% of the insurable value of the improvements on the property as determined by the hazard insurance provider. The insurance policy must indicate claims settlement for damage to the dwelling will be on a replacement cost basis.

Flood insurance will be required if the property is designated to be within a Special Flood Hazard Area either prior to or after the time of loan closing. The amount of flood insurance required must be at least equal to the lesser of a) the combined outstanding balance of all loans and maximum line of credit limit, b) 100% of the estimated replacement cost value of the building(s) determined by the hazard insurance provided, or c) the maximum limit of coverage available under the National Flood Insurance Program. Wells Fargo Home Mortgage requires that you review your policy periodically with your insurance provider to ensure that your policy is sufficient to protect the property and that it is adjusted to keep up with increasing replacement costs.

## Deductibles

Hazard and Windstorm deductibles for most programs are acceptable up to 5% of the dwelling or building coverage limit.

Flood deductibles are acceptable up to $10,000 for 1-4 unit residential or $25,000 for condominium buildings.

Qualification for some special programs we offer might require you to carry a lower deductible.

## Policy and Premium Term

The policy must be written for at least a one year term or be continuous until cancelled.

## Policy Submission and Inception Date

The loan number must appear on the face of the submitted document for all renewals.
Policies replacing existing insurance must have an inception date concurrent with the policy it replaces so there is no gap in coverage.

## Certificates of Insurance

Wells Fargo Home Mortgage will accept an original lender's Certificate of Insurance issued by an authorized company in lieu of the original policy, provided the certificate includes: insured name; mortgagee of record; property address; type, amount and effective dates of coverage; replacement cost value; number of units for condominiums; deductible and coverage amounts; insurer's agreement to provide at least 10 days' notice to Wells Fargo Home Mortgage before any reduction on coverage or cancellation of policy; and signature of authorized representative of the issuers (if required by law).

## State Fair Plans and Wind Pools

Some State Fair Plans and Wind Pools take up to 90 days to issue an original policy. Because this would create an undue hardship in a sale or refinance, we will accept a copy of the application for insurance, and a copy of a cashier's check, money order, or agent's check showing proof of payment. Copies of personal checks are not acceptable unless they have cleared the bank. Renewals under these programs are handled as any other insurance policy.

## Failure to Provide Coverage

Any renewal policy must be received at least 30 days prior to expiration of existing coverage. Binders are not acceptable for renewal.

## Lender Placed Insurance

In the event a renewal of insurance is not received before the expiration date, or a notice of cancellation is received from your insurance provider, or if the insurance you provide does not meet the requirements of Wells Fargo Home Mortgage, your loan servicer may secure limited lender placed insurance coverage at your expense.

Insurance coverage obtained by your loan servicer will not provide the same coverage as your preferred policy. The insurance may cover flood and/or fire hazard and not provide liability or contents coverage. You will probably pay a higher premium for less coverage than you would for insurance which you can buy from the company or agent of your choice.

The cost for lender placed insurance will be charged to you. In order to minimize the cost of insurance to you and to maximize the type and amount of coverage for your property, it is recommended that you secure your own insurance coverage from the company or agent of your choice. Unearned premiums on lender placed insurance will be refunded to you when you provide evidence of acceptable insurance.

## Mortgagee Clause

OF027 936

The policy must contain a standard mortgagee clause in favor of Wells Fargo Home Mortgage. The Lender's name, address must appear on the policy exactly as the clause shown below:

Wells Fargo Bank, N.A. #936
Loan #0558719837
Its Successors and/or Assigns
P.O. Box 100515
Florence, SC 29502-0515

### Premium Payment
All premiums for new loans, assumptions or renewals of insurance are to be paid by the borrower, except where escrow accounts (impounds) are maintained for insurance.

For customers with properties in a Special Flood Hazard Area (SFHA): Loans originated, assumed or modified on or after January 1, 2016 are required to maintain an escrow account for flood insurance for the term of the loan or until the property is no longer located in an SFHA.

### Other Property Insurance
Wells Fargo Home Mortgage may require mudslide, sinkhole, mine subsidence, volcanic eruption, lava flow, avalanche and/or earthquake insurance depending on the location of the property.



# You have options with flood insurance coverage

**Explore your options with your insurance provider, so you can make an informed choice**

**Minimum flood insurance requirements**

If your property is located in a federally designated Special Flood Hazard Area, the minimum flood insurance coverage amount you are required to have for home financing must be at least equal to the *lowest* of the following:

- Replacement cost value for your property
- Combined amount of all loans and maximum line of credit limits
- $250,000.00 (residential buildings)

**Discuss your flood insurance needs with your insurance provider**

- Determine the level of coverage you need
  - o The minimum required flood insurance coverage may cost less; however, it may not provide the level of protection you need.
  - o The maximum flood insurance coverage is replacement cost value for your property; however, it may cost more and limits apply. This type of coverage can help safeguard you from the need to come up with extra funds to pay for building repairs when small or large damages happen.
- Know what your flood insurance covers, and doesn't
  - o You will be responsible for any flood losses not covered under your flood insurance policy.
  - o If you choose coverage that is less than 80% of the replacement cost value, there may be a deduction for depreciation and the insurance proceeds you receive may not cover expenses.

> **Questions to ask your insurance provider about flood insurance**
>
> - What will and won't be covered against flood damage?
> - How does my level of coverage impact how a claim will be calculated?
> - What is the difference between replacement cost value and actual cash value?
> - How much coverage should I get for my building and for my contents?
>
> Your insurance provider can answer your questions and discuss your particular coverage needs.

**The choice is yours**

We don't receive any fees or compensation from your insurance provider for your coverage choice. We simply want you to know your options to help you make an informed decision.

You can find information about flooding, flood risk, and a list of flood insurance providers in your area at floodsmart.gov, the official website of the National Flood Insurance Program.

**Visit floodsmart.gov for more questions to ask your insurance provider.**

OF027 936

# Answers to frequently asked questions as your mortgage servicing transfers to Wells Fargo Home Mortgage

We'd like to help you understand some details about the transfer of the servicing of your mortgage to Wells Fargo Home Mortgage, including:

- Payment information
- Year-end IRS reporting/income tax information
- Escrow information - property-related taxes and insurance
- General information

For additional information about the transfer of the servicing of your mortgage, please visit wellsfargo.com/mortgage/welcome.

## Payment information

Your payment options include:

- Automatic payments can be timed to your pay cycle using our Preferred Payment Plan$^{SM}$ service. Payments can be made monthly (total payment withdrawn between the 1st and 5th day each month), twice a month (1st and 15th - 1/2 total monthly payment), every two weeks (days of choice - 1/2 total monthly payment) or weekly (day of choice - 1/4 total monthly payment).  Go to wellsfargo.com/mortgage/welcome for sign up instructions.

  Payments made weekly, every two weeks and twice a month are treated as partial payments and may  not be applied to your mortgage until full payment is received. A partial payment is anything less than   the amount due on your billing statement. However, if you schedule withdrawals weekly or every two      weeks we will reduce your principal loan balance two to four times per year by applying your partial     payment. Twice a month withdrawals will not reduce your principal loan balance.

- Online payments can be scheduled for free at wellsfargo.com.

- Phone payments can be made 24 hours a day, 7 days a week through our automated phone system, or with help from Customer Service. A fee for an automated telephone payment of $6 and for an agent-assisted telephone payment of $12 may be applicable based on the status of your account.

- Mailed payments can be made using the payment coupon included with your monthly mortgage statement or bring it into any Wells Fargo branch at no charge.

- In-person payments can be made at any Wells Fargo Bank beginning 15 days after your mortgage transfer. (See the Important Information box on page 1 for your transfer date)

- If you are unable to make your payment contact customer service immediately at 1-866-234-8271.

How will I be billed for my mortgage?
If you're not enrolled in an automatic payment plan, you'll receive a monthly billing statement with a payment coupon and a return envelope to use. We do not provide coupon books.

How does Wells Fargo Home Mortgage handle automatic withdrawals?
If your previous mortgage payments were automatically withdrawn from an account, this service will not continue. If you want to set up automatic withdrawals with Wells Fargo, please visit wellsfargo.com/mortgage/welcome.

What do I need to do if I use a bill payment service or an Internet banking site to make my mortgage payments?
In this instance, you'll need to contact your bill payment service directly to arrange to have the payee information changed. Provide them with the following information, which is found on page 1 in the Important Information box:
- Your new mortgage servicer: "Wells Fargo Home Mortgage"
- The effective date that payments need to be sent to Wells Fargo. (This is listed on the enclosed letter as the "transfer date").
- Your Wells Fargo Home Mortgage loan number, which is listed on the enclosed letter.
- The Wells Fargo Home Mortgage mail-in payment address, which is listed on the coupon section of your mortgage statement, as well as on the enclosed letter.

Can I use my credit card to make a payment?
No, but you can set up automatic mortgage payments so your monthly payment can be withdrawn automatically from your checking account each month.

How does Wells Fargo Home Mortgage handle payments by check?
When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

Can I send additional funds with my payment?

OF027 936

Yes, and please be sure to write on your payment coupon how you'd like your additional funds applied. Without this direction from you, your funds may not be applied to your account as you intended. Include your Wells Fargo Home Mortgage loan number on all payments and inquiries to help ensure a prompt response.

How can I pay off my loan more quickly?
As long as your account is current, you can pay additional funds at any time and have them applied to your mortgage principal. Or you can choose an automatic payment plan designed to help you pay off your mortgage sooner. To sign up for our Preferred Payment Plan$^{SM}$ service, go to: wellsfargo.com/mortgage/welcome.

If the check I mailed for my mortgage payment is returned for non-sufficient funds, will you send it through again?
If your mortgage check does not clear upon initial presentment, your bank may charge a fee and we may attempt to withdraw funds from your account electronically up to a maximum of three times. If we are not able to successfully collect these funds, the check amount will be reversed from your loan. A fee may be assessed.

What is the late charge fee if my payment is late?
ó   The amount of the late fee is usually a percentage of the principal and interest payment or a set amount. Your mortgage note states how your late fee is to be calculated.

Year-end IRS reporting/income tax information

How will I receive my year-end information for tax purposes and for my records?
You will receive a year-end IRS 1098 statements from us. It will show the amount of reportable mortgage interest and mortgage insurance paid (if applicable) to Wells Fargo. It will also show any property taxes we paid on your behalf.  This statement will be mailed to you from Wells Fargo Home Mortgage no later than January 31.

Escrow information - property-related taxes and insurance

I had my taxes and insurance payments made by my previous mortgage company. Will this continue?
Yes, your escrow balance will be transferred to Wells Fargo Home Mortgage and we will continue to partner with you on this. You will contribute funds to your escrow account as part of your monthly payment. Wells Fargo will use these funds to pay your property-related taxes and insurance premiums on your behalf when they are due. Note: Each year, Wells Fargo Home Mortgage reviews your escrow account to ensure your escrow contribution will cover the projected bills for your escrowed items. This review is conducted at least once a year, based on the state in which your property is located. An interim analysis may be required to ensure we are in compliance with the Real Estate Settlement Procedures Act (RESPA). After each escrow review, you will receive an Escrow Review that will show any changes to your escrow account and your new total monthly payment account.

To learn more about escrow, visit wellsfargo.com/escrow.

Do I need to contact my insurance company?
Your prior mortgage company will contact your homeowners/flood insurance company requesting an endorsement to your policy reflecting the change in servicer to Wells Fargo Home Mortgage, and to send all future notifications to Wells Fargo Home Mortgage. To ensure your insurance company notifies Wells Fargo of future renewals and/or premiums, which need to be paid from your escrow account, we encourage you to contact them and notify your agent of the change. Please provide your agent with your new loan number and the mortgagee clause below:

> Wells Fargo Bank, N.A. #936
> Its Successors and/or Assigns
> P.O. Box 100515
> Florence, SC 29502-0515

What else should I know about escrow accounts?
We conduct an escrow review at least once each year to evaluate if your account has an overage or a shortage and to ensure we are collecting the right amount to cover your escrow-related bills. If these payments increase or decrease, we'll recalculate your escrow payment and any changes will appear on the Escrow Review Statement we provide to you.

ó   A minimum escrow balance is required in order to help cover unexpected changes in your escrow-related bills.
  ◦   If a minimum balance is required, it will equal no more than two months of escrow payments.
  ◦   Whether a minimum balance is required and the amount of the minimum balance depends on your mortgage terms and applicable state law.

ó   A shortage occurs when the total payouts for your escrow-related bills were *higher* than what was previously estimated and, as a result, your escrow account has dropped below the minimum required balance.
  ◦   Depending on the amount of your shortage, you may have the option to pay the shortage up front or spread the shortage amount across your next 12 monthly escrow payments.
  ◦   If your statement includes an upfront payment option, there will be a shortage payment coupon at the bottom of page 1.

ó   An overage occurs when the total payouts for your escrow-related bills were lower than what was previously estimated and, as a result, your escrow account contains more than the minimum required balance. If your account is current, we will send you a refund.

Currently, I don't have my taxes and insurance payments made by my mortgage company. Can I set up an escrow account for these expenses?

OF027 936

Yes, please call Customer Service to set up your account. The Wells Fargo escrow account is an intelligent way to ensure your largest investment - your home - is well-managed and protected. You fund the account, and Wells Fargo pays your property-related taxes and insurance premiums on your behalf enabling you to direct your focus and time to other matters. A review of your escrow account will be conducted at least once a year, based on the state in which your property is located. An interim review may be conducted to maintain RESPA (Real Estate Settlement Procedures Act) compliance. You will receive an Escrow Account Disclosure Statement each time a review is conducted.

My property is in Texas. Can I use a third party lender to pay my property taxes?
No, because using a third party lender to pay your property taxes creates a priority lien over your account with us, which is not permitted under your Wells Fargo Home Mortgage Agreement. You also can't set up a payment plan or a deferral for your taxes because these create priority lien situations. If you need help to manage your payments and you don't have an escrow account with us, please call Customer Service for assistance.

<u>General information</u>

Does this transfer change any of the terms disclosed in my loan documents?
This transfer does not affect any terms or conditions of your mortgage other than those directly related to the servicing of your loan, such as where you send your payments.

Can I view my mortgage online?
Yes, you can view your mortgage information online 15 days after your transfer date. Simply go to yourwellsfargomortgage.com and enroll.

I have mortgage life insurance with my current mortgage company. Am I still covered?
No. If you have mortgage life, disability, or other optional insurance with your current mortgage company, these products will not transfer to Wells Fargo. If you wish to continue coverage, please contact your current insurer and make arrangements to pay your premiums directly. You may notice a change to your monthly mortgage payment amount showing these premiums are no longer being collected.
If I have questions about my mortgage, who should I contact?
If you have questions about your mortgage before the transfer date, contact your prior mortgage company.  On and after your loan transfer date, call Wells Fargo Home Mortgage at the number in your letter. Note: See the Important Information box on page 1 of your transfer letter for the date your mortgage information will be available on the Wells Fargo system. When you call, please have your mortgage account number handy.

We appreciate your business and look forward to serving you.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2017 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**KARL STAFFELD and AZAR STAFFELD,**

                **Plaintiffs,**

**v.**

**WELLS FARGO BANK, N.A.,**

                **Defendant.**

**Case No. 4:24-cv-12811-SDK-DRG**

    **Hon. Shalina D. Kumar**
    **Hon. David R. Grand**

## DEFENDANT WELLS FARGO BANK, N.A.'S FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF KARL STAFFELD

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), by counsel and pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, propounds the following Interrogatories and Requests for Production of Documents on Plaintiff Karl Staffeld ("Plaintiff"). Plaintiff is requested to respond to each of the discovery requests set forth below within thirty (30) days of the date of service and thereafter supplement such answers and responses as and when required by all applicable rules.

### Definitions and Instructions

1.     The term "document" or "documents" shall be given the fullest interpretation allowable under the Federal Rules of Civil Procedure. Without limiting the foregoing, "document(s)" means any form of data compilation, including written, electronic, printed, typed, drawn, taped, filmed, recorded, or graphic matter, that you possess, control, or have custody of, or have the right to

obtain upon request or demand.  This definition includes all copies, reproductions, or facsimiles of documents by whatever means made.  If copies of a document are not identical for any reason, including handwritten notations, initials or identification marks, each non-identical copy is a separate document within the meaning of this definition.

2.      "Communicate" or "Communication" means every manner or means of disclosure, transfer, or exchange, including, without limitation, the dissemination of Documents, and every disclosure, transfer, or exchange of information whether orally or by Document or whether face-to-face, by telephone, mail, personal delivery or otherwise.  The references to, or requests for, communications in these discovery requests refers to all communications of which you are aware and/or communications that you possess, control, or of which you have custody.

3.      "Wells Fargo" shall refer to Defendant Wells Fargo Bank, N.A. and its representatives and agents.

4.      "Plaintiff," "you," and "your" shall refer to Karl Staffeld and his representatives and agents.

5.      If you object to any of these discovery requests, please state the reasons for your objections and specify the part of the request to which you object.  Similarly, if you do not object to a particular discovery request but are unable to respond fully to

that discovery request, then you shall respond to the fullest extent possible and provide an explanation for your lack of a full response.

6. When identifying natural or non-natural persons in your answers or responses, state their full name (and any aliases and trade or fictitious names) and their current or last known business address and telephone number, or, alternatively, in the case of natural persons, their residential address and telephone number if their business address and telephone number are unknown.

7. The word "person" shall mean any natural person, corporation, partnership, firm, association, joint venture, sole proprietorship, trust, department, agency, or any other legal, business, or governmental entity.

8. The phrasing of these discovery requests shall be construed as to make your response inclusive rather than exclusive. Thus, the word "include" or "including" is intended to be comprehensive and means "including, but not limited to." Similarly, the singular form of all words includes the plural form and the plural form of all words includes the singular form; the words "and" and "or" shall be interpreted as both conjunctive and disjunctive; the word "any" shall mean "any and all;" and the word "each" shall mean "each and every."

9. "Identify" or "identity" with respect to oral, written, telephonic or electronic communications shall mean:

   a. The communications medium, *e.g.*, written, oral, telephonic or electronic;

b.  The date (or close approximation) of each such communication;

c.  The identity of all persons who were present at each communication;

d.  The substance and nature of each such communication.

10.    Electronically Stored Information (ESI) shall be collected in a manner that preserves metadata to the extent reasonably possible.  ESI shall be produced in searchable PDF.  The original native files shall be preserved.

11.    With respect to the production of documents, as to each responsive document withheld from production on any ground, expressly state the basis for the withholding and describe the nature of the document, communication, or tangible thing withheld in a manner that will enable Defendant to assess the basis for the withholding.

12.    The "Complaint" shall refer to the First Amended Complaint filed by Plaintiffs in this matter on or about February 28, 2025, in the United States District Court for the Eastern District of Michigan and any amendment thereto.

13.    The "Answer" shall refer to the Answer to the Complaint filed by Wells Fargo on or about March 14, 2025, and any Amendments thereto.

14.    The "Property" shall refer to the real property located at 341 Corrie Road, Ann Arbor, MI 48105.

15.     The "Mortgage" shall refer to the certified copy of the mortgage document prepared by Marketplace Home Mortgage, L.L.C., and recorded by American Title Co. of Washtenaw for 341 Corrie Road Ann Arbor, MI 48105.

16.     The "Note" shall refer to the promissory note dated December 15, 2017, for Loan Number 570170991033, in which the Borrower Dorothea Vermillion Staffeld, promises to pay Marketplace Home Mortgage, L.L.C. the principal amount of $424,100.00 plus interest at a yearly rate of 4.250%.

17.     "Residence" shall refer to where You live at or have a home where you typically reside and consider a primary place of living.

18.     The relevant time period shall begin on November 1, 2018.

## Interrogatories

**Interrogatory 1:**  Identify all persons with knowledge of any facts relating in any way to the allegations, averments, damages, denials, relief claimed, affirmative defenses, and defenses concerning the Complaint, Wells Fargo's Answer, or any other issue in this matter, and for each such person identified, set forth his or her name, address, and current telephone number, as well as a detailed description of each person's knowledge relating to this action.

**Response:**

**Interrogatory 2:**   Identify each and every communication or interaction that you had with Wells Fargo concerning the Property at any time since November 1, 2018.  In your response, please include the date and time when the communication or interaction occurred, the identity of any persons with whom you communicated or interacted, whether the communication or interaction was in person or occurred via some other method of communication, and the substance of the communication.

**Response:**

**Interrogatory 3:**   Identify each and every communication in which you informed Wells Fargo of the death of Dorothea Vermillion Staffeld. In your response, please include the date and time when the communication or interaction occurred, the identity of any persons with whom you communicated or interacted, whether the communication or interaction was in person or occurred via some other method of communication, and the substance of the communication.

**Response:**

**Interrogatory 4:**   Identify each and every communication or interaction that you had with Wells Fargo in connection with the loan modification application identified in Paragraphs 15-17 and 24 of the Complaint.  In your response, please include the date and time when the communication or interaction occurred, the

6

identity of any persons with whom you communicated or interacted, whether the communication or interaction was in person or occurred via some other method of communication, and the substance of the communication.

**Response:**

**Interrogatory 5:**   Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations in Paragraph 10 of the Complaint that Dorothea Vermillion Staffeld "secured mortgage insurance through the Wells Fargo Mortgage Company which provided that if the purchaser should pass away within one year, the then-owed principal and interest loan balance would be satisfied by the mortgage insurance."

**Response:**

**Interrogatory 6:**   Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations in Paragraph 11 of the Complaint asserting that, "prior to passing away [Dorothea Vermillion Staffeld] transferred ownership of the Subject Property by Quit Claim Deed to Karl and Azar Staffeld."

**Response:**

**Interrogatory 7:**  Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations in Paragraph 11 of the Complaint asserting that, "Plaintiffs are the title owners of the Subject Property and are entitled to the full payment of the mortgage amount according to mortgage insurance guidelines."

**Response:**


**Interrogatory 8:**  Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations in Paragraph 14 of the Complaint asserting that, "Plaintiffs reached out directly to Wells Fargo Bank and were assured by several representatives that they could make installment payments upon their return to work to become current on the mortgage loan balance and seek a loan modification as well."  In your response, please include the date and time when the communication or interaction occurred, the identity of any persons with whom you communicated or interacted, whether the communication or interaction was in person or occurred via some other method of communication, and the substance of the communication.

**Response:**

**Interrogatory 9:**  Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations in Paragraph 15 that, "[p]laintiffs were specifically advised by Wells Fargo Bank representatives to be identified during discovery that the Subject Property would not be foreclosed upon while Plaintiffs brought the loan account current and sought to be approved for a loan modification."  In your response, please include the date and time when the communication or interaction occurred, the identity of any persons with whom you communicated or interacted, whether the communication or interaction was in person or occurred via some other method of communication, and the substance of the communication.

**Response:**

**Interrogatory 10:** Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations in Paragraph 16 of the Complaint that Wells Fargo initiated foreclosure proceedings without proper notice to Plaintiffs.  Identify all persons with knowledge of the facts set forth in your response and identify all documents which relate to or support your response to this Interrogatory.

**Response:**

**Interrogatory 11:** Identify with particularity and detail all facts, documents, and communications surrounding the loan You took out with R & J Holdings, LLC as identified in Paragraphs 28-45 in the Complaint.  Identify all persons with knowledge of the facts set forth in your response and identify all documents which relate to or support your response to this Interrogatory.

**<u>Response:</u>**

**Interrogatory 12:** Identify with particularity and detail all facts, documents, and communications you rely on to support your allegation that Wells Fargo has breached a contract with You as alleged in Paragraphs 61-72 of the Complaint. Identify all persons with knowledge of the facts set forth in your response and identify all documents which relate to or support your response to this Interrogatory.

**<u>Response:</u>**

**Interrogatory 13:**  Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations that Wells Fargo made "fraudulent misrepresentations" as alleged in Paragraphs 79-93 of the Complaint. In your response, please include the specific statements alleged to have been made by Wells Fargo, the date and time when the alleged representations were made, the identity of the person(s) who made the representations, whether the representation

was in person or occurred via some other method of communication.   Identify all persons with knowledge of the facts set forth in your response and identify all documents which relate to or support your response to this Interrogatory.

**Response:**


**Interrogatory 14:** Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations that Wells Fargo violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), as alleged in Paragraphs 73-78 of the Complaint.  Identify all persons with knowledge of the facts set forth in your response and identify all documents which relate to or support your response to this Interrogatory.

**Response:**


**Interrogatory 15:** Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations that Wells Fargo was unjustly enriched as alleged in Paragraphs 94-100 of the Complaint, including the amount by which you assert Wells Fargo was enriched and the dates on which you allege this occurred.  Identify all persons with knowledge of the facts set forth in your response and identify all documents which relate to or support your response to this Interrogatory.

**Response:**


**Interrogatory 16:** Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations that Wells Fargo is liable for negligent infliction of emotional distress as alleged in Paragraphs 101-104 of the Complaint.  Identify all persons with knowledge of the facts set forth in your response and identify all documents which relate to or support your response to this Interrogatory.

**Response:**


**Interrogatory 17:** Provide a detailed description of the actual damages that you have incurred as a result of any action or inaction on the part of Wells Fargo, including when the damages were incurred, the dollar amount of any monetary damages, the nature and extent of any emotional or other non-economic damages, and any actions you have taken to mitigate your damages.

**Response:**


**Interrogatory 18:** Do you assert a claim for damages related to mental distress or emotional anguish as a result of any act or omission on the part of Wells Fargo?  If so, describe: (a) the nature, extent, and duration of the alleged mental

distress or emotional anguish; (b) any physical symptoms or injuries that allegedly resulted from the mental distress or emotional anguish; and (c) any treatments you received or consultations you had with any medical care provider psychologist, psychiatrist, counselor, therapist, or similar mental health professional as a result of the alleged mental distress or emotional anguish.

**Response:**


**Interrogatory 19:** Please list the address of Your current Residence.

**Response:**


**Interrogatory 20:** Please list any other addresses where You have resided in the past five years, including the dates of residence at each address.

**Response:**


**Interrogatory 21:** Please identify all previous lawsuits with which you have been involved, and all current lawsuits with which you are currently involved, either as a named party, class member, or witness.  In your response, please provide the date that the lawsuit was filed, the subject matter of the lawsuit, the jurisdiction in which the lawsuit was pending / is pending, how you became involved in the lawsuit and the outcome of the lawsuit if it has been resolved.

**Response:**


**Interrogatory 22:** If you have ever been charged with, convicted of, or pled guilty to, a crime, state the date of each charge, conviction or plea, the court in which such was rendered, the case number, if any, and the exact nature of such crime.

**Response:**


**Interrogatory 23:** Identify all witnesses from whom you expect to elicit any lay or expert opinion testimony at a hearing or trial of this matter.  For each witness identified, state the subject matter on which the witness is expected to testify, the substance of the facts and opinions to which the witness is expected to testify, a summary of the grounds for such opinion, and, for each expert witness, the educational background and work experience that qualified that person to testify as an expert witness**.**

**Response:**


**Interrogatory 24:** Identify all persons who provided the information used and all documents, communications, and tangible items reviewed, discussed, or referenced in preparing your responses for these Interrogatories.

**Response:**

**Interrogatory 25:** If any of your responses to any of Wells Fargo Bank, N.A.'s First Requests for Admissions to Plaintiff Azar Staffeld concurrently served with these interrogatories is other than an unqualified admission, please state all facts on which you based that response.

**<u>Response:</u>**

**<u>Requests For Production</u>**

**Request 1.** Produce all documents concerning or related to the communications with Wells Fargo concerning the Property identified in response to Interrogatory No. 2 above.

**<u>Response:</u>**

**Request 2.** Produce all documents concerning or related to the communications with Wells Fargo concerning the death of Dorothea Vermillion Staffeld as identified in response to Interrogatory No. 3 above.

**<u>Response:</u>**

**Request 3.** Produce all documents concerning or related to the communications with Wells Fargo concerning your loan modification application identified in response to Interrogatory No. 4 above.

**<u>Response:</u>**

**Request 4.** Produce all documents and communications supporting or relating to the allegations in Paragraph 11 of the Complaint asserting that, "prior to passing away [Dorothea Vermillion Staffeld] transferred ownership of the Subject Property by Quit Claim Deed to Karl and Azar Staffeld."

**Response:**

**Request 5.** Produce all documents supporting or relating to the communications with Wells Fargo identified in Paragraphs 14 and 15 of the Complaint.

**Response:**

**Request 6.** Please produce all documents and communications supporting or relating to the allegations in the Complaint the loan You allegedly obtained from R & J Holdings.

**Response:**

**Request 7.** Produce all documents and communications supporting or relating to the allegations in the Complaint that Wells Fargo breached a contract with You.

**Response:**

**Request 8.** Produce all documents and communications supporting or relating to the allegations in Paragraphs 79-93 of the Complaint asserting that Wells Fargo made fraudulent misrepresentations.

**Response:**

**Request 9.** Produce all documents and communications supporting or relating to the allegations in the Complaint asserting that Wells Fargo violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA").

**Response:**

**Request 10.** Produce all documents and communications supporting or relating to the allegations in Paragraphs 94-100 of the Complaint asserting that Wells Fargo was unjustly enriched.

**Response:**

**Request 11.** Produce all documents and communications supporting or relating to the allegations in Paragraphs 101-104 of the Complaint asserting that Wells Fargo negligently caused you to suffer emotional distress.

**Response:**

**Request 12.** Please produce all documents and communications you have reviewed, referred to, or relied upon, in responding to Wells Fargo's First Set of Interrogatories to Karl Staffeld.

**Response:**

**Request 13.** Please produce all documents or communications you reviewed, referred to, or relied upon, in drafting your Complaint.

**Response:**

**Request 14.** Please produce all non-privileged documents and communications between you and any third party related to the allegations made in the Complaint.

**Response:**

**Request 15.** For the period of November 1, 2018 through the present, please produce all non-privileged documents and communications between you and any third party that are related to the Property.

**Response:**

**Request 16.** Please produce all documents and communications that evidence, refer, support, or relate to your claim for damages, including documents related to: (a) the nature, extent, and duration of each alleged harm; (b) the amount of any alleged charges, expenses, or financial losses; (c) the nature and extent of any

alleged emotional distress, including records of treatment received from any physician, psychologist, counselor, or mental health professional.

**Response:**

**Request 17.** Please produce all statements from any person, including potential witnesses relating to the allegations in this lawsuit that you have received from any source, whether the statement is written, audio-recorded, or video-recorded.

**Response:**

**Request 18.** Please produce all documents, communications, or other postings you have made to any social media or internet site pertaining to the allegations in your Complaint.  This request includes, but is not limited to, postings you have made to Facebook, Twitter, LinkedIn, Google Plus+, TikTok, and Instagram.

**Response:**

**Request 19.** Please produce all documents and communications constituting or relating to any exhibits that Plaintiff plans to use in this action, as attachments to any motion or memoranda, or to be introduced at a trial of this matter.

**Response:**


**Request 20.** Please produce all documents and communications forwarded by you or on your behalf to any expert witness which you have obtained to testify at trial.

**Response:**


**Request 21.** Please produce any court filings, police reports, indictments, charging statements, or plea agreements relating to any charge, conviction, or plea referred to in your response to Interrogatory No. 15 above.

**Response:**


Dated:          March 17, 2025          Respectfully submitted,

                                        By:   /s/ Mark D. Kundmueller
                                        Mark D. Kundmueller, Esq. (P66306)
                                        TROUTMAN PEPPER LOCKE LLP
                                        222 Central Park Avenue, Suite 2000
                                        Virginia Beach, Virginia 23462
                                        Phone: (757) 687-7564
                                        Facsimile: (757) 687-1524
                                        mark.kundmueller@troutman.com

                                        *Counsel for Defendant Wells Fargo Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2025, I served the foregoing *First Set of Interrogatories and Requests for Production of Documents to Plaintiff Azar Staffeld*, via Federal Express to the following:

> Karl Staffeld
> Azar Staffeld
> Plaintiffs, *Pro Se*
> 341 Corrie Road
> Ann Arbor, MI 48105

> */s/ Mark D. Kundmueller*
> Mark D. Kundmueller, Esq.

23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**KARL STAFFELD and AZAR STAFFELD,**

        **Plaintiffs,**

**v.**

**WELLS FARGO BANK, N.A.,**

        **Defendant.**

**Case No. 4:24-cv-12811-SDK-DRG**

    **Hon. Shalina D. Kumar**
    **Hon. David R. Grand**

## DEFENDANT WELLS FARGO BANK, N.A.'S FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF AZAR STAFFELD

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), by counsel and pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, propounds the following Interrogatories and Requests for Production of Documents on Plaintiff Azar Staffeld ("Plaintiff").  Plaintiff is requested to respond to each of the discovery requests set forth below within thirty (30) days of the date of service and thereafter supplement such answers and responses as and when required by all applicable rules.

### Definitions and Instructions

1.    The term "document" or "documents" shall be given the fullest interpretation allowable under the Federal Rules of Civil Procedure.  Without limiting the foregoing, "document(s)" means any form of data compilation, including written, electronic, printed, typed, drawn, taped, filmed, recorded, or graphic matter, that you possess, control, or have custody of, or have the right to

obtain upon request or demand.  This definition includes all copies, reproductions, or facsimiles of documents by whatever means made.  If copies of a document are not identical for any reason, including handwritten notations, initials or identification marks, each non-identical copy is a separate document within the meaning of this definition.

2.      "Communicate" or "Communication" means every manner or means of disclosure, transfer, or exchange, including, without limitation, the dissemination of Documents, and every disclosure, transfer, or exchange of information whether orally or by Document or whether face-to-face, by telephone, mail, personal delivery or otherwise.  The references to, or requests for, communications in these discovery requests refers to all communications of which you are aware and/or communications that you possess, control, or of which you have custody.

3.      "Wells Fargo" shall refer to Defendant Wells Fargo Bank, N.A. and its representatives and agents.

4.      "Plaintiff," "you," and "your" shall refer to Azar Staffeld and his representatives and agents.

5.      If you object to any of these discovery requests, please state the reasons for your objections and specify the part of the request to which you object.  Similarly, if you do not object to a particular discovery request but are unable to respond fully to

that discovery request, then you shall respond to the fullest extent possible and provide an explanation for your lack of a full response.

6.     When identifying natural or non-natural persons in your answers or responses, state their full name (and any aliases and trade or fictitious names) and their current or last known business address and telephone number, or, alternatively, in the case of natural persons, their residential address and telephone number if their business address and telephone number are unknown.

7.     The word "person" shall mean any natural person, corporation, partnership, firm, association, joint venture, sole proprietorship, trust, department, agency, or any other legal, business, or governmental entity.

8.     The phrasing of these discovery requests shall be construed as to make your response inclusive rather than exclusive.  Thus, the word "include" or "including" is intended to be comprehensive and means "including, but not limited to."  Similarly, the singular form of all words includes the plural form and the plural form of all words includes the singular form; the words "and" and "or" shall be interpreted as both conjunctive and disjunctive; the word "any" shall mean "any and all;" and the word "each" shall mean "each and every."

9.     "Identify" or "identity" with respect to oral, written, telephonic or electronic communications shall mean:

     a.  The communications medium, *e.g.*, written, oral, telephonic or electronic;

      b.  The date (or close approximation) of each such communication;

      c.  The identity of all persons who were present at each communication;

      d.  The substance and nature of each such communication.

10.    Electronically Stored Information (ESI) shall be collected in a manner that preserves metadata to the extent reasonably possible.  ESI shall be produced in searchable PDF.  The original native files shall be preserved.

11.    With respect to the production of documents, as to each responsive document withheld from production on any ground, expressly state the basis for the withholding and describe the nature of the document, communication, or tangible thing withheld in a manner that will enable Defendant to assess the basis for the withholding.

12.    The "Complaint" shall refer to the First Amended Complaint filed by Plaintiff in this matter on or about February 28, 2025, in the United States District Court for the Eastern District of Michigan and any amendment thereto.

13.    The "Answer" shall refer to the Answer to the Complaint filed by Wells Fargo on or about March 14, 2025, and any Amendments thereto.

14.    The "Property" shall refer to the real property located at 341 Corrie Road, Ann Arbor, MI 48105.

15.     The "Mortgage" shall refer to the certified copy of the mortgage document prepared by Marketplace Home Mortgage, L.L.C., and recorded by American Title Co. of Washtenaw for 341 Corrie Road Ann Arbor, MI 48105.

16.     The "Note" shall refer to the promissory note dated December 15, 2017, for Loan Number 570170991033, in which the Borrower Dorothea Vermillion Staffeld, promises to pay Marketplace Home Mortgage, L.L.C. the principal amount of $424,100.00 plus interest at a yearly rate of 4.250%.

17.     "Residence" shall refer to where You live at or have a home where you typically reside and consider a primary place of living.

18.     The relevant time period shall begin on November 1, 2018.

## Interrogatories

**Interrogatory 1:**  Identify all persons with knowledge of any facts relating in any way to the allegations, averments, damages, denials, relief claimed, affirmative defenses, and defenses concerning the Complaint, Wells Fargo's Answer, or any other issue in this matter, and for each such person identified, set forth his or her name, address, and current telephone number, as well as a detailed description of each person's knowledge relating to this action.

**Response:**

**Interrogatory 2:**   Identify each and every communication or interaction that you had with Wells Fargo concerning the Property at any time since November 1, 2018.  In your response, please include the date and time when the communication or interaction occurred, the identity of any persons with whom you communicated or interacted, whether the communication or interaction was in person or occurred via some other method of communication, and the substance of the communication.

**<u>Response:</u>**

**Interrogatory 3:**   Identify each and every communication in which you informed Wells Fargo of the death of Dorothea Vermillion Staffeld. In your response, please include the date and time when the communication or interaction occurred, the identity of any persons with whom you communicated or interacted, whether the communication or interaction was in person or occurred via some other method of communication, and the substance of the communication.

**<u>Response:</u>**

**Interrogatory 4:**   Identify each and every communication or interaction that you had with Wells Fargo in connection with the loan modification application identified in Paragraphs 15-17 and 24 of the Complaint.  In your response, please include the date and time when the communication or interaction occurred, the

identity of any persons with whom you communicated or interacted, whether the communication or interaction was in person or occurred via some other method of communication, and the substance of the communication.

**Response:**


**Interrogatory 5:**   Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations in Paragraph 10 of the Complaint that Dorothea Vermillion Staffeld "secured mortgage insurance through the Wells Fargo Mortgage Company which provided that if the purchaser should pass away within one year, the then-owed principal and interest loan balance would be satisfied by the mortgage insurance."

**Response:**


**Interrogatory 6:**   Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations in Paragraph 11 of the Complaint asserting that, "prior to passing away [Dorothea Vermillion Staffeld] transferred ownership of the Subject Property by Quit Claim Deed to Karl and Azar Staffeld."

**Response:**

**Interrogatory 7:**   Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations in Paragraph 11 of the Complaint asserting that, "Plaintiffs are the title owners of the Subject Property and are entitled to the full payment of the mortgage amount according to mortgage insurance guidelines."

**Response:**

**Interrogatory 8:**   Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations in Paragraph 14 of the Complaint asserting that, "Plaintiffs reached out directly to Wells Fargo Bank and were assured by several representatives that they could make installment payments upon their return to work to become current on the mortgage loan balance and seek a loan modification as well."  In your response, please include the date and time when the communication or interaction occurred, the identity of any persons with whom you communicated or interacted, whether the communication or interaction was in person or occurred via some other method of communication, and the substance of the communication.

**Response:**

**Interrogatory 9:**   Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations in Paragraph 15 that, "[p]laintiffs were specifically advised by Wells Fargo Bank representatives to be identified during discovery that the Subject Property would not be foreclosed upon while Plaintiffs brought the loan account current and sought to be approved for a loan modification."   In your response, please include the date and time when the communication or interaction occurred, the identity of any persons with whom you communicated or interacted, whether the communication or interaction was in person or occurred via some other method of communication, and the substance of the communication.

**Response:**

**Interrogatory 10:** Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations in Paragraph 16 of the Complaint that Wells Fargo initiated foreclosure proceedings without proper notice to Plaintiffs.  Identify all persons with knowledge of the facts set forth in your response and identify all documents which relate to or support your response to this Interrogatory.

**Response:**

**Interrogatory 11:** Identify with particularity and detail all facts, documents, and communications surrounding the loan You took out with R & J Holdings, LLC as identified in Paragraphs 28-45 in the Complaint.  Identify all persons with knowledge of the facts set forth in your response and identify all documents which relate to or support your response to this Interrogatory.

**<u>Response:</u>**

**Interrogatory 12:** Identify with particularity and detail all facts, documents, and communications you rely on to support your allegation that Wells Fargo has breached a contract with You as alleged in Paragraphs 61-72 of the Complaint. Identify all persons with knowledge of the facts set forth in your response and identify all documents which relate to or support your response to this Interrogatory.

**<u>Response:</u>**

**Interrogatory 13:** Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations that Wells Fargo made "fraudulent misrepresentations" as alleged in Paragraphs 79-93 of the Complaint. In your response, please include the specific statements alleged to have been made by Wells Fargo, the date and time when the alleged representations were made, the identity of the person(s) who made the representations, whether the representation

was in person or occurred via some other method of communication.   Identify all persons with knowledge of the facts set forth in your response and identify all documents which relate to or support your response to this Interrogatory.

**Response:**

**Interrogatory 14:** Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations that Wells Fargo violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), as alleged in Paragraphs 73-78 of the Complaint.  Identify all persons with knowledge of the facts set forth in your response and identify all documents which relate to or support your response to this Interrogatory.

**Response:**

**Interrogatory 15:** Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations that Wells Fargo was unjustly enriched as alleged in Paragraphs 94-100 of the Complaint, including the amount by which you assert Wells Fargo was enriched and the dates on which you allege this occurred.  Identify all persons with knowledge of the facts set forth in your response and identify all documents which relate to or support your response to this Interrogatory.

**Response:**


**Interrogatory 16:** Identify with particularity and detail all facts, documents, and communications you rely on to support your allegations that Wells Fargo is liable for negligent infliction of emotional distress as alleged in Paragraphs 101-104 of the Complaint.  Identify all persons with knowledge of the facts set forth in your response and identify all documents which relate to or support your response to this Interrogatory.

**Response:**


**Interrogatory 17:** Provide a detailed description of the actual damages that you have incurred as a result of any action or inaction on the part of Wells Fargo, including when the damages were incurred, the dollar amount of any monetary damages, the nature and extent of any emotional or other non-economic damages, and any actions you have taken to mitigate your damages.

**Response:**


**Interrogatory 18:** Do you assert a claim for damages related to mental distress or emotional anguish as a result of any act or omission on the part of Wells Fargo?  If so, describe: (a) the nature, extent, and duration of the alleged mental

distress or emotional anguish; (b) any physical symptoms or injuries that allegedly resulted from the mental distress or emotional anguish; and (c) any treatments you received or consultations you had with any medical care provider psychologist, psychiatrist, counselor, therapist, or similar mental health professional as a result of the alleged mental distress or emotional anguish.

**Response:**


**Interrogatory 19:** Please list the address of Your current Residence.

**Response:**


**Interrogatory 20:** Please list any other addresses where You have resided in the past fiver years, including the dates of residence at each address.

**Response:**


**Interrogatory 21:** Please identify all previous lawsuits with which you have been involved, and all current lawsuits with which you are currently involved, either as a named party, class member, or witness.  In your response, please provide the date that the lawsuit was filed, the subject matter of the lawsuit, the jurisdiction in which the lawsuit was pending / is pending, how you became involved in the lawsuit and the outcome of the lawsuit if it has been resolved.

**Response:**

**Interrogatory 22:** If you have ever been charged with, convicted of, or pled guilty to, a crime, state the date of each charge, conviction or plea, the court in which such was rendered, the case number, if any, and the exact nature of such crime.

**Response:**

**Interrogatory 23:** Identify all witnesses from whom you expect to elicit any lay or expert opinion testimony at a hearing or trial of this matter. For each witness identified, state the subject matter on which the witness is expected to testify, the substance of the facts and opinions to which the witness is expected to testify, a summary of the grounds for such opinion, and, for each expert witness, the educational background and work experience that qualified that person to testify as an expert witness.

**Response:**

**Interrogatory 24:** Identify all persons who provided the information used and all documents, communications, and tangible items reviewed, discussed, or referenced in preparing your responses for these Interrogatories.

**Response:**

**Interrogatory 25:** If any of your responses to any of Wells Fargo Bank, N.A.'s First Requests for Admissions to Plaintiff Azar Staffeld concurrently served with these interrogatories is other than an unqualified admission, please state all facts on which you based that response.

**<u>Response:</u>**

## Requests For Production

**Request 1.** Produce all documents concerning or related to the communications with Wells Fargo concerning the Property identified in response to Interrogatory No. 2 above.

**Response:**


**Request 2.** Produce all documents concerning or related to the communications with Wells Fargo concerning the death of Dorothea Vermillion Staffeld as identified in response to Interrogatory No. 3 above.

**Response:**


**Request 3.** Produce all documents concerning or related to the communications with Wells Fargo concerning your loan modification application identified in response to Interrogatory No. 4 above.

**Response:**


**Request 4.** Produce all documents and communications supporting or relating to the allegations in Paragraph 11 of the Complaint asserting that, "prior to passing away [Dorothea Vermillion Staffeld] transferred ownership of the Subject Property by Quit Claim Deed to Karl and Azar Staffeld."

**Response:**


**Request 5.** Produce all documents supporting or relating to the communications with Wells Fargo identified in Paragraphs 14 and 15 of the Complaint.

**Response:**


**Request 6.** Please produce all documents and communications supporting or relating to the allegations in the Complaint the loan You allegedly obtained from R & J Holdings.

**Response:**


**Request 7.** Produce all documents and communications supporting or relating to the allegations in the Complaint that Wells Fargo breached a contract with You.

**Response:**


**Request 8.** Produce all documents and communications supporting or relating to the allegations in Paragraphs 79-93 of the Complaint asserting that Wells Fargo made fraudulent misrepresentations.

**Response:**

**Request 9.** Produce all documents and communications supporting or relating to the allegations in the Complaint asserting that Wells Fargo violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA").

**Response:**

**Request 10.** Produce all documents and communications supporting or relating to the allegations in Paragraphs 94-100 of the Complaint asserting that Wells Fargo was unjustly enriched.

**Response:**

**Request 11.** Produce all documents and communications supporting or relating to the allegations in Paragraphs 101-104 of the Complaint asserting that Wells Fargo negligently caused you to suffer emotional distress.

**Response:**

**Request 12.** Please produce all documents and communications you have reviewed, referred to, or relied upon, in responding to Wells Fargo's First Set of Interrogatories to Azar Staffeld.

**Response:**

**Request 13.** Please produce all documents or communications you reviewed, referred to, or relied upon, in drafting your Complaint.

**Response:**

**Request 14.** Please produce all non-privileged documents and communications between you and any third party related to the allegations made in the Complaint.

**Response:**

**Request 15.** For the period of November 1, 2018 through the present, please produce all non-privileged documents and communications between you and any third party that are related to the Property.

**Response:**

**Request 16.** Please produce all documents and communications that evidence, refer, support, or relate to your claim for damages, including documents related to: (a) the nature, extent, and duration of each alleged harm; (b) the amount of any alleged charges, expenses, or financial losses; (c) the nature and extent of any

alleged emotional distress, including records of treatment received from any physician, psychologist, counselor, or mental health professional.

**Response:**


**Request 17.** Please produce all statements from any person, including potential witnesses relating to the allegations in this lawsuit that you have received from any source, whether the statement is written, audio-recorded, or video-recorded.

**Response:**


**Request 18.** Please produce all documents, communications, or other postings you have made to any social media or internet site pertaining to the allegations in your Complaint.  This request includes, but is not limited to, postings you have made to Facebook, Twitter, LinkedIn, Google Plus+, TikTok, and Instagram.

**Response:**


**Request 19.** Please produce all documents and communications constituting or relating to any exhibits that Plaintiff plans to use in this action, as attachments to any motion or memoranda, or to be introduced at a trial of this matter.

**Response:**

**Request 20.** Please produce all documents and communications forwarded by you or on your behalf to any expert witness which you have obtained to testify at trial.

**Response:**

**Request 21.** Please produce any court filings, police reports, indictments, charging statements, or plea agreements relating to any charge, conviction, or plea referred to in your response to Interrogatory No. 15 above.

**Response:**

Dated:        March 17, 2025              Respectfully submitted,

                                          By:   /s/ *Mark D. Kundmueller*
                                          Mark D. Kundmueller, Esq. (P66306)
                                          TROUTMAN PEPPER LOCKE LLP
                                          222 Central Park Avenue, Suite 2000
                                          Virginia Beach, Virginia 23462
                                          Phone: (757) 687-7564
                                          Facsimile: (757) 687-1524
                                          mark.kundmueller@troutman.com

                                          *Counsel for Defendant Wells Fargo*
                                          *Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2025, I served the foregoing *First Set of Interrogatories and Requests for Production of Documents to Plaintiff Azar Staffeld*, via Federal Express to the following:

> Karl Staffeld
> Azar Staffeld
> Plaintiffs, *Pro Se*
> 341 Corrie Road
> Ann Arbor, MI 48105

> */s/ Mark D. Kundmueller*
> Mark D. Kundmueller, Esq.