UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KARL STAFFELD and AZAR STAFFELD, | Civil Action No. 24-12811 |
| Plaintiffs, | Shalina D. Kumar<br>United States District Judge |
| v. | |
| WELLS FARGO BANK, N.A., a subsidiary of WELLS FARGO & COMPANY, *et al.* | David R. Grand<br>United States Magistrate Judge |
| Defendants. | |
| _____/ | |

**REPORT AND RECOMMENDATION TO DENY PLAINTIFFS'
MOTION FOR INJUNCTIVE RELIEF AS TO WELLS FARGO (ECF No. 10)**

**Background**

    *i.    Initial Complaint*

Plaintiffs Karl Staffeld and Azar Staffeld (the "Staffelds") commenced this action on October 24, 2024, against Wells Fargo Bank, N.A. ("Wells Fargo").[1] The Staffelds claim that they are the rightful owners of real property located at 341 Corrie Road, in Ann Arbor, Michigan (the "Property"). They allege that the Property was purchased by Karl Staffeld's mother, Dorothea Vermilion Staffeld ("Dorothea"), in November 2017, and that she took out a mortgage with Wells Fargo in connection with that purchase. The Staffelds contend that Dorothea "secured mortgage insurance through the Wells Fargo Mortgage Company which provided that if [she] should pass away within one year, the then-owed

---

[1] Pursuant to 28 U.S.C. § 636(b), this case has been referred to the undersigned for all pretrial matters. (ECF No. 8).

principal and interest loan balance would be satisfied by the mortgage insurance." (ECF No. 1, PageID.2). The Staffelds claim that Dorothea "passed away exactly 11 months after the loan agreement signed," but that "prior to passing away she transferred ownership of the [] Property by Quit Claim Deed to [the Staffelds]." (*Id.*, PageID.2-3). Thus, the Staffelds claim that they "are the title owners of the [] Property and are entitled to the full payment of the mortgage amount according to mortgage insurance guidelines." (*Id.*, PageID.3). The Staffelds did not attach any documents to their complaint, but they contend that "Wells Fargo Bank has a copy of the subject mortgage loan insurance policy but has refused to acknowledge that the policy is effective." (*Id.*).

The Staffelds contend that they lost their jobs and "were unable to make all the mortgage loan payments on the [] Property." (*Id.*). They claim that Wells Fargo "assured" them "that they could make installment payments upon their return to work to become current on the mortgage loan balance and seek a loan modification as well," and were told that the Property "would not be foreclosed upon while [they] brought the loan account current and sought to be approved for a loan modification." (*Id.*). The Staffelds claim that despite "attempt[ing] in good faith to secure a loan modification through Wells Fargo Bank … the bank-initiated [sic] foreclosure proceedings without proper notice to [them]." (*Id.*).

The Staffelds assert that "upon information and belief Wells Fargo Bank foreclosed on and have sold the [] Property to an unknown third party [presumably R&J Holdings, LLC] without following the statutory requirements for lawfully foreclosing upon real property in Michigan." (*Id.*, PageID.4). They assert that "R & J Holdings, LLC [("R&J")] serves as owner of title of the [] Property," and that they "were compelled to obtain a loan

2

in the amount of $1,193,581.72 from high-interest lender [R&J] … to stay in the home as they purchased the property and leased it with option to buy during the redemption period after sheriff sale on June 1, 2023, which occurred as a surprise to [the Staffelds] when one of the bidders in Sheriffs sales walked into the house, without permission, and notified [them]." (*Id.*). The Staffelds allege that they "have been compelled to pay [R&J] additional outrageous monthly [rent] payments of $5,000 to fend off being forcibly evicted from the [] Property, the primary residence of [the Staffelds], their grandchildren and extended family." (*Id.*).

In their complaint, the Staffelds assert a slew of claims against Wells Fargo, only one of which raises a federal question: Quiet Title (Count I); Injunctive Relief (Count II); Breach of Contract (Count III); Violation of the Fair Debt Collection Practices Act ("FDCPA") (Count IV); Fraudulent Misrepresentation (Count V); Unjust Enrichment (Count VI); and Negligent Infliction of Emotional Distress (Count VII).

  *ii.*   *Motion for Injunctive Relief against Wells Fargo*

On December 30, 2024, before the Staffelds had even served Wells Fargo with a copy of their complaint, they filed a "Motion for Injunctive Relief." (ECF No. 10). In this motion, the Staffelds essentially reiterate their allegations against Wells Fargo, claim they were served with a "7-day notice to hand over the possession of the [Property] to R&J []," and seek, among other injunctive relief, the following: (1) a declaration that the Property's foreclosure was "wrongful"; (2) an order "canceling the foreclosure action and any related eviction proceedings, [and] declaring that [they] have superiority of title over [Wells Fargo] to the [] Property"; (3) quiet title to the Property in their favor; (4) a temporary restraining

3

order restraining Wells Fargo from "completing the foreclosure process, applying for, and obtaining a writ of eviction against [them]"; a preliminary injunction "from completing the foreclosure process according to the current foreclosure schedule"; and an order "directing Wells Fargo Bank to pay the amount of $1,150,000 to R & J Holdings forthwith to prevent foreclosure[.]" (*Id.*, PageID.31, 36, 37). The only documents attached to the Staffelds' motion are a Quit Claim Deed dated December 15, 2017, pursuant to which Dorothea purportedly quitclaimed her interest in the Property to the Staffelds, and a "Demand for Possession Nonpayment of Rent" that appears to be issued to the Staffelds from R&J on November 27, 2024, claiming they owe $5,000 for "rent."

Wells Fargo filed a response to the Staffelds' motion, arguing, among other things, that because it had "already foreclosed on the Property," the Staffelds' request for injunctive relief is "moot," and that the Staffelds failed to show a likelihood of success on the merits of their claims. (ECF No. 17).

   *iii.* *Amended Complaint*

On February 28, 2025, the Staffelds filed an amended complaint that named both Wells Fargo and R&J as defendants. (ECF No. 19). The amended complaint begins with similar assertions as in the original complaint, but instead of referring to a million-dollar "loan" from R&J, the Staffelds allege that R&J "obtained title to the [] Property [through the foreclosure sale by Wells Fargo] and entered into a written Lease Agreement whereby [the Staffelds] rented the premises from [R&J] for one year at a monthly rate of $5,000.00

4

with the exclusive right to purchase the Property at an agreed-upon price at lease end."[2] (*Id.*, PageID.116). The Staffelds claim that they complied with their lease obligations for the year and notified R&J "in person and in writing, that they were prepared to close on the purchase of the [] Property at the price specified in the Lease Agreement between the parties." (*Id.*, PageID.117). They claim that R&J "informed [them] that [it] will not sell to them despite [their] exclusive option to purchase rights which are included under § 3.0 of the Lease Agreement." (*Id.*). They also contend that R&J "filed for immediate possession [in a Washtenaw County district court (the "State Court Case")]." (*Id.*).

The Staffelds contend that they "were compelled to rent the [] Property at a high rate of rent while seeking financing in the amount of $1,150,000 to stay in their home," and "have been compelled to pay [R&J] additional outrageous monthly payments of $5,000 to fend off being forcibly evicted …." (*Id.*, PageID.118-19). The Staffelds assert in the amended complaint against Wells Fargo and R&J the same seven claims – six state law claims and one under the FDCPA – that they asserted against Wells Fargo in the original complaint.

    iv.    *Subsequent Procedural Developments*

Following the filing of the Staffelds' amended complaint, Wells Fargo filed an

---

[2] The actual lease term was 13 months, commencing November 1, 2023, and expiring November 30, 2024. (ECF No. 40-2, PageID.854). The lease did have a provision by which the Staffelds could purchase the Property for $1,050,000 at lease end, provided certain conditions were met, including that they delivered written notice of their intent to purchase the Property prior to the lease expiration date, and specified a closing date within 30 days of the lease expiration. (*Id.*, PageID.856). As the lease term was nearing its expiration, it appears that the Staffelds and R&J executed a written amendment pursuant to which the Staffelds agreed "to present a valid Purchase Agreement no later than Wednesday[,] November 13, 2024 @ 5pm," and that the Purchase Agreement would specify a purchase price of no less than $1,148,581.72." (*Id.*, PageID.865).

5

answer (ECF No. 21) and R&J filed a motion to dismiss (ECF No. 22). The Staffelds have also filed a number of other documents on the docket. For example, they filed a variety of documents related to Dorothea's purchase of the Property, obtaining of a mortgage (though some of these are unsigned), and a mortgage modification offered by Wells Fargo in January 2022.³ (ECF Nos. 27, 28, 29). The Staffelds also filed a slew of documents related to the State Court Case between R&J and the Staffelds.

In short, in the State Court Case, R&J claimed that its lease with the Staffelds had ended, and that the sale to the Staffelds did not close because of two liens that were on the Property, but that the Staffelds nevertheless did not vacate the premises. (ECF No. 32, PageID.422). The Staffelds disputed these facts, and asserted that R&J simply failed to sell the Property to them as had been agreed in their "lease with an option to buy" agreement. (ECF No. 32-1, PageID.433). They claim that R&J sullied the deal by not removing the liens in question, and thus the Staffelds were unable to secure financing due to the lack of a clear title. (*Id.*). The state court district judge found that the Staffelds were required to vacate the Property and that any claim about R&J's failure to sell the Property to them needed to be filed in a different court. (*Id.*). Thus, an Order of Possession was issued in R&J's favor, which Order the Staffelds have very recently appealed to the Washtenaw County Circuit Court. (ECF Nos. 31, 31-1-4, 32, 34).

 v. *Motion to Dismiss by R&J*

On March 25, 2025, R&J filed a motion to dismiss arguing that the Staffelds'

---

³ Although the mortgage modification offer indicates that it was made to Dorothea, it is dated more than three years after she passed away. (ECF No. 28, PageID.347; ECF No. 26, PageID.272).

6

FDCPA claim against it fails as a matter of law because R&J is not a "debt collector." (ECF No. 22). Further, R&J argues that all of the Staffelds' other claims "are state court claims that should be brought in state court." (*Id.*, PageID.188). The Court will schedule a hearing on this motion in the near future.

   *vi.*  *Motion for Injunctive Relief against R&J*

On June 16, 2025, the Staffelds filed an "Emergency Motion for Expedited Consideration and Immediate Injunction" which requests a "Temporary Restraining Order 'STOPPING' [R&J] from petitioning for Writ of Eviction in State Court and banning [R&J] from refiling Writ of Eviction." (ECF No. 40, PageID.800). They assert that "[r]elief is needed no later than" June 16, 2025, i.e., the same day they filed the motion. (*Id.*).

In short, consistent with their assertions in the State Court Case, the Staffelds contend that "R&J breached two contracts; exclusive lease with option to buy [], and purchase agreement [] by waiting out for their expiration, refusing to renew the lease for another thirteen months against Section 3.1 of the first contract and refusing to remove the lien in breach of the second contract which is 'the obstacle' for Plaintiffs, Staffelds, to repurchase the property, and refusing to sign a new purchase agreement." (*Id.*, PageID.805; ECF No. 32-1, PageID.433). The Staffelds assert that without the requested injunction, they "will suffer immediate, severe, irreversible, and irreparable harm," in that "[they], their grandchildren and their several senior citizens and disabled household members will immediately lose their place of residence." (ECF No. 40, PageID.805).

7

**Legal Standards**

"Temporary restraining orders and preliminary injunctions are extraordinary remedies designed to preserve the relative positions of the parties until further proceedings on the merits can be held." *Koetje v. Norton*, No. 13-12739, 2013 WL 8475802, at *2 (E.D. Mich. Oct. 23, 2013). Whether to grant such relief is a matter within the discretion of the district court. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). The same factors are considered in determining whether to grant a request for a TRO or a preliminary injunction. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). Those factors are: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest is served by issuance of the injunction. *Id.* (citing *Ne. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). Moreover, a TRO is an extraordinary remedy, "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

**Analysis**

***The Staffelds' Motion for Injunctive Relief as to Wells Fargo (ECF No. 10)***

In their "Motion for Injunctive Relief" as to Wells Fargo, the Staffelds ask the Court for a variety of injunctive relief, including: "issuance of an Order canceling the foreclosure action and any related eviction proceedings, declaring that [the Staffelds] have superiority

of title over [Wells Fargo] to the Subject Property"; "quiet title to the Subject Property in favor of [the Staffelds] and against [Wells Fargo]"; "enter a Temporary Restraining Order . . . restraining [Wells Fargo] [] from completing the foreclosure process, applying for, and obtaining a writ of eviction against [the Staffelds]"; and "issue a Preliminary Injunction enjoining [Wells Fargo] [] from completing the foreclosure process according to the current foreclosure schedule."  (ECF No. 10, PageID.36).  The Staffelds' motion lacks merit and should be denied.

First, while the Staffelds ask the Court to enjoin Wells Fargo from "completing the foreclosure process …" they admit that the foreclosure sale has already been consummated. (ECF No. 1, PageID.4).  Thus, the Court cannot award that specific relief.

Second, the Staffelds have failed to show any likelihood of success on the merits of their claims, let alone a strong likelihood of success.  Their claims revolve principally around their assertions that "[m]ortgage protection insurance is a unique form of insurance designed to pay off the insured person's mortgage if they die with a remaining balance and ensures the person's heirs will be able to stay in the family home"; that "[i]t is well-settled that mortgage protection insurance is authorized in Michigan and is governed under the Consumer Mortgage Protection Act, MCL 445.1631, et seq., [(the "CMPA"])"; and that "[i]n this case, the terms of the mortgage insurance policy at issue 'speak for themselves' and [the Staffelds] have a clear and recognizable right to enforcement of those provisions." (*Id.*, PageID.34).  But the Staffelds did not attach a copy of the purported "mortgage insurance" document.  For that reason alone, the Court cannot find that they are likely to prevail.  Moreover, the Staffelds do not assert a claim under the CMPA, and even if they

9

did, it would fail because "the CMPA does not provide for a private cause of action. [] Rather, the CMPA provides only for enforcement actions brought by the commissioner (§ 445.1639), or by the attorney general or county prosecutors (§ 445.1640)." *King-Daniels v. Bank of Am., N.A.*, No. 16-11606, 2016 WL 5906000, at *2 (E.D. Mich. Oct. 11, 2016) (internal citations omitted). The Staffelds simply have not presented any evidence from which the Court can find that they are likely to prevail on the overarching claim in this case.

Wells Fargo raises significant issues as to the viability of the Staffelds' other claims, as well. For example, Wells Fargo notes that the Staffelds' claim for "Quiet Title" lacks merit because, under Michigan law, "quite title is a remedy and not a separate cause of action." (ECF No. 17, PageID.74) (quoting *Steinberg v. Fed. Home Loan Mortg. Corp.*, 901 F. Supp. 2d 945, 955 (E.D. Mich. 2012)). *See also Shaya v. Countrywide Home Loans, Inc.*, 489 F. App'x 815, 819-20 (6th Cir.2012) (unpublished). Wells Fargo also notes that even if Dorothea quitclaimed her interest in the Property to the Staffelds prior to her death, such "transfer of the ownership [] does not make the transferee a party to the Note or Mortgage. Rather, under the terms of the Mortgage, if such a transfer occurred during the life of Dorothea [], she would have immediately owed Wells Fargo the full remaining balance due on the loan." (ECF No. 17, PageID.79).[4] Relatedly, Wells Fargo asserts that

---

[4] Wells Fargo's assertion may go a bit too far, as the Mortgage actually provides that in the event of a transfer without Wells Fargo's prior written consent, Wells Fargo "***may*** require immediate payment in full of all sums secured by the [Note]." (ECF No. 17-2, PageID.97) (emphasis added). The important point, though, is that it does not appear that the purported transfer from Dorothea to the Staffelds – which Wells Fargo challenges – would automatically pass Dorothea's rights and interest in the mortgage or note to the Staffelds.

10

the Staffelds failed to establish a valid assignment of the Note and Mortgage, which, if not effectively rebutted by the Staffelds would doom their breach of contract claims. (*Id.*, PageID.75). As to the Staffelds' FDCPA claim, Wells Fargo asserts that the statute does not apply to it in this context because it is not a "debt collector" with respect to the mortgage loan to which it was a party as the lender. (*Id.*, PageID.76). Wells Fargo also argues that the Staffelds' fraudulent misrepresentation claim fails because the conclusory assertions in their complaint about Wells Fargo's false promises related to a loan modification and foreclosure proceedings do not meet the heightened pleading standard for such claims under Fed. R. Civ. P. 9(b). (*Id.*). In light of the foregoing, Wells Fargo also argues that the Staffelds cannot show any unjust enrichment. (*Id.*). Finally, Wells Fargo asserts that the Staffelds' negligent infliction of emotional distress claim cannot succeed because that claim applies "only when a plaintiff witnesses negligent injury to a third party and suffers mental disturbance as a result," and their operative complaint alleges no such facts. (*Id.*, PageID.78) (quoting *Teadt v. Lutheran Church Missouri Synod*, 237 Mich. App. 567, 582, 603 N.W.2d 816, 823 (1999)). *See also Duran v. Detroit News, Inc.,* 200 Mich.App. 622, 629, 504 N.W.2d 715 (1993).

      The Staffelds have not contested any of Wells Fargo's arguments, and thus have not shown any likelihood of success on the merits of their claims, let alone a strong likelihood of success. This weighs heavily in favor of denying the Staffelds' instant motion because, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). *See Cook v. Chase Home Fin., LLC*, No. 10-15108, 2010 WL

11

5441929, at *1 (E.D. Mich. Dec. 28, 2010) (concluding that the plaintiff had not demonstrated that she is entitled to a TRO partly because she "fail[ed] to demonstrate a strong or substantial likelihood of success on the merits").

The other factors the Court must consider also favor denying the Staffelds' instant motion against Wells Fargo. The Staffelds assert that without an injunction they "will be homeless and living on the street …." (ECF No. 10, PageID.35). While it is true that "the prospect of being evicted from one's home and becoming homeless could constitute a threat of irreparable harm," *Dombrowski v. United States*, No. 18-11615, 2023 WL 199260, at *2 (E.D. Mich. Jan. 17, 2023), *aff'd,* No. 22-1801, 2024 WL 4647916 (6th Cir. July 2, 2024), the Staffelds failed to present any *evidence* to substantiate their contention that their eviction from the million-dollar home at issue is likely to actually lead to their homelessness. Indeed, it appears the Staffelds were paying $5,000/month in rent to R&J right up until the purchase dispute arose, had paid at least one $5,000 payment[5] into escrow in the State Court Case once that dispute arose, and contend that, but for the lien issues, they had the financial ability to obtain financing to close on the $1,000,000+ purchase of the Property, all of which cuts against their assertion of impending homelessness. (ECF No. 32, PageID.421-24; ECF No. 32-2, PageID.450; ECF No. 35-1, PageID.632).

Granting the requested injunctive relief here would also harm Wells Fargo because it would impose on it obligations unwarranted by the present factual record, and require it to attempt to unwind the series of transactions that resulted in R&J's ownership of the

---

[5] In a later filing, the Staffelds contend that they "are posting a $5,000 escrow bond every month with the State Court []." (ECF No. 40, PageID.805, 816).

Property.  Lastly, granting the requested injunctive relief would not be in the public interest because the public benefits from granting the type of extraordinary relief requested by the Staffelds only when the requesting party has established its entitlement to that relief under the salient facts and law.

For all of the above reasons, **IT IS RECOMMENDED** that the Staffelds' motion for injunctive relief as to Wells Fargo **(ECF No. 10)** be **DENIED**.

***The Staffelds' Motion for Injunctive Relief as to R&J (ECF No. 40)***

On June 16, 2025, the Staffelds filed an "Emergency Motion for Expedited Consideration and Immediate Injunction" as to R&J.  (ECF No. 40).  In short, the Staffelds ask the Court to enter a "Temporary Restraining Order 'Stopping' Defendant R&J [] from petitioning for Writ of Eviction in [the] State Court [Case] and banning R&J [] from refiling Writ of Eviction."  (*Id.*, PageID.800).  They claim that without this relief they "will suffer immediate, severe, irreversible, and irreparable harm," and that "[i]f this motion is not granted, Staffelds, their grandchildren and their several senior citizens and disabled household members will immediately lose their place of residence."  (*Id.*, PageID.805).  They contend that "[t]he justification for the emergency motion is that R&J breached two contracts; exclusive lease with option to buy [], and purchase agreement [] by waiting out for their expiration, refusing to renew the lease for another thirteen months against Section 3.1 of the first contract and refusing to remove the lien in breach of the second contract which is 'the obstacle' for Plaintiffs, Staffelds, to repurchase the property, and refusing to sign a new purchase agreement."  (*Id.*).

As with their motion for injunctive relief as to Wells Fargo, the Staffelds have

13

essentially shown no likelihood of success on the merits. The Court notes, for instance, that they have provided no meaningful documentation or explanation as to the Property liens in question, including their amounts, how they came to be asserted against the Property, how they impacted the Staffelds' ability to close on the purchase of the Property from R&J, and/or their current status. The liens appear to be a central issue in determining whether R&J breached its contract with the Staffelds as to their option to buy the Property, and without a clear understanding of that issue as well as other aspects of the failed purchase transaction, the Court cannot assess the merits of the underlying dispute.

While this alone may be a sufficient basis for the Court to deny the Staffelds' motion, R&J did not file a response. Given that the Court finds it appropriate to hold oral argument on R&J's motion to dismiss (ECF No. 22), *see supra* at 6-7, it will also hold oral argument at the same time on the Staffelds' motion for injunctive relief as to R&J.

## Conclusion

For the reasons stated above, the Court **RECOMMENDS** that the Staffelds' motion for injunctive relief as to Wells Fargo **(ECF No. 10)** be **DENIED**. The Court will schedule a hearing on R&J's motion to dismiss (ECF No. 22) and on the Staffelds' motion for injunctive relief as to R&J (ECF No. 40).

Dated: July 18, 2025  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 18, 2025.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
