UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARL STAFFELD and AZAR
STAFFELD,

              Plaintiffs,

v.

WELLS FARGO BANK, N.A., a
subsidiary of WELLS FARGO &
COMPANY, *et al.*

              Defendants.

_____/

Civil Action No. 24-12811

Shalina D. Kumar
United States District Judge

David R. Grand
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON R & J HOLDINGS, LLC'S
MOTION TO DISMISS (ECF No. 22) AND ON THE STAFFELDS'
EMERGENCY MOTION FOR EXPEDITED CONSIDERATION
AND IMMEDIATE INJUNCTION (ECF No. 40)**

**Background**

In a Report and Recommendation the Court issued on July 18, 2025, it provided a comprehensive discussion of this case's procedural and factual background, which is incorporated herein by reference. (ECF No. 44, PageID.1281-87).[1] In short, plaintiffs Karl Staffeld and Azar Staffeld (the "Staffelds") commenced this action on October 24, 2024, against Wells Fargo Bank, N.A. ("Wells Fargo"), claiming to be the rightful owners of real property located at 341 Corrie Road, in Ann Arbor, Michigan (the "Property"), over which

---

[1] Pursuant to 28 U.S.C. § 636(b), this case has been referred to the undersigned for all pretrial matters. (ECF No. 8).

Wells Fargo held a mortgage on which it has since foreclosed.[2] As part of the foreclosure process, the Staffelds struck a deal with "R & J Holdings, LLC" ("R&J") whereby R&J would redeem the Property, becoming its owner. The Staffelds and R&J also entered into a lease agreement with an option for the Staffelds to buy the Property at the end of the lease for a pre-determined price of $ 1,050,000. (ECF No. 40-2, PageID.854-64).

The Staffelds claim that they were prepared to close on the purchase of the Property from R&J at lease end, but that the purchase could not be consummated due to certain liens that had been placed on the Property in the interim, which they apparently believe are R&J's responsibility to remove. After they failed to purchase the Property from R&J, the Staffelds got into a dispute with R&J about their continued possession of the Property as tenants, and R&J commenced a state court eviction action against them (the "State Court Case") which has been resolved in R&J's favor. The Staffelds admit that they are no longer residing at, or in possession of the Property.

---

[2] Wells Fargo issued the mortgage on December 15, 2017, to Dorothea Staffeld ("Dorothea"), who is Mr. Staffeld's now-deceased mother. (ECF No. 17-2). The Staffelds claim that that very same day, Dorothea transferred ownership of the Property to them via a quit claim deed. (ECF No. 10, PageID.39). The Staffelds contend that when Dorothea obtained the mortgage, she "secured mortgage insurance through [Wells Fargo] which provided that if [she] should pass away within one year, the then-owed principal and interest loan balance would be satisfied by the mortgage insurance." (ECF No. 19, PageID.113). Thus, the Staffelds claim that upon Dorothea's death, the Wells Fargo mortgage on the Property should have been "satisfied," and that consequently, the foreclosure by Wells Fargo was wrongful and never should have occurred. The Court notes that the Staffelds have produced ***no evidence*** whatsoever that the insurance policy ever existed. At the August 4, 2025 oral argument, Mrs. Staffeld seemed to suggest that "proof" that such an insurance policy existed can be found in Paragraph 10 of the mortgage. Upon review, however, Paragraph 10 merely appears to provide the terms that apply "*If* [Wells Fargo] required Mortgage Insurance as a condition of making the Loan," and does not prove, or even imply, that such an insurance policy actually existed. (ECF No. 17-2, PageID.95).

In their operative amended complaint, the Staffelds assert claims against both Defendants for: Quiet Title (Count I); Injunctive Relief (Count II); Breach of Contract (Count III); Violation of the Fair Debt Collection Practices Act ("FDCPA") (Count IV); Fraudulent Misrepresentation (Count V); Unjust Enrichment (Count VI); and Negligent Infliction of Emotional Distress (Count VII). (ECF No. 19).

Now before the Court are R&J's motion to dismiss (ECF No. 22) and the Staffelds' "Emergency Motion for Expedited Consideration and Immediate Injunction" (ECF No. 40) (the "Injunction Motion"). R&J's motion to dismiss is focused principally on the Staffelds' FDCPA claim, based on an argument that R&J was not a "debt collector" subject to the Act with respect to the conduct about which the Staffelds complain. R&J also requests that, assuming the Court rules in its favor as to the Staffelds' FDCPA claim, it decline to exercise supplemental jurisdiction over the Staffelds' state law claims against it. In the Staffelds' Injunction Motion, they seek an "immediate injunction against [R&J] to withdraw its motion for writ of eviction filed on June 10th, 2025" in the state court litigation between the parties.

The Court held oral argument on both motions on August 4, 2025. For the detailed reasons stated on the record and below, R&J's motion to dismiss (ECF No. 22) should be granted as to the Staffelds' FDCPA claim, and otherwise denied without prejudice, and the Staffelds should be permitted to file an amended complaint by September 17, 2025; and the Staffelds' Injunction Motion (ECF No. 40) should be denied.

**R&J's Motion to Dismiss (ECF No. 22)**

"The basic elements of a FDCPA claim are as follows: (1) plaintiff was a 'consumer'

3

as defined by the statute; (2) the debt arose out of transactions which are 'primarily for personal, family or household purposes"; (3) defendant was a 'debt collector' as defined by the statute; and (4) defendant violated the prohibition(s) set forth in the FDCPA." *Johnson v. Trueaccord Corp.*, Case No. 1:21-cv-629, 2022 WL 16923889, at *5 (N.D. Ohio Nov. 14, 2022) (citing *Wallace v. Washington Mut. Bank*, 683 F.3d 323, 326 (6th Cir. 2012); *Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1100 (6th Cir. 2015); *Valhalla Inv. Prop., LLC v. 502, LLC*, 456 F. Supp. 3d 939, 945 (M.D. Tenn.), *aff'd*, 832 F. App'x 413 (6th Cir. 2020)).  The exact contours of the Staffelds' FDCPA claim are not entirely clear – they refer only generally to "15 U.S.C. §§ 1692 to 1692(p)" (ECF No. 19, PageID.115) – but the only arguable "debt collection" activities alleged in their operative complaint against R&J are its efforts to collect rent (and other unpaid amounts) due under the parties' lease agreement and which arise out of their landlord-tenant relationship.[3]

In their complaint, the Staffelds rely on *Montgomery v. Huntington Bank*, 346 F.3d 693 (6th Cir. 2003), as establishing their FDCPA claim.  (*Id.*, PageID.124).  In reality,

---

[3] While the Staffelds make a vague reference to R&J having violated the FDCPA by "not stopping the unlawful foreclosure sale," they do not allege that R&J was acting to collect any debt at that time. (*Id.*, PageID.124).  Indeed, in their amended complaint, the Staffelds make clear that it was because of "***Wells Fargo's*** conduct and failures" that they "were compelled to rent the Subject Property" from R&J.  (*Id.*, PageID.118) (emphasis added).  They also allege that "***the bank*** intentionally refused to call off the foreclosure proceedings," while simultaneously asserting that R&J's misdeed was its "demand for possession proceedings" a year later after the Staffelds' attempt to purchase the Property failed.  (*Id.*, PageID.124) (emphasis added).  And, at the hearing, the Staffelds admitted that they transferred their redemption rights to R&J, which allowed R&J to become the Property's title owner through the foreclosure proceedings.  In short, the Staffelds' disputes with Wells Fargo and R&J are fairly separate; they accuse Wells Fargo of (1) failing to pay off the mortgage loan pursuant to the presently unidentified "mortgage insurance" contract, and then (2) wrongfully foreclosing on the mortgage, while they accuse R&J of (1) charging them exorbitant rents after R&J acquired the Property, and then (2) failing to sell them the Property at the end of the lease term as they claim R&J was required to do under the lease agreement.

4

though, the case makes clear why their FDCPA claim against R&J fails.  *Montgomery* involved a bank's efforts to collect on a car loan debt owed to it by a consumer.  The consumer's son, feeling that he had been unlawfully "harassed" by the bank's collection efforts, sued under the FDCPA.  Although the Sixth Circuit found that the son had standing to sue, it found that his FDCPA claim failed because the bank, in attempting to collect a debt owed to it, was not a "debt collector" under the Act, explaining:

> The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  The statute defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). . . . Exempted from the definition of a debt collector, however, is any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (ii) concerns a debt which was originated by such person ...
>
> 15 U.S.C. § 1692a(6)(F)(ii), (iii). Finally, a "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed...." 15 U.S.C. § 1692a(4). As the Fifth Circuit has concluded, "[t]he legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors...." *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir.1985) (internal quotation marks and citation omitted); *see also Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 106 (6th Cir.1996) (quoting *Perry* with approval for this proposition).
>
> Based on the foregoing, it is clear that under the circumstances of this case, [the bank] is not a "debt collector" subject to liability under the FDCPA. First, [the bank] falls within the exemption contained in § 1692a(6)(F)(ii) because . . . it was collecting or attempting to collect on a debt that was owed, due, or asserted to be owed or due, and that originated with it. . . . To this, the federal courts are in agreement: A bank that is "a creditor is not a debt collector for the purposes of the

5

> FDCPA and creditors are not subject to the FDCPA when collecting their accounts." []

*Montgomery*, 346 F.3d at 698–99.

This principle applies equally to a landlord attempting to collect rents due to it from its tenant. *See*, *e.g.*, *Prop. Mgmt. Connection, LLC v. Consumer Fin. Prot. Bureau*, No. 3:21-CV-00359, 2021 WL 1946646, at *3 (M.D. Tenn. May 14, 2021) ("a housing provider or landlord is not a debt collector within the meaning of the FDCPA—or the Rule—if its own personnel, rather than a third- party debt-collection service, is acting to collect on the housing provider's or landlord's own accounts."); *Johnson v. Young*, No. CIV A 206-CV-818, 2007 WL 2177956, at *3 (S.D. Ohio July 27, 2007) ("As a landlord, Mr. Valente is a creditor, not a debt collector.").

In short, because the Staffelds' FDCPA claim against R&J is based on R&J's attempts to collect rent and other obligations owed to it by the Staffelds under their lease agreement, R&J was not a "debt collector" under the FDCPA, and R&J's motion to dismiss the Staffelds' FDCPA claim against it should be granted.

R&J also argues that, with the Staffelds' sole federal claim against it dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims asserted in the amended complaint. As explained at the hearing, the Court need not address that issue at this time because in their response brief the Staffelds expressed an intention to assert other federal claims against R&J, including violations of, among others, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.SC. §§ 2601 *et seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, which the Court construed as a request for leave to further amend their complaint. The Court indicated that it would grant

6

the Staffelds that opportunity, and R&J indicated that it would not object to them doing so, provided it retained the right to filed a renewed motion to dismiss.[4] Accordingly, to the extent R&J's motion seeks to dismiss all of the Staffelds' state law claims, the motion should be denied without prejudice, and the Staffelds should be given until September 17, 2025, to file an amended complaint.

In summary, **IT IS RECOMMENDED** that R&J's motion to dismiss **(ECF No. 22)** be **GRANTED** as to the Staffelds' FDCPA claim against it, but otherwise be **DENIED WITHOUT PREJUDICE**, and the Staffelds should be given until **September 17, 2025**, to file an amended complaint.

***Staffelds' Injunction Motion against R&J***

On June 16, 2025, the Staffelds filed an "Emergency Motion for Expedited Consideration and Immediate Injunction" which requests a "Temporary Restraining Order 'STOPPING' [R&J] from petitioning for Writ of Eviction in State Court and banning [R&J] from refiling Writ of Eviction." (ECF No. 40, PageID.800). They assert that

---

[4] As the Court explained on the record, the Staffelds cannot properly assert new legal claims in their response to R&J's motion to dismiss. *Desmond v. Cnty. of Monroe*, No. 23-12169, 2024 WL 3488735, at *6 (E.D. Mich. July 18, 2024). However, in light of their *pro se* status, and the significance of the claims to the Staffelds, it is appropriate to permit them an opportunity to amend their complaint. At the same time, because the Staffelds had also expressed in their response brief an intention to sue R&J under various federal criminal statutes, the Court explained that no such claims would be allowed because there is a "firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions." *Am. Postal Workers Union, AFL-CIO, Detroit Loc. v. Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) (citation omitted).

"[r]elief is needed no later than" June 16, 2025, i.e., the same day they filed the motion. (*Id.*).

In short, consistent with their assertions in the State Court Case, the Staffelds contend that "R&J breached two contracts; exclusive lease with option to buy [], and purchase agreement [] by waiting out for their expiration, refusing to renew the lease for another thirteen months against Section 3.1 of the first contract and refusing to remove the lien in breach of the second contract which is 'the obstacle' for Plaintiffs, Staffelds, to repurchase the property, and refusing to sign a new purchase agreement." (*Id.*, PageID.805; ECF No. 32-1, PageID.433). The Staffelds assert that without the requested injunction, they "will suffer immediate, severe, irreversible, and irreparable harm," in that "[they], their grandchildren and their several senior citizens and disabled household members will immediately lose their place of residence." (ECF No. 40, PageID.805).

"Temporary restraining orders and preliminary injunctions are extraordinary remedies designed to preserve the relative positions of the parties until further proceedings on the merits can be held." *Koetje v. Norton*, No. 13-12739, 2013 WL 8475802, at *2 (E.D. Mich. Oct. 23, 2013). Whether to grant such relief is a matter within the discretion of the district court. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). The same factors are considered in determining whether to grant a request for a TRO or a preliminary injunction. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). Those factors are: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether issuance of the injunction will cause

8

substantial harm to others; and (4) whether the public interest is served by issuance of the injunction. *Id.* (citing *Ne. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). Moreover, a TRO is an extraordinary remedy, "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Applying these standards to the evidence presented by the Staffelds, it is clear that their motion should be denied.

The Staffelds' Injunction Motion fails in various respects. First and foremost, they filed the motion on June 16, 2025, and asserted that "[r]elief is needed no later than" that same day. (ECF No. 40, PageID.800). This obviously did not give R&J an opportunity to timely challenge the Staffelds' request. Nor did it give the Court an opportunity to timely consider it. The motion also fails on its merits. While the Staffelds provided the contractual documents between themselves and R&J (ECF No. 40-2), they failed to provide any evidence from which the Court could conclude that R&J actually breached those contracts. In fact, the evidence the Staffelds provided regarding the State Court Case suggests that the merits of that dispute have been resolved in R&J's favor. (ECF No. 40-1). Thus, the Staffelds have not shown that they are likely to prevail on the merits of their claims against R&J. Nor have the Staffelds shown that they will suffer irreparable injury absent an injunction. The Court recognizes the Staffelds' contention that absent an injunction they and their family will "immediately lose their place of residence." (ECF No. 40, PageID.805). While it is true that "the prospect of being evicted from one's home and becoming homeless could constitute a threat of irreparable harm," *Dombrowski v.*

9

*United States*, No. 18-11615, 2023 WL 199260, at *2 (E.D. Mich. Jan. 17, 2023), *aff'd*, No. 22-1801, 2024 WL 4647916 (6th Cir. July 2, 2024), the Staffelds own another home (though that is the subject of another dispute between them and R&J) (ECF No. 47), and at the hearing they admitted that they were living at that residence, and not at the Property at issue in this case.  Finally, granting the requested injunctive relief here would harm R&J because it would impose on it obligations unwarranted by the present factual record and contrary to judicial rulings in its favor in the State Court Case.  And, granting the requested injunctive relief would not be in the public interest because the public benefits from granting the type of extraordinary relief requested by the Staffelds only when the requesting party has established its entitlement to that relief under the salient facts and law.

    For all of the above reasons, **IT IS RECOMMENDED** that the Staffelds' Injunction Motion as to R&J **(ECF No. 40)** be **DENIED**.

Dated: August 11, 2025             s/David R. Grand
Ann Arbor, Michigan            DAVID R. GRAND
                                        United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

    Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and

Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 11, 2025.

s/Kristen Castaneda
KRISTEN CASTANEDA
Case Manager in the absence
of Eddrey Butts
