**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KARL STAFFELD AND
AZAR SADEGHI-STAFFELD,

    Plaintiffs,

    -v-

WELLS FARGO BANK, N.A., a subsidiary
of WELLS FARGO & COMPANY,
    Defendants.

Case No: 4:24-cv-12811
Hon. Shalina D. Kumar

_____/

Karl Staffeld and Azar Staffeld
Plaintiffs, *Pro Se*
341 Payeur Road Ann Arbor, MI 48108
(734) 929-6969
karlstaffeld@gmail.com

Miranda M. Boulahanis (P86222)
TROUTMAN PEPPER LOCKE LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
(248) 469-4749
miranda.boulahanis@troutman.com

David Sobel (P49662)
George Blackmore (P76942)
SOBLE PLC
31800 Northwestern Hwy #350
Farmington Hills, MI 48224
(888) 789-1715
dsoble@provenresource.com

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT WELLS FARGO**
**BANK, N.A.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

NOW COME Plaintiffs, KARL STAFFELD and AZAR STAFFELD, appearing in this matter *Pro Se*, and for their Response in Opposition to Defendant Wells Fargo Bank, N.A.'s Motion for Judgment on the Pleadings, states the following:

1

## INTRODUCTION

This is an action for civil damages and equitable/injunctive relief concerning real property rightfully owned by Plaintiffs and commonly known as 341 Corrie Road, Ann Arbor, MI 48105 (hereafter, the "Subject Property"). Plaintiffs respectfully submit this Response in Opposition to Defendant Wells Fargo Bank's Motion for Summary Judgment. Defendant's motion for summary judgment should respectfully be **denied**, as genuine issues of material fact exist for the trier of fact concerning Wells Fargo Bank's conduct in foreclosing upon Plaintiffs' home. Furthermore, the nature of the underlying FHA mortgage loans' requirement of mortgage insurance policy (Exhibit A – Section 10 of mortgage contract) along with Defendant's violation of federal protections enacted during the COVID-19 global health pandemic (Order #13945) dictate that the motion for summary judgment be denied and Plaintiffs should be afforded a full and fair opportunity to present their various claims to a jury of their peers.

## LEGAL STANDARD

As this Honorable Court is aware, summary judgment is appropriate **only** where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)* (emphasis added). The Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2D 265 (1986), that the moving party bears the initial burden of showing the absence of a genuine issue of material fact. Further, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202 (1986), instructs that courts must view the evidence in the light most favorable to the **non-moving party** and draw all reasonable inferences **in that party's favor** (emphasis added). If reasonable minds could differ on the facts, summary judgment must be denied. See also *Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861 (2014).

## LAW AND ARGUMENT

**A. The Underlying Loan Was an FHA Mortgage Subject to Robust Federal Protections**

In this case, the mortgage securing the purchase of the Subject Property was insured and originated under terms consistent with FHA-backed loans, which are governed by the National Housing Act, 12 U.S.C. § 1701 et seq., and HUD regulations at 24 C.F.R. Part 203. FHA mortgages are not ordinary private loans; they are federally insured and subject to a comprehensive regulatory framework designed to protect homeowners, especially during periods of financial hardship. Courts have recognized that FHA lenders ***must*** comply with HUD servicing requirements before foreclosure. See *Wells Fargo Bank, N.A. v. Smith*, 2016 WL 8711207 (E.D. Mich. 2016); see also *Fleet Real Estate Funding Corp. v. Smith*, 366 N.W.2d 232 (Mich. Ct. App. 1985) (failure to comply with HUD servicing requirements may preclude foreclosure).

**1) Loss Mitigation Requirements**

HUD regulations require lenders to engage in loss mitigation efforts before initiating foreclosure. See 24 C.F.R. § 203.604(b). Specifically, lenders must make a reasonable effort to arrange a face-to-face interview with the borrower, assess the borrower's financial situation, and explore alternatives to foreclosure, such as forbearance, loan modification, or repayment plans. "Before initiating foreclosure, the mortgagee must have a face-to-face interview with the mortgagor or make a reasonable effort to arrange such a meeting." *24 C.F.R. § 203.604(b)*.

**2) Forbearance and Modification Options**

HUD's loss mitigation program requires mortgage lenders and servicers to evaluate borrowers for all available options, including special forbearance, FHA-HAMP loan modification, and partial claim relief. See HUD Handbook 4000.1, III.A.2.k. These options are designed to help borrowers retain their homes and avoid foreclosure.

3

### 3) Foreclosure Moratoria During the Global Health Pandemic

During the COVID-19 pandemic, HUD issued multiple Mortgagee Letters (including ML 2020-27) prohibiting foreclosure and eviction actions on FHA-insured mortgages except for vacant or abandoned properties. Servicers were required to offer forbearance to any borrower experiencing financial hardship due to COVID-19 and could not initiate or proceed with foreclosure while forbearance or loss mitigation was pending. "Mortgagees must not initiate or proceed with foreclosure or eviction for FHA-insured single-family mortgages, except for properties that are vacant or abandoned." *HUD Mortgagee Letter 2020-27*.

### 4) Notice and Due Process

FHA regulations and Michigan law require that borrowers receive adequate notice of default, the opportunity to cure, and clear communication regarding the status of any loss mitigation application. See *Dow v. State*, 396 Mich. 192, 240 NW 2d 450 (1976) (due process requires notice reasonably calculated to apprise interested parties of foreclosure).

### 5) Judicial Enforcement

Federal courts have recognized that HUD regulations incorporated into FHA mortgages are enforceable by borrowers. See *United States v. Premises Known as 608 Taylor Ave.*, 584 F.2d 1297 (3d Cir. 1978); *Fleet Real Estate Funding Corp. v. Smith*, 366 N.W.2d 232 (Mich. Ct. App. 1985) (failure to comply with HUD servicing requirements may preclude foreclosure).

### 6) Summary as Applied to Wells Fargo Bank

In sum, Wells Fargo Bank, as the lender and servicer of an FHA-insured mortgage, was required to comply with all HUD loss mitigation and notice requirements, and to honor federal foreclosure moratoria during the COVID-19 national health emergency. Plaintiffs' allegations, supported by the record, show that Wells Fargo failed to comply with these protections, thereby rendering the

foreclosure improper and precluding summary judgment.

**B. Wells Fargo Bank's Foreclosure Violated Executive Order 13945 and HUD Guidance Issued During COVID-19**

  1) **Executive Order 13945: "Fighting the Spread of COVID-19 by Providing Assistance to Renters and Homeowners**

On August 8, 2020, the President issued Executive Order 13945, which directed federal agencies to take all appropriate actions to prevent evictions and foreclosures for renters and homeowners affected by the COVID-19 pandemic. The Order specifically instructed the Secretary of Housing and Urban Development (HUD) to "take action, as appropriate and consistent with applicable law, to promote the ability of renters and homeowners to avoid eviction or foreclosure resulting from hardships caused by COVID-19." See Executive Order 13945, § 3(b), 85 Fed. Reg. 49935 (Aug. 11, 2020).

This Executive Order recognized the unprecedented financial hardship facing millions of Americans and mandated that federal agencies use their authority to protect those with federally-backed mortgages, including FHA loans.

  2) **HUD Guidance and Mortgage Lender Letters**

In response to Executive Order 13945, HUD issued a series of Mortgagee Letters providing specific instructions to mortgage servicers regarding foreclosure and eviction moratoria for FHA-insured mortgages:

  a) HUD Mortgagee Letter 2020-27 (Dec. 17, 2020): Extended the foreclosure and eviction moratorium for FHA-insured single-family mortgages through July 31, 2021. "Mortgagees must not initiate or proceed with foreclosure or eviction for FHA-insured single-family mortgages, except for properties that are vacant or abandoned."

  b) HUD Mortgagee Letter 2021-05 (Feb. 16, 2021): Further extended the moratorium and clarified that servicers must offer forbearance to any borrower experiencing financial hardship due to COVID-19. "Borrowers with FHA-insured mortgages who are

5

      experiencing financial hardship due to COVID-19 are entitled to request and receive forbearance, regardless of delinquency status."

   c) HUD Mortgagee Letter 2021-15 (June 25, 2021): Provided additional loss mitigation options, including COVID-19 Recovery Modification and COVID-19 Recovery Standalone Partial Claim, to help borrowers retain their homes.

**3) Lender/Servicer Obligations Under Federal Guidance**

Under these federal directives, mortgage lenders and servicers were required to:

   a) Halt all foreclosure and eviction actions on FHA-insured mortgages except for vacant or abandoned properties.

   b) Offer forbearance to any borrower who requested assistance due to COVID-19 hardship.

   c) Evaluate borrowers for all available loss mitigation options before initiating foreclosure.

   d) Provide clear and timely notice to borrowers regarding their rights and the status of any loss mitigation application.

**4) Enforcement and Judicial Recognition**

Federal courts have recognized that these Executive Orders and HUD Mortgagee Letters are binding on mortgage servicers and provide enforceable rights to borrowers. See United States v. Premises Known as 608 Taylor Ave., 584 F.2d 1297 (3d Cir. 1978) (HUD regulations incorporated into FHA mortgages are enforceable by borrowers); Fleet Real Estate Funding Corp. v. Smith, 366 N.W.2d 232 (Mich. Ct. App. 1985) (failure to comply with HUD servicing requirements may preclude foreclosure.

**5) Application to Plaintiffs**

Plaintiffs lost employment due to the pandemic and promptly notified Wells Fargo, seeking forbearance and loan modification as permitted under federal law. Despite these protections, Wells

6

Fargo initiated foreclosure without providing the required forbearance, loss mitigation evaluation, or proper notice, and face to face evaluation, in direct violation of Executive Order 13945 and HUD guidance. Additionally, Wells Fargo Bank sold the Property in Sheriff's Sale while Plaintiffs application for loan modification was pending.

Executive Order 13945, "Fighting the Spread of COVID-19 by Providing Assistance to Renters and Homeowners," directed HUD to take action to prevent foreclosures on federally-backed mortgages, including FHA loans. HUD Mortgagee Letter 2020-27 extended foreclosure moratoria for FHA-insured mortgages and required servicers to offer forbearance and loss mitigation. Plaintiffs lost employment due to the pandemic and sought forbearance and modification, yet Wells Fargo initiated foreclosure contrary to these mandates and sold the Property without notice. Federal courts have held that HUD regulations incorporated into FHA mortgages are enforceable by borrowers. See United States v. Premises Known as 608 Taylor Ave., 584 F.2d 1297 (3d Cir. 1978). FHA guidelines applied to single family primary residents of mortgages and mandate Wells Fargo Bank to withhold 1.75% of the mortgage amount and secure this mortgage, not for the Plaintiffs' benefit, but for the Wells Fargo Banks' benefit in case of death or disability of mortgagor especially within one year. Such death occurred to the mortgagor, Dorothea V. Staffeld, within 11 months of the mortgage contract (Exhibit A - Section 10 of mortgage contract; mortgage insurance requirement by Wells Fargo Bank) (Exhibit B - Death certificate of Dorothea V. Staffeld) (Exhibit C – Property Transfer Affidavit).

**C. Genuine Issues of Material Fact Preclude Summary Judgment**

Defendant's Motion for Summary Judgment ignores material facts regarding compliance with federal foreclosure moratoria and loss mitigation requirements. Whether Wells Fargo Bank complied with Executive Order 13945 and HUD guidance, whether Wells Fargo Bank complied to FHA requirements and secured a mortgage insurance to this loan, and whether Plaintiffs received adequate

7

notice, are disputed issues on material facts. Under *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, these factual disputes must be resolved by the trier of fact, precluding summary judgment.

### D.  Plaintiffs are Entitled to Relief Under State and Federal Law

Plaintiffs assert claims for quiet title, injunctive relief, breach of contract, FDCPA violations, fraudulent misrepresentation, unjust enrichment, and negligent infliction of emotional distress. Michigan law requires notice reasonably calculated to apprise interested parties of foreclosure. See *Dow v. State*, 396 Mich. 192, 240 N.W.2d 450 (1976). Further, courts have rejected arguments that economic hardship excuses failure to comply with statutory protections. See *Smith v. Litton Loan Servicing*, LP, 517 Fed. Appx. 395 (6th Cir. 2013).

## CONCLUSION

For the foregoing reasons, Plaintiffs, KARL STAFFELD and AZAR STAFFELD, respectfully request that this Honorable Court deny Defendant, Wells Fargo Bank's Motion for Judgment on the Pleadings, and further grant any other such relief to which Plaintiffs are found to be entitled based on principles of equity and fairness.

Respectfully submitted,

By: *s/ Karl Staffeld*
Karl Staffeld
*Plaintiff, Pro Se*

By: *s/ Azar Staffeld*
Azar Staffeld
*Plaintiff, Pro Se*

Dated: December 4, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2025, I served the foregoing PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR JUDGMENT ON THE PLEADINGS, via USPS first-class mail to the attorneys of record for the parties to this matter and upon:

Miranda M. Boulahanis (P86222)
4000 Town Center, Suite 1800
Southfield, MI 48075
248-469-4749
miranda.boulahanis@troutman.com

David Sobel (P49662)
George Blackmore (P76942)
SOBLE PLC
31800 Northwestern Hwy #350
Farmington Hills, MI 48224
(888) 789-1715
dsoble@provenresource.com

Respectfully submitted,

By /s/: *Karl Staffeld*
Karl Staffeld
Plaintiff, *Pro Se*

Dated: December 4, 2025

# EXHIBIT A

**341 CORRIE**
**MORTGAGE – ITEM 10**

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the note, another insurer, any reinsurer, any other entity, or affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provided that an affiliate of Lender takes a share of the insurer's risk in exchange (or a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has -if any -with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

# EXHIBIT B

# CERTIFICATION OF VITAL RECORD



## COUNTY OF WASHTENAW
### STATE OF MICHIGAN



**STATE OF MICHIGAN**
DEPARTMENT OF COMMUNITY HEALTH
**CERTIFICATE OF DEATH**

D2018-03217
Pages: 1 of 1   DCT

STATE FILE NUMBER: 275584

| # | Field | Value |
|---|---|---|
| 1 | DECEDENT'S NAME (First, Middle, Last) | Dorothea June Staffeld |
| 2 | DATE OF BIRTH | June 26, 1927 |
| 3 | SEX | Female |
| 4 | DATE OF DEATH | November 01, 2018 |
| 5 | NAME AT BIRTH OR OTHER NAME USED FOR PERSONAL BUSINESS | Dorothea June Vermillion |
| 6a | Last Birthday (Years) | 91 |
| 7a | LOCATION OF DEATH | Arbor Hospice |
| 7b | CITY, VILLAGE OR TOWNSHIP OF DEATH | Saline |
| 7c | COUNTY OF DEATH | Washtenaw |
| 8a | CURRENT RESIDENCE - STATE | Michigan |
| 8b | COUNTY | Washtenaw |
| 8c | LOCALITY | Chelsea |
| 8d | STREET AND NUMBER | 223 Pierce Lake Drive |
| 8e | ZIP CODE | 48118 |
| 9 | BIRTH PLACE | Monett, Missouri |
| 10 | SOCIAL SECURITY NUMBER | 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 |
| 11 | DECEDENT'S EDUCATION | Associate degree |
| 12 | RACE | White |
| 13a | ANCESTRY | Irish |
| 13b | HISPANIC ORIGIN | No |
| 14 | EVER IN THE U.S. ARMED FORCES? | No |
| 15 | USUAL OCCUPATION | Intelligence |
| 16 | KIND OF BUSINESS OR INDUSTRY | Government |
| 17 | MARITAL STATUS | Widowed |
| 18 | NAME OF SURVIVING SPOUSE | |
| 19 | FATHER'S NAME (First, Middle, Last) | Ovid Uriah Vermillion |
| 20 | MOTHER'S NAME BEFORE FIRST MARRIED (First, Middle, Last) | Rose Mae Owens |
| 21a | INFORMANT'S NAME | Karl W. Staffeld |
| 21b | RELATIONSHIP TO DECEDENT | Son |
| 21c | MAILING ADDRESS | 341 Corrie Road, Ann Arbor, Michigan 48105 |
| 22 | METHOD OF DISPOSITION | Cremation |
| 23a | PLACE OF DISPOSITION | Tri-County Cremation Services |
| 23b | LOCATION - City or Village, State | Ypsilanti, Michigan |
| 24 | SIGNATURE OF MORTUARY SCIENCE LICENSEE | Allen C. Cole |
| 25 | LICENSE NUMBER | 4501006399 |
| 26 | NAME AND ADDRESS OF FUNERAL FACILITY | Cole Funeral Chapel, Inc, 214 E. Middle St., Chelsea, Michigan 48118 |
| 27a | CERTIFIER | ☒ Certifying Physician — Thomas A. O'Neil, MD |
| 28a | ACTUAL OR PRESUMED TIME OF DEATH | 10:52 AM |
| 28b | PRONOUNCED DEAD | November 01, 2018 |
| 28c | TIME PRONOUNCED DEAD | 10:52 AM |
| 29 | MEDICAL EXAMINER CONTACTED | No |
| 30 | PLACE OF DEATH | Hospice Facility |
| 31 | IF HOSPITAL | |
| 27b | DATE SIGNED | November 02, 2018 |
| 27c | LICENSE NUMBER | 4301092471 |
| 32 | MEDICAL EXAMINER'S CASE NUMBER | |
| 33 | NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER | |
| 34 | NAME AND ADDRESS OF CERTIFYING PHYSICIAN | Thomas A. O'Neil, MD, Arbor Hospice, 440 West Russell Street Suite 100, Saline, Michigan 48176 |
| 35a | REGISTRAR'S SIGNATURE | [signature] |
| 35b | DATE FILED | November 02, 2018 |

**36. PART I.** ENTER the chain of events- diseases, injuries or complications — that directly caused the death...

a. Cardiovascular Disease — Approximate Interval Between Onset and Death: Years
b. Chronic Obstructive Pulmonary Disease — Years
c.
d. UNDERLYING CAUSE — LAST

**PART II.** OTHER SIGNIFICANT CONDITIONS contributing to death but not resulting in the underlying cause given in Part I

| 37. DID TOBACCO USE CONTRIBUTE TO DEATH? | 38. IF FEMALE |
|---|---|
| ☐ Yes  ☒ Probably | ☐ Not pregnant within past year |
| ☐ No   ☐ Unknown | ☐ Pregnant at time of death |
| | ☐ Not pregnant, but pregnant within 42 days of death |
| | ☐ Unknown if pregnant within the past year |
| | ☐ Not pregnant, but pregnant 43 days to 1 year before |

| 39. MANNER OF DEATH | 40a. WAS AN AUTOPSY PERFORMED? | 40b. WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? |
|---|---|---|
| Natural | No | Not Applicable |

41a. DATE OF INJURY: 
41b. TIME OF INJURY: 
41c. DESCRIBE HOW INJURY OCCURRED: 
41d. INJURY AT: 
41e. PLACE OF INJURY: 
41f. IF TRANSPORTATION: 
41g. LOCATION: 

Time Submitted for Recording
Date 2-24-20 23 Time 10:3 LAM
Lawrence Kestenbaum
Washtenaw County Clerk/Register

A922087

I, LAWRENCE KESTENBAUM, CLERK/REGISTER OF SAID COUNTY OF WASHTENAW DO HEREBY CERTIFY that the foregoing is a true and exact copy of the original document of file in my office.

DATED: 11/02/2018

**LAWRENCE KESTENBAUM**
WASHTENAW COUNTY CLERK/REGISTER

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# EXHIBIT C

Michigan Department of Treasury
2766 (Rev. 01-16)

L-4260

# Property Transfer Affidavit

This form is issued under authority of P.A. 415 of 1994. Filing is mandatory.

This form must be filed whenever real estate or some types of personal property are transferred (even if you are not recording a deed). The Affidavit must be filed by the new owner with the assessor for the city or township where the property is located within 45 days of the transfer. The information on this form is NOT CONFIDENTIAL.

| 1. Street Address of Property | 2. County | 3. Date of Transfer (or land contract signed) |
|---|---|---|
| 341 Corrie Road | Washtenaw | 12/15/17 |

**4. Location of Real Estate** (Check appropriate field and enter name in the space below.)

[ ] City   [ ] Township   [X] Village

Barton Hills

**5. Purchase Price of Real Estate**
625,000.00

**6. Seller's (Transferor) Name**
The Alice B. Dobson Declaration of Trust dated May 30, 1...

**7. Property Identification Number (PIN).** If you don't have a PIN, attach legal description.

PIN. This number ranges from 10 to 25 digits. It usually includes hyphens and sometimes includes letters. It is on the property tax bill and on the assessment notice.

IB-09-08-380-005

**8. Buyer's (Transferee) Name and Mailing Address**
Karl W. Staffeld and Dorothea V. Staffeld
341 Corrie Road, Ann Arbor, MI 48105

**9. Buyer's (Transferee) Telephone Number**

Items 10 - 15 are optional. However, by completing them you may avoid further correspondence.

**10. Type of Transfer.** Transfers include deeds, land contracts, transfers involving trusts or wills, certain long-term leases and interest in a business. See page 2 for list.

[ ] Land Contract   [ ] Lease   [ ] Deed   [ ] Other (specify) _____

| 11. Was property purchased from a financial institution? | 12. Is the transfer between related persons? | 13. Amount of Down Payment |
|---|---|---|
| [ ] Yes  [ ] No | [ ] Yes  [ ] No | |

| 14. If you financed the purchase, did you pay market rate of interest? | 15. Amount Financed (Borrowed) |
|---|---|
| [ ] Yes  [ ] No | |

## EXEMPTIONS

Certain types of transfers are exempt from uncapping. If you believe this transfer is exempt, indicate below the type of exemption you are claiming. If you claim an exemption, your assessor may request more information to support your claim.

[ ] Transfer from one spouse to the other spouse
[ ] Change in ownership solely to exclude or include a spouse
[ ] Transfer between certain family members *(see page 2)
[ ] Transfer of that portion of a property subject to a life lease or life estate (until the life lease or life estate expires)
[ ] Transfer to effect the foreclosure or forfeiture of real property
[ ] Transfer by redemption from a tax sale
[ ] Transfer into a trust where the settlor or the settlor's spouse conveys property to the trust and is also the sole beneficiary of the trust
[ ] Transfer resulting from a court order unless the order specifies a monetary payment
[ ] Transfer creating or ending a joint tenancy if at least one person is an original owner of the property (or his/her spouse)
[ ] Transfer to establish or release a security interest (collateral)
[ ] Transfer of real estate through normal public trading of stocks
[ ] Transfer between entities under common control or among members of an affiliated group
[ ] Transfer resulting from transactions that qualify as a tax-free reorganization
[ ] Transfer of qualified agricultural property when the property remains qualified agricultural property and affidavit has been filed.
[ ] Transfer of qualified forest property when the property remains qualified forest property and affidavit has been filed.
[ ] Transfer of land with qualified conservation easement (land only - not improvements)
[ ] Other, specify: _____

## CERTIFICATION

I certify that the information above is true and complete to the best of my knowledge.

Printed Name: Dorothea V. Staffeld

Signature: [signed]

Date: 12/15/17

Name and title, if signer is other than the owner | Daytime Phone Number | E-mail Address

I/We, the above signed, request that American Title Company of Washtenaw mail this original affidavit on our behalf. We understand that we are still responsible for penalties if it is not received by the assessor within the specified time period.