UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARL STAFFELD and AZAR
STAFFELD,                                              Civil Action No. 24-12811

                              Plaintiffs,              Shalina D. Kumar
v.                                                     United States District Judge

WELLS FARGO BANK, N.A.,                                David R. Grand
                                                       United States Magistrate Judge

                              Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT WELLS FARGO BANK, N.A.'S MOTION
FOR JUDGMENT ON THE PLEADINGS (ECF No. 59)**

*Pro se* plaintiffs Karl Staffeld and Azar Staffeld (collectively, the "Staffelds")

commenced this action on October 24, 2024, against Wells Fargo Bank, N.A. ("Wells

Fargo").[1]  In short, the Staffelds claim to be the rightful owners of real property located at

341 Corrie Road, in Ann Arbor, Michigan (the "Property"), over which Wells Fargo held

a mortgage on which it has since foreclosed.[2]

Now pending before the Court is Wells Fargo's Motion for Judgment on the

Pleadings Pursuant to Fed. R. Civ. P. 12(c), which was filed on November 24, 2025.  (ECF

No. 59).  The Staffelds filed identical responses to Wells Fargo's motion on December 4,

2025 and December 16, 2025 (ECF Nos. 63, 64), and Wells Fargo filed a reply on January

---

[1] On February 28, 2025, the Staffelds filed an amended complaint that added R&J Holdings, LLC
("R&J") as a defendant.  (ECF No. 19).  However, the Staffelds' claims against R&J have been
dismissed (ECF Nos. 62, 77), leaving Wells Fargo as the sole remaining defendant in this case.

[2] An Order of Reference was entered on December 6, 2024, referring all pretrial matters to the
undersigned pursuant to 28 U.S.C. § 636(b).  (ECF No. 8).

2, 2026 (ECF No. 68).  Having reviewed the pleadings and other filings, the Court finds

that the facts and legal issues are adequately presented in the parties' briefs and on the

record, and it declines to order a hearing at this time.

## I.     REPORT

### A.     Factual Background

Focusing on the Staffelds' allegations against Wells Fargo in their amended

complaint, the Staffelds claim that they are the rightful owners of the Property.  They allege

that the Property was purchased by Karl Staffeld's mother, Dorothea Vermilion Staffeld

("Dorothea"), in November 2017, and that she took out a mortgage with Wells Fargo in

connection with that purchase.[3]  (ECF No. 19, PageID.113).  The Staffelds contend that

Dorothea "secured mortgage insurance [the "Insurance Agreement"] through the bank

which provided that if [she] should pass away within one year, the then-owed principal and

interest loan balance would be satisfied by the mortgage insurance."  (*Id.*).  The Staffelds

claim that Dorothea "passed away exactly 11 months after the loan agreement was signed,"

and that "prior to passing away she transferred ownership of the [] Property by Quit Claim

Deed to [the Staffelds] …."  (*Id.*, PageID.114).  Thus, the Staffelds claim that they "are the

title owners of the [] Property and are entitled to the full payment of the mortgage amount

---

[3] The Note and Mortgage (ECF No. 17-1, PageID.85-89; ECF No. 17-2, PageID.90-100) referenced by the Staffelds reflect that they were executed on December 15, 2017, and were incorporated by reference into Wells Fargo's dispositive motion.  The Sixth Circuit has liberally construed the incorporation-by-reference doctrine, holding that even an indirect reference to a document is sufficient for the Court to consider in resolving a motion for judgment on the pleadings.  *See Berrylane Trading, Inc. v. Transp. Ins. Co.*, 754 F. App'x 370, 378 n. 2 (6th Cir. 2018). *See infra* at 5.

according to mortgage insurance guidelines." (*Id.*).  Although the Staffelds did not attach any documents to their complaint or amended complaint supporting this contention, they maintain that "Wells Fargo Bank has a copy of the subject mortgage loan insurance policy but has refused to acknowledge that the policy is effective." (*Id.*).

Although the Staffelds are not parties to the Note or Mortgage, they contend that, during the COVID-19 pandemic, they lost their jobs and "were unable to make all the mortgage loan payments on the [] Property for one-and-a-half years." (*Id.*).  They claim that Wells Fargo "assured" them "that they could make installment payments upon their return to work to become current on the mortgage loan balance and seek a loan modification as well," and were told that the Property "would not be foreclosed upon while [they] brought the loan account current and sought to be approved for a loan modification." (*Id.*).  The Staffelds claim that despite "attempt[ing] in good faith to secure a loan modification … the bank-initiated [sic] foreclosure proceedings without proper notice to [them]." (*Id.*).

The Staffelds further allege that Wells Fargo never sent them written notice that their loan modification application had been denied; instead, an "authorized representative" of the bank allegedly called them and "left a message from an unknown 800 telephone number." (*Id.*, PageID.115).  The Staffelds indicate, however, that they "never received any such messages from Wells Fargo Bank or any loan servicer on behalf of the bank, nor did they receive anything in writing through the mail, or otherwise, concerning the bank's denial of their loan modification application." (*Id.*).

3

In their amended complaint, the Staffelds plead six claims against Wells Fargo: Quiet Title (Count I); Breach of Contract (Count III); Violation of the Fair Debt Collection Practices Act ("FDCPA") (Count IV); Fraudulent Misrepresentation (Count V); Unjust Enrichment (Count VI); and Negligent Infliction of Emotional Distress (Count VII).[4] Wells Fargo now moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), seeking dismissal of all of the Staffelds' remaining claims.

## B.      Standard of Review

After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings.  *See* Fed. R. Civ. P. 12(c).  Courts assess Rule 12(c) motions "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)."  *Moderwell v. Cuyahoga Cty., Ohio*, 997 F.3d 653, 659 (6th Cir. 2021) (internal citation omitted).  For purposes of a Rule 12(c) motion, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006) (internal citation omitted). A Rule 12(c) motion is granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law."  *Id.* (internal citation omitted).

When a defendant files a motion for judgment on the pleadings, courts "must construe the complaint in the light most favorable to the plaintiff, accept all of the

---

[4] In Count II of their amended complaint, the Staffelds also plead a claim for "Injunctive Relief." (ECF No. 19, PageID.121-22).  However, because the Staffelds' motion for injunctive relief was previously denied (ECF Nos. 44, 58), this claim should be dismissed.

complaint's factual allegations as true, and determine whether the plaintiff[s] undoubtedly can prove no set of facts in support of [their] claim that would entitle [them] to relief." *Id.* (internal citation omitted).  In ruling on a Rule 12(c) motion, the court may "consider documents attached to, incorporated by or referred to in the pleadings." *Bucciarelli v. Nationwide Mut. Ins. Co.*, 662 F. Supp. 2d 809, 814 (E.D. Mich. Aug. 26, 2009) (internal citation omitted).

### C.    Analysis

As set forth above, Wells Fargo moves for judgment on the pleadings as to all six of the Staffelds' remaining claims.  Each of these claims is addressed below.  Because the Staffelds did not contest any of Wells Fargo's arguments but, rather, raised additional, non-responsive concerns, the contentions made in their response brief will be addressed *infra* at 11-12.

#### 1.    Breach of Contract (Count III)

As set forth above, the underlying basis for the Staffelds' breach of contract claim is that, in conjunction with the Mortgage, Dorothea obtained an Insurance Agreement from Wells Fargo, which purportedly provided that if she passed away within one year, the then-outstanding principal and loan balance would be satisfied by the mortgage insurance.  (ECF No. 19, PageID.113-14).

Under Michigan law, in order to prevail on a breach of contract claim, a plaintiff must establish: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach.  *See Stoken v. JET Elec. & Tech., Inc.*, 174 Mich. App. 457, 463 (1988).  Wells Fargo argues that the only contractual relationship the Staffelds allege is

between Dorothea and Wells Fargo. (ECF No. 19, PageID.122) ("Dorothea … and Defendant Wells Fargo Bank entered into a valid and legally enforceable contract."). While the Staffelds allege that Dorothea "transferred ownership of the [] Property [to them] by Quit Claim Deed" (ECF No. 19, PageID.114), they have not alleged that there was a valid assignment of the Note or Mortgage to them. It is axiomatic that only parties to a contract can bring a successful breach of contract claim. *See Best Team Ever, Inc. v. Abu*, No. 368846 and 370769, 2025 WL 2793170, at *13 (Mich. Ct. App. Sept. 30, 2025); *Michigan Spill Response v. Highlight Motor Grp.*, No. 23-13144, 2025 WL 2627416, at *3 (E.D. Mich. Sept. 11, 2025) (dismissing plaintiff's breach of contract claim because it was not a party to the contracts at issue and, thus, did not have standing to bring such a claim). Because the Staffelds do not allege that they are parties to a contract with Wells Fargo, their breach of contract claim against it should be dismissed.

### 2. FDCPA (Count IV)

In Count IV of their amended complaint, the Staffelds allege that Wells Fargo violated the FDCPA by "using interstate commerce or the mail to collect a debt that was not validated and/or owed" and by "not stopping the unlawful foreclosure sale and unlawful petition for possession of the [] Property …." (ECF No. 19, PageID.124). A *prima facie* FDCPA claim must allege that: (1) the plaintiff is a "consumer" as defined by the FDCPA; (2) the alleged debt is a "debt" as defined by the FDCPA; (3) the defendant is a "debt collector" as defined by the FDCPA; and (4) the defendant violated a provision of the FDCPA. *See Evans v. Merchants & Med. Credit Corp.*, No. 21-11830, 2023 WL 1423730, at *4 (E.D. Mich. Jan. 31, 2023).

6

Here, Wells Fargo argues that the Staffelds cannot satisfy the third prong. Specifically, Wells Fargo argues that it was not a "debt collector" under the FDCPA because, based on the Staffelds' own allegations, it was attempting to collect *its own* debt, not the debt of another.  (ECF No. 59, PageID.1512-13).  It is true that courts have routinely reached this conclusion in evaluating FDCPA claims.  *See, e.g., Garner v. Select Portfolio Servicing, Inc.,* No. 17-1303, 2017 WL 8294293, at *3 (6th Cir. Oct. 27, 2017) (affirming the district court's dismissal of plaintiff's FDCPA claim because "Wells Fargo [was] not a 'debt collector' … because it was attempting to collect its own debt"); *Fedorova v. Foley*, No. 1:22-cv-991, 2023 WL 5660036, at *10 (W.D. Mich. Aug. 10, 2023) ("Regardless of how Fedorova characterizes PennyMac's involvement, she cannot state a claim against PennyMac for violating the FDCPA because PennyMac was not a debt collector; it was collecting its own debt.").  Thus, the Staffelds' FDCPA claim fails as a matter of law and should be dismissed.

### 3. *Fraudulent Misrepresentation (Count V)*

In Count V of their amended complaint, the Staffelds assert that Wells Fargo and its agents knowingly and/or recklessly made false representations regarding the outstanding amount due on the loan, the existence of a lien, and the bank's intent to pursue foreclosure proceedings.  (ECF No. 19, PageID.125).  The Staffelds further allege that Wells Fargo intended that they rely on these misrepresentations, which they did, suffering "severe economic damages" as a result.  (*Id.*).  In its motion, Wells Fargo argues that the Staffelds' fraudulent misrepresentation claim fails because they have not met the heightened pleading

standard for fraud under Fed. R. Civ. P. 9(b).  (ECF No. 59, PageID.1514-15).  The Court agrees.

Under Michigan law, a claim for fraud requires pleading the following elements: (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the misrepresentation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) defendant made the misrepresentation with the intention that plaintiff would act upon it; (5) plaintiff acted in reliance upon it; and (6) plaintiff suffered damages.  *See M&D, Inc. v. WB McConkey*, 231 Mich. App. 22, 27 (1998).

Moreover, when pleading a state-law fraud claim in federal court, Rule 9(b)'s heightened pleading standards apply.  *See Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 690 (E.D. Mich. 2020); *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, No. 13-13804, 2015 WL 3541905, at *3 (E.D. Mich. Apr. 30, 2015) (holding that Rule 9(b)'s particularity requirement applies to state-law claims asserted in federal court).  Rule 9(b) provides that "a party must state with particularity the circumstances constituting fraud[.]"  Indeed, for affirmative misrepresentations – such as those allegedly made by Wells Fargo in this case – Rule 9(b) "requires a plaintiff to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  *McKee v. General Motors, LLC*, 376 F. Supp. 3d 751, 760 (E.D. Mich. 2019) (internal quotation marks omitted).

Here, the Staffelds allege only that, at some unspecified point "[d]uring the global health pandemic," several representatives of Wells Fargo "assured" them "that they could

make installment payments upon their return to work to become current on the mortgage loan balance and seek a loan modification as well," and they were told that the Property "would not be foreclosed upon while [they] brought the loan account current and sought to be approved for a loan modification." (ECF No. 19, PageID.114). These vague allegations fall well short of the aforementioned pleading requirements as they fail to specify the time or place of the alleged misrepresentation(s); fail to plead facts establishing a fraudulent scheme; and fail to plead facts showing fraudulent intent on the part of Wells Fargo. Because the Staffelds' amended complaint fails to provide any of these details, it does not comply with the heightened pleading requirements of Rule 9(b), and their fraudulent misrepresentation claim should be dismissed.

### 4. Unjust Enrichment (Count VI)

In their amended complaint, the Staffelds allege that Wells Fargo was unjustly enriched because it "received the benefits" of the Staffelds' payments under the mortgage and "acted in bad faith." (*Id.*, PageID.126-27). In order to succeed on a claim for unjust enrichment under Michigan law, however, a plaintiff must prove: (1) the receipt of a benefit by the other party from the complaining party, and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party. *See Gold Pearl Records, LLC v. City Sketches, Inc.*, No. 23-CV-10151, 2026 WL 766167, at *9 (E.D. Mich. Mar. 18, 2026) (citing *Innotext, Inc. v. Petra'Lex USA Inc.*, 694 F.3d 581, 594 (6th Cir. 2012) and *Barber v. SMH (US) Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993)). In its motion, Wells Fargo cites *Smith v. Litton Loan Servicing*, 517 F. App'x 395, 398 (6th Cir. 2013), for the proposition that "a mortgagee of a property cannot be unjustly enriched

for collecting funds it is owed." (ECF No. 59, PageID.1515). In *Smith*, a purported property owner brought suit against a mortgagee and its loan servicer, challenging the foreclosure of the property and asserting an unjust enrichment claim, despite his failure to make mortgage payments. *Id.* at 395. The Sixth Circuit affirmed the district court's dismissal of the plaintiff's unjust enrichment claim, holding, in language that is equally applicable here:

> … [the purported owner] may have lost his property and may be forced to go through the hardship of moving, but he received a $200,000 loan and then failed to make his promised payments under the note. **There is nothing inequitable about a bank's decision to exercise a standard, statutory foreclosure remedy when a borrower stops making payments on a loan secured by a mortgage. Economic stress can produce lamentable situations, but these situations are anticipated by mortgage agreements and are not the sort of inequity that unjust enrichment is meant to address.**

*Id.* (emphasis added). Thus, the Staffelds' unjust enrichment claim is also without merit and should be dismissed.

### 5. *Negligent Infliction of Emotional Distress (Count VII)*

In their amended complaint, the Staffelds also allege that Wells Fargo's conduct "would naturally and probably result in emotional distress" and, indeed, "caused severe emotional distress to [them]." (ECF No. 19, PageID.127). However, "Michigan recognizes the tort of negligent infliction of emotional distress only when a plaintiff witnesses negligent injury to a third party and suffers mental disturbance as a result." *Teadt v. Lutheran Church Missouri Synod*, 237 Mich. App. 567, 581 n. 6 (1999). Here, the Staffelds do not allege that they witnessed a negligent injury to a third party. Rather, the

Staffelds merely assert that Wells Fargo's allegedly negligent actions in connection with the foreclosure of the Property caused them emotional distress (among other things). Thus, this claim fails as a matter of law and should be dismissed.

### 6. Quiet Title (Count I)

Finally, the Staffelds plead in their amended complaint a claim for "quiet title." (ECF No. 19, PageID.119-21). However, this claim is also subject to dismissal because quiet title is a *remedy*, not an independent cause of action. *See Steinberg v. Federal Home Loan Mortg. Corp.,* 901 F. Supp. 2d 945, 954-55 (E.D. Mich. 2012); *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013).

### 7. The Staffelds' Arguments in Their Response Brief

As set forth above, *supra* at 5, the Staffelds' response brief did not address the arguments set forth by Wells Fargo in its dispositive motion. Instead, their response focuses on various Fair Housing Act ("FHA") regulations, Housing and Urban Development ("HUD") servicing requirements, and COVID-era Executive Orders. (ECF No. 63). For example, the Staffelds make the following assertions in their response brief:

- "HUD regulations require lenders to engage in loss mitigation efforts before initiating foreclosure. See 24 C.F.R. § 203.604(b). Specifically, lenders must make a reasonable effort to arrange a face-to-face interview with the borrower, assess the borrower's financial situation, and explore alternatives to foreclosure, such as forbearance, loan modification or repayment plans."

- "During the COVID-19 pandemic, HUD issued multiple Mortgagee Letters (including ML 2020-27) prohibiting foreclosure and eviction actions on FHA-insured mortgages except for vacant or abandoned properties." (citing *HUD Mortgagee Letter 2020-27*).

- "On August 8, 2020, the President issued Executive Order 13945, which directed federal agencies to take all appropriate actions to prevent evictions and foreclosures for renters and homeowners affected by the COVID-19 pandemic.  The Order specifically instructed the Secretary of Housing and Urban Development (HUD) to 'take action, as appropriate and consistent with applicable law, to promote the ability of renters and homeowners to avoid eviction or foreclosure resulting from hardships caused by COVID-19.'  See Executive Order 13945, § 3(b), 85 Fed. Reg. 49935 (Aug. 11, 2020)."

(*Id.*, PageID.1538-40).  The Staffelds maintain that "[f]ederal courts have recognized that these Executive Orders and HUD Mortgagee Letters are binding on mortgage servicers and provide enforceable rights to borrowers."  (*Id.*, PageID.1541).

As Wells Fargo notes in its reply, however, the Staffelds do not point to any FHA regulations, HUD servicing requirements, or COVID-era Executive Orders in their complaint or amended complaint.  (ECF No. 68, PageID.1596).  Moreover, they cannot use their response to Wells Fargo's dispositive motion to introduce new claims or legal theories that do not appear in their operative pleading.  *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020).  This is particularly true where the Staffelds filed a complaint, an amended complaint, and were afforded the opportunity to file a *second* amended complaint, which they failed to do in a timely fashion.  (*See, e.g.,* ECF No. 74, PageID.1656).  Thus, where the meritorious arguments made by Wells Fargo in their motion stand unrebutted, Wells Fargo's motion should be granted and the Staffelds' remaining claims should be dismissed.

## II.    RECOMMENDATION

For the reasons stated above, the Court **RECOMMENDS** that Wells Fargo's Motion for Judgment on the Pleadings **(ECF No. 59)** be **GRANTED**.

12

Dated: April 13, 2026                          s/David R. Grand
Ann Arbor, Michigan                            DAVID R. GRAND
                                               United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 13, 2026.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

14