**U.S. DISTRICT COURT**

**EASTERN DISTRICT OF MICHIGAN**

**SOUTHERN DIVISION**

KARL STAFFELD AND AZAR STAFFELD,

      Plaintiffs,

-v-

WELLS FARGO BANK, N.A., a subsidiary of
WELLS FARGO & COMPANY,
420 Montgomery Street
San Francisco, CA 94104

      Defendant.

Case No: 4:24-cv-12811

Hon. Shalina D. Kumar
United States District Judge

Hon. David R. Grand
United States Magistrate Judge

_____/

Karl Staffeld and Azar Staffeld
Plaintiffs, *Pro Se*
341 Payeur Road Ann Arbor, MI 48108
(734) 929-6969
karlstaffeld@gmail.com

Miranda M. Boulahanis (P86222)
TROUTMAN PEPPER LOCKE LLP
500 Woodward Avenue, Suite 2800
Detroit, Michigan 48226
(248) 469-4749
miranda.boulahanis@troutman.com

Mark D. Kundmueller Esq. (P66306)
TROUTMAN PEPPER LOCKE LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
(757) 687-7564
mark.kundmueller@troutmen.com

_____/

**<u>PLAINTIFF'S EMERGENCY MOTION TO SANCTION</u>**

**<u>DEFENDANT, WELLS FARGO</u>**

1

NOW COMES Plaintiffs, KARL STAFFELD and AZAR STAFFELD, *Pro Se*, and for their Motion for Sanctions Against Defendant, Wells Fargo, respectfully states the following:

## INTRODUCTION

This is an action for civil damages and equitable/injunctive relief concerning real property rightfully owned by Plaintiffs and commonly known as 341 Corrie Road, Ann Arbor, MI 48105 (hereafter, the "Subject Property"). Plaintiffs submitted the Response in Opposition to Defendant Wells Fargo Bank's Motion for Summary Judgment, Plaintiffs answered and Wells Fargo responded. Defendant's motion for summary judgment should respectfully be DENIED, as genuine issues of material fact exist for the trier of fact concerning Wells Fargo Bank's conduct in foreclosing upon Plaintiffs' home. Now, the Plaintiffs brings this motion to sanction the Defendant for arguing a meritless claim, abusive litigation conduct, discovery disobedience, filing frivolous papers, and violating the Court orders. Wells Fargo's pleading ought to be struck for contempt of Court. Wells Fargo violated the Rule 11 by frivolous filing, Rule 37 by discovery failures, and Rule 30(d)(2) by exhibiting  misconduct. Furthermore, Wells Fargo denies having a contract with the Plaintiffs in violation of requirement of mortgage insurance policy (Exhibit A – Section 10 of mortgage contract) along with Defendant's violation of Federal Protections enacted during the COVID-19 global health pandemic (Order #13945) dictate that the motion for summary judgment be denied. Not only Plaintiffs should be afforded a full and fair opportunity to present their various claims to a jury of their peers, but they need to be awarded monetary fines as a result of Wells Fargo being a disobedient party in violating several Rules that they deliberately, intentionally, and maliciously did not follow.

2

### ISSUES PRESENTED

1.      Whether Plaintiffs Karl Staffeld and Azar Staffeld ("Plaintiffs") failed to state a claim for breach of contract (Count 3), where they do not allege a valid contractual relationship with Defendant Wells Fargo and Plaintiffs failed to attach or cite specific provisions of the purported insurance agreement?

> Plaintiffs Answer:            No.
>
> Wells Fargo Answers:        Yes.
>
> The Court Should Answer:   No.

2.      Whether Plaintiffs failed to state a claim under the Fair Debt Collection Practices Act ("FDCPA") (Count 4) where Wells Fargo is not a debt collector to whom the FDCPA applies?

> Plaintiffs Answer:            No.
>
> Wells Fargo Answers:        Yes.
>
> The Court Should Answer:   No.

3.      Whether Plaintiffs failed to state a claim for fraudulent misrepresentation (Count 5), where they failed to meet the heightened pleading standard for fraud under Fed. R. Civ. P. 9(b)?

> Plaintiffs Answer:            No.
>
> Wells Fargo Answers:        Yes.
>
> The Court Should Answer:   No.

4. Whether Plaintiffs failed to state a claim for unjust enrichment (Count 6) where there is nothing inequitable about a bank exercising its standard, statutory foreclosure remedy when a purported owner fails to make payments?

> Plaintiffs Answer: No.
>
> Wells Fargo Answers: Yes.
>
> The Court Should Answer: No.

5. Whether Plaintiffs failed to state a claim for negligent infliction of emotional distress (Count 7) where they have not claimed to have witnessed any injury to a third party or suffered any mental disturbances as a result?

> Plaintiffs Answer: No.
>
> Wells Fargo Answers: Yes.
>
> The Court Should Answer: No.

6. Whether Plaintiffs failed to state a claim for quiet title (Count 1) where quiet title is a remedy, not an independent cause of action?

> Plaintiffs Answer: No.
>
> Wells Fargo Answers: Yes.
>
> The Court Should Answer: No.

7. Whether the Defendant violated the Fair Lending Practice Act?

> Plaintiffs Answer: Yes.
>
> Wells Fargo Answers: No.

4

The Court Should Answer:    Yes.

8.      Weather the Defendant violated the Real Estate Settlement Procedure Act?

Plaintiffs Answer:            Yes.

Wells Fargo Answers:          No.

The Court Should Answer:    Yes.

9.      Whether the Defendant made false financial certification to HUD?

Plaintiffs Answer:            Yes.

Wells Fargo Answers:          No.

The Court Should Answer:    Yes.

10.     Whether the Defendant committed Improper Mortgage Lending Practices by non-compliance with the FHA regulations?

Plaintiffs Answer:            Yes.

Wells Fargo Answers:          No.

The Court Should Answer:    Yes.

11.     Whether the Defendant committed Predatory Lending and Collection Practices?

Plaintiffs Answer:            Yes.

Wells Fargo Answers:          No.

The Court Should Answer:    Yes.

12. Whether the Defendant deliberately, intentionally, and maliciously ignored the Court's instruction to provide the Plaintiff with discovery and interrogatory material and failed to make disclosures to Plaintiff?

Plaintiffs Answer: Yes.

Wells Fargo Answers: Yes.

The Court Should Answer: Yes.

13. Whether the Defendant was obligated to render 1.75% of the mortgage amount to HUD and FHA and insure the mortgage?

Plaintiffs Answer: Yes.

Wells Fargo Answers: Yes.

The Court Should Answer: Yes.

14. Whether the Defendant received Dorothea V. Staffeld's Death Certificate and evidence of shift of ownership of the subject property? (Exhibit B - Quit Claim Deed)

Plaintiffs Answer: Yes.

Wells Fargo Answers: Yes.

The Court Should Answer: Yes.

15. Whether the Defendant received loan modification application?

Plaintiffs Answer: Yes.

Wells Fargo Answers: Yes.

The Court Should Answer:     Yes.

16.     Whether the Defendant sent a denial of loan modification application in writing?

Plaintiffs Answer:              No.

Wells Fargo Answers:            No.

The Court Should Answer:     No.

17.     Whether the Defendant violated the Executive Order #13945 during COVID-19?

Plaintiffs Answer:              Yes.

Wells Fargo Answers:            Yes.

The Court Should Answer:     Yes.

18.     Whether the Defendant sent notices of foreclosure to the Plaintiffs?

Plaintiffs Answer:              No.

Wells Fargo Answers:            No.

The Court Should Answer:     No.

19.     Whether the Defendant followed the proper steps to foreclose the property?

Plaintiffs Answer:              No.

Wells Fargo Answers:            No.

The Court Should Answer:     No.

20.     Whether the Defendant should be sanctioned for violation of laws, Rules, Court instructions, and Court order, and contempt of Court?

Plaintiffs Answer:          Yes.

Wells Fargo Answers:        No.

The Court Should Answer:    Yes.

## LEGAL STANDARD

It is well-settled in the Federal Sixth Circuit that Federal Rules of Civil Procedure ("Rule") 11 authorizes sanctions for filings that are presented for improper purposes, contain frivolous arguments, or lack evidentiary support.

Specifically, the Sixth Circuit has upheld substantial Rule 11 sanctions for pursuing meritless claims and for abusive litigation conduct. Rule 11 sanctions are proper here, because the filings by Defendant and answers to Plaintiffs are frivolous and all procedural requirements of that rule were met." *King v. Whitmer*, 71 F.4th 511 (6th Cir. 2023). Plaintiff's counsel in *King* advanced speculative and factually unsupported claims about the 2020 election, ignored contrary evidence, and refused to dismiss after the case became moot. The Sixth Circuit affirmed sanctions in part, emphasizing that counsel must conduct a reasonable prefiling inquiry and abandon claims when they lack merit.

Analogous to this case, Wells Fargo's litigation position here that Plaintiffs' do not have a contractual relationship with the Defendant is categorically unreviewable and immune from appeal or waiver—contradicts § 405(g) and established due-process jurisprudence. Maintaining that position despite governing law and the record (including the Wells Fargo's own notice practices)

8

reflects a failure to make a reasonable legal inquiry and warrants Rule 11 sanctions.

"By knowingly pursuing meritless claims not properly responding to claims, Plaintiffs' counsel acted unreasonably, therefore, Rule 11 sanctions were appropriate." *Baker v. Chevron, U.S.A. Inc.*, No. 11-4369 (6th Cir. Aug. 2, 2013. In *Baker*, counsel pursued medical monitoring claims without individualized exposure data and after the district court excluded unreliable experts. The Sixth Circuit affirmed $250,000 in sanctions, underscoring counsel's duty to abandon claims that cannot be supported and were frivolous.

As applied here, Wells Fargo asserts across-the-board non-appealability and non-waivability even though the Fair Lending Practice Act and regulations require notice and avenues for residential mortgage loan cases. Persisting in a legally untenable, categorical stance, despite contrary authority, parallels Baker's unreasonable pursuit of meritless claims and supports sanctions.

"Rule 11 imposes a continual obligation on attorneys to refrain from pursuing meritless or frivolous claims at any stage of the proceedings." *Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir. 1997). In the *Ridder* case, after years of litigation without evidentiary support and not adhering to discovery requirements, counsel faced fees under 28 U.S.C. § 1927 when they unreasonably and vexatiously multiplied proceedings; Rule 11 sanctions were unavailable due to safe-harbor noncompliance but the court reaffirmed counsel's ongoing obligation to drop meritless claims.

Analogous to this matter, Wells Fargo's refusal to recognize Plaintiffs' statutory review rights, coupled with insistence that this Court lacks power under § 405(g), prolongs litigation and burdens the Court and Plaintiffs. Ridder's principle withdraw positions when their legal and factual bases fail supports sanctions (Rule 11, § 1927, and the Court's inherent power) to deter continued meritless arguments.

## LAW AND ARGUMENT

Wells Fargo conduct warrants sanctions for frivolous and misleading filings, violation of due process and statutory rights, and failure to comply with procedural rules. In *Steigerwald*, the Sixth Circuit affirmed that Wells Fargo may not evade judicial review or statutory obligations by procedural missteps.

Wells Fargo violated the Due Process Clause of the Fifth Amendment when Wells Fargo did not serve Plaintiffs with notices of foreclosures, notice of denial of loan modification application, did not provide necessary internal documents that proves the Plaintiffs case, and excluded evidence without allowing Plaintiffs to prove their case that included in Wells Fargo's files were fraudulent." *Hicks v. Commissioner of Social Security*, 909 F.3d 786 (6th Cir. 2018). As applicable to the facts here, Wells Fargo's lack of notice to Plaintiffs similarly and engaged foreclosing process by declaring its actions 'not subject to appeal, reconsideration, [or] waiver' by requesting dismissal of the case.

As in *Hicks,* the agency's categorical denial of procedural pathways risks erroneous deprivation of benefits. The persistence of this position in litigation warrants sanctions and corrective orders.

Similar to *Hicks*, in 2018, Wells Fargo violated the Due Process Clause of the Fifth Amendment when, during hearings, Wells Fargo excluded evidence without allowing Plaintiffs to rebut the allegations that made against Plaintiffs included in their files were and their possession fraudulent. In that case, the panel reaffirmed Hicks and should review Wells Fargo's subsequent non-compliance conduct, noting the need for adequate notice, an opportunity to be heard, and adherence to due-process safeguards before foreclosure or any other adverse decision.

Contrary to *Bates v. Green Farms Condo. Ass'n,* 958 F.3d 470, 483 (6th Cir. 2020) not only

this Honorable Court allowed the Plaintiffs to amend their complaint to reflect all the wrong doings of Wells Fargo and accord it with all applicable Acts that Wells Fargo violated; There was no new evidence in the amended complaint, but the amended complaint that this Honorable Court allowed stated the previous claims and included many additional wrongdoings by Wells Fargo that was not properly addressed nor Wells Fargo adhered by discovery and interrogatory mandate of this Court. Wells Fargo demanded all the evidence of the case that was provided to Wells Fargo by the Plaintiffs as the Court ordered and was sent within the timeline to Wells Fargo. Therefore, it is in fact Wells Fargo that is in violation of discovery requirements to provide the Plaintiffs, Staffelds, with any document whatsoever pursuant to several requests for production of documents before this Court for discovery compliance and failing to answer any interrogatory questions.

**The Underlying Loan Was an FHA Mortgage Subject to Robust Federal Protections**

In this case, the mortgage securing the purchase of the Subject Property was and should have been insured and originated under terms consistent with FHA-backed loans, which are governed by the National Housing Act, 12 U.S.C. § 1701 et seq., and HUD regulations at 24 C.F.R. Part 203. FHA mortgages are not ordinary private loans; they are federally insured and subject to a comprehensive regulatory framework designed to protect homeowners, especially during periods of financial hardship. Courts have recognized that FHA lenders *must* comply with HUD servicing requirements before foreclosure. See *Wells Fargo Bank, N.A. v. Smith*, 2016 WL 8711207 (E.D. Mich. 2016); see also *Fleet Real Estate Funding Corp. v. Smith*, 366 N.W.2d 232 (Mich. Ct. App. 1985) (failure to comply with HUD servicing requirements may preclude foreclosure).

**Loss Mitigation Requirements**

HUD regulations require lenders to engage in loss mitigation efforts before initiating foreclosure. See 24 C.F.R. § 203.604(b). Specifically, lenders must make a reasonable effort to

arrange a face-to-face interview with the borrower, assess the borrower's financial situation, and explore alternatives to foreclosure, such as forbearance, loan modification, or repayment plans. "Before initiating foreclosure, the mortgagee must have a face-to-face interview with the mortgagor or make a reasonable effort to arrange such a meeting." *24 C.F.R. § 203.604(b)*. Wells Fargo deliberately refused to do so.

**Forbearance and Modification Options**

HUD's loss mitigation program requires mortgage lenders and servicers to evaluate borrowers for all available options, including special forbearance, FHA-HAMP loan modification, and partial claim relief. See HUD Handbook 4000.1, III.A.2.k. These options are designed to help borrowers retain their homes and avoid foreclosure. Wells Fargo received HUD funding but did not comply with HUD requirements.

**Foreclosure Moratoria During the Global Health Pandemic**

During the COVID-19 pandemic, HUD issued multiple Mortgagee Letters (including ML 2020-27) prohibiting foreclosure and eviction actions on FHA-insured mortgages except for vacant or abandoned properties. Servicers were required to offer forbearance to any borrower experiencing financial hardship due to COVID-19 and could not initiate or proceed with foreclosure while forbearance or loss mitigation was pending. "Mortgagees must not initiate or proceed with foreclosure or eviction for FHA-insured single-family mortgages, except for properties that are vacant or abandoned." *HUD Mortgagee Letter 2020-27*. Wells Fargo undertook foreclosure proceedings against HUD mandate during pandemic.

**Notice and Due Process**

FHA regulations and Michigan law require that borrowers receive adequate notice of default, the opportunity to cure, and clear communication regarding the status of any loss mitigation

application. See *Dow v. State*, 396 Mich. 192, 240 NW 2d 450 (1976) (due process requires notice reasonably calculated to apprise interested parties of foreclosure). Wells Fargo never sent foreclosure, denial of loan modification, or denial of Plaintiffs claim for mortgage insurance to them.

**Judicial Enforcement**

Federal courts have recognized that HUD regulations incorporated into FHA mortgages are enforceable by borrowers. See *United States v. Premises Known as 608 Taylor Ave.*, 584 F.2d 1297 (3d Cir. 1978); *Fleet Real Estate Funding Corp. v. Smith*, 366 N.W.2d 232 (Mich. Ct. App. 1985) (failure to comply with HUD servicing requirements may preclude foreclosure). Wells Fargo denied the Plaintiffs enforcing the FHA and HUD requirements for mortgage of the subject property.

**Summary as Applied to Wells Fargo Bank**

In sum, Wells Fargo Bank, as the lender and servicer of an FHA-insured mortgage, was required to comply with all HUD loss mitigation and notice requirements, and to honor federal foreclosure moratoria during the COVID-19 national health emergency. Plaintiffs' allegations, supported by the record, show that Wells Fargo failed to comply with these protections, thereby rendering the foreclosure improper, precluding summary judgment, and warranting sanctions.

**Executive Order 13945: "Fighting the Spread of COVID-19 by Providing Assistance to Renters and Homeowners; Wells Fargo's foreclosure violated the Executive Order and HUD guidance issued during COVID-19**

On August 8, 2020, the President issued Executive Order 13945, which directed federal agencies to take all appropriate actions to prevent evictions and foreclosures for renters and homeowners affected by the COVID-19 pandemic. The Order specifically instructed the Secretary of Housing and Urban Development (HUD) to "take action, as appropriate and consistent with

13

applicable law, to promote the ability of renters and homeowners to avoid eviction or foreclosure resulting from hardships caused by COVID-19." See Executive Order 13945, § 3(b), 85 Fed. Reg. 49935 (Aug. 11, 2020).

This Executive Order recognized the unprecedented financial hardship facing millions of Americans and mandated that federal agencies use their authority to protect those with federally-backed mortgages, including FHA loans. Wells Fargo fully and deliberately ignored all mandates.

**HUD Guidance and Mortgage Lender Letters**

In response to Executive Order 13945, HUD issued a series of Mortgagee Letters providing specific instructions to mortgage servicers regarding foreclosure and eviction moratoria for FHA-insured mortgages:

a) HUD Mortgagee Letter 2020-27 (Dec. 17, 2020): Extended the foreclosure and eviction moratorium for FHA-insured single-family mortgages through July 31, 2021. "Mortgagees must not initiate or proceed with foreclosure or eviction for FHA-insured single-family mortgages, except for properties that are vacant or abandoned."

b) HUD Mortgagee Letter 2021-05 (Feb. 16, 2021): Further extended the moratorium and clarified that servicers must offer forbearance to any borrower experiencing financial hardship due to COVID-19. "Borrowers with FHA-insured mortgages who are experiencing financial hardship due to COVID-19 are entitled to request and receive forbearance, regardless of delinquency status."

c) HUD Mortgagee Letter 2021-15 (June 25, 2021): Provided additional loss mitigation options, including COVID-19 Recovery Modification and COVID-19 Recovery Standalone Partial Claim, to help borrowers retain their homes.

**Lender/Servicer Obligations Under Federal Guidance**

Under these federal directives, mortgage lenders and servicers were required to:

14

a)  Halt all foreclosure and eviction actions on FHA-insured mortgages except for vacant or abandoned properties.

b)  Offer forbearance to any borrower who requested assistance due to COVID-19 hardship.

c)  Evaluate borrowers for all available loss mitigation options before initiating foreclosure.

d)  Provide clear and timely notice to borrowers regarding their rights and the status of any loss mitigation application.

e)  Wells Fargo deliberately ignored all federal government requirements.

**Enforcement and Judicial Recognition**

Federal courts have recognized that these Executive Orders and HUD Mortgagee Letters are binding on mortgage servicers and provide enforceable rights to borrowers. See United States v. Premises Known as 608 Taylor Ave., 584 F.2d 1297 (3d Cir. 1978) (HUD regulations incorporated into FHA mortgages are enforceable by borrowers); Fleet Real Estate Funding Corp. v. Smith, 366 N.W.2d 232 (Mich. Ct. App. 1985) (failure to comply with HUD servicing requirements may preclude foreclosure. Wells Fargo foreclosed the subject property without regard to federal laws.

**Application to Plaintiffs**

Plaintiffs lost employment due to the pandemic and promptly notified Wells Fargo, seeking forbearance and loan modification as permitted under federal law. Despite these protections, Wells Fargo initiated foreclosure without providing the required forbearance, loss mitigation evaluation, or proper notice, and face to face evaluation, in direct violation of Executive Order 13945 and HUD guidance. Additionally, Wells Fargo Bank sold the Property in Sheriff's Sale while Plaintiffs application for loan modification was "pending."

Executive Order 13945, "Fighting the Spread of COVID-19 by Providing Assistance to

15

Renters and Homeowners," directed HUD to take action to prevent foreclosures on federally-backed mortgages, including FHA loans. HUD Mortgagee Letter 2020-27 extended foreclosure moratoria for FHA-insured mortgages and required servicers to offer forbearance and loss mitigation. Plaintiffs lost employment due to the pandemic and sought forbearance and modification, yet Wells Fargo initiated foreclosure contrary to these mandates and sold the Property without notice. Federal courts have held that HUD regulations incorporated into FHA mortgages are enforceable by borrowers. See United States v. Premises Known as 608 Taylor Ave., 584 F.2d 1297 (3d Cir. 1978). FHA guidelines applied to single family primary residents of mortgages and mandate Wells Fargo Bank to withhold 1.75% of the mortgage amount and secure this mortgage with mortgage insurance, not for the Plaintiffs' benefit, but for the Wells Fargo Bank's benefit in case of death or disability of mortgagor especially within one year. Such death occurred to the mortgagor, Dorothea V. Staffeld, within 11 months of the mortgage contract (Exhibit A - Section 10 of mortgage contract; mortgage insurance requirement by Wells Fargo Bank) (Exhibit C - Death certificate of Dorothea V. Staffeld) (Exhibit D – Property Transfer Affidavit). These violations by Wells Fargo Bank warrants the sanction.

**Genuine Issues of Material Fact Preclude Summary Judgment**

Defendant's Motion for Summary Judgment ignores material facts regarding compliance with federal foreclosure moratoria and loss mitigation requirements. Whether Wells Fargo Bank complied with Executive Order 13945 and HUD guidance, whether Wells Fargo Bank complied with FHA requirements and secured a mortgage insurance for this loan, whether Plaintiffs received adequate notices for loan modification, whether plaintiffs received a denial adjudication to effectuate mortgage insurance, whether there was a notice of foreclosure, and whether foreclosure was properly processed, issued to them, in notice of foreclosure are "disputed issues on material

facts". Under *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, these factual disputes must be resolved by the trier of fact, precluding summary judgment.

**Plaintiffs Are Entitled To Relief Under State And Federal Law And Sanctions To Be Afforded To Them.**

Plaintiffs assert claims for quiet title, injunctive relief, breach of contract, FDCPA violations, violation of HUD guidelines, violation of FHA guidelines, unjust enrichment, negligent infliction of emotional distress, violation of Fair Lending Practice Act, violation of Real Estate Settlement Procedure Act, commission of false financial certification to HUD, commission of improper mortgage lending practices, commission of predatory lending and collection practices, contempt of court in providing discovery material requested by Plaintiffs and answering interrogatories truthfully, failing payment to HUD for mortgage insurance, violation of Executive Order #13945, and deliberately not sending notices of foreclosure to Plaintiffs, fraudulent misrepresentation, unjust enrichment, and negligent infliction of emotional distress. Michigan law requires notice reasonably calculated to apprise interested parties of foreclosure. See *Dow v. State*, 396 Mich. 192, 240 N.W.2d 450 (1976). Further, courts have rejected arguments that economic hardship excuses failure to comply with statutory protections. See *Smith v. Litton Loan Servicing*, LP, 517 Fed. Appx. 395 (6th Cir. 2013).

**RULE 11 SANCTION ANALYSIS**

The recent decision of *Omni Elevator Corp. v. Int'l Union of Elevator Constructors & its Loc. 27 Affiliate*, 2022 WL 780272 (W.D.N.Y. 2022) involved Rule 11 sanctions. There, the Plaintiffs brought an action seeking to enjoin the enforcement of two Pennsylvania money judgments for ERISA violations and one judgment for breach of contract.

The *Omni* Court set forth that Rule 11 provides that when an attorney or pro se party

presents to the court a writing by signing, submitting, or advocating for it, the attorney or party certifies:

(1) the writing is not for any improper purpose (e.g., harassment; delay, increasing costs of the litigation);

(2) the legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or will have evidentiary support following discovery/investigation; and

(4) denials of factual contentions are based on knowledge or on reasonable belief or a lack of information.

*Omni Elevator Corp.*, 2022 WL 780272, at *2 (citing F.R.C.P. 11(b)(1)-(3)).

The Court can impose sanctions when there are defects and inaccuracies in a Party's legal argument that imposes undue, insurmountable, and procedural hurdle on the Complaint, and by filing Rule 11 Sanction, applies here when proven, Defendant and its Representatives have deliberately and maliciously caused harm to Plaintiffs by their "unreasonableness of their actions" and by "filing motion to dismiss" in a counter-fact that became rounds of sanctionable residential illegal mortgage practices under Rule 11(b)(3) while lacking evidence for a meaningful and evidence-based defense to put forward in response to Plaintiffs Complaint and Amended Complaint. Defendant's actions were filed for an improper purpose because the Defendant and its' Agents have "actual knowledge" of the frivolous pleading "intentional hindrance" of proceedings by not providing proof at their possession and disposition that is

18

automatically dispositive of the claims they are making. By doing so, Defendant is attempting to delay proceedings, judgment, and enforcement. It appears they are doing so as part of some scheme. From a practical point of view, granting the Summary Judgment would be an undue deterrent to Plaintiffs rights to be heard and Sanctions of rule 11 will shift a partial burden to Defendant to what Plaintiffs suffered within the last three years including loss of residence, living in a substandard living arrangement, separation anxiety as a real result of departure from a house they put all their life savings into, and modified according to the needs of several disabled members of the household (80 year old mother with both knees replaced, kidney patients, grandchildren, extended family members they housed pursuant to Persian war, etc.) that has forced them to compromise their standard of living and caused monetary loss in excess of $3,740,000 million with interest.

## CONCLUSION

For all these reasons, Plaintiffs Karl Staffeld and Azar Staffeld respectfully requests that this Honorable Court: (1) Impose appropriate sanctions against Defendant Wells Fargo, including monetary penalties, fees, and costs resulting from Wells Fargo's frivolous, misleading, and voluminous filings, in the amount of **$17,000,000.00**, payable within 14 days of entry of the Court's Order Granting Plaintiff's Motion for Sanctions; (2) Order Defendant Wells Fargo to cease further categorical assertions that deny statutory and constitutional process and to comply with all procedural and statutory requirements, including notice, reconsideration, and waiver mechanisms, and; (3) Grant such other and further relief as the Court deems just and proper.

By: _____
Karl Staffeld
Plaintiff, *Pro Se*

By: _____
Azar Staffeld
Plaintiff, *Pro Se*

Dated: April 12, 2026

20

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2026, I served the foregoing PLAINTIFF'S EMERGENCY MOTION TO

SANCTION DEFENDANT, WELLS FARGO, via USPS first-class mail to the Attorneys of record for the

parties to this matter and upon:


Miranda M. Boulahanis (P86222)
TROUTMAN PEPPER LOCKE LLP
500 WOODWARD AVENUE, SUITE 2800
DETROIT, MICHIGAN 48226
248-469-4749
miranda.boulahanis@troutman.com


Mark D. Kundmueller Esq. (P66306)
TROUTMAN PEPPER LOCKE LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
(757) 687-7564
mark.kundmueller@troutmen.com


Respectfully submitted,

By: _____
Karl Staffeld
Plaintiff, *Pro Se*


Dated: April 12, 2026

# EXHIBIT A

**341 CORRIE MORTGAGE – SECTION 10. Mortgage Insurance.**

**Extraction from Page 5 of 9, Wells Fargo and Staffeld Mortgage Contract**

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the note, another insurer, any reinsurer, any other entity, or affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provided that an affiliate of Lender takes a share of the insurer's risk in exchange (or a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has -if any -with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

# EXHIBIT B

L: 5271 P: 555   6438252   D
08/30/2018 08:34 AM   Total Pages: 2
Lawrence Kestenbaum, Washtenaw Co



## QUIT CLAIM DEED

**Grantor,** Dorothea V. Staffeld, ASW, 223 Pierce Lake Road, Chelsea, MI 48118 quitclaims to

**Grantee,** Karl W. Staffeld, ASM, and Azar Sadeghi, ASW, 341 Payeur, Ann Arbor, MI 48108, JTWRS, the premises commonly known as

341 Corrie Road, Ann Arbor, MI 48105

Tax ID IB-09-08-380-005

located in Village of Barton Hills, Washtenaw County, Michigan:

IB 09-540-029-00 BHV 2-29 COM AT SW COR OF LOT 4, BLK 3, TH N 20 DEG 12' E 268.84 FT FOR PL OF BEG, TH N 20 DEG 12' E 351.50 FT, TH N 35DEG 01' E 94.97 FT, TH NELY 39.10 FT IN ARC OF A CURVE RIGHT OF 44.99 FT RADIUS THRU A CENT ANGLE OF 48 DEG 42' 30", THE CHORD BEARS N 59 DEG 22' 30" E 37.92 FT, TH NORTH 83 DEG 49' E 120 FT, TH S 6 DEG W 250 FT, TH S 28 DEG 11' 30" W 227.14 FT TH N 87-02-40 W 193.4 FT, TO POB, BEINGPART OF LOT 4, BLOCK 3, SUPERVISOR'S PLAT BARTON HILLS

for $1.00 subject to easements and building and use restrictions, other restrictions of record, if any, and zoning ordinances.

Dated: 12/15/2017                    By: _~Dorothea V. Staffeld~_
                                          Dorothea V. Staffeld

Time Submitted for Recording
Date _8/30_ 20_18_ Time _8:30AM_
Lawrence Kestenbaum
Washtenaw County Clerk/Register

State of Michigan          )
County of Washtenaw        )

The foregoing instrument was acknowledged, subscribed and sworn to before me on this day, December _15_, 2017 by Dorothea V. Staffeld.

_____ , Notary Public,
Washtenaw County, Michigan

_Karl W Staffeld_ 12.15.17

```
ROSETTE CATRINA EDWARDS
Notary Public - State of Michigan
County of Washtenaw
My Commission Expires Feb 3, 2023
Acting in the County of WASHTENAW
```

_Azar Sadeghi_ 12/15/17

My Commission Expires

___/___/____

| When recorded return to: | Send subsequent tax bills to: | Drafted by: |
|---|---|---|
| Karl W. Staffeld, & Azar Sadeghi, ~~341 Payeur,~~ Ann Arbor, MI ~~48108~~, 341 Corrie Road 48105 | Grantee | Christopher Sevick, Esq. 2045 Hogback Road Ann Arbor, MI 48105 No Title Opinion Provided |
| Tax ID: IB-09-08-380-005 | Exempt MCL 207.505(5)(a) Exempt MCL 207.526(6)(a) | |

# EXHIBIT C

# CERTIFICATION OF VITAL RECORD

# COUNTY OF WASHTENAW
## STATE OF MICHIGAN



**STATE OF MICHIGAN**
DEPARTMENT OF COMMUNITY HEALTH
**CERTIFICATE OF DEATH**

STATE FILE NUMBER
**275584**

D2018-03217
Pages: 1 of 1 DCT

| 1. DECEDENT'S NAME (First, Middle,) Dorothea June Staffeld | 2. DATE OF BIRTH June 26, 1927 | 3. SEX Female | 4. DATE OF DEATH November 01, 2018 | |
|---|---|---|---|---|
| 5. NAME AT BIRTH OR OTHER NAME USED FOR PERSONAL BUSINESS Dorothea June Vermillion | 6a. Last Birthday (Years) 91 | 6b. UNDER 1 YEAR MONTHS / DAYS | 6c. UNDER 1 DAY HOURS / MINUTES | |

| 7a. LOCATION OF DEATH Arbor Hospice | 7b. CITY, VILLAGE OR TOWNSHIP OF DEATH Saline | 7c. COUNTY OF DEATH Washtenaw |
|---|---|---|

| 8a. CURRENT RESIDENCE - STATE Michigan | 8b. COUNTY Washtenaw | 8c. LOCALITY Chelsea | 8d. STREET AND NUMBER 223 Pierce Lake Drive |
|---|---|---|---|

| 8e. ZIP CODE 48118 | 9. BIRTH PLACE Monett, Missouri | 10. SOCIAL SECURITY NUMBER 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 | 11. DECEDENT'S EDUCATION Associate degree |
|---|---|---|---|

| 12. RACE White | 13a. ANCESTRY Irish | | 13b. HISPANIC ORIGIN No | 14. EVER IN THE U.S. ARMED FORCES? No |
|---|---|---|---|---|

| 15. USUAL OCCUPATION Intelligence | 16. KIND OF BUSINESS OR INDUSTRY Government | 17. MARITAL STATUS Widowed | 18. NAME OF SURVIVING SPOUSE If wife, give name before first married |
|---|---|---|---|

| 19. FATHER'S NAME (First, Middle, Last) Ovid Uriah Vermillion | 20. MOTHER'S NAME BEFORE FIRST MARRIED (First, Middle, Last) Rose Mae Owens |
|---|---|

| 21a. INFORMANT'S NAME Karl W. Staffeld | 21b. RELATIONSHIP TO DECEDENT Son | 21c. MAILING ADDRESS 341 Corrie Road, Ann Arbor, Michigan 48105 |
|---|---|---|

| 22. METHOD OF DISPOSITION Cremation | 23a. PLACE OF DISPOSITION Tri-County Cremation Services | 23b. LOCATION - City or Village, State Ypsilanti, Michigan |
|---|---|---|

| 24. SIGNATURE OF MORTUARY SCIENCE LICENSEE Allen C. Cole | 25. LICENSE NUMBER 4501006399 | 26. NAME AND ADDRESS OF FUNERAL FACILITY Cole Funeral Chapel, Inc, 214 E. Middle St., Chelsea, Michigan 48118 |
|---|---|---|

| 27a. CERTIFIER [X] Certifying Physician - To the best of my knowledge, death occured due to the (cause/s and manner stated). [ ] Medical Examiner - On the basis of examination, and/or investigation, in my opinion, death occured at the time, date, and place, and due to the cause(s) and manner stated. Signature and Title Thomas A. O'Neil, MD | 28a. ACTUAL OR PRESUMED TIME OF DEATH 10:52 AM | 28b. PRONOUNCED DEAD November 01, 2018 | 28c. TIME PRONOUNCED DEAD 10:52 AM |
|---|---|---|---|
| | 29. MEDICAL EXAMINER CONTACTED No | 30. PLACE OF DEATH Hospice Facility | 31. IF HOSPITAL |

| 27b. DATE SIGNED November 02, 2018 | 27c. LICENSE NUMBER 4301092471 | 32. MEDICAL EXAMINER'S CASE NUMBER | 33. NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER |
|---|---|---|---|

34. NAME AND ADDRESS OF CERTIFYING PHYSICIAN
Thomas A. O'Neil, MD, Arbor Hospice, 440 West Russell Street Suite 100, Saline, Michigan 48176

| 35a. REGISTRAR'S SIGNATURE | 35b. DATE FILED November 02, 2018 |
|---|---|

Time Submitted for Recording
Date 2-24 20 23Time 10:3 LAM
Lawrence Kestenbaum
Washtenaw County Clerk/Register

| 36. PART I. ENTER the chain of events - diseases, injuries or complications - that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest or ventricular fibrillation without showing the etiology. Enter only one cause on line. | | Approximate Interval Between Onset and Death |
|---|---|---|
| If diabetes was an immediate, underlying or contributing cause of death be sure to record diabetes in either Part I or Part II of the cause of death section, as appropriate. | a. Cardiovascular Disease | Years |
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | DUE TO (OR AS A CONSEQUENCE OF) b. Chronic Obstructive Pulmonary Disease | Years |
| Sequentially list conditions, IF ANY, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST | DUE TO (OR AS A CONSEQUENCE OF) c. | |
| | DUE TO (OR AS A CONSEQUENCE OF) d. | |

| PART II. OTHER SIGNIFICANT CONDITIONS contributing to death but not resulting in the underlying cause given in Part I | 37. DID TOBACCO USE CONTRIBUTE TO DEATH? [ ] Yes [X] Probably [ ] No [ ] Unknown | 38. IF FEMALE [ ] Not pregnant within past year [ ] Pregnant at time of death [ ] Not pregnant, but pregnant within 42 days of death [ ] Unknown if pregnant within the past year [ ] Not pregnant, but pregnant 43 days to 1 year before |
|---|---|---|

| 39. MANNER OF DEATH Natural | 40a. WAS AN AUTOPSY PERFORMED? No | 40b. WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? Not Applicable |
|---|---|---|

| 41a. DATE OF INJURY | 41b. TIME OF INJURY | 41c. DESCRIBE HOW INJURY OCCURRED |
|---|---|---|

| 41d. INJURY AT | 41e. PLACE OF INJURY | 41f. IF TRANSPORTATION | 41g. LOCATION |
|---|---|---|---|

A922087

I, LAWRENCE KESTENBAUM, CLERK/REGISTER OF SAID COUNTY OF WASHTENAW DO HEREBY CERTIFY that the foregoing is a true and exact copy of the original document of file in my office.



DATED: 11/02/2018

**LAWRENCE KESTENBAUM**
WASHTENAW COUNTY CLERK/REGISTER

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# EXHIBIT D

Michigan Department of Treasury
2766 (Rev. 01-16)

L-4260

# Property Transfer Affidavit

This form is issued under authority of P.A. 415 of 1994. Filing is mandatory.

This form must be filed whenever real estate or some types of personal property are transferred (even if you are not recording a deed). The Affidavit must be filed by the new owner with the assessor for the city or township where the property is located within 45 days of the transfer. The information on this form is NOT CONFIDENTIAL.

| 1. Street Address of Property 341 Corrie Road | 2. County Washtenaw | 3. Date of Transfer (or land contract signed) 12/15/17 |
|---|---|---|

| 4. Location of Real Estate (Check appropriate field and enter name in the space below.) [ ] City   [ ] Township   [X] Village   Barton Hills | 5. Purchase Price of Real Estate 625,000.00 |
|---|---|
| | 6. Seller's (Transferor) Name The Alice B. Dobson Declaration of Trust dated May 30, 1 |

| 7. Property Identification Number (PIN). If you don't have a PIN, attach legal description. PIN. This number ranges from 10 to 25 digits. It usually includes hyphens and sometimes includes letters. It is on the property tax bill and on the assessment notice. IB-09-08-380-005 | 8. Buyer's (Transferee) Name and Mailing Address Karl W. Staffeld and Dorothea V. Staffeld 341 Corrie Road, Ann Arbor, MI 48105 |
|---|---|
| | 9. Buyer's (Transferee) Telephone Number |

**Items 10 - 15 are optional. However, by completing them you may avoid further correspondence.**

10. Type of Transfer. Transfers include deeds, land contracts, transfers involving trusts or wills, certain long-term leases and interest in a business. See page 2 for list.

[ ] Land Contract   [ ] Lease   [ ] Deed   [ ] Other (specify) _____

| 11. Was property purchased from a financial institution? [ ] Yes  [ ] No | 12. Is the transfer between related persons? [ ] Yes  [ ] No | 13. Amount of Down Payment |
|---|---|---|

| 14. If you financed the purchase, did you pay market rate of interest? [ ] Yes  [ ] No | 15. Amount Financed (Borrowed) |
|---|---|

## EXEMPTIONS

Certain types of transfers are exempt from uncapping. If you believe this transfer is exempt, indicate below the type of exemption you are claiming. If you claim an exemption, your assessor may request more information to support your claim.

[ ] Transfer from one spouse to the other spouse

[ ] Change in ownership solely to exclude or include a spouse

[ ] Transfer between certain family members *(see page 2)

[ ] Transfer of that portion of a property subject to a life lease or life estate (until the life lease or life estate expires)

[ ] Transfer to effect the foreclosure or forfeiture of real property

[ ] Transfer by redemption from a tax sale

[ ] Transfer into a trust where the settlor or the settlor's spouse conveys property to the trust and is also the sole beneficiary of the trust

[ ] Transfer resulting from a court order unless the order specifies a monetary payment

[ ] Transfer creating or ending a joint tenancy if at least one person is an original owner of the property (or his/her spouse)

[ ] Transfer to establish or release a security interest (collateral)

[ ] Transfer of real estate through normal public trading of stocks

[ ] Transfer between entities under common control or among members of an affiliated group

[ ] Transfer resulting from transactions that qualify as a tax-free reorganization

[ ] Transfer of qualified agricultural property when the property remains qualified agricultural property and affidavit has been filed.

[ ] Transfer of qualified forest property when the property remains qualified forest property and affidavit has been filed.

[ ] Transfer of land with qualified conservation easement (land only - not improvements)

[ ] Other, specify: _____

## CERTIFICATION

*I certify that the information above is true and complete to the best of my knowledge.*

| Printed Name Dorothea V. Staffeld | |
|---|---|
| Signature | Date 12/15/17 |
| Name and title, if signer is other than the owner | Daytime Phone Number | E-mail Address |

I/We, the above signed, request that American Title Company of Washtenaw mail this original affidavit on our behalf. We understand that we are still responsible for penalties if it is not received by the assessor within the specified time period.