**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KARL STAFFELD AND AZAR STAFFELD,

      Plaintiffs,

-v-

WELLS FARGO BANK, N.A., et al.,

      Defendants.

_____/

Case No: 4:24-cv-12811
Hon. Shalina D. Kumar
Hon. David R. Grand

### PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION (ECF NO. 83) AND MOTION OF RELIEF FROM THAT JUDGEMENT ACCORDING TO RULE 60(B)

NOW COME Plaintiffs, KARL STAFFELD and AZAR STAFFELD, appearing in this matter *Pro Se*, and respectfully submit these specific written objections to the Report and Recommendation dated April 13, 2026 (hereafter, the "R&R"), which recommends – erroneously – granting Defendant Wells Fargo Bank, N.A.'s Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (ECF No. 59).

Grant of the summary judgement was improper because there remains genuine dispute of material fact regarding issues in original and amended complaint that were not addressed by the order. There are three main issues in this case:

1. Whether the Defendant Wells Fargo paid the premium mandatory by HUD and FHA and according to the contract to secure a mortgage insurance and follow the mandatory FHA/HUD regulations?

2. Whether the Defendant Wells Fargo made a determination about loan modification application properly and notified the Plaintiffs timely and followed Covid protection

governmental mandates?

3. Whether the foreclosure of the property was properly done and mandatory notices were sent to Plaintiffs' and FHA/HUD guidelines were followed by Wells Fargo?

According to Federal Rules of Civil Procedure 56(d) (Rule) the Defendant filed the motion for summary disposition before the Plaintiff had a chance to conduct discovery or any fact finding. The Defendant Wells Fargo did not comply with Rule 26(a)(1) that mandates parties in Federal lawsuits to disclose the specific core information to the opposing side without waiting for formal discovery requests. These mandatory initial disclosures should have been made within 14 days after the Rule 26(f) discovery conference which Defendant refused to conduct and took away the Plaintiffs right to covering witnesses' documents, damages, and insurance agreement that are relevant to disputed facts; a fact-driven necessity in this case.

Plaintiffs' objections focus particularly on the FHA/HUD servicing requirements and COVID-era foreclosure protections that bear directly on the propriety of the foreclosure conduct challenged in this case. Furthermore, the nature of the underlying FHA mortgage loan along with Defendant's violation of Federal protections enacted during the COVID-19 global health pandemic dictate that the motion for summary judgment be denied and Plaintiffs should be afforded a full and fair opportunity to present their various claims to a jury of their peers.

As outlined in Plaintiffs' Response in Opposition to Defendant Wells Fargo Bank's Motion for Summary Judgment, Defendant's motion should respectfully be **denied**, as genuine issues of material fact exist for the trier of fact concerning Wells Fargo Bank's conduct in foreclosing upon Plaintiffs' home without Plaintiffs any wrongdoing.

### STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), the District Judge must conduct a *de novo* review of those portions of the R&R to which specific objections are made. In the Federal Sixth

Circuit, *de novo* review is defined as a non-deferential, fresh examination of a lower Court's legal conclusions, acting "anew" without giving any presumption of correctness to the original ruling. *Osborne v. Metro. Gov't of Nashville*, 935 F.3d 521, 523 (6th Cir. 2019). In performing that review, the Court must accept well-pleaded factual allegations as true, draw all reasonable inferences in Plaintiffs' favor, and construe Pro Se filings liberally so that potentially meritorious claims are not forfeited by technical pleading errors.

Further, Sixth Circuit law and established precedent is clear that summary judgment based upon the pleadings is appropriate **only** where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)* (emphasis added). The Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2D 265 (1986), that the moving party bears the initial burden of showing the absence of a genuine issue of material fact. Likewise, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202 (1986), instructs that Courts must view the evidence in the light most favorable to the **non-moving party** and draw all reasonable inferences **in that party's favor** (emphasis added). If reasonable minds could differ on the facts, summary judgment must be denied. See also *Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861 (2014).

When a party moves for summary judgement, that party carries the "burden of showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Estate of Kimmell ex rel. Kimmell v. Seven Up Bottling Co.*, F.2d 410, 412 (4th Cir. 1993). Defendant Wells Fargo has failed to carry this burden, as required by Rule 56(a).

Wells Fargo's motion is devoid of substantive legal reasoning and argument. Wells Fargo's motion is rife with substantive and procedural deficiencies. Most glaringly, the motion contains no "statement of facts," nor does it include any "supporting reasons." Local Civ. R. 11(c)(1); *see also* Local Civ. R. 56(b) (requiring that motions for summary judgment contain "a separately captioned

3

section setting fourth ... the material facts claimed to be undisputed together with specific record citations in support thereof.") Indeed, Wells Fargo has made no effort to explain why it is entitled to summary judgment on any of Plaintiffs' claims. The closest comes in declaring - in conclusory fashion - that "there is no genuine dispute as to any of the material facts and/or as to any necessary Qualified Immunity. But that is simply a restatement of Rule 56(a)'s standard, not a "showing" that the standard has been met. This defect alone warrants the denial of Wells Fargo's motion. Wells Fargo has not identified which passages are most relevant to their motion (and why), nor have they provided any of the surrounding text to contextualize those fragments that do appear in their motion. See *Williams v. Am. Family Mut. Ins. Co.*, No. 2:09-CV-00675, 2012 WL 1574825. at *4 n.2 (D. Nev. May 2, 2012). In addition, Wells Fargo has filed a motion for summary judgement containing numerous unsworn assertions. As this Court should have explained, it is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment. *Z.F. v. Adkins*, No. 2:18-CV-00042, 2019 WL 1559022, at *3 (W.D. Va. Apr. 10, 2019) (quoting *Oris v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)).

Finally, although Wells Fargo has identified a few judicial decisions that allegedly "appl[y] to this case," it makes no effort to explain why any of those cases - none of which are binding in this Court - are relevant to its motion. Again, Wells Fargo's motion contains no legal argument whatsoever. Wells Fargo has not even attempted to "show[]" that it is "entitled to judgment as a matter of law," Rule 56(a), and it is not the Court's responsibility to remedy this defect. Wells Fargo's motion should have been denied. Therefore, the recommendation of the R&R  is erroneous according to Rule 56(d) because it never afforded Plaintiffs a chance to conduct discovery and the summary judgement motion should have been dismissed because Wells Fargo has never complied with the mandatory discovery according to Rule 26(a)(1). Consequently, this objection should serve as a motion to relief from R&R under Rule 60(b) because the Recommender made improper

4

recommendation and manifested error of law since a mistake has occurred rather than arguing all the issues presented. The Recommender has ignored the statement of genuine issues in dispute and all the Plaintiffs evidentiary documents and submissions were overlooked.

Under any reading of its motion, Wells Fargo cannot prevail on the present summary-judgment record memorandum supported by argument and citations to the record, it still would be unable to demonstrate an entitlement to relief on Plaintiffs procedure act.

Claims on:

a) Quiet title.

b) Breach of Contract.

c) Violations of Real Estate Settlement Procedure Act (RESPA).

d) Violation of Fair Debt Collection Act (FDCPA).

e) Violation of Fair Lending Practices.

f) Fraudulent misrepresentation.

g) Unjust enrichment.

h) False financial certification to HUD.

i) Improper mortgage lending practices and predatory lending and collection practices.

j) Home ownership and equity protection act (HOEPA).

Based upon this strict standard and construing the facts and evidence in a light most favorable to Plaintiffs, **who are the victims of clear predatory lending and enforcement practices here**, and drawing all reasonable inferences in Plaintiffs' favor, this Honorable Court should **<u>DISREGARD</u>** the Report and Recommendation of the Judicial Referee and **<u>DENY</u>** Defendants' Motion for Summary Judgment on the Pleadings.

<u>SPECIFIC OBJECTIONS</u>

**Objection 1: The Report and Recommendation Erroneously Treats FHA/HUD and COVID-Era Protections as "New Claims" Rather Than Governing Law Supporting Existing Causes of Action.**

Plaintiffs' opposition brief focused on FHA regulations, HUD servicing requirements, and COVID-era Executive Orders, but concludes that Plaintiffs may not 'introduce new claims or legal theories' in opposition because those authorities were not expressly cited in the operative pleading. Plaintiffs object to this characterization and its legal consequence.

First, Rule 8 requires a short and plain statement showing entitlement to relief; it does not require a Plaintiff to plead every statute, regulation, or legal theory by name. Plaintiffs' filings consistently assert that Wells Fargo's foreclosure was improper, undertaken without proper notice, and pursued while Plaintiffs sought loss mitigation and/or modification relief. Those allegations are the core of Plaintiffs' claims for equitable relief and damages. FHA/HUD servicing requirements and COVID-era moratoria are legal standards that illuminate whether the foreclosure conduct alleged was lawful; they are not 'new claims' simply because Plaintiffs cited them in briefing.

Second, the R&R's approach is particularly inappropriate where Plaintiffs are Pro Se. Courts routinely permit Pro Se litigants to clarify and develop legal arguments in response to dispositive motions, especially where the underlying factual narrative remains the same.

Third, even if the Court concludes that additional FHA-specific factual allegations (e.g., the federally-backed nature of the loan and incorporation of HUD servicing duties) should be pleaded with greater specificity, the proper remedy is to allow amendment in the interest of justice—not to dismiss the case at the pleadings stage without addressing whether amendment would cure any perceived deficiency.

6

**Objection 2: Plaintiffs' Amended Complaint, When Construed Liberally and in Favor of the Non-Moving Party, Clearly Alleges a Loss-Mitigation/Modification Process and Lack of Notice That Squarely Implicates FHA/HUD Servicing.**

Plaintiffs' Amended Complaint alleges that, during the COVID-19 pandemic, Plaintiffs lost employment and were unable to make all mortgage payments; that Plaintiffs contacted Wells Fargo seeking relief; that Wells Fargo representatives assured Plaintiffs they could bring the account current and pursue modification; and that the bank initiated foreclosure without proper notice while Plaintiffs were awaiting loss mitigation results, including without written notice of any denial. These factual allegations, taken as true, are precisely the kind of servicing and communication conduct governed by FHA/HUD loss-mitigation requirements and related Federal servicing directives.

In addition, Plaintiffs' Response in Opposition explains that, for FHA-insured mortgages, HUD servicing regulations require pre-foreclosure loss mitigation (including reasonable efforts to arrange a face-to-face meeting) and that HUD Mortgagee Letters during COVID-19 prohibited initiating or proceeding with foreclosure on FHA-insured single-family mortgages except for vacant or abandoned properties and required servicers to offer forbearance to borrowers experiencing hardship. Plaintiffs' factual allegations that foreclosure proceeded while Plaintiffs sought relief and did not receive proper notice plausibly overlap with these requirements.

At the Rule 12(c) stage, Plaintiffs need only plausibly allege a set of facts that, if proven, could entitle them to relief. Because the FHA/HUD framework directly informs whether a foreclosure was 'proper' under the circumstances alleged, the Court should not exclude FHA/HUD standards from consideration as legal context for Plaintiffs' existing wrongful-foreclosure and notice-based allegations.

**Objection 3: The Report and Recommendation Improperly Resolves FHA/HUD-Related Issues Without Discovery and Contrary to Rule 12(c) Standards.**

7

Next, the Judicial Referee's Report recommends dismissal of all claims on the basis that Wells Fargo's arguments are 'unrebutted,' while simultaneously concluding that Plaintiffs' FHA/HUD arguments are 'non-responsive' because they were not cited in the Complaint. Plaintiffs object because this reasoning effectively prevents Plaintiffs from using governing legal standards to rebut Wells Fargo's dispositive motion.

Whether the loan at issue is federally-backed and subject to HUD servicing requirements; whether Wells Fargo followed applicable loss-mitigation steps; whether notices were provided; and whether foreclosure proceeded during periods in which Federal directives restricted such action are all fact-intensive questions. Many of the details relevant to those issues (servicing notes, call logs, denial letters, notice mailings, loss mitigation timelines, investor/FHA status codes, and foreclosure referrals) are uniquely in Wells Fargo's possession. Dismissing at the pleadings stage—without discovery—improperly deprives Plaintiffs of the opportunity to test those facts.

**Objection 4: The Report and Recommendation's Dismissal of Equitable Quiet-Title Relief Ignores the FHA/HUD-Driven Invalidity Theory Underlying Plaintiffs' Legitimate Claim.**

Plaintiff's requested equitable relief seeks, among other things, a declaration that the foreclosure was wrongful and an order quieting title. Plaintiffs' theory is that the foreclosure should be set aside because the process was not lawfully pursued and Plaintiffs were denied required notices and an opportunity to obtain relief. FHA/HUD servicing duties and pandemic-era protections supply strong legal support for the proposition that a foreclosure can be invalid where required loss mitigation steps and notice protections are not satisfied.

Even if 'quiet title' is characterized as a remedy in some contexts, Plaintiffs' pleading asserts an equitable claim that the foreclosure is invalid and seeks judicial determination of rights in the Property. The FHA/HUD framework reinforces the plausibility of that invalidity theory and should

be considered as part of the equitable analysis rather than excluded.

**Objection 5: In the Alternative, Plaintiffs Should Be Granted Leave to Amend their Complaint to Plead FHA/HUD Servicing Violations with Additional Specificity.**

If the Court, for whatever reason, determines that Plaintiffs' Complaint does not expressly allege sufficient FHA-specific facts (such as the FHA-insured status of the loan or incorporation of HUD servicing duties into the mortgage), then Plaintiffs request leave to amend. Plaintiffs have already articulated the FHA/HUD servicing and COVID-moratorium theory in their opposition filing, and amendment would clarify – not transform – the case.

Leave to amend should be freely given when justice so requires, particularly for *Pro Se* litigants. Federal Rule of Civil Procedure 15(a) contemplates that a Court will freely grant leave to file an amended complaint when the interests of justice so require. In fact, the Sixth Circuit has a liberal policy of permitting amendments to ensure cases are decided on the merits. *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973).

Moreover, District Courts must afford pleadings filed by *Pro Se* Plaintiffs **additional leniency**, given their unfamiliarity with pleading and procedural requirements. See *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) ("Pro Se complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers' and should therefore be liberally construed." (quoting Martin v. Overton, 391 F.3d 710, 712 (6th Cir. 2004)).

<u>SUBSTANTIVE LAW IN SUPPORT OF PLAINTIFFS' OBJECTIONS</u>

**A. The Underlying Loan Was an FHA Mortgage Subject to Robust Federal Protections.**

In this case, the mortgage securing the purchase of the Subject Property was insured and originated under terms consistent with FHA-backed loans, which are governed by the National Housing Act, 12 U.S.C. § 1701 et seq., and HUD regulations at 24 C.F.R. Part 203. FHA mortgages are not ordinary private loans; they are federally insured and subject to a comprehensive regulatory framework designed to protect homeowners, especially during periods of financial hardship. Courts have recognized that FHA lenders *must* comply with HUD servicing requirements before foreclosure. See *Wells Fargo Bank, N.A. v. Smith*, 2016 WL 8711207 (E.D. Mich. 2016); see also *Fleet Real Estate Funding Corp. v. Smith*, 366 N.W.2d 232 (Mich. Ct. App. 1985) (failure to comply with HUD servicing requirements may preclude foreclosure).

**1) Loss Mitigation Requirements**

HUD regulations require lenders to engage in loss mitigation efforts before initiating foreclosure. See 24 C.F.R. § 203.604(b). Specifically, lenders must make a reasonable effort to arrange a face-to-face interview with the borrower, assess the borrower's financial situation, and explore alternatives to foreclosure, such as forbearance, loan modification, or repayment plans. "Before initiating foreclosure, the mortgagee must have a face-to-face interview with the mortgagor or make a reasonable effort to arrange such a meeting." *24 C.F.R. § 203.604(b)*.

**2) Forbearance and Modification Options**

HUD's loss mitigation program requires mortgage lenders and servicers to evaluate borrowers for all available options, including special forbearance, FHA-HAMP loan modification, and partial claim relief. See HUD Handbook 4000.1, III.A.2.k. These options are designed to help borrowers retain their homes and avoid foreclosure.

### 3)  Foreclosure Moratoria During the Global Health Pandemic

During the COVID-19 pandemic, HUD issued multiple Mortgagee Letters (including ML 2020-27) prohibiting foreclosure and eviction actions on FHA-insured mortgages except for vacant or abandoned properties. Servicers were required to offer forbearance to any borrower experiencing financial hardship due to COVID-19 and could not initiate or proceed with foreclosure while forbearance or loss mitigation was pending. "Mortgagees must not initiate or proceed with foreclosure or eviction for FHA-insured single-family mortgages, except for properties that are vacant or abandoned." *HUD Mortgagee Letter 2020-27*.

### 4)  Notice and Due Process

FHA regulations and Michigan law require that borrowers receive adequate notice of default, the opportunity to cure, and clear communication regarding the status of any loss mitigation application. See *Dow v. State*, 396 Mich. 192, 240 NW 2d 450 (1976) (due process requires notice reasonably calculated to apprise interested parties of foreclosure).

### 5)  Judicial Enforcement

Federal Courts have recognized that HUD regulations incorporated into FHA mortgages are enforceable by borrowers. See *United States v. Premises Known as 608 Taylor Ave.*, 584 F.2d 1297 (3d Cir. 1978); *Fleet Real Estate Funding Corp. v. Smith*, 366 N.W.2d 232 (Mich. Ct. App. 1985) (failure to comply with HUD servicing requirements may preclude foreclosure).

### 6)  Summary as Applied to Wells Fargo Bank

In sum, Wells Fargo, as the lender and servicer of an FHA-insured mortgage, was required to comply with all HUD loss mitigation and notice requirements, and to honor Federal foreclosure moratoria during the COVID-19 public health emergency. Plaintiffs' allegations, supported by the record, show that Wells Fargo failed to comply with these protections, thereby rendering the

foreclosure improper and precluding summary judgment.

**B. Wells Fargo Bank's Foreclosure Violated Executive Order 13945 and HUD Guidance Issued During COVID-19.**

**1) Executive Order 13945: Fighting the Spread of COVID-19 - Assistance to Renters and Homeowners**

On August 8, 2020, the President issued Executive Order 13945, which directed Federal agencies to take all appropriate actions to prevent evictions and foreclosures for renters and homeowners affected by the COVID-19 pandemic. The Order specifically instructed the Secretary of Housing and Urban Development (HUD) to "take action, as appropriate and consistent with applicable law, to promote the ability of renters and homeowners to avoid eviction or foreclosure resulting from hardships caused by COVID-19." See Executive Order 13945, § 3(b), 85 Fed. Reg. 49935 (Aug. 11, 2020).

This Executive Order recognized the unprecedented financial hardship facing millions of Americans and mandated that Federal agencies use their authority to protect those with federally-backed mortgages, including FHA loans.

**2) HUD Guidance and Mortgage Lender Letters**

In response to Executive Order 13945, HUD issued a series of Mortgagee Letters providing specific instructions to mortgage servicers regarding foreclosure and eviction moratoria for FHA-insured mortgages:

a) HUD Mortgagee Letter 2020-27 (Dec. 17, 2020): Extended the foreclosure and eviction moratorium for FHA-insured single-family mortgages through July 31, 2021. "Mortgagees must not initiate or proceed with foreclosure or eviction for FHA-insured single-family mortgages, except for properties that are vacant or abandoned."

b) HUD Mortgagee Letter 2021-05 (Feb. 16, 2021): Further extended the moratorium and clarified that servicers must offer forbearance to any borrower experiencing financial hardship due to COVID-19. "Borrowers with FHA-insured mortgages who are

experiencing financial hardship due to COVID-19 are entitled to request and receive forbearance, regardless of delinquency status."

c) HUD Mortgagee Letter 2021-15 (June 25, 2021): Provided additional loss mitigation options, including COVID-19 Recovery Modification and COVID-19 Recovery Standalone Partial Claim, to help borrowers retain their homes.

**3)  Lender/Servicer Obligations Under Federal Guidance**

Under these Federal directives, mortgage lenders and servicers were required to:

a) Halt all foreclosure and eviction actions on FHA-insured mortgages except for vacant or abandoned properties;

b) Offer forbearance to any borrower who requested assistance due to COVID-19 hardship;

c) Evaluate borrowers for all available loss mitigation options before initiating foreclosure; and

d) Provide clear and timely notice to borrowers regarding their rights and the status of any loss mitigation application.

**4)  Enforcement and Judicial Recognition**

Federal Courts have recognized that these Executive Orders and HUD Mortgagee Letters are binding on mortgage servicers and provide enforceable rights to borrowers. See United States v. Premises Known as 608 Taylor Ave., 584 F.2d 1297 (3d Cir. 1978) (HUD regulations incorporated into FHA mortgages are enforceable by borrowers); Fleet Real Estate Funding Corp. v. Smith, 366 N.W.2d 232 (Mich. Ct. App. 1985) (failure to comply with HUD servicing requirements may preclude foreclosure.

**5)  Application to the Plaintiffs**

Plaintiffs lost employment due to the pandemic and promptly notified Wells Fargo, seeking forbearance and loan modification as permitted under Federal law. Despite these protections, Wells Fargo initiated foreclosure without providing the required forbearance, loss mitigation evaluation, or

proper notice, in direct violation of Executive Order 13945 and HUD guidance.

## RELIEF REQUESTED

For the foregoing reasons, Plaintiffs, KARL STAFFELD and AZAR STAFFELD, respectfully object to the Report and Recommendation dated April 13, 2026, and request that this Honorable Court deny Defendant, Wells Fargo Bank's Motion for Judgment on the Pleadings, and grant any other such relief to which Plaintiffs are found to be entitled based on principles of equity and fairness.

Respectfully submitted,

By: _____
Karl Staffeld
*Plaintiff, Pro Se*

By _____
Azar Staffeld
*Plaintiff, Pro Se*

Dated: April 27, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2026, I served the foregoing Plaintiffs' Objections to Report and Recommendation (ECF No. 83) and Motion of Relief from that Judgement According to Rule 60(B), via USPS first-class mail to the Attorneys of record for the parties to this matter and upon:

Miranda M. Boulahanis (P86222)
TROUTMAN PEPPER LOCKE LLP
500 WOODWARD AVENUE, SUITE 2800
DETROIT, MICHIGAN 48226
248-469-4749
miranda.boulahanis@troutman.com

Mark D. Kundmueller Esq. (P66306)
TROUTMAN PEPPER LOCKE LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
(757) 687-7564
mark.kundmueller@troutmen.com

Respectfully submitted,

By: _____
Karl Staffeld
Plaintiff, *Pro Se*

Dated: April 27, 2026

15